**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

```
-------------------------------------------------x
                                         :
In re                                    :        Chapter 11
                                         :
INSYS THERAPEUTICS, INC., et al.,        :        Case No. 19-11292 (KG)
                                         :
               Debtors.¹                 :        Joint Administration Requested
                                         :
-------------------------------------------------x
```

**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. § 105 AND**
**FED. R. BANKR. P. 9019 AUTHORIZING AND APPROVING STIPULATION**
**AND AGREEMENT BETWEEN THE DEBTORS AND THE UNITED STATES**

Insys Therapeutics, Inc. ("**Insys**") and its affiliated debtors in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

**Preliminary Statement**

1.    Prior to the commencement of these Chapter 11 Cases, the Debtors announced that after years of investigations and negotiations, they had entered into several agreements with the United States and certain other federal agencies resolving the federal government's criminal, civil, and administrative actions against them.  By this Motion, the Debtors seek Court approval of another and what is hopefully their final agreement with the federal government, the DOJ Stipulation (as defined below).  This stipulation establishes the allowed amount of certain claims of the United States, provides for mutual releases, and resolves issues of

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LLC (6577); and IPT 355, LLC (0155).  The Debtors' mailing address is 1333 South Spectrum Blvd #100, Chandler, Arizona 85286.

successor liability to enable the sales of the Debtors' assets to proceed without interruption and maximize the value of such assets for the benefit of all creditors.

2.      Approval of the DOJ Stipulation is in the best interests of the Debtors, their creditors, and all parties in interest, as it enables the Debtors to resolve their most significant liability for an amount that is a fraction of the total amount asserted by the DOJ in the DOJ Prepetition Civil Settlement Agreement (as defined below), is significantly less than the amount of the claims the federal government represents it will file in these Chapter 11 Cases absent the DOJ Stipulation, removes the overhanging threat of governmental action against them, including exclusion, and maximizes the proceeds the Debtors can receive in the sale process.  With this huge burden behind them, the Debtors can focus more attention on negotiating with other creditor groups and resolving additional claims against them.

## Relief Requested

3.      By this Motion, pursuant to section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors request entry of an order authorizing and approving that certain Stipulation and Agreement (the "**DOJ Stipulation**")[2] by and between Insys, on behalf of itself and its Estate, and the United States of America (the "**United States**," and, together with Insys, the "**Parties**") on behalf of the Office of Inspector General of the U.S. Department of Health and Services (the "**HHS-OIG**"), and the Defense Health Agency (the "**DHA**") that, among other things, and as described below in more detail, (a) fixes the amount and priority of the United States' Allowed Claim (as defined below) in these Chapter 11 Cases on account of the Covered Conduct

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the DOJ Stipulation or the DOJ Prepetition Civil Settlement Agreement (as defined below).

(as defined below) and the DOJ Prepetition Civil Settlement Agreement, (b) confirms that the Allowed Claim is the sole remedy of the United States with respect to the Covered Conduct and the DOJ Prepetition Civil Settlement Agreement, (c) releases all other claims between the Parties, including claims the Debtors may have against the United States under chapter 5 of the Bankruptcy Code, and (d) resolves any objections the United States could assert to a sale of the Debtors' assets to an unrelated third party purchaser pursuant to section 363 of the Bankruptcy Code (a "**Purchaser**") related to the Covered Conduct, the DOJ Prepetition Civil Settlement Agreement, or the Allowed Claim.

4.      A proposed form of order granting the relief requested herein is annexed hereto as **<u>Exhibit A</u>** (the "**Proposed Order**").   Copies of the DOJ Stipulation and the DOJ Prepetition Civil Settlement Agreement are attached as **<u>Exhibit 1</u>** and **<u>Exhibit 2</u>**, respectively, to the Proposed Order.

<b><u>Jurisdiction</u></b>

5.      The   Court   has   jurisdiction   to   consider   this   matter   pursuant   to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      Pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

RLF1 21395637V.1

## Background

7.      On the date hereof (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

8.      On the Petition Date, the Debtors filed a motion requesting joint administration of their chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

9.      Additional information regarding the circumstances leading to the commencement of these Chapter 11 Cases and the Debtors' businesses and capital structure is set forth in the declaration of Andrew G. Long, the Debtors' Chief Executive Officer, filed contemporaneously herewith, in support of the Debtors' chapter 11 petitions and related first day relief (the "**Long Declaration**").

