## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

------------------------------------------------------x
:
In re                                           :          **Chapter 11**
:
**INSYS THERAPEUTICS, INC.,** *et al.,*          :          **Case No. 19-11292 (KG)**
:
Debtors.[1]                                     :          **Joint Administration Requested**
:
------------------------------------------------------x

### MOTION OF DEBTORS FOR ENTRY OF ORDERS (I)(A) APPROVING BIDDING PROCEDURES FOR SALE OF DEBTORS' ASSETS, (B) SCHEDULING AUCTION FOR AND HEARING TO APPROVE SALE OF DEBTORS' ASSETS, (C) APPROVING FORM AND MANNER OF NOTICE OF SALE, AUCTION, AND SALE HEARING, (D) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (E) GRANTING RELATED RELIEF; AND (II)(A) APPROVING SALE OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF

Insys Therapeutics, Inc. ("**Insys**") and its affiliated debtors in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

### Preliminary Statement

1.      The Debtors are facing extensive litigation relating to their SUBSYS® product ("**Subsys**"), which is a prescription opioid. The expenses and settlement costs resulting from such litigation have been substantial, consuming large portions of the Debtors' revenue and liquidity. As the same time, the Debtors' revenues from Subsys have been declining rapidly.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LLC (6577); and IPT 355, LLC (0155). The Debtors' mailing address is 1333 South Spectrum Blvd #100, Chandler, Arizona 85286.

Although the Debtors have promising products in the pipeline, those products are not yet approved for production, require significant additional investment to bring them to the market, and are not expected to generate revenue in the near term.  These factors have caused a substantial cash drain on the Debtors to the point where, despite the Debtors' best efforts, they risk running out of cash in 2019.

2.      The Debtors have developed a multi-faceted chapter 11 strategy to resolve their liabilities fairly and efficiently and achieve maximum value for their stakeholders, by seeking to increase the cash value of their estates, while preserving as much of that value as possible to pay claimants, rather than using it to fund unnecessary chapter 11 and other legal costs.

3.      To implement this strategy, by this Motion, the Debtors are seeking to solicit bids for, conduct an auction of (the "**Auction**"), and consummate the sale of (each, a "**Sale Transaction**") the Debtors' assets related to each of (i) Subsys, (ii) SYNDROS® ("**Syndros**") and other assets related to Cannabidiol Oral Solution, a synthetic cannabidiol ("**CBD**"), (iii) the Debtors' epinephrine nasal spray product candidate ("**Epinephrine**"), (iv) the Debtors' naloxone nasal spray product candidate ("**Naloxone**"), (v) the Debtors' buprenorphine sublingual spray ("**Buprenorphine,**" and collectively with assets related to Subsys, Syndros, CBD, Epinephrine, and Naloxone, the "**Assets**").

4.      Subsys and Syndros are the Debtors' two commercially marketed products. The Debtors are also developing other product candidates, including the CBD assets, Epinephrine, Naloxone, and others (collectively, the "**Pipeline Products**").

5.      To obtain the highest and best offer for the Assets, the Debtors have developed global bidding and auction procedures for the efficient marketing, auction and sale of the Assets (the "**Bidding Procedures**") in an orderly and value maximizing manner.  The Bidding

Procedures are intended to provide the Debtors with flexibility to solicit proposals, negotiate

transactions, hold auctions, and consummate transactions for the highest or best value, all for the

benefit of their creditors.

6.      The Debtors submit that the Bidding Procedures and the other relief

requested herein, if granted, will facilitate the sale of the Assets for the highest or otherwise best

value, preserve jobs for their dedicated employees, and maximize recoveries for their stakeholders.

**Relief Requested**

7.      By this Motion, pursuant to sections 105(a), 363, and 365 of title 11 of the

United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004, 6006, 9007, 9008, and 9014

of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rules 2002-

1, 6004-1, and 9006-1, the Debtors request approval of the following:

    a.  the "**Bidding Procedures Order**," substantially in the form attached hereto as **Exhibit A**,[2]

        (1)  authorizing and approving the Bidding Procedures substantially in the form attached to the Bidding Procedures Order as **Exhibit 1**, in connection with the sale of the Assets (each transaction, a "**Sale Transaction**");

        (2)  scheduling auction(s) of the Assets (the "**Auction**"), if applicable, to be held on August 2, 2019, or as otherwise scheduled in accordance with the Bidding Procedures;

        (3)  scheduling a hearing (the "**Sale Hearing**") to consider approval of the proposed Sale Transaction(s);

        (4)  authorizing and approving the form and manner of (i) notice of the sale of the Assets, Auction, and Sale Hearing, substantially in the form attached to the Bidding Procedures Order as **Exhibit 2** (the "**Sale Notice**"); and (ii) notice to each non-Debtor counterparty (each, a "**Counterparty**" and together, the "**Counterparties**") to a relevant executory contract or unexpired non-residential real

---

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Bidding Procedures Order, the Bidding Procedures, and/or the Long Declaration (as hereinafter defined), as applicable.

property lease of the Debtors (collectively, the "**Contracts and Leases**") regarding the Debtors' potential assumption and assignment of Contracts and Leases and the Debtors' calculation of the amount necessary to cure any monetary defaults under such Contracts and Leases (the "**Cure Costs**"), substantially in the form attached to the Bidding Procedures Order as **Exhibit 3** (the "**Assumption and Assignment Notice**");

(5)     authorizing and approving procedures for the assumption and assignment of Contracts and Leases (collectively, the "**Assumption and Assignment Procedures**"); and

(6)     granting related relief; and

b.     following entry of and compliance with the Bidding Procedures Order, one or more orders (each, a "**Sale Order**") authorizing and approving the following:

(1)     the sale of the Assets free and clear of all liens, claims, interests, and encumbrances, except certain permitted encumbrances as determined by the Debtors and any purchaser of the Assets, with liens, if any, to attach to the proceeds of the applicable Sale Transaction(s);

(2)     the assumption and assignment of proposed assumed Contracts and Leases (collectively, the "**Proposed Assumed Contracts**") in connection with the Sale Transaction(s); and

(3)     granting related relief.

8.     In support of the relief requested herein, the Debtors submit the Declaration of Andrew Yearley (the "**Yearley Declaration**"), filed contemporaneously herewith.