## The DOJ Actions

10.      Beginning in late 2013, the Debtors began receiving subpoenas and other requests for information from various government entities relating to their sales and marketing of their SUBSYS® product ("**Subsys**") and the Debtors' business unit created to secure prior authorizations required for insurance reimbursement of prescription costs for patients, known as the "Insys Reimbursement Center" concerning, among other things, issues related to potential violations of the Anti-Kickback Statute and the Food, Drug & Cosmetic Act.  Among those serving the Debtors with subpoenas were the U.S. Attorney's Offices for the District of Massachusetts and the Central District of California, and the U.S. Senate Homeland Security & Governmental Affairs Committee, which soon thereafter commenced investigations into the improper promotional activities taking place related to Subsys and the Insys Reimbursement Center (collectively, the

4

"**Government Investigation**").    The Debtors continually cooperated with the Government Investigation and produced a substantial number of documents in response thereto.

11.    Between August 2013 and October 2016, certain individuals (the "***Qui Tam Plaintiffs***") filed actions against Insys related to the company's marketing and sales of Subsys pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "***Qui Tam Actions***").[3]   The Department of Justice of the United States (the "**DOJ**") and the states of California, Colorado, Indiana, Minnesota, New York, North Carolina, and Virginia (such states, collectively, the "**State Interveners**") intervened in part and declined to intervene in part in certain of the *Qui Tam* Actions.  The United States' Complaint in Intervention, which was filed on April 13, 2018 and ordered unsealed on May 11, 2018, brings claims for, among other things, violations of the False Claims Act, payment by mistake, and unjust enrichment on behalf of the U.S. Department of Health and Human Services, the Centers for Medicare & Medicaid Services (Medicare program), and the Defense Health Agency (TRICARE program) on account of certain alleged misconduct by Insys, including that Insys: (1) paid kickbacks to prescribers to induce them to prescribe Subsys; (2) focused its marketing on patients who did not have cancer; and (3) lied to insurers to persuade them to approve reimbursement for Subsys prescriptions.  The conduct that the United States has released in connection with the DOJ Prepetition Civil Settlement Agreement is detailed in paragraph D of that agreement (the "**Covered Conduct**").[4]  This action (the "**DOJ**

---

[3] The *Qui Tam* Actions are: *United States, et al., ex rel. Guzman v. Insys Therapeutics, Inc., et al.*, 13-cv-5861 (C.D. Cal.); *United States ex rel. Andersson v. Insys Therapeutics, Inc.*, 14-cv-9179 (C.D. Cal.); *United States ex rel. John Doe and ABC, LLC v. Insys Therapeutics, Inc., et al.*, 14-cv-3488 (C.D. Cal.); *United States ex rel. Erickson and Lueken v. Insys Therapeutics, Inc.*, 16-cv-2956 (C.D. Cal.); and *United States ex rel. Jane Doe, et al. v. Insys Therapeutics, Inc., et al.*, 16-cv-7937 (C.D. Cal.).

[4] The Covered Conduct includes: (a) providing kickbacks to physicians and other potential Subsys prescribers in violation of the Anti-Kickback Statute to induce them to prescribe Subsys (including through sham speaking events, hiring friends and family of healthcare providers, and offering potential prescribers expensive meals and entertainment); (b) establishing the Insys Reimbursement Center, which lied to representatives of federal health programs about patients' medical histories and conditions, including whether patients had cancer, to obtain approval for payment for Subsys prescriptions; (c) illegally promoting the sale and use of Subsys for uses that were not approved

**Civil Action**") was stayed while the Debtors continued to engage in ongoing discussions with federal agencies with respect to the Government Investigation, culminating in a resolution on June 5, 2019, described further below.  As part of the resolution of the DOJ Civil Action, in addition to resolving certain claims of the United States, the DOJ agreed to move to dismiss the United States' claims with prejudice as to the *Qui Tam* Plaintiffs, excepting certain claims for attorneys' fees and retaliation claims.