## Jurisdiction

9.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

RLF1 21397843V.1

10.    Pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Background

11.    On the date hereof (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

12.    Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

13.    Additional information regarding the circumstances leading to the commencement of these Chapter 11 Cases and the Debtors' businesses and capital structure is set forth in the *Declaration of Andrew G. Long in Support of the Debtors' Chapter 11 Petitions and First Day Relief*, filed on June 10, 2019 [ECF No. 11] (the "**Long Declaration**").

## Prepetition Marketing and Sale Process

14.    In November 2018, the Debtors announced that they had commenced a process to review strategic alternatives for their opioid-related assets, including Subsys, and had engaged JMP Securities LLC ("**JMP**") to serve as their investment banker in connection therewith. To implement their sale strategy, the Debtors and JMP identified and contacted a broad array of parties that potentially could have the interest and ability to consummate a potential sale or license of rights with respect to Subsys (the transaction, a "**Subsys Transaction**") on terms acceptable to

the Debtors.  JMP contacted eighty-three (83) parties, including potential strategic buyers and potential financial buyers.  Based on responses from those contacted entities, JMP provided interested parties with a confidential information memorandum containing information regarding the Debtors' Subsys Business, including related to financial and operational performance, and engaged in preliminary discussions with such parties. Of the contacted entities, four (4) expressed continued interest in pursuing a Subsys Transaction with the Debtors and were granted access to a data room containing additional confidential information regarding a potential Subsys Transaction. By the end of January 2019,  three (3) of the entities that had contacted the Debtors regarding a Subsys Transaction had also submitted written proposals regarding such a transaction, and a fourth had indicated that it intended to submit a written proposal in late April 2019.  The Debtors, in consultation with their advisors, engaged in several rounds of negotiations with the three (3) bidders that submitted written proposals to seek to negotiate terms that would be acceptable to the Debtors for a Subsys Transaction.

15.    In addition to a potential Subsys Transaction, in furtherance of their operational and financial goals, the Debtors continued to explore a comprehensive set of strategic alternatives to increase the Debtors' liquidity and maximize value for the Debtors and their stakeholders.  In connection therewith, in December 2019, the Debtors engaged Lazard to, among other things, explore opportunities to engage in a strategic partnership or financing transaction with respect to Syndros and some or all of the Pipeline Products.  In addition, in connection with the Debtors' assessment of the possible need to file for chapter 11 protection, the marketing efforts with respect to a Subsys Transaction, including the data room, were transitioned to Lazard in April 2019, and Lazard has continued to market Subsys and Syndros (the Subsys Transaction and marketing of Syndros and the Pipeline Products, collectively, the "**Sale Process**").

16.     As described in the Yearley Declaration (as defined herein), the Debtors and Lazard identified and contacted a broad array of parties that potentially could have the interest and ability to consummate transaction(s) with respect to some or all of the Pipeline Products on terms acceptable to the Debtors.   Lazard had contact with fifty-one (51) entities, including thirty-nine (39) potential strategic buyers and twelve (12) potential financial sources.  All of the entities were provided limited, public information to gauge interest and were given the opportunity to enter into a Non-Disclosure Agreement ("**NDA**").   Based on responses from those entities, as well as five (5) additional entities that emerged with interest, twenty-eight (28) parties executed NDAs, including twenty-two (22) strategic buyers and six (6) financial buyers.   Lazard provided those twenty-eight (28) parties with initial access to a virtual data room containing confidential information regarding the assets which they expressed interest in (i.e., Pipeline Products, as well as Syndros and Subsys).  This information included management presentation materials and marketing materials.  Of those parties, four (4) expressed interest in consummating a transaction with the Debtors and were granted access to a virtual data room containing additional confidential information regarding the Pipeline Products.

17.     By March 2019, the Debtors had received four (4) non-binding indications of interest for assets related to Epinephrine, Naloxone, or a combination of the two.  Based on the quality and structure of the proposals presented, three (3) parties were selected to continue to the second round of submissions.  Prior to the submission of these indications of interests, the Debtors' management held several management presentations regarding the Debtors' assets.  In addition, each of those parties conducted on-site visits in the Debtors' corporate offices in April 2019 to further their diligence, review the Debtors' ongoing correspondence with the Food and Drug Administration, and review the latest study data.   The Debtors offered each of the three (3)

interested parties the opportunity to conduct a site visit of the Debtors' manufacturing facility, and one (1) party ultimately conducted such a visit.  Further, each of the three (3) interest parties were granted access to a more expanded virtual data room.

18.     In April 2019, the Debtors received two (2) non-binding second-round bids for worldwide Naloxone and Epinephrine rights.  Both bidders were given a diligence tracker and additional materials.  The Debtors and their advisors have engaged in negotiations with one of these bidders regarding the terms of an asset purchase agreement.  Both of these parties have withdrawn their offers as of the time of the Petition Date.

19.     The marketing process for the Debtors' assets has been, and is expected to remain, robust and thorough.  Multiple bidders have expressed interest in, and intent to participate in an auction for the sale of, the Assets.  The Debtors believe that proceeding with a postpetition marketing and competitive bidding and auction process will result in the submission of offers for the Assets by new or existing bidders and maximize of the value of the Debtors' estates for their stakeholders.

## Bidding Procedures

### A.     Overview

20.     The Bidding Procedures are designed to promote a competitive and expedient sale process.  If approved, the Bidding Procedures will allow the Debtors to solicit and identify bids from potential buyers that constitute the highest or best offer for the Assets on a schedule that enables the Debtors to improve their liquidity position.

RLF1 21397843V.1

21.    As the Bidding Procedures are attached to the Bidding Procedures Order, they are not herein restated in their entirety.  Pursuant to Local Rule 6004-1(c), certain of the key terms of the Bidding Procedures are highlighted in the chart below.[3]