12.     In addition to the DOJ Civil Action, the DOJ commenced criminal investigations against Debtors Insys Pharma, Inc. and Insys Therapeutics, Inc. (the "**DOJ Criminal Actions**," and, together with the DOJ Civil Action, the "**DOJ Actions**").  Additionally, the HHS-OIG considered a potential action to exclude Insys from participation in certain federal healthcare programs, such as Medicare and Medicaid (the "**HHS-OIG Potential Action**").

13.     On August 8, 2018, the Debtors announced an agreement in principle (the "**2018 Agreement in Principle**") with the United States, through the DOJ, to resolve the DOJ Actions.  The 2018 Agreement in Principle, which remained subject to negotiation of definitive settlement documents, provided for the Debtors to pay a minimum liability exposure of $150 million over five years, with the potential for additional contingency-based payments associated with certain events that could have required additional payments of up to $75 million.  The DOJ, however, has asserted to the Debtors that its estimate of the Debtors' liability for the DOJ Actions exceeds $1 billion.

14.     As described in the Long Declaration, after reaching the 2018 Agreement in Principle, the Debtors' financial condition deteriorated substantially such that the Debtors could

---

by the Food and Drug Administration and which were not medically accepted; and (d) providing kickbacks to Medicare patients taking Subsys by using two third-party foundations as conduits to pay the copay obligations of those patients (with funds ostensibly established to assist patients with breakthrough cancer pain, even though employees of Insys knew some of those patients did not have cancer).

no longer afford to pay the amounts the DOJ was seeking to be paid up front.  As a result, prior to filing, there was uncertainty whether the Parties would be able to complete a final settlement.

15.     The Debtors expected that if a final settlement were to be completed, it would include material non-financial terms including a fraud-based criminal felony plea by Insys Pharma, Inc. and a deferred prosecution agreement related to the actions of former employees, in addition to a corporate integrity agreement and conditional exclusion release with the HHS-OIG.

## The DOJ Settlement Arrangement

16.     After months of negotiations, Insys announced that it signed amicable agreements with the United States (such agreements together, the "**DOJ Settlement Arrangement**") to resolve the DOJ Actions and the Government Investigation through several interrelated, interdependent agreements and related documents, including:

a.  the Settlement Agreement with the United States (the "**DOJ Prepetition Civil Settlement Agreement**") to resolve the DOJ Civil Action through, among other things, a settlement payment to the United States and a release of certain civil and administrative claims against Insys;

b.  the Corporate Integrity Agreement and Conditional Exclusion Release (the "**CIA**");

c.  the Plea Agreement with Insys Pharma, Inc. (the "**Plea Agreement**"); and

d.  the related Deferred Prosecution Agreement with Insys Therapeutics, Inc. (the "**DPA**").[5]

17.     The DOJ Settlement Arrangement favorably resolves several of the largest contingencies and significant monetary costs affecting the Debtors leading up to the commencement of these Chapter 11 Cases and eliminates significant distractions to the Debtors' operation of their business.  The DOJ Stipulation represents the last component necessary to

---

[5] Certain aspects of the DOJ Settlement Arrangement are discussed in more detail in the Long Declaration.

achieve the substantial benefits obtained by the Debtors under the DOJ Settlement Arrangement, subject to this Court's approval.

## A.      The DOJ Criminal Resolution

18.      On June 5, 2019, Insys Pharma, Inc. entered into the Plea Agreement and Insys Therapeutics, Inc. entered into the DPA (together, the "**DOJ Criminal Resolution**") in connection with the DOJ Criminal Actions.  Together, the DOJ Criminal Resolution resulted in an Insys subsidiary, Insys Pharma, Inc., being the entity to plead guilty to five counts of mail fraud, while the prosecution of parent company Insys Therapeutics, Inc. for the same five counts of mail fraud would be deferred.