| MATERIAL TERMS OF THE BIDDING PROCEDURES | |
|---|---|
| **Provisions Governing Qualification of Bidders and Qualified Bids** Local Rule 6004-1(c)(i)(A)-(C) | **Bidder Qualifications are set forth in Part III of the Bidding Procedures.**<br><br>A.  **Due Diligence -** Execute confidentiality agreement with Debtors<br><br>B.  **Bid Deadline – July 23, 2019 at 4:00 p.m.** [prevailing Eastern Time]<br><br>C.  **Qualified Bid Requirements**<br><br>    1. Fully disclose legal identity of bidder and related parties participating in Auction.<br><br>    2. Purchase Price.<br>        • Identify Assets to be purchased, including any Contracts and Leases.<br>        • Identify the liabilities to be assumed.<br>        • Identify any transitional services, including the services required, and the timeline for the transitional services.<br>        • Set forth the purchase price of bid, including the cash purchase price and any non-cash consideration.<br>        • Set forth whether bid is conditioned on purchasing all Assets or whether the bid should be viewed as separate bids for different categories of Assets.<br><br>    3. Form of Consideration. Subject to the Debtors' discretion to consider such bids, a Qualified Bid may include non-cash consideration. A Qualified Bid must specify the amount and form of any contingent or non-cash consideration.<br><br>    4. Purchase Price. Bidders may submit Partial Bids for one or a combination of the Assets. The Debtors will determine whether such bids may qualify as Qualified Bids.<br><br>    5. Good Faith Deposit. A Qualified Bid must be accompanied by a "Good Faith Deposit" in the form of cash in an amount equal to the greater of (a) five percent (5%) of the net present value of the proposed purchase price and (b) $1 million.<br><br>    6. Proposed Asset Purchase Agreement. A Qualified Bid must constitute an irrevocable offer and be in the form of an asset purchase agreement (a "**Proposed APA**"), which Proposed APA must be marked to show any proposed amendments and modifications between the Form APA provided to Prospective Bidders and the Proposed APA.  If the Qualified Bid is for multiple categories of Assets, |

---

[3] To the extent that there is any inconsistency between the terms of the Bidding Procedures and the summary of such terms in this Motion, the terms of the Bidding Procedures shall control.

RLF1 21397843V.1

and the purchase of one category of Assets is not conditioned on purchasing other categories of Assets, the Qualified Bid may include more than one Proposed APA.

7. <u>Employee and Labor Terms</u>. If the bid contemplates a going-concern sale of the Assets, it must include a statement on whether or not the Prospective Bidder intends to offer employment to any of the Debtors' employees following a closing of the Sale Transaction(s).

8. <u>Financial Information</u>. A Qualified bid must include the following:

- Statement that Prospective Bidder is financially capable of consummating Sale Transaction(s) contemplated by Proposed APA.

- If applicable, information supporting Prospective Bidder's (or any other proposed affiliate assignee's) ability to comply with requirement to provide adequate assurance of future performance under Bankruptcy Code section 365(f)(2), including Prospective Bidder's financial wherewithal and willingness to perform under Proposed Assumed Contracts and any other Contracts and Leases that may later be designated by the Prospective Bidder (if named a Successful Bidder) for assumption and assignment in connection with a Sale.

- Sufficient evidence that Prospective Bidder has, or can obtain, financial wherewithal to consummate Sale Transaction(s) contemplated by Proposed APA in a timely manner.

9. <u>Representations and Warranties</u>.

- Statement that Prospective Bidder had opportunity to conduct all due diligence regarding the applicable Assets prior to submitting bid.

- Statement that Prospective Bidder relied solely upon its own due diligence in making its bid.

- Statement that Prospective Bidder has not engaged in collusion in submitting bid.

10. <u>Required Approvals</u>.

- If applicable, statement that Prospective Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 and pay any related fees.

- If applicable, explanation or evidence of Prospective Bidder's plan and ability to obtain all governmental and regulatory approvals to operate or own the Assets.

11. <u>Authorization</u>. A Qualified Bid must include evidence of corporate authorization with respect to the submission, execution, and delivery of a bid, participation in the Auction, and closing the Sale Transaction(s) contemplated by the applicable Proposed APA.

12. <u>Other Requirements</u>.

- The Prospective Bidder must agree to serve as a back-up bidder if such bidder's Qualified Bid is selected as the next highest or next best bid after the Successful Bid with respect to the applicable Assets.

- Bid must be binding, unconditional, and irrevocable until the first business day following the close of any Sale Transaction(s) with the Successful Bidder(s) for the applicable Assets.

- Bids must state and acknowledge that the Prospective Bidder shall not be entitled to any break-up fee, expense reimbursement, or other bid protection unless otherwise granted by the Debtors and approved by the Court.

- Waive any claim or right to assert any substantial contribution claim under section 503(b) of the Bankruptcy Code.

- Not contain any unsatisfied financing contingencies.

|  |  |
|---|---|
|  | • Include a covenant to cooperate with the Debtors to provide pertinent factual information regarding the Prospective Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements<br><br>• If necessary, be accompanied by any reasonable information requested by consumer privacy ombudsman, if one is appointed.<br><br>• Be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors;<br><br>• Include contact information for the specific person(s) the Debtors should contact in the event they have questions about the Prospective Bidder's bid; and<br><br>• Include a covenant to comply with the terms of the Bidding Procedures and the Bidding Procedures Order. |
| **Modification of Bidding and Auction Procedures** Local Rule 6004-1(c)(i)(D) | • The Debtors may, after consulting with the Consultation Parties, amend or waive the conditions precedent to being a Qualified Bidder at any time, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law (as reasonably determined in good faith by the Debtors in consultation with their outside legal counsel).  *See* Bidding Procedures section III(D).<br><br>• If the Debtors determine to extend the Bid Deadline for all Prospective Bidders for a particular Asset or Assets for all Prospective Bidders for such Assets, the Debtors will use commercially reasonable efforts to notify bidders whether their bids have qualified as Qualified Bids within two (2) business days after the newly-scheduled bid deadline.  *See* Bidding Procedures section IV.<br><br>• The Debtors reserve the right to work with any Prospective Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualified Bid. Without the prior written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Qualified Bid. *See* Bidding Procedures section IV.<br><br>• Part IX of the Bidding Procedures sets forth the Debtors' reservation of rights with respect to, among other things, modifying, waiving, or otherwise supplementing the terms and provisions of the Bidding Procedures, in each case, in their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law. |
| **Closing with Alternative Backup Bidders** Local Rule 6004-1(c)(i)(E) | • <u>Back-Up Bids</u>. Immediately prior to the conclusion of the Auction, the Debtors shall, in consultation with the Consultation Parties, (i) determine, consistent with these Bidding Procedures, which Qualified Bid is the next highest or next best Qualified Bid after any Successful Bid for the Assets (each such bid, a "Back-Up Bid"); and (ii) notify all Qualified Bidders at the Auction of the identity of the Back-Up Bidder(s) and the amount of the purchase price and other material terms of the Back-Up Bid(s).  The Back-Up Bid shall remain open and irrevocable until the Back-Up Termination Date.  If the Sale Transaction(s) with a Successful Bidder is terminated prior to the Back-Up Termination Date, the Back-Up Bidder shall be deemed the new Successful Bidder and shall be obligated to consummate the Back-Up Bid as if it were the Successful Bid at the Auction. *See* Bidding Procedures section V(C). |
| **Provisions Governing the Auction** Local Rule 6004-1(c)(ii) | **Part V of the Bidding Procedures sets forth the procedures governing the Auction:**<br><br>If only one Qualified Bid is received for any of the Assets from a Qualified Bidder and the Debtors determine, in their business judgment, to consummate a transaction for such Asset(s) with the Qualified Bidder, the Debtors may file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Claims Agent Website a notice indicating that the Auction for such Asset(s) has been cancelled and that the applicable Qualified Bidder is the Successful Bidder, and setting forth the date and time of the Sale Hearing for the Asset(s). |