19.      Pursuant to the Plea Agreement, Insys Pharma, Inc. pleaded guilty to five counts of mail fraud on June 7, 2019, which will result in mandatory exclusion for this Debtor entity only by the HHS-OIG.  Insys Pharma, Inc. admitted to implementing a scheme through its speaker program to bribe doctors to prescribe more Subsys, and the United States Attorney's Office for the District of Massachusetts agreed to recommend a sentence for Insys Pharma, Inc. to pay a total of $30 million (the "**Criminal Settlement Amounts**")[6] which would be due after sentencing, and not prior to the Petition Date.  The plea hearing to consider the Plea Agreement took place on June 7, 2019.  At the plea hearing, the United States District Court accepted the guilty plea by Insys Pharma, Inc. and set the sentencing date for July 10, 2019.  Although the court commonly accepts a recommended sentence, the court has discretion to impose a more lenient or harsher sentence.  If the court does not accept the recommended sentence, the plea agreement gives the company the right to appeal the sentence.

---

[6] The Criminal Settlement Amounts consist of a $2 million fine and $28 million in forfeiture.

8

20.     Pursuant to the DPA, the United States agreed to defer prosecution against Insys on the same criminal mail fraud actions as those to which Insys Pharma, Inc. pleaded guilty for a term of five years if Insys abides by the obligations of the DPA, including certain cooperation and compliance obligations. The DPA also explicitly requires Insys to comply with the terms of the CIA and the DOJ Prepetition Civil Settlement Agreement.

21.     Failure to enter into an agreement resolving the DOJ Criminal Actions would likely have resulted in the indictment of Insys by the United States.

**B.      The DOJ Civil Settlement**

22.     The DOJ Prepetition Civil Settlement Agreement releases the Debtors from the DOJ Civil Action and is intended to fix the Debtors' liability on account of the DOJ Civil Action. The Debtors' bankruptcy filing, however, prevents the Debtors from satisfying Insys' financial obligations under the DOJ Prepetition Civil Settlement Agreement and creates potential disputes between the Parties that the DOJ Stipulation resolves. Specifically, the DOJ Stipulation, approval of which is sought by this Motion, fixes the amount and priority of the DOJ's Allowed Claim in these Chapter 11 Cases on account of, and otherwise releases the Debtors from, the DOJ Civil Action and any claims related to the Covered Conduct or the DOJ Prepetition Civil Settlement Agreement, eliminates for potential purchasers of the Debtors' assets any successor transfer liability under the False Claims Act or based on the Covered Conduct or the DOJ Prepetition Civil Settlement Agreement, and releases claims against the United States relating to the DOJ Prepetition Civil Settlement Agreement, including the payments made thereunder. Each of these documents is described below in more detail.

RLF1 21395637V.1

1.  *The DOJ Prepetition Civil Settlement Agreement*[7]

23.    On June 5, 2019 Insys entered into the DOJ Prepetition Civil Settlement

Agreement, resolving the DOJ Civil Action through, among other things, settlement payments,

over time, to the United States and a release of certain claims of the United States against Insys.

Pursuant to the DOJ Prepetition Civil Settlement Agreement, the United States agreed to release

Insys and its affiliates for any civil or administrative monetary claim the United States has related

to the Covered Conduct under (a) the False Claims Act, (b) the Civil Monetary Penalties Law, (c)

the Program Fraud Civil Remedies Act, (d) any statutory provisions creating a cause of action for

civil damages or civil penalties for which the Civil Division of the DOJ has actual and present

authority to assert or compromise, and (e) the common law theories of payment by mistake, unjust

enrichment, and fraud, subject to certain conditions and exceptions set forth in the DOJ Prepetition

Civil Settlement Agreement.  One condition of such release is Insys' full payment of $195 million

as restitution (the "**Settlement Amount**").  On June 6, 2019, the Debtors made the first payment

required under the DOJ Prepetition Civil Settlement Agreement of $5 million (the "**Initial**

**Settlement Payment**") and have not made any other payments thereunder.  The DHA also agreed,

pursuant to the DOJ Prepetition Civil Settlement Agreement, that it would not seek to exclude

Insys from certain federal healthcare programs, subject to certain conditions, including satisfaction

of the Settlement Amount.[8]

24.    However, the DOJ Prepetition Civil Settlement Agreement provides that if

Insys' obligations under that agreement are avoided for any reason, among other things, the United

---

[7] Covington & Burling LLP represented Insys in negotiating the DOJ Prepetition Civil Settlement Agreement and the other documents that constitute the DOJ Settlement Arrangement.