The Auction, if any, will be conducted at the offices of Weil, Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New York 10153 on August 2, 2019, at 10:00 a.m. (prevailing Eastern Time), or at such other time and location as designated by the Debtors, after consulting with the Consultation Parties and providing notice to the Sale Notice Parties.  If held, the proceedings of the Auction will be transcribed.

A.  **Participants and Attendees.**
- Only Qualified Bidders eligible to participate in Auction.
- Qualified Bidders must appear at Auction, or through a duly authorized representative.
- Auction to be conducted openly and all creditors are permitted to attend, including the Consultation Parties and their professional advisors; provided that the Debtors may establish a reasonable limit on number of representatives and/or advisors that may appear.
- Qualified Bidder(s) must confirm on record that have not engaged in any collusion and that its Qualified Bid represents a binding, good faith, bona fide offer.

B.  **Auction Procedures**.
1.  Baseline Bids.  Bidding shall commence at the Adjusted Baseline Bid Value for each Asset.

2.  Minimum Overbid.  The Debtors shall announce at the outset of the Auction the minimum required increments for successive Qualified Bids.

3.  Highest or Best Offer. After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid that they believe to be the highest or best offer (or combination of offers) for the Assets.

## B.    Key Dates and Deadlines

22.    Consistent with the Debtors' need to consummate a sales of their Assets as quickly and efficiently as possible, the Debtors propose the following key dates and deadlines for the sale process:

| | |
|---|---|
| **July 2, 2019, at 10:00 a.m. (prevailing Eastern Time)** | Hearing to consider approval of Bidding Procedures and entry of Bidding Procedures Order |
| **July 9, 2019 at 4:00 p.m. (prevailing Eastern Time)** | Deadline for Debtors to provide Counterparties with (i) a list of the Proposed Assumed Contracts, and (ii) notice of proposed Cure Costs for Proposed Assumed Contracts |
| **July 23, 2019 at 4:00 p.m. (prevailing Eastern Time)** | Bid Deadline |
| **July 23, 2019 at 4:00 p.m. (prevailing Eastern Time)** | Deadline to object to the Debtors' proposed Cure Costs |
| **July 25, 2019 at 4:00 p.m. (prevailing Eastern Time)** | Deadline for Debtors to notify Prospective Bidders of their status as Qualified Bidders |
| **August 2, 2019 at 10:00 a.m. (prevailing Eastern Time)** | Auction to be held at offices of Weil, Gotshal & Manges LLP (if necessary) |
| **August 6, 2019 at 4:00 p.m. (prevailing Eastern Time)** | Deadline for Debtors to (i) file with the Bankruptcy Court the Notice of Auction Results and the Notice of Designation, (ii) provide Counterparties with Adequate Assurance Information for the Successful Bidder(s) (or  proposed affiliate assignees, if |

| | |
|---|---|
| | applicable), and (iii) provide notice to Counterparties of any Proposed Assumed Contracts designated by a Successful Bidder for assumption and assignment. |
| **August 13, 2019 at 4:00 p.m. (prevailing Eastern Time)** | Deadline to object to (i) conduct of the Auction, (ii) the proposed Sale Transaction(s) to the Successful Bidder(s), and (iii) the ability of the Successful Bidder(s) to provide adequate assurance of future performance, or the proposed form of adequate assurance of future performance, with respect to the assumption and assignment of any Proposed Assumed Contracts. |
| **August 19, 2019 at 10:00 a.m. (prevailing Eastern Time)** | Date of Sale Hearing to consider approval of Sale Transaction(s) |

## C.    Noticing Procedures

23.    The Bidding Procedures provide for procedures with regards to noticing (the "**Noticing Procedures**"), including:

    a.    **Sale Notice**.  Within five (5) business days after entry of the Bidding Procedures Order, the Debtors will file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Claims Agent Website,[4] the Sale Notice, which will set forth (i) a description of the Assets for sale; (ii) the date, time, and place of the (a) Auction and (b) Sale Hearing; (iii) the deadlines and procedures for objecting to the proposed Sale Transaction(s).

    b.    **Publication Notice**.  Within five (5) business days after entry of the Bidding Procedures Order, the Debtors will cause the information contained in the Sale Notice to be published once in the national edition of the *New York Times* and once in *The Arizona Republic*.

    c.    **Selection of Qualified Bids**.  The Debtors will make a determination regarding which bids qualify as a Qualified Bid, and will notify Prospective Bidders whether they have been selected as Qualified Bidders by no later than July 25, 2019; provided that, if the Debtors determine to extend the Bid Deadline for all Prospective Bidders for a particular Asset or Assets for all Prospective Bidders for such Assets, the Debtors will use commercially reasonable efforts to notify Prospective Bidders whether their bids have qualified as Qualified Bids within two (2) business days after the newly-scheduled bid deadline.

    d.    **Notice of Hearing if Auction Not Held**.  If only one Qualified Bid is received for any of the Assets from a Qualified Bidder and the Debtors determine, in their business judgment, to consummate a transaction for such Asset(s) with the Qualified Bidder, the Debtors may file with the

---

[4] The Debtors' claims and noticing agent in these chapter 11 cases, Epiq Corporate Restructuring, LLC, maintains the website located at https://dm.epiq11.com/Insys (the "**Claims Agent Website**").

Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Claims Agent Website a notice (the "**Notice of Hearing and Designation**"), which shall (i) indicate that the Auction for such Asset(s) has been cancelled, (ii) indicate that the applicable Qualified Bidder is the Successful Bidder, and that the Qualified Bid is the Successful Bid, for such Asset(s), (iii) set forth the date and time of the Sale Hearing for the Asset(s), (iv) list all Proposed Assumed Contracts in the Successful Bid; (v) identify any known proposed affiliate assignee(s) of Proposed Assumed Contracts (if different from the applicable Successful Bidder); and (vi) and set forth the deadline and procedures for filing Adequate Assurance Objections (as hereinafter defined) in response to the Notice of Hearing and Designation, which shall generally provide for a similar period of time to those set forth herein.

e. **Notice of Auction Results**. The Debtors will use commercially reasonable efforts to, within two (2) business days after the conclusion of the Auction(s), or as soon as reasonably practicable thereafter, file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Claims Agent Website, a notice of the results of the Auction (the "**Notice of Auction Results**"), which shall (i) identify the Successful Bidders and Back-Up Bidders; (ii) include the Notice of Designation (as hereinafter defined); (iii) include the Adequate Assurance Information (as hereinafter defined); (iv) identify any known proposed affiliate assignee(s) of Proposed Assumed Contracts (if different from the applicable Successful Bidder); and (v) set forth the deadline and procedures for filing Adequate Assurance Objections (as hereinafter defined) in response to the Notice of Auction Results.

24.     The Noticing Procedures constitute adequate and reasonable notice of the key dates and deadlines for the sale process, including, among other things, the deadline to object to the proposed Sale Transaction(s), the Bid Deadline, and the date, time and location of the Auction and Sale Hearing. Accordingly, the Debtors request that the Court find that the Noticing Procedures are adequate and appropriate under the circumstances, and comply with the requirements of Bankruptcy Rule 2002 and Local Rule 2002-1.

**<u>Assumption and Assignment Procedures</u>**

25.     The Assumption and Assignment Notice is reasonable, fair, and appropriate and contains the type of information required under Bankruptcy Rule 2002 and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules,

RLF1 21397843V.1

and no other or further notice of the Debtors' proposed Cure Costs or the proposed assumption and assignment of Contracts and Leases shall be required if the Debtors file and serve such notice (and, subsequently, the Notice of Auction Results, the Notice of Designation, and, if applicable, the Notice of Hearing and Designation) in accordance with the Assumption and Assignment Procedures and this Order.

26.    The Debtors shall use commercially reasonable efforts, within five (5) business days after entry of the Bidding Procedures Order, to file with the Court, serve on the Sale Notice Parties, including each applicable Counterparty to a Contract or Lease, and cause to be published on the Claims Agent Website, the Assumption and Assignment Notice, which shall (i) identify all Contracts or Leases that may be designated for assumption and assignment to the Successful Bidder(s) (such Contracts and Leases, the "**Proposed Assumed Contracts**"); (ii) list the Debtors' good faith calculation of the Cure Costs with respect to each Proposed Assumed Contract (and if no cure cost is estimated to be applicable with respect to any particular Contract or Lease, the amount of such Cure Cost designated for such Proposed Assumed Contract shall be "$0.00"); (iii) expressly state that assumption or assignment of a Contract or Lease is not guaranteed and is subject to Court approval; (iv) prominently display the deadline to file a Cure Objection; and (v) prominently display the date, time, and location of the Sale Hearing.

27.    The Debtors may, until two (2) calendar days prior to the Auction, add Contracts and Leases to the Assumption and Assignment Notice and the Proposed Assumed Contracts, by filing and serving upon the Counterparties to such Contracts and Leases a supplemental Assumption and Assignment Notice (each, a "**Supplemental Assumption and Assignment Notice**"), which will be deemed to update any previously filed Assumption and Assignment Notices.

28.     The Debtors shall include with the Notice of Auction Results a notice of designation (the "**Notice of Designation**"), listing the Proposed Assumed Contracts designated for assumption and assignment by any Successful Bidder(s) with respect to the Proposed Assumed Contracts listed as purchased assets in the applicable Successful Bid(s).

29.     If only one Qualified Bid is received for any of the Assets from a Qualified Bidder and the Debtors determine, in their business judgment, to consummate a transaction for such Asset(s) with the Qualified Bidder, and the Debtors file with the Bankruptcy Court a Notice of Hearing and Designation,  the Debtors shall include with the Notice of Hearing and Designation a list of the Proposed Assumed Contracts designated for assumption and assignment by any Successful Bidder identified in the Notice of Hearing and Designation, with respect to the Proposed Assumed Contracts listed as purchased assets in the applicable Successful Bid.

30.     Any Counterparty that wishes to object to the Debtors' calculation of the Cure Costs with respect to the proposed assumption and assignment of the Counterparty's Contract or Lease, must file with the Court and serve on the Objection Recipients a written objection (a "**Cure Objection**") that (i) identifies the applicable Contract or Lease; (ii) states, with specificity, the legal and factual bases thereof, including the cure amount the Counterparty believes is required to cure defaults under the relevant Contract or Lease; and (iii) includes any appropriate documentation in support thereof, by no later than **July 23, 2019 at 4:00 p.m. (prevailing Eastern Time)**; provided that any Cure Objection with respect to a Proposed Assumed Contract identified on a Supplemental Assumption and Assignment Notice must be filed with the Court and served on the Objection Recipients by no later than fourteen days after the filing and service of such Supplemental Assumption and Assignment Notice.

31.     If a timely Cure Objection is not resolved by the parties prior to the commencement of the Sale Hearing, the amount to be paid or reserved with respect to such objection shall be determined by the Court at the Sale Hearing; provided that, a Cure Objection may, at the Debtors' option, after consulting with the applicable Successful Bidder(s), be adjourned (an "**Adjourned Cure Objection**") to a subsequent hearing; provided that the parties first shall use commercially reasonable, good faith efforts to resolve such objection without further Court intervention.  An Adjourned Cure Objection may be resolved after the closing date of the Sale Transaction(s) in the Debtors' discretion.

32.     If a Counterparty fails to file with the Court and serve on the Objection Recipients a timely Cure Objection, the Counterparty shall be forever barred from asserting any objection with regard to the cost to cure any defaults under the applicable Contract or Lease and any proof of claim asserting a claim for such amount shall be expunged without further order of the Court.  The Cure Costs set forth in the Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Contract or Lease under Bankruptcy Code section 365(b), notwithstanding anything to the contrary in the Contract or Lease, or any other document, and the Counterparty shall be forever barred from asserting any additional cure or other amounts with respect  to such Contract or Lease through the date of assumption and assignment, whether in a proof of claim or otherwise, against the Debtors, the Successful Bidder(s), or their property.