[8] Any inadvertent conflict between this description and the actual terms of the DOJ Prepetition Civil Settlement Agreement is controlled by the DOJ Prepetition Civil Settlement Agreement.

States has an undisputed, non-contingent, liquidated allowed claim against Insys for treble damages under the False Claims Act in the amount of $600 million and penalties.  Further, once Insys fails to make a payment of the Settlement Amount as provided in the agreement, Insys shall be in default and the remaining unpaid balance shall become due and payable, and the United States has indicated that it will assert all of its rights, including a right to setoff such amounts.  The DOJ Prepetition Civil Settlement Agreement also provides that, upon default, the United States has the right to rescind the agreement and pursue the DOJ Civil Action and to charge interest.

25.     The DOJ Prepetition Civil Settlement Agreement was entered into in contemplation of the DOJ Criminal Resolution and resolution of the HHS-OIG Potential Action. The Recitals to the DOJ Prepetition Civil Settlement Agreement state that Insys Pharma, Inc. will enter the Plea Agreement and the DPA, described below.

26.     The DOJ Prepetition Civil Settlement Agreement was entered into with the expectation that the Parties would resolve any issues created by the Debtors' bankruptcy filing soon thereafter and enter into the DOJ Stipulation soon after the Petition Date.

*2. The DOJ Stipulation*

27.     On the date hereof, the Debtors and the United States entered into the DOJ Stipulation, which includes the following key provisions:

a.   **No Successor or Transferee FCA Liability for Covered Conduct.**   Provided a Purchaser is not a Related Entity,  any Purchaser and its affiliates and  their respective successors, assigns, members, partners, principals and shareholders (or equivalent) shall not be liable, responsible or obligated for the Covered Conduct . . . and the United States is barred from pursuing any civil and/or administrative claims, actions, or proceedings against the Purchaser for the Covered Conduct, or otherwise objecting to any 363 Sale based on the Covered Conduct, the [DOJ Prepetition Civil] Settlement Agreement with Insys, or for any other reason as a creditor solely with respect to the Allowed Claim (as defined below).  The United States will cooperate with the Debtors and each Purchaser to include language acceptable to the Parties giving effect to this paragraph in any proposed motion and order approving a 363 Sale.

11

b. **The United States Allowed Claim.** The United States shall have an undisputed, non-contingent, liquidated allowed unsecured claim in these cases in the amount of $243 million (the "**Allowed Claim**") against Insys based on the Covered Conduct included in the [DOJ Prepetition Civil] Settlement Agreement; *provided, however*, that upon the receipt by the United States of a recovery of $195 million on account of the Allowed Claim (including the Initial Settlement Payment), the United States shall release the remainder of its Allowed Claim. This Allowed Claim shall be treated as a prepetition general unsecured claim . . . The Allowed Claim shall be the sole remedy of the United States against Insys or its Debtor affiliates with respect to the claims and causes of action related to or arising from the Covered Conduct or the [DOJ Prepetition Civil] Settlement Agreement.

c. **Release of Causes of Actions**. The United States, on the one hand, and the Debtors, on the other hand, shall have no other claims or causes of actions, including but not limited to any causes of action under chapter 5 of the Bankruptcy Code, against each other under or relating to the [DOJ Prepetition Civil] Settlement Agreement or related to the Covered Conduct, and the United States shall retain the Initial Settlement Payment.

28.    Thus, the DOJ Stipulation effectively resolves any disputes that may arise under or from the DOJ Prepetition Civil Settlement Agreement and the DOJ Civil Action as related to the Covered Conduct, and provides the exclusive remedy for causes of action related to the DOJ Prepetition Civil Settlement Agreement and any breaches thereof.

29.    Specifically, the DOJ Stipulation fixes the United States' claim on account of the DOJ Civil Action and the DOJ Prepetition Civil Settlement Agreement as a non-priority general unsecured claim at $243 million (with a capped distribution of $195 million), an amount well below the $600 million liquidated damages claim provided for under the DOJ Prepetition Civil Settlement Agreement. Further, if the DOJ Stipulation is not approved by the Court, the United States has indicated to the Debtors that it reserves all rights to rescind the releases it provided for the Debtors under the DOJ Prepetition Civil Settlement Agreement and will file a claim for False Claims Act violations against the Debtors in an amount of no less than $744 million in treble damages, plus penalties.