33.     In accordance with the Bidding Procedures, to qualify as a Qualified Bidder, each Prospective Bidder shall provide with its bid information supporting the Prospective Bidder's (or any other proposed assignee's) ability to comply with the requirement to provide adequate assurance of future performance under Bankruptcy Code section 365(f)(2)(B), including the

Prospective Bidder's financial wherewithal and willingness to perform under the applicable Proposed Assumed Contracts it seeks to purchase and any other Contracts or Leases that may later be designated by the Prospective Bidder (if named a Successful Bidder) for assumption and assignment in connection with the Sale Transaction(s) (such information, "**Adequate Assurance Information**").

34.     To the extent Adequate Assurance Information includes non-public information, it shall be provided to affected Counterparties on a strictly confidential basis. The Assumption and Assignment Notice shall include instructions for requesting and obtaining such non-public Adequate Assurance Information on a strictly confidential basis. Counterparties shall not use any Adequate Assurance Information for any purpose other than to (i) evaluate whether adequate assurance requirements under Bankruptcy Code section 365(f)(2), have been satisfied; and (ii) support any Adequate Assurance Objection filed by the Counterparty.

35.     The Debtors shall use commercially reasonable efforts, within two (2) business days after the conclusion of the Auction, to file with the Bankruptcy Court, serve on the Sale Notice Parties, and cause to be published on the Claims Agent Website the Notice of Auction Results, which Notice of Auction Results shall (i) identify the Successful Bidder(s) and Back-Up Bidder(s); (ii) include the Notice of Designation; (iii) include Adequate Assurance Information for the Successful Bidder(s); (iv) identify any known proposed assignee(s) of Proposed Assumed Contracts (if different from the applicable Successful Bidder(s)); and (v) set forth the deadline and procedures for filing Adequate Assurance Objections (as defined in the Bidding Procedures) in response to the Notice of Auction Results.

36.     Any Counterparty that wishes to object to the proposed assumption or assignment of its Contract or Lease, the subject of which objection is a Successful Bidder's

(a) ability to provide adequate assurance of future performance or (b) the proposed form of adequate assurance of future performance with respect to such Contract or Lease  (an "**Adequate Assurance Objection**"), shall file with the Court and serve on the Objection Recipients, including the Successful Bidder, its Adequate Assurance Objection, which must (i) be in writing; (ii) identify the applicable Contract or Lease; (iii) state, with specificity, the legal and factual bases for the Adequate Assurance Objection; and (iv) include any appropriate documentation in support thereof by no later than **at 4:00 p.m. (prevailing Eastern Time)** on a date that is fourteen (14) calendar days after the filing and service of the later of (1) the Notice of Auction Results, if an Auction was held and if the Adequate Assurance Objection is with respect to the assumption and assignment to a Successful Bidder (including its known proposed assignee) of any Proposed Assumed Contract, (2) a Notice of Hearing and Designation, as applicable, or (3) a Supplemental Assumption and Assignment Notice.

37.    If a timely Adequate Assurance Objection is not resolved by the parties prior to the Sale Hearing, such objection and all issues of adequate assurance of future performance shall be determined by the Court at the Sale Hearing or at a later hearing on a date to be scheduled by the Debtors in their discretion.

38.    If a Counterparty fails to file with the Court and serve on the Objection Recipients a timely Adequate Assurance Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the relevant Contract or Lease.  The Successful Bidder(s) shall be deemed to have provided adequate assurance of future performance with respect to the applicable Contract or Lease in accordance with Bankruptcy Code section 365(f)(2)(B), notwithstanding anything to the contrary in the Contract or Lease or any other document.

39.     The Debtors' assumption and assignment of a Proposed Assumed Contract to the Successful Bidder(s) is subject to Court approval and consummation of the Sale Transaction(s) with the Successful Bidder(s).    Accordingly, absent the closing of the Sale Transaction(s), the Proposed Assumed Contracts shall not be deemed either assumed or assumed and assigned and shall, in all respects, be subject to further administration under the Bankruptcy Code.

40.     The inclusion of a Contract, Lease, or Cure Costs with respect thereto on an Assumption and Assignment Notice, a Supplemental Assumption and Assignment Notice, the Notice of Auction Results, or a Notice of Hearing and Designation, if applicable, shall not constitute or be deemed a determination or admission by the Debtors, the Successful Bidder(s), or any other party in interest that such Contract or Lease is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code.    The Debtors reserve all of their rights, claims, and causes of action with respect to each Contract and Lease listed on an Assumption and Assignment Notice, a Supplemental Assumption and Assignment Notice, a Notice of Hearing and Designation, or the Notice of Designation.    The Debtors' inclusion of any Contract or Lease on any such notice shall not be a guarantee that such Contract or Lease ultimately will be assumed or assumed and assigned.

### Approval of the Relief Requested Is Warranted and in the Best Interests of the Debtors and their Stakeholders

**A.      Bidding Procedures**

41.     The Bidding Procedures are specifically designed to promote what courts have deemed to be the paramount goal of any proposed sale of property of a debtor's estate: maximizing the value of sale proceeds received by the estate.    *See Burtch et al. v. Ganz, et al. (In re Mushroom Co.)*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that debtor had fiduciary duty to

maximize and protect value of estate's assets); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65

(8th Cir. 1997) (recognizing that main goal of any proposed sale of property of a debtor's estate is

to maximize value).  Courts uniformly recognize that procedures established for the purpose of

enhancing competitive bidding are consistent with the fundamental goal of maximizing value of a

debtor's estate.  *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy,*

*Inc.),* 181 F.3d 527, 537 (3d Cir. 1999) (noting that bidding procedures that promote competitive

bidding provide a benefit to a debtor's estate); *Official Comm. of Subordinated Bondholders v.*

*Integrated Res. Inc. (In re Integrated Res. Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (observing

that sale procedures "encourage bidding and . . . maximize the value of the debtor's assets").

42.     The Bidding Procedures provide for an orderly, uniform, and appropriately

competitive process through which interested parties may submit offers to purchase the Assets.