12

30.     The DOJ Stipulation also enables the Debtors to pursue the sales of substantially all of their assets with comfort that the United States will not seek to impose upon purchasers any liability relating to the Covered Conduct or the DOJ Prepetition Civil Settlement Agreement.  This is important not only to ensure that the sales are approved without major litigation with the United States on this issue, but also that the Debtors are able to maximize value for these assets, as certain potential purchasers may not be interested in even bidding on the assets without clear advanced comfort on this issue.  This provides a major benefit to the Debtors' stakeholders in these Chapter 11 Cases, which the Debtors commenced in part to facilitate asset sales to Purchasers as a means to maximize the value of the estate.

31.     The effectiveness of the DOJ Stipulation is subject to the approval by this Court.  For the reasons set forth herein, the DOJ Stipulation represents a good faith compromise with the United States in light of the benefits to the Debtors and parties in interest in these Chapter 11 Cases and due to the significant complexity and cost attendant to defense of the DOJ Civil Action.  Accordingly, the Debtors request approval of the DOJ Stipulation and authority to enter into it.

## C.     The HHS-OIG Corporate Integrity Agreement

32.     On June 5, 2019 Insys entered into the CIA with the HHS-OIG.  Pursuant to the CIA, the HHS-OIG agreed not to exclude Insys Therapeutics, Inc. from participation in federal healthcare programs for five years if Insys complies with the terms of the CIA, including heightened monitoring and reporting obligations.  Moreover, the Debtors are required to take a number of other actions which include, among other things: (a) ceasing the marketing and promotion of Subsys within 90 days of the effective date of the CIA or the divestiture of Subsys, whichever occurs first, and (b) divesting Subsys and its buprenorphine candidate product to a *bona fide* independent third party within 12 months and to cease all business activities related to opioids

RLF1 21395637V.1

within 12 months.  While the monitoring and reporting obligations under the CIA are substantial, they are anticipated to be significantly lessened when the Debtors divest Subsys and their other assets.

## Relief Requested Should be Granted

33.     The Court has authority to approve the DOJ Stipulation pursuant to Bankruptcy Code section 105(a) and Bankruptcy Rule 9019.  Bankruptcy Code section 105(a) provides that, "[t]he court may issue an order, process or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).

34.     Settlements are generally favored and encouraged in bankruptcy proceedings.  *See, e.g.*, *Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d. Cir. 2006) (noting that "[s]ettlements are favored" in bankruptcy); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) ("'Compromises are favored in bankruptcy' . . . . Indeed, it is an unusual case in which there is not some litigation that is settled between the representative of the estate and an adverse party.") (citation omitted); *In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1113 (3d. Cir. 1979) ("[I]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.") (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

35.     The decision of whether to approve a particular settlement lies within the sound discretion of the bankruptcy court.  *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006).  In evaluating the settlement, the Court should consider "whether the compromise is fair, reasonable, and in the best interest of the estate."  *In re Wash. Mut., Inc.*, 442

14

B.R. 314, 327 (Bankr. D. Del. 2011) (quoting *In re Louise's Inc*., 211 B.R. 798, 801 (Bankr. D. Del. 1997)).  The Court should exercise its discretion "in light of the general public policy favoring settlements."  *In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 515 (Bankr. D. Del. 2010) (quoting *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998)).  The Court does not need to be convinced that the settlement is the best possible outcome for the parties, but only "that the settlement falls within a reasonable range of litigation possibilities."  *Wash. Mut.*, 442 B.R. at 328 (citing *In re Coram Healthcare Corp.*, 315 B.R., 321, 330 (Bankr. D. Del. 2004)).