Given the time constraints, the Debtors, with the assistance of their advisors, have structured the

Bidding Procedures to promote active bidding by interested parties, and to confirm the best or

highest offer reasonably available for the Assets.  Additionally, the Bidding Procedures will allow

the Debtors to conduct the Auction in a fair and transparent manner that will encourage

participation by financially capable bidders with demonstrated ability to consummate a timely Sale

Transaction(s).  Accordingly, the Bidding Procedures should be approved, because, under the

circumstances, they are reasonable, appropriate, and in the best interests of the Debtors, their

estates, and all parties in interest.

**B.     The Proposed Sale Transaction(s) Should Be Approved as an Exercise of the**
**Debtors' Sound Business Judgment**

43.     Ample authority exists for approval of the Sale Transaction(s) contemplated

by this Motion.  Section 363 of the Bankruptcy Code provides, in relevant part, "The trustee, after

notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property

of the estate." 11 U.S.C. § 363(b)(1).  Although Bankruptcy Code section 363 does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, courts routinely authorize a sale of a debtor's assets if such sale is based upon the sound business judgment of the debtor.  *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513 (7th Cir. 1991)); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986); *Committee of Equity Security Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1071 (2d Cir. 1983).

44.    Courts typically consider the following factors in determining whether a proposed sale satisfies this standard:  (i) whether a sound business justification exists for the sale; (ii) whether adequate and reasonable notice of the sale was provided to interested parties; (iii) whether the sale will produce a fair and reasonable price for the property; and (iv) whether the parties have acted in good faith.  *See In re Decora Indus., Inc.*, Case No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)).  Where a debtor demonstrates a valid business justification for a decision, it is presumed that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. at 656 (quoting *Van Gorkom*, 488 A.2d at 872.).

    a.    **The Debtors Have Demonstrated a Sound Business Justification for the Proposed Sale Transaction(s)**

45.    A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to preserve the value of the estate for the benefit of creditors and interest holders. *See, e.g., In re Abbotts Dairies of Pa., Inc.*, 788

F.2d 143 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d at 1063; *see also In re Food Barn Stores, Inc.*, 107 F.3d at 564-65 (recognizing that paramount goal of any proposed sale of property of estate is to maximize value).

46.     As set forth above and in the Long Declaration and the Yearley Declaration, a strong business justification exists for the sale of the Debtors' Assets.  An orderly but expeditious sale of the Assets is critical to both provide the Debtors with sufficient liquidity to enable the Debtors to reorganize in chapter 11, and to maximize recoveries for the Debtors' economic stakeholders.

        **b.**     ***The Noticing Procedures Are Reasonable and Appropriate***

47.     The Noticing Procedures described above are reasonably calculated to provide all of the Debtors' known creditors and all other parties in interest with adequate, timely notice of, among other things, the Sale, Bidding Procedures, Auction, and Sale Hearing.

        **c.**     ***The Proposed Sale Transaction(s) Will Produce a Fair and Reasonable Purchase Price for the Assets***

48.     As set forth above, the Debtors believe that the Sale Transaction(s) will produce fair and reasonable purchase prices for the Assets, and that the sale process will culminate in the Debtors' obtaining the highest or best value for the Assets.

49.     In addition, the Bidding Procedures were carefully designed to facilitate a robust and competitive bidding process. The Debtors are poised to capitalize on the momentum from the prepetition phase of their sale process to maximize the value of Assets sold at the Auction. The Bidding Procedures provide an appropriate framework for the Debtors to review, analyze, and compare all bids received to determine which bids for which Assets are in the best interests of the Debtors' estates and their economic stakeholders.  Sale Transaction(s) governed by the Bidding Procedures undoubtedly will serve the important objectives of obtaining not only a fair and

reasonable purchase price for the Assets, but also the highest or best value for the Assets, which will inure to the benefit of all parties in interest in these chapter 11 cases.

        **d.**    ***The Bidding Procedures Ensure that the Proposed Sale Transaction(s) Will Be Consummated in Good Faith***

50.     Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from a debtor notwithstanding that the sale conducted under section 363(b) is later reversed or modified on appeal.  Specifically, section 363(m) states the following:

> The reversal or modification on appeal of an authorization under [section 363(b)] … does not affect the validity of a sale … to an entity that purchased … such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale … were stayed pending appeal.

11 U.S.C. § 363(m).  Section 363(m) fosters the "'policy of not only affording finality to the judgment of the [B]ankruptcy [C]ourt, but particularly to give finality to those orders and judgments upon which third parties rely.'"  *Reloeb Co. v. LTV Corp* (*In re Chateaugay Corp*., No. 92 Civ. 7054 (PKL), 1993 U.S. Dist. Lexis 6130, at *9 (S.D.N.Y. May 10, 1993) (quoting *In re Abbotts Dairies of Pa., Inc*., 788 F.2d 143, 147 3d Cir. 1986).  *See also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal").

51.     As set forth above, the Bidding Procedures are designed to produce a fair and transparent competitive bidding process. Any asset purchase agreement with a Successful Bidder executed by the Debtors will be negotiated at arms' length and in good faith.  Accordingly, the Debtors seek a finding that any Successful Bidder is a good faith purchaser and is entitled to the full protections afforded by section 363(m) of the Bankruptcy Code.

52.     Based on the foregoing, the Debtors have demonstrated that the proposed Sale Transaction(s) are a sound exercise of the Debtors' business judgment and should be approved.

**C.     Sale Free and Clear of Liens, Claims, Interests, and Encumbrances**

53.     In the interest of attracting the best offers, the Assets should be sold free and clear of any and all liens, claims, interests, and other encumbrances, in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, interests, and encumbrances to attach to the proceeds of the applicable sale.  Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances if any one of the following conditions is satisfied:

a.      applicable non-bankruptcy law permits sale of such property free and clear of such interest;

b.      such entity consents;

c.      such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

d.      such interest is in bona fide dispute; or

e.      such entity could be compelled, in legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *see also In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."); *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same).

54.     The Debtors submit that the sale of the Assets free and clear of liens, claims, interests, and encumbrances, including free and clear of the various government and private litigation claims that led to the commencement of these Chapter 11 Cases, will satisfy one or more

of the requirements under section 363(f) of the Bankruptcy Code and, to the extent necessary, will demonstrate as much at the Sale Hearing.  Accordingly, the Debtors request that the Court authorize the sale of the Assets free and clear of any liens, claims, interests, and encumbrances, in accordance with section 363(f) of the Bankruptcy Code.