36.     In determining whether a proposed settlement is fair, reasonable, and in the best interests of the estate, courts in this circuit consider the following four factors outlined in *Martin*: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  *See, e.g.*, *Martin*, 91 F.3d at 393; *Gendregske v. Black Diamond Commer. Fin., LLC (In re ASHINC, Corp.)*, 552 B.R. 80, 83 (D. Del. 2015); *In re Woodbridge Grp. of Cos., LLC*, 592 B.R. 761, 772 (Bankr. D. Del. 2018).

37.     The Court should approve the proposed DOJ Stipulation because it represents a fair and equitable compromise, falls well within the range of reasonableness, and satisfies each of the *Martin* factors, as described further below.  The DOJ Stipulation resolves what the United States has claimed is potentially over $1 billion dollars of liabilities of the Debtors without the need for further litigation and provides the Debtors the ability to maximize the value of their asset sales.  Approving the DOJ Stipulation allows the Debtors and the United States to resolve finally their disputes regarding the Covered Conduct, preserves the value of the Debtors' estates, and is in the best interests of creditors.

38.   <u>The Probability of Success in the Litigation</u>.  The Debtors submit that there exists a *bona fide* dispute as to the size and amount of the DOJ claims in the Chapter 11 Cases absent the DOJ Stipulation.  As stated above, the DOJ has informed the Debtors that absent the stipulation, it would assert claims of over $1 billion relating to the Covered Conduct.  Although the Debtors could dispute the size of the DOJ's claims, given that the Debtors admitted to the Covered Conduct, they may not prevail in such litigation.  As such, the Allowed Claim of $243 million (capped at a recovery of $195 million) is significantly less than the claim the DOJ would receive if it prevails in the litigation.

39.   In addition, absent approval of the DOJ Stipulation, the Debtors may be in breach of the DOJ Prepetition Civil Settlement Agreement.  As a result, Insys may be out of compliance with the DPA, without which Insys could potentially be indicted by the United States.

40.   <u>The Difficulties Associated With Collection</u>.  In connection with the DOJ Stipulation, the parties agree to release all claims against each other relating to the Covered Conduct and the Prepetition DOJ Civil Settlement Agreement, including claims that the Debtors could have brought to recover the Initial Settlement Payment pursuant to a chapter 5 cause of action.  The Debtors believe that their likelihood of prevailing in such an action and collecting against the DOJ is low because the Debtors received substantial value in connection with their payment of such amount, including the ability to enter into the CIA and resolve potential exclusion issues on very favorable terms.

41.   Moreover, as discussed, by giving up a claim in the DOJ Stipulation related to the Initial Settlement Payment, which claim would be relatively small even if successful (and is disputed by the United States), the Debtors are receiving substantial benefits that increase the

RLF1 21395637V.1

marketability and value of their assets and fix an Allowed Claim for one of their major potential liabilities.

42.    <u>The Complexity of the Litigation and the Attendant Expense, Inconvenience, and Delay</u>.    Entry into the DOJ Stipulation, particularly when considered in conjunction with the DOJ Prepetition Civil Settlement Agreement and the other government settlements, avoids protracted, complex, and expensive litigation with multiple government entities that would cost millions to defend and take up substantial time and focus of management and others whose time and devotion are needed to operate the Debtors' business and administer these Chapter 11 Cases.  Without the DOJ Civil Settlement, the Debtors would be forced to expend their dwindling liquidity on litigation and investigations with uncertain outcomes.  Engaging in litigation related to the DOJ Civil Action would also cause delay in the administration of these Chapter 11 Cases to the determine of all parties in interest.

43.    In addition to providing the means to fully and finally address claims related to the DOJ Civil Action in these Chapter 11 Cases, entering into the DOJ Stipulation allows the Debtors to resolve all issues related to the DOJ Prepetition Civil Settlement Agreement, without which the Debtors could foreseeably have been subjected to further investigations, adding another great inconvenience and burden for the Debtors.  Indeed, under the DOJ Stipulation, the United States reserves its rights to rescind the releases provided to the Debtors in the DOJ Prepetition Civil Settlement Agreement if the Court does not approve the DOJ Stipulation.