### D.    Assumption of Contracts

55.    Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  Courts employ the business judgment standard in determining whether to approve a debtor's decision to assume or reject an executory contract or unexpired lease.  *See, e.g., In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (assumption or rejection of lease "will be a matter of business judgment by the bankruptcy court"); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding that debtor's decision to assume or reject executory contract is governed by business judgment standard and may only be overturned if decision is product of bad faith, whim, or caprice).  The "business judgment" test in this context only requires that a debtor demonstrate that assumption or rejection of an executory contract or unexpired lease benefits the estate.  *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989).

56.    Any assumption of Proposed Assumed Contracts is an exercise of the Debtors' sound business judgment because the transfer of such Contracts or Leases is necessary to the Debtors' ability to obtain the best value for their Assets.  The assumption and assignment of Proposed Assumed Contracts may be required by the Successful Bidder(s). Given that consummation of the Sale Transaction(s) is critical to the Debtors' efforts to maximize value for their estates and stakeholders, the Debtors' assumption of Proposed Assumed Contracts is an exercise of sound business judgment and should be approved.

26

a.      *The Debtors' Assumption of Contracts and Leases Will Satisfy the
Requirements under Bankruptcy Code Section 365*

57.      The consummation of any Sale Transaction(s) involving the assignment of
a Proposed Assumed Contract will be contingent upon the Debtors' compliance with the applicable
requirements of section 365 of the Bankruptcy Code.   Section 365(b)(1) requires that any
outstanding defaults under the Contracts and Leases to be assumed be cured or that the Debtors
provide adequate assurance that such defaults will be promptly cured.   The Debtors' assumption
and assignment of Proposed Assumed Contracts will be contingent upon payment or reserve of
Cure Costs and effective only upon the closing of an applicable Sale Transaction(s).   As set forth
above, the Debtors propose to file with the Court and serve on each Counterparty an Assumption
and Assignment Notice, which will set forth the Debtors' good faith calculations of Cure Costs
with respect to each Contract and Lease listed on such notice.   Counterparties shall have the
opportunity to object to the proposed assumption of their respective Contracts and Leases in
advance of the Sale Hearing.

58.      Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign
an executory contract if "adequate assurance of future performance by the assignee of such contract
or lease is provided."   11 U.S.C. § 365(f)(2).   The meaning of "adequate assurance of future
performance" depends on the facts and circumstances of each case, but should be given "practical,
pragmatic construction."   *See Carlisle Homes, Inc. v. Azzari* (*In re Carlisle Homes, Inc.*), 103 B.R.
524, 538 (Bankr. D.N.J. 1988) (citation omitted); *see also In re Natco Indus., Inc.*, 54 B.R. 436,
440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute
assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R.
789, 803 (Bankr. N.D. Ill. 1985) ("[a]lthough no single solution will satisfy every case, the required
assurance will fall considerably short of an absolute guarantee of performance.").   Among other

27

things, adequate assurance may be provided by evidencing the assignee's financial health and experience in managing the type of enterprise or property assigned. *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease has financial resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding; in the leasing context, chief determinant of adequate assurance is whether rent will be paid).

59.     As set forth above and in the Bidding Procedures, for a bid to qualify as a "Qualified Bid," a Prospective Bidder must include with its bid Adequate Assurance Information regarding its ability (and the ability of its designated assignee, if applicable) to perform under applicable Proposed Assumed Contracts.   The Debtors will provide Adequate Assurance Information to all Counterparties to Proposed Assumed Contracts and, upon reasonable request, furnish additional adequate assurance information to Counterparties. Counterparties will have an opportunity to file with the Court and serve on the Objection Recipients Adequate Assurance Objections in advance of the Sale Hearing.  Based on the foregoing, the Debtors' assumption and assignment of the Proposed Assumed Contracts satisfy the requirements under section 365 of the Bankruptcy Code and should be approved.

60.     In addition, to facilitate the assumption and assignment of Proposed Assumed Contracts, the Debtors further request that the Court find that all anti-assignment provisions therein, whether such provisions expressly prohibit or have the effect of restricting or limiting assignment of such contract or lease, to be unenforceable and prohibited pursuant to section 365(f) of the Bankruptcy Code.[5]

---

[5] Section 365(f)(1) provides in part that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease…"   11 U.S.C. § 365(f)(1).   Section 365(f)(3) further provides that "Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that

## Waiver of Bankruptcy Rules 6004(a), (h), and 6006(d)

61.     To implement the foregoing successfully, the Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to under Bankruptcy Rules 6004(h) and 6006(d).  In light of the Debtors' current financial condition, the Sale Transaction(s) contemplated herein should be consummated as soon as practicable to allow the Debtors to maximize value for their estates and creditors, and to preserve as many jobs as possible for their hard-working employees. Accordingly, the Debtors represent that ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the Debtors request that the Sale Order and any order authorizing the assumption or assumption and assignment of a Proposed Assumed Contract in connection with a Sale Transaction be effective immediately upon entry and that the fourteen-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) be waived, to the extent such notice requirements and stay apply.

## Reservation of Rights

62.     Nothing contained herein is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a waiver of any claims or causes of action that may exist against any creditor or interest holder; or (d) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made

---

terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee."  11 U.S.C. § 365(f)(3).

29

RLF1 21397843V.1

pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### Notice

63.     Notice of this Motion will be provided to (a) the Office of the United States Trustee for the District of Delaware (Attn: Jane M. Leamy, Esq., J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, DE 19801); (b) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Attorney's Office for the District of Delaware; (f) the Department of Justice; (g) all persons and entities known by the Debtors to have expressed an interest to the Debtors in a transaction involving any material portion of the Assets during the past twelve (12) months, including any person or entity that has submitted a bid for any material portion of the Assets; and (h) any other party entitled to notice pursuant to Bankruptcy Rule 2002 (the "**Notice Parties**").  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no further notice is required.

64.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

RLF1 21397843V.1

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: June 10, 2019
        Wilmington, Delaware

/s/ *Zachary I. Shapiro*
RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Zachary I. Shapiro (No. 5103)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

WEIL, GOTSHAL & MANGES LLP
Gary T. Holtzer (pro hac vice pending)
Ronit J. Berkovich (pro hac vice pending)
Candace M. Arthur (pro hac vice pending)
Olga F. Peshko (pro hac vice pending)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Proposed Attorneys for the Debtors*
*and Debtors in Possession*

RLF1 21397843V.1