44.    Accordingly, absent approval of the DOJ Stipulation, the Debtors will be forced to navigate the complex issues and significant liability resulting from their breach of the DOJ Prepetition Civil Settlement Agreement that were triggered when the Debtors commenced these Chapter 11 Cases and became unable to fulfill certain obligations under the DOJ Prepetition

RLF1 21395637V.1

Civil Settlement Agreement.  Such exclusion could deter potential acquirers of the Debtors' assets and therefore hinder the Debtors' ability to maximize value for all stakeholders.  Further, in the event of a breach, the Company would be liable for a liquidated damages claim in the amount of $600 million or more if the government is successful in showing that its claims exceed $1 billion, a far worse deal for the estates than the Allowed Claim under the DOJ Stipulation.  Finally, a breach of the DOJ Civil Settlement could trigger a breach of the DPA, in which event the DOJ might indict Insys.   As the Debtors have continually stated in their SEC filings, without an agreement with the DOJ, the Company's liquidity, financial condition, and business prospects would be materially adversely affected.

45.    <u>The Paramount Interest of Creditors</u>.  The DOJ Stipulation fixes the DOJ's Allowed Claim on account of the DOJ Civil Action under the False Claims Act related to the Covered Conduct, and any liquidated damages under the DOJ Prepetition Civil Settlement Agreement, as a general unsecured claim at an amount that is much less than what is included in the DOJ Prepetition Civil Settlement Agreement.  By entering into the DOJ Stipulation, the Debtors will have significantly more funds available for their stakeholders than the Debtors otherwise would have in light of the greater than $1 billion claim to which the DOJ has asserted it may be entitled.  Moreover, by resolving the major issues raised by the DOJ Civil Action, the Debtors and their employees can focus on value maximization for all stakeholders, including through asset sales.

46.    The provisions of the DOJ Stipulation that address successor liability provide considerable benefits to the Debtors.  By supporting the position that no unrelated purchaser will be liable for the Covered Conduct, the DOJ Stipulation facilitates competitive bidding by addressing the potential deterrent of successor liability.  If the Debtors are unable to

conduct an effective sale process for their assets due to chilled demand from potential buyers concerned about successor liability, the Debtors' liquidity, financial condition, and business prospects will be materially and adversely affected.[9]   Therefore, precluding successor liability by entering into the DOJ Stipulation and the overall DOJ Settlement Arrangement allows the Debtors to achieve the goals the Debtors sought to achieve by commencing these Chapter 11 Cases—to maximize value while addressing legacy legal liabilities associated with certain marketed products.

47.     In general, the settlement with the DOJ relieves the Debtors from a huge burden and overhang on their business and value.   The Debtors have continually stated in public filings that one of the greatest risks for the Debtors' business would be the failure to reach a deal with the DOJ, or to reach a deal with unfair or extremely burdensome and costly terms for the Debtors.[10]

48.     Approval of the DOJ Stipulation facilitates the Debtors' resolution of the DOJ Civil Action and addresses a major contingency that had been hanging over the Debtors' business and hindering their efforts to maximizing value, and is in the best interests of the Debtors and their stakeholders.   Accordingly, the Debtors respectfully submit that entry in the DOJ Stipulation is appropriate and should be approved pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## Notice

49.     Notice of this Motion will be provided to (a) the Office of the United States Trustee for the District of Delaware (Attn:   Jane M. Leamy); (b) the holders of the thirty (30)

---

[9] See Insys Therapeutics, Inc. Quarterly Report (Form 10-Q) 14, 68–69 (May 13, 2019).

[10] See, e.g., Insys Therapeutics, Inc. Quarterly Report (Form 10-Q) 30–32 (May 13, 2019); Insys Therapeutics, Inc. Special Event (Form 8-K) 3 (May 10, 2019); Insys Therapeutics, Inc. Yearly Report (Form 10-K) 46, 77 (March 12, 2018).

largest unsecured claims against the Debtors on a consolidated basis; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Attorney's Office for the District of Delaware; (f) the DOJ; (g) the HHS-OIG; and (h) any other party entitled to notice pursuant to Bankruptcy Rule 2002 (the "**Notice Parties**").  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no further notice is required.

50.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: June 10, 2019
       Wilmington, Delaware

*/s/ Paul N. Heath*
RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Zachary Shapiro (No. 5103)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

*Proposed Attorneys for the Debtors
and Debtors in Possession*