**Exhibit 1**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

-----------------------------------------------------x
                         :

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **INSYS THERAPEUTICS, INC.,** *et al.,* | : | **Case No. 19-11292 (KG)** |
| | : | |
| Debtors.[1] | : | **Joint Administration Requested** |
| | : | |

-----------------------------------------------------x

**MOTION OF DEBTORS FOR (I) ENTRY OF ORDERS PURSUANT TO**
**11 U.S.C. §§ 105(a) AND 502(c) (A) ESTABLISHING PROCEDURES AND SCHEDULE**
**FOR ESTIMATION PROCEEDINGS AND (B) ESTIMATING DEBTORS'**
**AGGREGATE LIABILITY FOR CERTAIN CATEGORIES OF**
**CLAIMS, (II) ENTRY OF PROTECTIVE ORDER, AND**
**(III) SUBORDINATION OF CERTAIN PENALTY CLAIMS**

Insys Therapeutics, Inc. ("**Insys**") and its affiliated debtors in the above-captioned

chapter 11 cases (the "**Chapter 11 Cases**"), as debtors and debtors in possession (collectively,

the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

**Preliminary Statement**

1.       The Debtors commenced these chapter 11 cases with the simple of goal of

resolving their mounting and varied unliquidated litigation claims in a fair and efficient process

and providing the highest possible recovery to all of their creditors. The Debtors submit that a

three-step strategy best accomplishes this goal by: (i) maximizing the value of their enterprise

through pursuing a sale of their assets and pursuing affirmative causes of action; (ii) preserving

funds by seeking a stay of burdensome and asset-consuming litigation; and (iii) further

preserving funds by limiting their time in chapter 11 through estimation of categories of claims

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LLC (6577); and IPT 355, LLC (0155). The Debtors' mailing address is 1333 South Spectrum Blvd #100, Chandler, Arizona 85286.

to facilitate confirmation of a plan and sooner distributions to creditors. The first prong of the strategy is aimed at increasing the cash value of the Debtors' assets. By contrast, the second and third prongs will preserve as much of that value as possible to pay claimants, rather than using estate assets to fund unnecessary chapter 11 and other legal costs. To these ends, along with this Motion, the Debtors are contemporaneously filing (i) a motion to establish procedures to sell substantially all of their assets, (ii) a Complaint and Motion for Preliminary Injunction to stay certain, arguably, police power actions, and (iii) a motion to establish a deadline and procedures for filing proofs of claim (the "**Bar Date Motion**).

2.     In combination, this Motion and the Bar Date Motion target the third component of the Debtors' overall strategy: implementing a fair and efficient process that enables the Debtors (and their creditors) to fix aggregate amounts of particular categories of claims on an expedited basis. The proposed process will enable the Debtors to propose a confirmable chapter 11 plan and make distributions to creditors sooner than any other option available to the Debtors. Although the Debtors resolved certain litigation claims relating to their prescription opioid SUBSYS® ("**Subsys**") prepetition, most notably the civil and criminal claims of the United States,[2] the relief sought in this Motion is critical because the sheer numbers and types of litigation claims filed against them made prepetition resolution of all the claims impossible.

3.     The Debtors seek to use the chapter 11 cases to reach consensus with key groups of their creditors. Without an efficient claims resolution process to address the multitude of other claims, however, it will be challenging to bring such large numbers of diverse creditors

---

[2] In addition, the Debtors were successful prepetition in resolving claims of the Humana, Illinois, Massachusetts, New Hampshire, Oregon, and three personal injury plaintiffs.

to the negotiating table.  Waiting for approximately 1,000 individual cases, many of which are still in their nascent stages, or have yet to be filed, to be resolved will impede the Debtors' ability to formulate, confirm, and implement a plan and could drain the Debtors' estates of tens of millions of dollars – materially reducing the value of these estates and creditor recoveries.  The alternative to the relief sought in this Motion is to have the Debtors' Chapter 11 Cases become a protracted affair, with all of the attendant costs, instead of preserving funds for creditors.  That alternative is not good for any stakeholders.  Estimation is, therefore, both necessary and appropriate to avoid wasteful delay in the administration of the Debtors' estates and to maximize recoveries for all claimants.

4.     This Motion seeks relief in two stages.  The first is an order establishing procedures for the Court to estimate certain categories of claims.  The Debtors have retained their own claims estimation expert and will be proposing their own estimates of various categories of claims, but they invite their creditor groups to participate in the process.  The Debtors understand that it is likely that each creditor group will seek to increase the size of its claim amount while perhaps decreasing the size of others' claims.  The Debtors' only agenda in this regard is to set up a fair and transparent process to ensure that the proportionate distribution of their limited assets among different creditor groups is equitable.  Through the various mechanisms provided herein, including document production (to provide access to the Debtors' information), a discovery schedule, and the protective order, the Debtors seek to ensure that every creditor that wishes to participate in the process can do so and all creditors' due process rights are preserved.

5.     The second order the Debtors will seek – following discovery and briefing – is a Court order estimating different categories of claims to enable the Debtors to confirm a

3

plan and make distributions to creditors.  Importantly, the Debtors are not seeking through this

Motion to determine the allowed amount of any particular Claim or the allocation of value as

among creditors in any particular category – the Debtors will propose such allocation at a later

date after discussions with creditors.  The estimates being sought are simply categories of claims,

similar to the estimation of liabilities in asbestos and other mass tort chapter 11 cases.

6.       As noted, there are two choices here – the first is to use up a significant

portion of the Debtors' assets to litigate each claim individually – that is a "perfect process" but

with disastrous results that could lead to zero recoveries for all litigants.  The second choice is to

use the efficient mechanisms contemplated by the Bankruptcy Code to estimate claims (with all

parties having an opportunity to participate) and give *all* creditors a greater recovery within a

better timeframe.  The Debtors submit that everyone is better off if the second choice is adopted

and request that this Court enter an order estimating the categories of claims as set forth herein.

## Relief Requested

7.       By this Motion, pursuant to sections 105(a) and 502(c) of title 11 of the

United States Code (the "**Bankruptcy Code**"), the Debtors request that the Court approve

procedures for estimation and estimate the Debtors' liability with respect to approximately 1,000

claims for actual and compensatory damages asserted by, among others, cities and

municipalities, states' attorneys general, personal injury plaintiffs, and insurance providers

related to, among other things, the marketing and sale of Subsys (collectively and including

similar claims that may be filed on or before the applicable bar date, the "**Subsys Claims,**" and

each person or entity asserting such a claim, a "**Subsys Claimant**").  Specifically, the Debtors

request that the Court (1) approve the proposed timeline set forth herein for discovery and an

estimation proceeding before this Court in advance of plan confirmation, (2) approve the

4

proposed protective order governing the use of sensitive and confidential information produced in connection with the estimation process, (3) estimate the actual and compensatory damages subsumed in each of the Claim Categories (defined below) for purposes of plan allocation and setting claim distribution reserves, and (4) subordinate certain penalty claims.

8.     The Debtors are not seeking herein, but may seek in a separate motion, to estimate any particular claim for allowance purposes.  The Debtors are also not seeking, but may seek in a separate or amended motion, to estimate claims subordinated to those for actual and compensatory damages, including punitive damage and other penalty-type claims related to the Claims Categories.  As referenced above, while the Debtors are not seeking to estimate the amount of liability with respect to such Claims, the Debtors are requesting the Court to find that these types of Claims are properly subordinated to all general unsecured claims, such as those for actual and compensatory damages.

9.     A proposed form of order granting the Debtors' request for a discovery schedule and an estimation proceeding before this Court in advance of plan confirmation is annexed hereto as **Exhibit A** (the **"Proposed Scheduling Order"**).  A proposed form for the related Notice of Estimation Proceedings is annexed hereto as **Exhibit B** (the "**Notice of Estimation Procedures**").  The Debtors will file a proposed order estimating the claims in advance of the estimation hearing.

10.     The Debtors also request that the Court enter a protective order, in the form annexed hereto as **Exhibit C** (the "**Proposed Protective Order**").  The Debtors will provide access to a Document Production (defined below) with certain pleadings, settlements, and documents already produced by Insys in connection with various investigations and actions to accelerate discovery and otherwise aid parties in analyzing potential liability in the Claim

5

Categories.  The Proposed Protective Order is necessary to comply with the Health Insurance

Portability and Accountability Act of 1996 ("**HIPAA**") and to preserve the confidentiality of

other sensitive information.

## Jurisdiction

11.     The Court has jurisdiction to consider this matter pursuant to

28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United

States District Court for the District of Delaware, dated February 29, 2012.  This is a core

proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28

U.S.C. §§ 1408 and 1409.

12.     Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local**

**Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this

Motion to the extent that it is later determined that the Court, absent consent of the parties,

cannot enter final orders or judgments consistent with Article III of the United States

Constitution.

## Background

13.     On the date hereof (the "**Petition Date**"), the Debtors each commenced

with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are

authorized to continue to operate their business and manage their properties as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner,

or statutory committee of creditors has been appointed in these Chapter 11 Cases.

14.     Contemporaneously herewith, the Debtors have filed a motion requesting

joint administration of their Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

15.     Additional information regarding the circumstances leading to the commencement of these Chapter 11 Cases, the Debtors' businesses and capital structure is set forth in the declaration of Andrew G. Long, the Debtors' Chief Executive Officer, filed on the Petition Date, in support of the Debtors' chapter 11 petitions and related first day relief (the "**First-Day Declaration**").  Support for this Motion is provided in an additional declaration of Mr. Long filed contemporaneously herewith (the "**Long Declaration,**" and together with the First-Day Declaration, the "**Long Declarations**").[3]

### Subsys Claims

16.     Starting in 2012, the Debtors marketed and sold Subsys, a prescription sublingual fentanyl spray indicated for the management of breakthrough pain in cancer patients 18 years of age and older who are already receiving and who are tolerant to around-the-clock opioid therapy for their underlying persistent cancer pain.  The Debtors are currently defendants in approximately 1,000 lawsuits related to the marketing and sale of Subsys.  Specifically, certain states' attorneys general, certain municipalities, personal injury plaintiffs, and insurance providers have asserted claims against Insys arising out of the marketing and sale of Subsys. The Long Declarations describe the background facts underlying most of the Subsys Claims.  Below is a description of the categories of Subsys Claims the Debtors are seeking to estimate in this Motion:

17.     <u>State AG Claims</u>.  Several states' attorneys general have conducted and are conducting investigations related to the Debtors' sale and marketing of Subys (the "**State AG Investigations**").  The states' attorneys general's claims (including similar claims that may be

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Long Declaration.

filed on or before the applicable bar date, the "**State AG Claims**") are, currently, eleven[4]

pending actions brought by states' attorneys general or other state governmental units charged

with public health and safety enforcement, against Insys related to its marketing and sale of

Subsys.  The State AG Claims principally allege violations of state consumer protection laws,

state false claims acts, deceptive acts and practices, and fraud.  Several states including Florida,

Rhode Island, New Mexico, and Kentucky have also asserted public nuisance claims similar to

those asserted by Municipalities (defined below) in those states. For purposes of this Motion, the

category of State AG Claims includes all pending and threatened litigation and all other Claims

(as defined in the Bankruptcy Code) of the States and Territories of the United States of America

related to the Debtors' marketing and sale of Subsys.

   18. <u>Municipality Claims</u>.  Various cities, counties, and Native American

tribes[5] (the "**Municipalities**") have also filed litigation against Insys for public nuisance,

negligence, and fraud related to Insys's marketing and sale of Subsys (including similar claims

that may be filed on or before the applicable bar date, the "**Municipality Claims**").  These

litigations typically include Insys as one of numerous other co-defendants involved in the

marketing and distribution of opioid medications.  There are approximately 1,000 pending

Municipality Claims, with approximately 800 pending transfer to, or already consolidated into,

the multi-district litigation in the Northern District of Ohio (the "**Federal MDL Claims**") and

approximately 200 in various state and federal courts throughout the country (the "**State**

**Municipality Claims**").  Nearly all of the cases in the MDL are currently stayed while a few

---

[4] There are ten pending actions brought by States Attorneys General, and, in Minnesota, a second action brought as an administrative proceeding by the Minnesota Board of Pharmacy.

[5] Native American tribes are being grouped with municipalities because they assert similar causes of action.

cases have been selected to proceed.  Specifically, the MDL Court has ordered two litigation

tracks of five total cases for accelerated discovery, motion practice, and trials, the first of which

is scheduled to begin on October 21, 2019. Case Management Order No. 8 [Docket No. 1306], *In

re National Prescription Opiate Litigation*, No. 1:17-md-2804 (Jan. 29, 2019).  Track One is

comprised of three cases brought by plaintiff municipalities located in the Northern District of

Ohio, two of which are consolidated and scheduled for trial.  Insys is named in those cases along

with approximately 23 Defendant Families.[6]  Track 2 includes claims of Cabell County

Commission, West Virginia and City of Huntington, West Virginia.[7]  Order [Docket No. 1218],

*In re National Prescription Opiate Litigation*, No. 1:17-md-2804 (Dec. 31, 2018).  In addition,

approximately 260 Local Government Actions against Insys that have not been transferred to the

MDL[8] are pending in state and federal courts throughout the country.  The majority of these

cases are concentrated in state courts in Arizona, Connecticut, Massachusetts, New York,

Oklahoma, Pennsylvania, South Carolina, and Texas.  These cases are in various stages of

motion practice and discovery.[9]  Significantly, whereas Insys entered the prescription opioid

market in 2012, and reached a peak in 2015 of less than 0.03% of nationwide opioid

prescriptions, many of the allegations directed at other, larger manufacturer defendants relate to a

"push to expand prescription opioid use [that] began in the late 1990s," which allegedly involved

specific categories of misrepresentations (e.g., the risk of addiction from chronic opioid therapy

---

[6] "Defendant Families" are groups of related corporate entity defendants.

[7] Debtors have not, as of the filing of the Motion, been named as a defendant in the Track Two MDL case brought
by the City of Huntington, West Virginia.

[8] Including approximately 50 cases for which an application has been made to transfer the action to the MDL.

[9] The Debtors have also filed an adversary complaint and preliminary injunction motion pursuant to 11 U.S.C. §
105(a) to stay the currently active Federal MDL Claims and State Municipality Claims.

is low; opioid withdrawal can be avoided by tapering) intended to mislead physicians, patients, and the public at large about the risks and benefits of opioids. *See, e.g.,* Third Amended Complaint and Jury Demand, *The County of Summit, Ohio, et al. v. Purdue Pharma, L.P., et al.*, Case No. 17-md-2804 (MDL No. 2804) [Docket No. 1466] ¶¶ 4, 172-173.  Plaintiffs' claims against Insys are generally for public nuisance, negligence, consumer and/or common law fraud, and some complaints also lump Insys in with the other defendants for RICO violations and civil conspiracy.

19.     Personal Injury Claims.  There are currently approximately 30 personal injury lawsuits, including those that seek class action status, alleging a variety of claims including, negligent misrepresentation, failure to warn, and wrongful death, loss of consortium, negligence, and fraud concerning Insys's marketing and sale of Subsys (including similar claims that may be filed on or before the Bar Date, the "**Personal Injury Claims**").

20.     Insurance Claims.  Finally, there are currently approximately seven pending claims brought by, or on behalf of,[10] insurance companies and self-funded health care plans (together, the "**Private Insurers**") asserting claims sounding in insurance fraud and deceptive business practices (including similar claims that may be filed on or before the Bar Date the, "**Private Insurer Claims**" and, together with the State AG Claims, the Municipality Claims, and the Personal Injury Claims, the "**Claims Categories**").  The Private Insurer Claims relate to Subsys prescriptions that the Private Insurers allege were improperly covered, or reimbursed, by the Private Insurers.

---

[10] One of these suits is brought on behalf of Medicare Advantage Organizations, Independent Practices Associations, Management Service Organizations, Health Maintenance Organizations, and other downstream Medicare entities that had assigned their claims to plaintiffs.  This case assert RICO and common law fraud claims related to alleged overpayments by the assignors.

21.    In anticipation of the relief being sought in this Motion, the Debtors,

through Weil, Gotshal & Manges LLP, have retained Nathan Associates to estimate the Debtors'

liability for the Subsys Claims.  Nathan Associates is well known in its fields of expertise, which

include litigation and expert services like valuation of damages claims.  Nathan Associates has

extensive experience advising companies facing mass tort and environmental litigation in a wide

array of product, toxic tort, environmental and exposure claims including those arising from the

pharmaceutical industry.

22.    The relief sought herein does not include estimation of all litigation filed

against Insys, and Insys reserves the right to amend this Motion to estimate other, if any, material

categories of claims.  Moreover, the Debtors may seek to estimate, settle, or otherwise determine

one or more other claims against them via a separate motion or in the claims reconciliation

process.

### The Court Should Estimate the Claims Categories and Approve the Proposed Estimation Procedures

23.    As indicated above, the Debtors are hopeful that the parties, through good-

faith negotiations, bolstered by chapter 11 being a catalyst for settlement, can reach a consensus

with respect to the Subsys Claims.  The Debtors expect that the scheduling of a definitive

timetable, as contemplated by this Motion, will provide a constructive framework for potential

negotiations.  Given the large number of pending claims in certain of the Claims Categories,

however, there is no certainty that all can be resolved within a timeframe that allows for the

efficient administration of the Debtors' bankruptcy cases.  Accordingly, to avoid undue delay in

the Debtors' plan process and ensure a better and quicker recovery to their creditors, estimation

of the liabilities for purposes of plan allocation and setting claim distribution reserves is of

paramount importance.

### A.    The Court Should Estimate the Claims Categories

24.    Section 502(c) of the Bankruptcy Code provides that the Court "shall"

estimate "any contingent or unliquidated claim, the fixing or liquidation of which, as the case

may be, would unduly delay the administration of the case."  11 U.S.C. § 502(c).  "Estimation

helps the court 'avoid the need to await the resolution of outside lawsuits to determine issues of

liability or amount owed by means of anticipating and estimating the likely outcome of these

actions.'" *In re Fed.-Mogul Glob., Inc.*, 330 B.R. 133, 154 (D. Del. 2005) (quoting *Matter of

Ford*, 967 F.2d 1047, 1053 (5th Cir. 1992)); *see also In re Lionel L.L.C.*, No. 04-17324, 2007

WL 2261539, at *2 (Bankr. S.D.N.Y. Aug. 3, 2007) (noting that, without estimation, lengthy

proceedings result in "delayed distributions, which in turn, greatly devalue the claims of all

creditors as they cannot use the assets until they receive them" (citation omitted)); *In re Adelphia

Bus. Sols., Inc.*, 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003) ("Estimation . . . provides a means

for a bankruptcy court to achieve reorganization, and/or distributions on claims, without awaiting

the results of [potentially protracted] legal proceedings.") (citing *In re Continental Airlines, Inc.*,

981 F.2d 1450, 1461 (5th Cir. 1993)).

25.    Indeed, "the Code requires estimation of all contingent or unliquidated

claims which unduly delay the administration of the case." *In re Nat'l Gypsum Co.*, 139 B.R.

397, 405 (N.D. Tex. 1992) (internal quotations omitted); *see also In re RNI Wind Down Corp.*,

369 B.R. 174, 191 (Bankr. D. Del. 2007) ("Estimation by the Court is mandatory, provided that

the movant establishes that fixing or liquidation of the claim would unduly delay the

administration of the case.").

26.     Estimation is proper for a number of various purposes related to the administration of a debtor's estate.  *See In re Chemtura Corp.*, 448 B.R. 635, 649 (Bankr. S.D.N.Y. 2011) ("Claims estimation under Section 502(c)(1), which most commonly is used with respect to prepetition claims, can be used for a variety of purposes, including determining voting rights on a reorganization plan, gauging plan feasibility, determining the likely aggregate amount of a related series of claims, setting claim distribution reserves, or (though this is less commonly wise) allowing claims."); *see also In re Accredited Home Lenders Holding Co.*, No. 09- 11516 (MFW) (Bankr. D. Del. May 31, 2011) [D.I. 2784] (granting motion to establish reserves).

27.     Specifically, estimation for the purposes proposed by the Debtors (plan allocations and setting claim distribution reserves) is proper.  *See In re Armstrong World Indus., Inc.*, 348 B.R. 111, 124 (D. Del. 2006) (using estimation to determine if a plan favored one class of unsecured creditors over another); *see also In re Hercules Offshore, Inc.*, No. 16-11385 (KJC) (Bankr. D. Del. Nov. 14, 2016) [D.I. 483] (establishing aggregate claims reserve of $47 million based on estimated disputed claims); *In re Newpage Corp.,* No. 11-12804 (KG) (Bankr. D. Del. Feb. 19, 2013) [D.I. 3166] (establishing aggregate claims reserve of $150 million based on estimated disputed claims).

28.     It is crucial for the Debtors' plan process that the Claims Categories be estimated by the Court.  As stated above, there are approximately 1,000 known Subsys Claims pending against the Debtors.  Given the volume of claims, litigating each of them would unduly delay administration of the Debtors' estate, potentially by years, if it were necessary to reduce all of them to a final judgment.  Estimation is therefore necessary because it would be difficult to formulate a confirmable plan with a thousand – or more – unliquidated claims. *See, e.g., In re*

13

*Fed.-Mogul Glob.*, 330 B.R. at 154; *see also In re N. Am. Health Care, Inc.*, 544 B.R. 684, 689–

91 (C.D. Cal. 2016) (estimating claims in the aggregate for purposes of voting and plan

confirmation).

29.    In summary, estimation will allow the Debtors to establish the aggregate

liability for each Claims Category to facilitate formulation of a plan of reorganization that does

not unfairly allocate plan distributions to one class to the detriment of another − an important

step in the path toward exit from chapter 11.  Accordingly, the Court should estimate the Claims

Categories following the appropriate estimation procedures.

## B.    The Court Should Approve the Proposed Estimation Procedures

30.    Streamlined estimation proceedings are appropriate in these cases to avoid

delay and ensure a transparent process for all parties to participate.  Claim estimation procedures

have been adopted by courts in this district and others.  *In re CMTSU Liquidation, Inc. (f/k/a*

*CIBER, Inc.)*, Case No. 17-10772 (BLS) (Bankr. D. Del. Sep. 29, 2017) [D.I. 668] (approving

claims estimation procedures); *In re VeraSun Energy Corp.*, Case No. 08-12606 (BLS) (Bankr.

D. Del. Nov. 19, 2009) [D.I. 2028] (approving expedited claims estimation procedures); *In re*

*Motors Liquidation Co.*, Case No. 09-50026 (REG) (Bankr. S.D.N.Y. Dec. 15, 2010) [D.I. 8121]

(authorizing a schedule for estimation proceedings).

31.    The estimation procedures described below are designed to provide

sufficient notice and an opportunity to participate to all parties that wish to do so, while also

prioritizing efficiency.  First, the Scheduling Notice will be served widely to provide all parties

information and the option to participate in the estimation process.  Second, subject to each

Participating Party's acknowledgement of the Protective Order, the Debtors will provide access

to certain documents produced by Insys in connection with various investigations and actions, as well as pleadings or settlements, to assist claimants in evaluating the Debtors' proposed estimates. In fact, the majority of the parties in the Claims Categories have had access to discovery materials for approximately nine months before these Chapter 11 Cases were commenced.

32.     Lastly, the proposed estimation procedures will allow all participating parties to have an opportunity to obtain additional discovery, present expert testimony, file pre-trial briefs, and participate in a hearing before the Court. This process will allow the parties to provide "sufficient evidence on which to base a reasonable estimate" for the claims. *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 135 (3d Cir. 1982) (affirming estimation based on hearing and cautioning that procedures like arbitration and trials "usually will run counter to the efficient administration" of the estate).

33.     In detail, the Debtors propose the following procedures and schedule for the Claims Categories estimation proceeding (the "**Estimation Procedures**"):

    (a)     The Debtors shall serve their report, including expert analysis, as applicable, including good faith estimates of the Debtors' general unsecured liability in the Claims Categories, based on information available as of the date of entry of the Proposed Scheduling Order, within five days after the entry of the Proposed Scheduling Order; *provided*, *however*, that the Debtors may serve an amended report updating the estimate for any Claims Category based on then filed proofs of claim and any other new information within ten days after the General Bar Date[11] or thereafter as necessary;

    (b)     Any party-in-interest that wishes to submit evidence in connection with a hearing on this Estimation Motion shall (1) file a Notice of Estimation Participating Party in the form attached hereto as "**Exhibit D**," within ten days

---

[11] As defined in the *Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) And 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and Local Rules 2002-1(e), 3001-1, and 3003-1 for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines*.

after entry of the Proposed Scheduling Order (any party that files such a notice, a "**Participating Party**"), and (2) identify its expert or indicate that it will not offer expert testimony in a notice served on the Debtors and each other Participating Party within 21 days after the entry of the Proposed Scheduling Order;

(c)     Following receipt of an executed Notice of Estimation Participating Party which includes an acknowledgment of the Protective Order, the Debtors will give such Participating Party access to certain documents produced by Insys in connection with various investigations and actions, as well as pleadings or settlements, in the form previously produced, most of which are in standard single-page tiff format with unique page identifiers and either extracted or OCR text (the "**Document Production**").

(d)     All fact discovery requests shall be served within 24 days after entry of the Proposed Scheduling Order; *provided*, *however*, that the document requests shall be limited to requests for categories of documents that are not already available in the Document Production;

(e)     All responses and objections to requests for written discovery and those for the production of documents and other materials, and production of such documents and other materials, shall be served on the Debtors and the party making such fact discovery request (if not the Debtor) within 21 days of such request, and all documents produced will be added to the Document Production and made available to all Participating Parties;

(f)     All fact depositions shall be completed within 14 days of service of the responses and production described in (e) above;

(g)     Within 15 days of the later of the General Bar Date or the completion of the fact depositions described in (f) above, the Participating Parties that provided timely notice of their intent to produce expert testimony shall serve expert reports regarding the estimated amount of the Debtors' liability for one or more of the Claims Categories;

(h)     The Debtors shall serve expert rebuttal reports, if any, within 14 days of service of the expert reports in (g) above;

(i)     Each party shall make its expert available to be deposed, with any such depositions to be completed within 14 days of service of rebuttal reports;

(j)     The Debtors and any Participating Party agree to seek emergency hearings, subject in their entirety to the Court's availability, before the Court pursuant to Rule 9013-1(f) of the Local Rules to resolve all discovery disputes arising from this Proposed Scheduling Order.

(k)     Subject to the Court's availability, a hearing will be held to estimate the Debtors' aggregate liability for Subsys Claims in each Claim Category (the "**Estimation Hearing**") within approximately 15 days of the completion date for expert depositions in paragraph (i) above;

(l)     The parties shall exchange copies of all exhibits to be offered at the Estimation Hearing seven business days prior to commencement of the Estimation Hearing; the parties will prepare a joint exhibit list (highlighting any open objections to admissibility of such exhibits); and the Debtors will provide copies of the exhibits and the joint exhibit list to the Court by 4:00 p.m. (Eastern Time) five business days prior to the commencement of the Estimation Hearing;

(m)     Any pre-trial briefs, including forms of Proposed Estimation Order, shall be filed with the Court by 4:00 p.m. (Eastern Time) four business days prior to the commencement of the Estimation Hearing; such briefs will refer to the exhibit number used in the joint exhibit list submitted to the Court and the parties will work to establish and use a common case and exhibit citation method for convenience of the Court.

34.     As set forth in detail above, absent the relief requested herein, the proposal and confirmation of a plan and distributions to creditors in these cases could be significantly delayed.  While it is the Debtors' hope that the parties will continue to negotiate through the commencement of the estimation proceeding and reach settlements prior thereto, the Debtors respectfully request that the Court approve the Proposed Scheduling Order and the Proposed Scheduling Notice.

## The Court Should Approve the Proposed Protective Order

35.     The Court should also approve the entry of the Proposed Protective Order because doing so would protect individuals from disclosure of sensitive medical information classified as confidential by HIPAA that may be produced in connection with the Estimation Proceeding.

36.     A protective order is appropriate where the party seeking protection shows "good cause." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994).  Good cause

exists when "disclosure will cause a clearly defined and serious injury." *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995). Relevant considerations for evaluating the existence of good cause include "(1) the interest in privacy of the party seeking protection; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious; (4) whether the information sought is important to public health and safety; (5) whether sharing of the information among litigants would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public." *Arnold v. Pennsylvania, Dep't of Transp.*, 477 F.3d 105, 108 (3d Cir. 2007). These factors are not, however, mandatory or exhaustive and the court may weigh competing considerations. *Glenmede*, 56 F.3d at 483.

37.     The Third Circuit has "recognized the important privacy interest in one's medical records." *Everett v. Nort*, 547 F. App'x 117, 122 n.9 (3d Cir. 2013) (granting motion to file medical records under seal). Consequently, courts in the Third Circuit routinely find that the need to protect medical records, which HIPAA classifies as confidential, satisfies the good cause standard. *See, e.g.*, *In re Benicar® (Olmesartan) Prod. Liab. Litig.*, No. 15-2606 (RBK/JS), 2018 WL 4375219, at *2 (D.N.J. Sept. 13, 2018) ("Defendants argue correctly the general right of the public to know does not defeat the [HIPAA]-required confidentiality of Exhibit A because Congress has determined a non-exigent disclosure of a citizen's PHI creates a serious and substantial breach of privacy."); *Bertolotti v. AutoZone, Inc.*, 132 F. Supp. 3d 590, 609 (D.N.J. 2015) ("[P]ublic disclosure of an individual's medical history and personal identifying numbers has been held to be a clearly defined and serious injury sufficient to support sealing of medical

18

records."); *Burtner v. Pennsylvania State Police*, No. 13-891, 2013 WL 5936427, at *2 (W.D.

Pa. Nov. 5, 2013) (granting motion to seal with respect to medical and mental health records).

38.    The Proposed Protective Order is necessary because the materials in the

Document Production may contain medical information protected by HIPAA.  The Court should

therefore enter the Proposed Protective Order to ensure that this information is protected from

disclosure.  Each Participating Party will be required to acknowledge the Protective Order before

gaining access to the Document Production.

### The Court Should Subordinate Certain Penalty Claims

39.    Finally, the Court should subordinate all claims seeking penalties,

consistent with existing precedent, thus maximizing creditors' recoveries for actual and

compensatory damages.

40.    Within the Claims Categories, certain claimants seek penalties like fines

or punitive damages (the "**Penalty Claims**").  For example, some of the State AG Claims and

many of the Municipality Claims assert claims under state consumer protection statutes, such as

for unfair or deceptive business practices, which allow recovery of statutory fines or penalties.

Other claimants seek injunctive relief, restitution or disgorgement, or treble, punitive, or

exemplary damages.

41.    Pursuant to 11 U.S.C. § 726(a)(4) "any fine, penalty, or forfeiture, or for

multiple, exemplary, or punitive damages," are subordinated to general unsecured creditors in

Chapter 7.  Section 726(a)(4) is applicable to Chapter 11 cases through § 1129(a)(7).  *See Owens*

*Corning v. Credit Suisse First Boston*, 322 B.R. 719, 723–24 (D. Del. 2005) ("[I]f punitive

damages are recoverable at all, they must be accorded a lower priority than claims for

compensatory damages (§ 726(a)(4) in Chapter 7 cases, applicable here pursuant to

§ 1129(a)(7).”); *see also In re Motors Liquidation Co.*, 571 B.R. 565, 576 (Bankr. S.D.N.Y.

2017) (“The Bankruptcy Code provides that general unsecured creditors, including those who

file late claims, must be paid in full before any claim for punitive damages may be paid.  11

U.S.C. § 726(a)(3)-(4).  While section 726(a) applies to cases under chapter 7 of the Bankruptcy

Code, the ‘best interest of creditors’ test mandates that claimants in a chapter 11 case must

receive at least as much as they would receive in a chapter 7 case.”), *aff’d in relevant part*, 2018

WL 2416567, at *15 (S.D.N.Y. May 29, 2018); *In re New York Med. Grp., P.C.*, 265 B.R. 408,

416 n.5 (Bankr. S.D.N.Y. 2001) (“Like tax penalty claims, punitive damage claims are

subordinated to general unsecured claims in a chapter 7 liquidation, see 11 U.S.C. § 726(a)(4),

and hence, fare differently under the ‘best interests of creditors’ test.  This difference may justify

the separate classification of punitive damage claims, or if classified with unsecured claims, their

subordination to the payment of the unsecured claims.” (citation omitted)).

42.     Indeed, in the *TK Holdings Inc.* chapter 11 case, Chief Judge Brendan L.

Shannon, in confirming the debtors’ chapter 11 plan, held that the plan properly subordinated the

claims of various municipalities seeking injunctive relief, restitution, disgorgement, penalties,

and fines for violation of consumer protection statutes, overruling the objections of the

municipalities that argued otherwise. *See In re TK Holdings Inc.*, Case No. 17-11375 (BLS)

(Bankr. D. Del. Feb. 21, 2018) [D.I. 2120].

43.     Therefore, the Court should prioritize actual and compensatory damages

by subordinating all claims seeking penalties to all general unsecured claims.

### Notice

44.     Notice of this Motion will be provided to (a) the Office of the United

States Trustee for the District of Delaware (Attn:  Jane M. Leamy); (b) the holders of the thirty

(30) largest unsecured claims against the Debtors on a consolidated basis; (c) the Securities and

Exchange Commission; (d) the Internal Revenue Service; (e) the United States Attorney's Office

for the District of Delaware; (f) the Department of Justice; (g) Litigation Parties on the Debtors'

Consolidated Credit Matrix; (h) all States' attorneys general; and (i) any other party that

requested notice pursuant to Bankruptcy Rule 2002 (the "**Notice Parties**").  Based on the

urgency of the circumstances surrounding this Motion and the nature of the relief requested

herein, the Debtors respectfully submit that no further notice is required.

45.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

21

WHEREFORE the Debtors respectfully request entry of the Proposed Scheduling Order including approving the Proposed Scheduling Notice, Proposed Protective Order, and the to-be-filed order estimating Claims Categories, granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: June 10, 2019
      Wilmington, Delaware

<div style="margin-left:40%">

 */s/ Paul N. Heath*            
RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Zachary Shapiro (No. 5103)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

WEIL, GOTSHAL & MANGES LLP
Gary T. Holtzer (*pro hac vice* pending)
Ronit J. Berkovich (*pro hac vice* pending)
Peter D. Isakoff (*pro hac vice* pending)
Brenda L. Funk (*pro hac vice* pending)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Proposed Attorneys for the Debtors*
*and Debtors in Possession*

</div>

**Exhibit A**

**Proposed Scheduling Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

```
-------------------------------------------------------x
                                                       :
In re                                                  :          Chapter 11
                                                       :
INSYS THERAPEUTICS, INC., et al.,                      :          Case No. 19-11292 (KG)
                                                       :
                Debtors.[1]                            :          Jointly Administered
                                                       :
-------------------------------------------------------x          Re: D.I. _____
```

**ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 502(c) ESTABLISHING**
**SCHEDULE FOR ESTIMATION OF UNLIQUIDATED CLAIMS**

Upon the motion (the "**Motion**"),[2] dated June 10, 2019, of Insys Therapeutics,

Inc. and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in

possession (collectively, the "**Debtors**"), pursuant to sections 105(a) and 502(c) of title 11 of the

United States Code (the "**Bankruptcy Code**"), for entry of an order (1) authorizing the

estimation of the Debtors' liability with respect to claims for actual and compensatory damages

asserted by municipalities, states' attorneys general, personal injury plaintiffs, and insurance

providers related to the marketing and sale of the Debtors' prescription opioid, SUBSYS®

(collectively and including claims that may be filed in advance of the bar date, the "**Subsys**

**Claims**," and each person or entity asserting such a claim, a "**Subsys Claimant**") for purposes of

plan allocation and setting claim distribution reserves; (2) establishing a schedule for an

estimation proceeding before the Court, which sets a timeline for discovery and a hearing before

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LLC (6577); and IPT 355, LLC (0155).  The Debtors' mailing address is 1333 South Spectrum Blvd #100, Chandler, Arizona 85286.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Motion.

this Court in advance of plan confirmation, all as more fully described in the Motion; and (3)

subordinating certain Penalty Claims (as defined in the Motion); and the Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157

and 1334, and the *Amended Standing Order of Reference* from the United States District Court

for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the

requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper

before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

Motion having been provided to the Notice Parties; and such notice having been adequate and

appropriate under the circumstances, and it appearing that no other or further notice need be

provided; and the Court having reviewed the Motion; and the Court having held a hearing to

consider the relief requested in the Motion (the "**Hearing**"); and upon review of the First Day

Declaration filed on the Petition Date and the Long Declaration, filed contemporaneously with

the Motion, and the record of the Hearing; and the Court having determined that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and it

appearing that the relief requested in the Motion is in the best interests of the Debtors, their

estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court

and after due deliberation and sufficient cause appearing therefor,

<div align="center">

**IT IS HEREBY ORDERED THAT:**

</div>

1.      The Motion is granted as provided herein.

2.      The Court will hold a hearing to estimate the Debtors' aggregate general

unsecured liability for Subsys Claims in the Claims Categories, including a determination of

what types of claims are subordinated under section 502(c) of the Bankruptcy Code.

<div align="center">2</div>

3.      The following deadlines and procedures shall govern the estimation proceeding:

(a)      The Debtors shall serve their report including good faith estimates of the Debtors' general unsecured liability in the Claims Categories, based on information available as of the date of entry of the Proposed Scheduling Order, within five days after the entry of the Proposed Scheduling Order; *provided*, *however*, that the Debtors may serve an amended report updating the estimate for any Claims Category based on then filed proofs of claim and any other new information within ten days after the General Bar Date[3] or thereafter as necessary;

(b)      Any party-in-interest that wishes to submit evidence in connection with a hearing on this Estimation Motion shall (1) file a Notice of Estimation Participating Party in the form attached hereto as "**Exhibit D**," within ten days after entry of the Proposed Scheduling Order (any party that files such a notice, a "**Participating Party**"), and (2) identify its expert or indicate that it will not offer expert testimony in a notice served on the Debtors and each other Participating Party within 21 days after the entry of the Proposed Scheduling Order;

(c)      Following receipt of an executed Notice of Estimation Participating Party which includes an acknowledgment of the Protective Order, the Debtors will give such Participating Party access to certain documents produced by Insys in connection with various investigations and actions, as well as pleadings or settlements, in the form previously

---

[3] As defined in the *Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) And 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and Local Rules 2002-1(e), 3001-1, and 3003-1 for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines*.

3

produced, most of which are in standard single-page tiff format with unique page identifiers and either extracted or OCR text (the "**Document Production**").

        (d)     All fact discovery requests shall be served within 24 days after entry of the Proposed Scheduling Order; *provided*, *however*, that the document requests shall be limited to requests for categories of documents that are not already available in the Document Production;

        (e)     All responses and objections to requests for written discovery and those for the production of documents and other materials, and production of such documents and other materials, shall be served on the Debtors and the party making such fact discovery request (if not the Debtor) within 21 days of such request, and all documents produced will be added to the Document Production and made available to all Participating Parties;

        (f)     All fact depositions shall be completed within 14 days of service of the responses and production described in (e) above;

        (g)     Within 15 days of the later of the General Bar Date or the completion of the fact depositions described in (f) above, the Participating Parties that provided timely notice of their intent to produce expert testimony shall serve expert reports regarding the estimated amount of the Debtors' liability for one or more of the Claims Categories;

        (h)     The Debtors shall serve expert rebuttal reports, if any, within 14 days of service of the expert reports in (g) above;

        (i)     Each party shall make its expert available to be deposed, with any such depositions to be completed within 14 days of service of rebuttal reports;

        (j)     The Debtors and any Participating Party agree to seek emergency hearings, subject in their entirety to the Court's availability, before the Court pursuant to Rule

4

9013-1(f) of the Local Rules to resolve all discovery disputes arising from this Proposed Scheduling Order.

(k)     The parties shall exchange copies of all exhibits to be offered at the hearing on the estimation of the Debtors' aggregate liability for Subsys Claims and provide copies of any such exhibits to the Court by _____, 2019 at 4:00 p.m. (Eastern Time);

(l)     Any pretrial briefs and proposed estimation orders shall be filed with the Court by _____, 2019 at 4:00 p.m. (Eastern Time); such briefs will refer to the exhibit number used in the joint exhibit list submitted to the Court and the parties will work to establish and use a common case and exhibit citation method for convenience of the Court;

(m)     The Court will hold a hearing to estimate the Debtors' aggregate Subsys Claims liability on _____, 2019 at _:__ [].m. (Eastern Time).

4.     The deadlines set forth above, except the date on which the estimation hearing will commence, may be modified by agreement of the parties or by an order of the Court upon showing of good cause.

5.     The Debtors are authorized to take all actions necessary to implement the relief granted in this Order.

6.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2019
        Wilmington, Delaware

        _____
        THE HONORABLE KEVIN GROSS
        UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Proposed Form of Notice of Estimation Proceedings**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

```
----------------------------------------------------x
                                                     :
In re                                                :        Chapter 11
                                                     :
INSYS THERAPEUTICS, INC., et al.,                    :        Case No. 19-11292 (KG)
                                                     :
              Debtors.¹                              :        Jointly Administered
                                                     :
----------------------------------------------------x        Re: D.I. _____
```

**NOTICE OF ENTRY OF ORDER**
**AUTHORIZING ESTIMATION OF DEBTORS' AGGREGATE**
**LIABILITY FOR CERTAIN CONTINGENT AND UNLIQUIDATED**
**CLAIMS, ESTABLISHING SCHEDULE FOR ESTIMATION PROCEEDINGS, AND**
<u>**AUTHORIZING SUBORDINATION OF CERTAIN PENALTY CLAIMS**</u>

> **PARTIES RECEIVING THIS NOTICE MAY HAVE CLAIMS AGAINST THE DEBTORS THAT ARE SUBJECT TO THE ESTIMATION PROCEDURES DESCRIBED HEREIN. PLEASE REVIEW THIS NOTICE IN ITS ENTIRETY TO DETERMINE IF THE ESTIMATION PROCEDURES AFFECT YOUR CLAIM AND YOUR RIGHTS RELATED THERETO.**

    **PLEASE TAKE NOTICE** that on June 10, 2019, Insys Therapeutics, Inc. ("**Insys**") and its affiliated debtors in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), as debtors and debtors in possession (collectively, the "**Debtors**"), filed the *Motion of Debtors for (I) Entry of Orders Pursuant to §§ 105(a) and 502(c) (A) Establishing Procedures and Schedule for Estimation Proceedings and (B) Estimating Debtors' Aggregate Liability for Certain Categories of Claims, (II) Entry of Protective Order, and (III) Subordinating Certain Penalty Claims* [Docket No. ___] (the "**Motion**")² with the United States Bankruptcy Court for the District of Delaware (the "**Court**").

    **PLEASE TAKE FURTHER NOTICE** that, pursuant to the Motion, the Debtors requested entry of an order (1) approving the proposed timeline for discovery and an estimation proceeding before this Court in advance of plan confirmation, (2) approving the proposed protective order governing the use of sensitive and confidential information produced in connection with the estimation process, (3) estimating each of the Claim Categories (defined

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LLC (6577); and IPT 355, LLC (0155).  The Debtors' mailing address is 1333 South Spectrum Blvd #100, Chandler, Arizona 85286.

² Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

below) for purposes of plan allocation and setting claim distribution reserves, and (4) subordinating certain penalty claims.

**PLEASE TAKE FURTHER NOTICE** that on [_____], 2019, the Court entered the *Order Pursuant to 11 U.S.C. § 502(C) Authorizing Estimation of Debtors' Aggregate Liability for Certain Contingent and Unliquidated Claims and Establishing Schedule for Estimation Proceedings* [Docket No. __] (the "**Scheduling Order**"), approving, among other things, the discovery schedule and estimation procedures (the "**Estimation Procedures**") to estimate certain categories of claims – State AG Claims, Municipality Claims, Personal Injury Claims, and Private Insurer Claims (collectively, the "**Claims Categories**") – brought against the Debtors related to, among other things, the marketing and sale of the Debtors' prescription opioid SUBSYS® ("**Subsys**," and such claims, collectively and including similar claims that may be filed on or before the applicable bar date, the "**Subsys Claims**," and each person or entity asserting such a claim, a "**Subsys Claimant**"). The Scheduling Order is available free of charge upon request of the Debtors and online at the following address: https://dm.epiq11.com/Insys.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Scheduling Order, the Court approved the following deadlines and procedures that will govern the Estimation Procedures:

- On or before [_____], 2019 the Debtors will file and serve their report including good faith estimates of the Debtors' general unsecured liability in the Claims Categories, based on information available as of the date of entry of the Proposed Scheduling Order (the "**Estimation Report**")[3].   A copy of the Estimation Report is available free of charge upon request of the Debtors and online at the following address: https://dm.epiq11.com/Insys.  <u>See</u> Scheduling Order at ¶3(a).

- Any party-in-interest that wishes to submit evidence in connection with a hearing on the Motion shall (1) file a Notice of Estimation Participating Party in the form annexed to the Motion as "**Exhibit D**," on or before [_____], 2019 (any party that files such a notice, a "**Participating Party**"), and (2) identify its expert or indicate that it will not offer expert testimony in a notice served on the Debtors and each other Participating Party on or before [_____], 2019.  <u>See</u> Scheduling Order at ¶3(b).

- Following receipt of an executed Notice of Estimation Participating Party, which includes an acknowledgment of the Protective Order, the Debtors will give such Participating Party access to certain documents produced by Insys in connection with various investigations and actions, as well as pleadings or settlements, in the form previously produced, most of which are in standard single-page tiff format with unique page identifiers and either extracted or OCR text (the "**Document**

---

[3] Pursuant to the Scheduling Order, Debtors may serve an amended Estimation Report updating the estimate for any Claims Category based on then filed proofs of claim and any other new information within ten days after the General Bar Date or thereafter as necessary.  <u>See</u> Scheduling Order at ¶3(a).

**Production**").  <u>See</u> Scheduling Order at ¶3(c).

- All fact discovery requests shall be served on or before [_____], 2019; *provided*, *however*, that the document requests shall be limited to requests for categories of documents that are not already available in the Document Production. <u>See</u> Scheduling Order at ¶3(d).

- All responses and objections to requests for written discovery and those for the production of documents and other materials, and production of such documents and other materials, shall be served on the Debtors and the party making such fact discovery request (if not the Debtor) within 21 days of such request, and all documents produced will be added to the Document Production and made available to all Participating Parties.  <u>See</u> Scheduling Order at ¶3(e).

- All fact depositions shall be completed within 14 days of service of the responses and production described in (e) above. <u>See</u> Scheduling Order at ¶3(f).

- Within 15 days of the later of the General Bar Date[4] or the completion of the fact depositions, the Participating Parties that provided timely notice of their intent to produce expert testimony shall serve expert reports (each an "**Expert Report**") regarding the estimated amount of the Debtors' liability for one or more of the Claims Categories.  <u>See</u> Scheduling Order at ¶3(g).

- The Debtors shall serve expert rebuttal reports (each a "**Rebuttal Report**"), if any, within 14 days of service of the respective Export Report.  <u>See</u> Scheduling Order at ¶3(h).

- Each party shall make its expert available to be deposed, with any such depositions to be completed within 14 days of service of any Rebuttal Report. <u>See</u> Scheduling Order at ¶3(i).

- The Debtors and any Participating Party agree to seek emergency hearings, subject in their entirety to the Court's availability, before the Court pursuant to Rule 9013-1(f) of the Local Rules to resolve all discovery disputes arising from this Proposed Scheduling Order. <u>See</u> Scheduling Order at ¶3(j).

- The parties shall exchange copies of all exhibits to be offered at the Estimation and provide copies of any such exhibits to the Court by [_____], 2019 at 4:00 p.m. (Eastern Time). <u>See</u> Scheduling Order at ¶3(k).

- Any pretrial briefs and proposed estimation orders shall be filed with the Court by

---

[4] As defined in the *Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) And 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and Local Rules 2002-1(e), 3001-1, and 3003-1 for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines*.

[_____], 2019 at 4:00 p.m. (Eastern Time); such briefs will refer to the exhibit number used in the joint exhibit list submitted to the Court and the parties will work to establish and use a common case and exhibit citation method for convenience of the Court.  See Scheduling Order at ¶3(l).

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing (the "**Estimation Hearing**") to estimate the Debtors' aggregate Subsys Claims liability on **[_____], 2019 at _:__ [].m. (Eastern Time).**

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Scheduling Order, the deadlines set forth above, except with respect to date of the Estimation Hearing, may be modified by agreement of the Debtors and any Participating Party or by an order of the Court upon showing of good cause.  See Scheduling Order at ¶3(m).

**PLEASE TAKE FURTHER NOTICE** that the Motion, the Scheduling Order, and other related pleadings are available free of charge online at the following address: https://dm.epiq11.com/Insys.

Dated: [_____], 2019
       Wilmington, Delaware

<div style="text-align:right">

_____
RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Zachary Shapiro (No. 5103)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

WEIL, GOTSHAL & MANGES LLP
Gary T. Holtzer (*pro hac vice* pending)
Ronit J. Berkovich (*pro hac vice* pending)
Peter D. Isakoff (*pro hac vice* pending)
Brenda L. Funk (*pro hac vice* pending)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Proposed Attorneys for the Debtors
and Debtors in Possession*

</div>

## Exhibit C

**Proposed Protective Order**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

------------------------------------------------------x
                  :

In re                 :       **Chapter 11**

                 :

**INSYS THERAPEUTICS, INC.,** *et al.,*  :      **Case No. 19-11292 (KG)**

                 :

          **Debtors.**[1]   :      **Jointly Administered**

                 :

------------------------------------------------------x

## <u>PROTECTIVE ORDER</u>

This Protective Order (the "Protective Order") is entered as part of the proceedings to estimate certain Claims Categories against the Debtors including approximately 1,000 claims for actual and compensatory damages asserted by municipalities, states' attorneys general, personal injury plaintiffs, and insurance providers related to, among other things, the marketing and sale of Debtors' prescription opioid SUBSYS® (the "Estimation Proceeding"). *See* Estimation Procedures Order [D.I. __]. As part of the Estimation Proceeding, Debtors will provide parties who elect to participate in the Estimation Proceeding access to a Document Production[2] with certain pleadings, settlements, and documents already produced by Insys in connection with various investigations and actions. This Protective Order is necessary to comply with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and to preserve the confidentiality of other sensitive information.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LLC (6577); and IPT 355, LLC (0155). The Debtors' mailing address is 1333 South Spectrum Blvd #100, Chandler, Arizona 85286.

[2] Terms used but not defined shall have the meaning ascribed in the *Motion of Debtors for (I) Entry of Orders Pursuant to 11 U.S.C. §§ 105(a) and 502(c) (A) Establishing Procedures and Schedule for Estimation Proceedings and (B) Estimating Debtors' Aggregate Liability for Certain Categories of Claims, (II) Entry of Protective Order, and (III) Subordination of Certain Penalty Claims.*

## I.    Scope of Protective Order

1.    Disclosure and discovery activity in the Estimation Proceeding may involve production of confidential, proprietary, and/or private information for which special protection from public disclosure and from use for any purpose other than prosecuting the Estimation Proceeding would be warranted. Accordingly, this Protective Order protects sensitive and confidential information from disclosure and prohibits use of such information for any purpose other than in the Estimation Proceeding. Unless otherwise noted, this Protective Order is also subject to the Local Rules of this Bankruptcy Court, the Federal Rules of Bankruptcy Procedure, and the Federal Rules of Civil Procedure, as applicable, on matters of procedure and calculation of time periods. Unless otherwise stated, all periods of time provided for in this Protective Order are calculated as calendar days.

2.    This Protective Order shall govern all hard copy and electronic materials, the information contained therein, and all other information produced or disclosed during the Estimation Proceeding in the chapter 11 cases captioned as *In re: Insys Therapeutics, Inc.*, Case No. 19-11292 (KG), including all materials produced or adduced in the course of discovery, including all copies, excerpts, summaries, or compilations thereof, whether revealed in a document, deposition, other testimony, discovery response or otherwise, by any party to the Estimation Proceeding (the "**Producing Party**") to any other party or parties (the "**Receiving Party**"). This Protective Order is binding upon the Debtors and all Participating Parties, including their respective corporate parents, subsidiaries and affiliates and their respective attorneys, principals, agents, experts, consultants, representatives, directors, officers, and employees, and others as set forth in this Protective Order.

RLF1 21396100V.1

3.      The entry of this Protective Order does not preclude any party from seeking a further order of this Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26(c).

4.      Nothing herein shall be construed to affect in any manner the admissibility of any document, testimony, or other evidence in the Estimation Proceeding.

**II.      Definitions**

5.      Party.   "**Party**" means any of the Debtors or Participating Parties, including officers and directors of such parties.

6.      Discovery Material.  "**Discovery Material**" means any information, document, or tangible thing, response to discovery requests, deposition testimony or transcript, and any other similar materials, or portions thereof. To the extent that matter stored or recorded in the form of electronic or magnetic media (including information, files, databases, or programs stored on any digital or analog machine-readable device, computers, Internet sites, discs, networks, or tapes) ("**Computerized Material**") is produced by any Party in such form, the Producing Party may designate such matters as confidential by a designation of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" on the media. Whenever any Party to whom Computerized Material designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL is produced reduces such material to hardcopy form, that Party shall mark the hardcopy form with the corresponding "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" designation.

7.      Competitor.  "**Competitor**" means any company or individual, other than the Designating Party, engaged in the design; development; manufacture; regulatory review process; dispensing; marketing; distribution; creation, prosecution, pursuit, or other development of an interest in protecting intellectual property; and/or licensing of any product or services involving opioids; provided, however, that this section shall not be construed as limiting the disclosure of

Discovery Material to an Expert in the Estimation Proceeding, so long as the notice required under Paragraph 34 is provided to the Designating Party prior to any such disclosure where required, and so long as no Discovery Material produced by one Competitor is shown to any current employee or consultant of a different Competitor, except as provided in Paragraphs 30 or 31.

8.    Confidential Information.   "**Confidential Information**" is defined herein as information that the Producing Party in good faith believes would be entitled to protection on a motion for a protective order pursuant to Fed. R. Bankr. P. 7026 and Fed. R. Civ. P. 26(c) on the basis that it constitutes, reflects, discloses, or contains information protected from disclosure by statute or that should be protected from disclosure as confidential personal information, medical or psychiatric information, personnel records, Confidential Protected Health Information (as defined in Section XII below), protected law enforcement materials (including investigative files, overdose records, narcane, coroner's records, court records, and prosecution files), research, technical, commercial or financial information that the Designating Party has maintained as confidential, or such other proprietary or sensitive business and commercial information that is not publicly available. Public records and other information or documents that are publicly available may not be designated as Confidential Information. In designating discovery materials as Confidential Information, the Producing Party shall do so in good faith consistent with the provisions of this Protective Order and rulings of the Bankruptcy Court. Nothing herein shall be construed to allow for global designations of all documents as "Confidential."

9.    Highly Confidential Information.   "**Highly Confidential Information**" is defined herein as information which, if disclosed, disseminated, or used by or to a Competitor of the Producing Party or any other person not enumerated in Paragraphs 30 and 31, could reasonably

result in possible antitrust violations or commercial, financial, or business harm. In designating discovery materials as Highly Confidential Information, the Producing Party shall do so in good faith consistent with the provisions of this Protective Order.  Nothing herein shall be construed to allow for global designations of all documents as "Highly Confidential."

10.    Receiving Party.  "**Receiving Party**" means a Participating Party or a Debtor, and all employees, agents, and directors (other than Counsel) of such Party that receives Discovery Material from a Producing Party.

11.    Producing Party.  "**Producing Party**" means a Participating Party or a Debtor, and all directors, employees, and agents (other than Counsel) of such Party or any third party that produces or otherwise makes available Discovery Material to a Receiving Party, subject to paragraph 3.

12.    Designating Party.  "**Designating Party**" means a Party to the Estimation Proceeding, and all directors, employees, and agents (other than Counsel) of the Party or any third party that designates Discovery Material as Confidential or Highly Confidential.

13.    Participating Party.  "**Participating Party**" means any party-in-interest that filed a Notice of Estimation Participating Party within ten days after entry of the Proposed Scheduling Order in the Estimation Proceeding.

14.    Protected Material.  "**Protected Material**" means any Discovery Material, and any copies, abstracts, summaries, or information derived from such Discovery Material, and any notes or other records regarding the contents of such Discovery Material, that is designated as "Confidential," "Highly Confidential," or "Confidential Protected Health Information" in accordance with this Protective Order.

15.     Outside Counsel.  "**Outside Counsel**" means any law firm or attorney who represents any Party for purposes of the Estimation Proceeding.

16.     In-House Counsel.  "**In-House Counsel**" means attorney employees of any Party.

17.     Counsel.  "**Counsel**," without another qualifier, means Outside Counsel and In-House Counsel.

18.     Independent Expert.  "**Independent Expert**" means an expert and/or independent consultant formally retained, and/or employed to advise or to assist Counsel in the preparation and/or trial of the Estimation Proceeding, and their staff who are not employed by a Party to whom it is reasonably necessary to disclose Confidential Information or Highly Confidential Information for the purpose of the Estimation Proceeding.

19.     Estimation Proceeding.  "**Estimation Proceeding**" means the proceedings to estimate certain Claims Categories against the Debtors including hundreds of claims for actual and compensatory damages asserted by municipalities, states' attorneys general, personal injury plaintiffs, and insurance providers related to, among other things, the marketing and sale of Debtors' prescription opioid SUBSYS®.  *See* Estimation Procedures Motion [D.I. ___].

### III.     Designation and Redaction of Confidential Information

20.     For each document produced by the Producing Party that contains or constitutes Confidential Information or Highly Confidential Information pursuant to this Protective Order, each page shall be marked "CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER", or "HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER" or comparable notices.

21.     Specific discovery responses produced by the Producing Party shall, if appropriate, be designated as Confidential Information or Highly Confidential Information by marking the pages of the document that contain such information with the notation

"CONFIDENTIAL—SUBJECT    TO    PROTECTIVE    ORDER",    or    "HIGHLY

CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER" or comparable notices.

22.     Information disclosed through testimony at a deposition taken in connection with

the Estimation Proceeding may be designated as Confidential Information or Highly Confidential

Information by designating the portions of the transcript in a letter to be served on the court

reporter and opposing counsel within five (5) calendar days of the Producing Party's receipt of

the certified transcript of a deposition. The court reporter will indicate the portions designated as

Confidential or Highly Confidential and segregate them as appropriate. Designations of

transcripts will apply to audio, video, or other recordings of the testimony. The court reporter

shall clearly mark any transcript released prior to the expiration of the 5-day period as "HIGHLY

CONFIDENTIAL—SUBJECT    TO    FURTHER    CONFIDENTIALITY    REVIEW."    Such

transcripts will be treated as Highly Confidential Information until the expiration of the 5-day

period. If the Producing Party does not serve a designation letter within the 5-day period, then

the entire transcript will be deemed not to contain Confidential Information or Highly

Confidential Information and the "HIGHLY CONFIDENTIAL—SUBJECT TO FURTHER

CONFIDENTIALITY REVIEW" legend shall be removed.

23.     In accordance with this Protective Order, only the persons identified under

Paragraphs 30 and 31, below, along with the witness and the witness's counsel may be present if

any questions regarding Confidential Information or Highly Confidential are asked. This

paragraph shall not be deemed to authorize disclosure of any document or information to any

person to whom disclosure is prohibited under this Protective Order.

24.     A Party in the Estimation Proceeding may designate as "CONFIDENTIAL" or

"HIGHLY CONFIDENTIAL" any document, material, or other information produced by, or

testimony given by, any other person or entity that the Designating Party reasonably believes qualifies as the Designating Party's Confidential Information or Highly Confidential Information pursuant to this Protective Order. The Party claiming confidentiality shall designate the information as such within ten (10) days of its receipt of such information. Any Party receiving information from a third party shall treat such information as Highly Confidential during this ten (10) day period while all Parties have an opportunity to review the information and determine whether it should be designated as confidential. Any Party designating third party information as Confidential Information or Highly Confidential Information shall have the same rights as a Producing Party under this Protective Order with respect to such information.

25.    This Protective Order shall not be construed to protect from production or to permit the "Confidential Information" or "Highly Confidential Information" designation of any document that (a) the party has not made reasonable efforts to keep confidential, or (b) is at the time of production or disclosure, or subsequently becomes, through no wrongful act on the part of the Receiving Party or the individual or individuals who caused the information to become public, generally available to the public through publication or otherwise.

26.    In order to protect against unauthorized disclosure of Confidential Information and Highly Confidential Information, a Producing Party may redact certain Confidential or Highly Information from produced documents, materials or other things. Specifically, the Producing Party may redact:

1.    <u>Personal Identifying Information</u>. The names, home addresses, personal email addresses, home telephone numbers, Social Security or tax identification numbers, and other private information protected by law of (a) current and former employees (other than

employees' names and business contact information) and (b) individuals in clinical studies or adverse event reports whose identity is protected by law.

2.    <u>Privileged Information</u>.    Information protected from disclosure by the attorney-client privilege, work product doctrine, or other such legal privilege protecting information from discovery in the Estimation Proceeding.

3.    <u>Third Party Confidential Information</u>.    If agreed to by the Parties or ordered by the Bankruptcy Court under Paragraph 75, information that is protected pursuant to confidentiality agreements between Designating Parties and third parties, as long as the agreements require Designating Parties to redact such information in order to produce such documents in litigation.

27.    To the extent any document, materials, or other things produced contain segregated, non-responsive Confidential or Highly Confidential Information concerning a Producing Party's non-opioid products (or concerning programs, services, or agencies not at issue in the Estimation Proceeding), the Producing Party may redact that segregated, non-responsive, Confidential or Highly Confidential information except (a) that if a Producing Party's non-opioid product is mentioned in direct comparison to the Producing Party's opioid product, then the name and information about that product may not be redacted or (b) if the redaction of the name and information about the Producing Party's non-opioid product(s) would render the information pertaining to Producing Party's opioid product meaningless or would remove the context of the information about Producing Party's opioid product, the name and information about the other product may not be redacted. Nothing in this paragraph shall restrict a Party's right and ability to request information about such other products nor restrict the

Debtors' right to object to or otherwise seek protection from the Bankruptcy Court concerning any such request.

28.     Pursuant to 21 C.F.R. §§ 314.430(e) & (f) and 20.63(f), the names of any person or persons reporting adverse experiences of patients and the names of any patients who were reported as experiencing adverse events that are not redacted shall be treated as confidential, regardless of whether the document containing such names is designated as CONFIDENTIAL INFORMATION. No such person shall be contacted, either directly or indirectly, based on the information so disclosed without the express written permission of the Producing Party.

**IV.     Access to Confidential and Highly Confidential Information**

29.   _General_.   The Receiving Party and counsel for the Receiving Party shall not disclose or permit the disclosure of any Confidential or Highly Confidential Information to any third person or entity except as set forth in Paragraphs 30 and 31.

30.     In the absence of written permission from the Producing Party or an order of the Bankruptcy Court, any Confidential Information produced in accordance with the provisions of this Protective Order shall be used solely for purposes of the Estimation Proceeding and its contents shall not be disclosed to any person unless that person falls within at least one of the following categories:

    a.      Outside Counsel and In-House Counsel of any Party, and the attorneys, paralegals, stenographic, and clerical staff employed by such counsel;

    b.      Vendor agents retained by the Parties or counsel for the Parties, provided that the vendor agrees to be bound by this Protective Order and completes the certification contained in Exhibit A, Acknowledgment and Agreement to Be Bound;

    c.      Another Participating Party;

RLF1 21396100V.1

d.      Present or former officers, directors, and employees of a Party, provided that former officers, directors, or employees of the Designating Party may be shown documents prepared after the date of his or her departure only to the extent counsel for the Receiving Party determines in good faith that the employee's assistance is reasonably necessary to the conduct of the Estimation Proceeding and provided that such persons have completed the certification contained in Exhibit A, Acknowledgment and Agreement to Be Bound. Nothing in this paragraph shall be deemed to permit the showing of Debtors' Confidential Information to an officer, director, or employee of a Competitor, except to the extent otherwise authorized by this Protective Order;

e.      Stenographic employees and court reporters recording or transcribing testimony in the Estimation Proceeding;

f.      The Bankruptcy Court and any members of their staffs to whom it is necessary to disclose the information;

g.      Formally retained independent experts and/or consultants, provided that the recipient agrees to be bound by this Protective Order and completes the certification contained in Exhibit A, Acknowledgment and Agreement to Be Bound;

h.      Any individual(s) who authored, prepared, or previously reviewed or received the information;

i.      State or federal law enforcement agencies, but only after such persons have completed the certification contained in Exhibit A, Acknowledgment

and Agreement to Be Bound. Disclosure pursuant to this subparagraph will be made only after the Designating Party has been given five (5) days' notice of the Receiving Party's intent to disclose, and a description of the materials the Receiving Party intends to disclose. If the Designating Party objects to disclosure, the Designating Party may request a meet and confer and may seek a protective order from the Bankruptcy Court.

j.      Witnesses during deposition, who may be shown, but shall not be permitted to retain, Confidential Information.

31.     In the absence of written permission from the Producing Party or an order of the Bankruptcy Court, any Highly Confidential Information produced in accordance with the provisions of this Protective Order shall be used solely for purposes of the Estimation Proceeding and its contents shall not be disclosed to any person unless that person falls within at least one of the following categories:

a.      Outside Counsel and In-House Counsel of any Party, and the attorneys, paralegals, stenographic, and clerical staff employed by such counsel;

b.      Vendor agents retained by a Party or counsel for a Participating Party, provided that the vendor agrees to be bound by this Protective Order and completes the certification contained in Exhibit A, Acknowledgment and Agreement to Be Bound;

c.      Participating Parties or third parties that have produced the designated information;

d.      Stenographic employees and court reporters recording or transcribing testimony in the Estimation Proceeding;

12

e.    The Bankruptcy Court and any members of their staffs to whom it is necessary to disclose the information;

f.    Formally retained independent experts and/or consultants, provided that the recipient agrees to be bound by this Protective Order and completes the certification contained in Exhibit A, Acknowledgment and Agreement to Be Bound;

g.    Any individual(s) who authored, prepared or previously reviewed or received the information;

h.    State or federal law enforcement agencies, but only after such persons have completed the certification contained in Exhibit A, Acknowledgment and Agreement to Be Bound. Disclosure pursuant to this subparagraph will be made only after the Designating Party has been given five (5) days' notice of the Receiving Party's intent to disclose, and a description of the materials the Receiving Party intends to disclose. If the Designating Party objects to disclosure, the Designating Party may request a meet and confer and may seek a protective order from the Bankruptcy Court.

i.    Witnesses during deposition, who may be shown, but shall not be permitted to retain, Highly Confidential Information.

32.    In the event that In-House Counsel (or current employees) of any Competitor of the Producing Party is present at the deposition of an employee or former employee of the Producing Party, prior to a document designated as Highly Confidential being used in the examination, such In-House Counsel (or current employees) of any Competitor of the Producing

Party shall excuse himself or herself from the deposition room without delaying or disrupting the deposition.

### V. Confidentiality Acknowledgment

33.     Each person required under this Protective Order to complete the certification contained in Exhibit A, Acknowledgment and Agreement to Be Bound, shall be provided with a copy of this Protective Order, which he or she shall read, and, upon reading this Protective Order, shall sign an Acknowledgment, in the form annexed hereto as Exhibit A, acknowledging that he or she has read this Protective Order and shall abide by its terms. These Acknowledgments are strictly confidential. Unless otherwise provided in this Protective Order, Counsel for each Party shall maintain the Acknowledgments without giving copies to the other side. The Parties expressly agree, and it is hereby ordered that, except in the event of a violation of this Protective Order, there will be no attempt to seek copies of the Acknowledgments or to determine the identities of persons signing them. If the Bankruptcy Court finds that any disclosure is necessary to investigate a violation of this Protective Order, such disclosure will be pursuant to separate court order. Persons who come into contact with Confidential Information or Highly Confidential Information for clerical or administrative purposes, and who do not retain copies or extracts thereof, are not required to execute Acknowledgements, but must comply with the terms of this Protective Order.

### VI. Experts and Consultants.

34.     <u>Formally Retained Independent Experts and Consultants</u>.    Subject to the provisions of this Protective Order, all Confidential Information or Highly Confidential Information may be disclosed to any formally retained independent expert or consultant who has agreed in writing pursuant to Paragraph 33 or on the record of a deposition to be bound by this Protective Order. The party retaining an independent expert or consultant shall use diligent

14

efforts to determine if the independent expert or consultant is currently working with or for a Competitor of a Producing Party in connection with a Competitor's opioid product. Prior to the initial disclosure of any information designated as Confidential Information or Highly Confidential Information to an expert or consultant who is currently working with or for a Competitor of the Producing Party in connection with a Competitor's opioid product, the party wishing to make such a disclosure ("**Notifying Party**") shall provide to counsel for the Producing Party in writing, which may include by e-mail, a statement that such disclosure will be made, identifying the general subject matter category of the Discovery Material to be disclosed, providing the nature of the affiliation with the Competitor entity and name of the Competitor entity, and stating the general purpose of such disclosure; the specific name of the formally retained independent expert or consultant need not be provided. The Producing Party shall have five (5) days from its receipt of the notice to deliver to the Notifying Party its good faith written objections (if any), which may include e-mail, to such disclosure to the expert or consultant.

35.    Absent timely objection, the expert or consultant shall be allowed to receive Confidential and Highly Confidential Information pursuant to the terms of this Protective Order. Upon and pending resolution of a timely objection, disclosure to the expert or consultant shall not be made. If the Notifying Party desires to challenge to the Producing Party's written objection to the expert or consultant, the Notifying Party shall so inform the Producing Party in writing, within three (3) days of receipt of the Producing Party's written objection, of its reasons for challenging the objection. The expert or consultant shall then be allowed to receive Confidential and Highly Confidential Information pursuant to the terms of this Protective Order after five (5) days from receipt of the Producing Party's timely challenge to the written objection to the expert or consultant, unless within that five day period, the Producing Party seeks an

15

emergency hearing for relief from the Bankruptcy Court, or the Parties stipulate to an agreement. Once a motion is filed, disclosure shall not occur until the issue is decided by the Bankruptcy Court and, if the motion is denied, the appeal period from the Bankruptcy Court order denying the motion has expired. In making such motion, it shall be the Producing Party's burden to demonstrate good cause for preventing such disclosure.

### VII.    Protection and Use of Confidential and Highly Confidential Information

36.    Persons receiving or having knowledge of Confidential Information or Highly Confidential Information by virtue of their participation in the Estimation Proceeding, or by virtue of obtaining any documents or other Protected Material produced or disclosed pursuant to this Protective Order, shall use that Confidential Information or Highly Confidential Information only as permitted by this Protective Order in connection with the Estimation Proceeding. Counsel shall take reasonable steps to assure the security of any Confidential Information or Highly Confidential Information and will limit access to such material to those persons who reasonably need access to such material and are authorized by this Protective Order.

37.    Nothing herein shall restrict a person qualified to receive Confidential Information and Highly Confidential Information pursuant to this Protective Order from making working copies, abstracts, digests and analyses of such information for use in connection with the Estimation Proceeding and such working copies, abstracts, digests and analyses shall be deemed to have the same level of protection under the terms of this Protective Order. Further, nothing herein shall restrict a qualified recipient from converting or translating such information into machine-readable form for incorporation in a data retrieval system used in connection with the Estimation Proceeding, provided that access to such information, in whatever form stored or reproduced, shall be deemed to have the same level of protection under the terms of this Protective Order.

16

38.     All persons qualified to receive Confidential Information and Highly Confidential Information pursuant to this Protective Order shall at all times keep all notes, abstractions, or other work product derived from or containing Confidential Information or Highly Confidential Information in a manner to protect it from disclosure not in accordance with this Protective Order, and shall be obligated to maintain the confidentiality of such work product and shall not disclose or reveal the contents of said notes, abstractions or other work product after the documents, materials, or other thing, or portions thereof (and the information contained therein) are returned and surrendered pursuant to Paragraph 45. Nothing in this Protective Order requires the Receiving Party's Counsel to disclose work product at the conclusion of the Estimation Proceeding.

39.     Notwithstanding any other provisions hereof, nothing herein shall restrict any Party's Counsel from rendering advice to that Counsel's clients with respect to the Estimation Proceeding or a related action in which the Receiving Party is permitted by this Protective Order to use Confidential Information or Highly Confidential Information and, in the course thereof, relying upon such information, provided that in rendering such advice, Counsel shall not disclose any other Party's Confidential Information or Highly Confidential Information other than in a manner provided for in this Protective Order.

40.     Nothing contained in this Protective Order shall prejudice in any way the rights of any Party to object to the relevancy, authenticity, or admissibility into evidence of any document or other information subject to this Protective Order, or otherwise constitute or operate as an admission by any Party that any particular document or other information is or is not relevant, authentic, or admissible into evidence at any deposition, at trial, or in a hearing related to the Estimation Proceeding.

41.     Nothing contained in this Protective Order shall preclude any Party from using its own Confidential Information or Highly Confidential Information in any manner it sees fit, without prior consent of any Party or the Bankruptcy Court.

42.     To the extent that a Producing Party uses or discloses to a third party its designated confidential information in a manner that causes the information to lose its confidential status, the Receiving Party is entitled to notice of the Producing Party's use of the confidential information in such a manner that the information has lost its confidentiality, and the Receiving Party may also use the information in the same manner as the Producing Party.

43.     If a Receiving Party learns of any unauthorized disclosure of Confidential Information or Highly Confidential Information, it shall immediately (a) inform the Producing Party in writing of all pertinent facts relating to such disclosure; (b) make its best effort to retrieve all copies of the Confidential Information or Highly Confidential Information; (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Protective Order; and (d) request such person or persons execute the Acknowledgment that is attached hereto as Exhibit A.

44.     Unless otherwise agreed or ordered, this Protective Order shall remain in force after conclusion of the chapter 11 cases.

45.     Within ninety (90) days after closing of the chapter 11 cases, or such other time as the Producing Party may agree in writing, the Receiving Party shall return all Confidential Information and Highly Confidential Information under this Protective Order unless: (1) the document has been offered into evidence or filed without restriction as to disclosure; (2) the Parties agree to destruction to the extent practicable in lieu of return;[3] or (3) as to documents

---

[3] The parties may choose to agree that the Receiving Party shall destroy documents containing Confidential Information or Highly Confidential Information and certify the fact of destruction, and that the Receiving Party shall

bearing the notations, summations, or other mental impressions of the Receiving Party, that Party elects to destroy the documents and certifies to the producing party that it has done so.

46.    Notwithstanding the above requirements to return or destroy documents, Participating Parties' outside counsel and Debtors' outside counsel may retain (1) any materials required to be retained by law or ethical rules, (2) one copy of their work file and work product, and (3) one complete set of all documents filed with the Bankruptcy Court including those filed under seal, deposition and trial transcripts, and deposition and trial exhibits. Any retained Confidential or Highly Confidential Discovery Material shall continue to be protected under this Protective Order. An attorney may use his or her work product in subsequent litigation, provided that the attorney's use does not disclose or use Confidential Information or Highly Confidential Information.

### VIII.   Changes in Designation of Information

47.    If a Party through inadvertence produces any Confidential Information or Highly Confidential Information without labeling or marking or otherwise designating it as such in accordance with the provisions of this Protective Order, the Producing Party may give written notice to the Receiving Party that the document or thing produced is deemed "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" and should be treated as such in accordance with the provisions of this Protective Order, and provide replacement media, images, and any associated production information to conform the document to the appropriate designation and facilitate use of the revised designation in the production. The Receiving Party must treat such documents and things with the noticed level of protection from the date such

---

not be required to locate, isolate and return e-mails (including attachments to e-mails) that may include Confidential Information or Highly Confidential Information, or Confidential Information or Highly Confidential Information contained in deposition transcripts or drafts or final expert reports.

notice is received. Disclosure, prior to the receipt of such notice of such information, to persons not authorized to receive such information shall not be deemed a violation of this Protective Order. Any Producing Party may designate as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" or withdraw a "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" designation from any material that it has produced consistent with this Protective Order, provided, however, that such redesignation shall be effective only as of the date of such redesignation. Such redesignation shall be accomplished by notifying Counsel for each Party in writing of such redesignation and providing replacement images bearing the appropriate description, along with the replacement media, images, and associated production information referenced above. Upon receipt of any redesignation and replacement image that designates material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL", the Receiving Party shall (i) treat such material in accordance with this Protective Order; (ii) take reasonable steps to notify any persons known to have possession of any such material of such redesignation under this Protective Order; and (iii) promptly endeavor to procure all copies of such material from any persons known to have possession of such material who are not entitled to receipt under this Protective Order. It is understood that the Receiving Party's good faith efforts to procure all copies may not result in the actual return of all copies of such materials.

48.    A Receiving Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed. If the Receiving Party believes that portion(s) of a document are not properly designated as Confidential Information or Highly Confidential Information, the Receiving Party will identify the specific information that it believes is improperly designated and notify the Producing Party, in writing or voice-to-voice dialogue, of its good faith belief that the

confidentiality designation was not proper and must give the Producing Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain, in writing within five (5) days, the basis of the chosen designation. If a Receiving Party elects to press a challenge to a confidentiality designation after considering the justification offered by the Producing Party, it shall notify the Producing Party and the Receiving Party shall have five (5) days from such notification to challenge the designation by commencing an emergency hearing for a discovery dispute. The ultimate burden of persuasion in any such challenge proceeding shall be on the Producing Party as if the Producing Party were seeking a Protective Order pursuant to Fed. R. Civ. P. 26(c) in the first instance. Until the Bankruptcy Court rules on the challenge, all Parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation. In the even that a designation is changed by the Producing Party or by court order, the Producing Party shall provide replacement media, images, and associated production information as provided above.

### IX.    Inadvertent Production of Documents

49.    Non-Waiver of Privilege.  The parties agree that they do not intend to disclose information subject to a claim of attorney-client privilege, attorney work product protection, common-interest privilege, or any other privilege, immunity or protection from production or disclosure ("**Privileged Information**"). If, nevertheless, a Producing Party discloses Privileged Information, such disclosure (as distinct from use) shall be deemed inadvertent without need of further showing under Federal Rule of Evidence 502(b) and shall not constitute or be deemed a waiver or forfeiture of the privilege or protection from discovery in this case or in any other federal or state proceeding by that party (the "**Disclosing Party**"). This Section shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

50.     Notice of Production of Privileged Information. If a Party or non-Party discovers that it has produced Privileged Information, it shall promptly notify the Receiving Party of the production in writing, shall identify the produced Privileged Information by Bates range where possible, and may demand that the Receiving Party return or destroy the Privileged Information. In the event that a Receiving Party receives information that it believes is subject to a good faith claim of privilege by the Designating Party, the Receiving Party shall immediately refrain from examining the information and shall promptly notify the Designating Party in writing that the Receiving Party possesses potentially Privileged Information. The Designating Party shall have five (5) days to assert privilege over the identified information. If the Designating Party does not assert a claim of privilege within the 5-day period, the information in question shall be deemed non-privileged.

51.     Recall of Privileged Information. If the Designating Party has notified the Receiving Party of production, or has confirmed the production called to its attention by the Receiving Party, the Receiving Party shall within five (5) days of receiving such notification or confirmation: (1) destroy or return to the Designating Party all copies or versions of the produced Privileged Information requested to be returned or destroyed; (2) delete from its work product or other materials any quoted or paraphrased portions of the produced Privileged Information; and (3) ensure that produced Privileged Information is not disclosed in any manner to any Party or non-Party. The following procedures shall be followed to ensure all copies of such ESI are appropriately removed from the Receiving Party's system:

       i.     Locate each recalled document in the document review/production database and delete the record from the database;

ii.     If there is a native file link to the recalled document, remove the native file from the network path;

iii.    If the database has an image load file, locate the document image(s) loaded into the viewing software and delete the image file(s) corresponding to the recalled documents. Remove the line(s) corresponding to the document image(s) from the image load file;

iv.     Apply the same process to any additional copies of the document or database, where possible;

v.      Locate and destroy all other copies of the document, whether in electronic or hardcopy form. To the extent that copies of the document are contained on write-protected media, such as CDs or DVDs, these media shall be discarded, with the exception of production media received from the recalling party, which shall be treated as described herein;

vi.     If the document was produced in a write-protected format, the party seeking to recall the document shall, at its election, either (i) provide a replacement copy of the relevant production from which the document has been removed, in which case the receiving party shall discard the original production media; or (ii) allow the receiving party to retain the original production media, in which case the receiving party shall take steps to ensure that the recalled document will not be used; and

vii.    Confirm that the recall of ESI under this procedure is complete by way of letter to the party seeking to recall ESI.

52.     Notwithstanding the above, the Receiving Party may segregate and retain one copy of the clawed back information solely for the purpose of disputing the claim of privilege. The Receiving Party shall not use any produced Privileged Information in connection with the

Estimation Proceeding or for any other purpose other than to dispute the claim of privilege. The Receiving Party may file a motion disputing the claim of privilege and seeking an order compelling production of the material at issue; the Designating Party may oppose any such motion, including on the grounds that inadvertent disclosure does not waive privilege.

53.    Within 5 days of the notification that such Privileged Information has been returned, destroyed, sequestered, or deleted ("**Clawed-Back Information**"), the Disclosing Party shall produce a privilege log with respect to the Clawed-Back Information. Within 5 days after receiving the Disclosing Party's privilege log with respect to such Clawed-Back Information, a receiving party may notify the Disclosing Party in writing of an objection to a claim of privilege or work-product protection with respect to the Clawed-Back Information. Within 3 days of the receipt of such notification, the Disclosing Party and the objecting party shall meet and confer in an effort to resolve any disagreement concerning the Disclosing Party's privilege or work-product claim with respect to such Clawed-Back Information. The parties may stipulate to extend the time periods set forth in this paragraph.

54.    If, for any reason, the Disclosing Party and Receiving Party (or parties) do not resolve their disagreement after conducting the mandatory meet and confer, the Receiving Party may seek an emergency hearing with the Bankruptcy Court. The Disclosing Party bears the burden of establishing the privileged or protected nature of any Privileged Information.

55.    Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. Nothing in this Protective Order shall limit the right to request an in-camera review of any Privileged Information.

56.     In the event any prior order or agreement between the parties and/or between the Parties and a non-party concerning the disclosure of privileged and/or work product protected materials conflicts with any of the provisions of this Protective Order, the provisions of this Protective Order shall control.

57.     Nothing in this Protective Order overrides any attorney's ethical responsibilities to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the Disclosing Party that such materials have been produced.

## X.      Filing and Use at Trial of Protected Material

58.     Only Confidential or Highly Confidential portions of relevant documents are subject to sealing. To the extent that a brief, memorandum, or pleading references any document designated as Confidential or Highly Confidential, then the brief, memorandum or pleading shall refer the Bankruptcy Court to the particular exhibit filed under seal without disclosing the contents of any confidential information. If, however, the confidential information must be intertwined within the text of the document, a party may timely move the Bankruptcy Court for leave to file both a redacted version for the public docket and an unredacted version for sealing.

59.     Absent a Bankruptcy Court-granted exception based upon extraordinary circumstances, any and all filings made under seal shall be submitted electronically and shall be linked to this Protective Order or other relevant authorizing order. If both redacted and unredacted versions are being submitted for filing, each version shall be clearly named so there is no confusion as to why there are two entries on the docket for the same filing.

60.     If the Bankruptcy Court has granted an exception to electronic filing, a sealed filing shall be placed in a sealed envelope marked "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER." The sealed envelope shall display the case name and number, a

designation as to what the document is, the name of the party on whose behalf it is submitted, and the name of the attorney who has filed the sealed document. A copy of this Protective Order, or other relevant authorizing order, shall be included in the sealed envelope.

61.     A Party that intends to present Confidential Information or Highly Confidential Information at a hearing shall bring that issue to the Bankruptcy Court's and Parties' attention without disclosing the Confidential Information or Highly Confidential Information. The Bankruptcy Court may thereafter make such orders, including any stipulated orders, as are necessary to govern the use of Confidential Information or Highly Confidential Information at the hearing. The use of any Confidential Information or Highly Confidential Information at trial shall be governed by a separate stipulation and/or Bankruptcy Court order.

**XI.     Confidential Information or Highly Confidential Information Requested by Third Party; Procedure Following Request.**

62.     If any Receiving Party is served with a subpoena, a request for information, or any other form of legal process that purports to compel disclosure of any Confidential Information or Highly Confidential Information covered by this Protective Order ("**Request**"), the Receiving Party must so notify the Designating Party, in writing, immediately and in no event more than five (5) days after receiving the Request. Such notification must include a copy of the Request.

63.     The Receiving Party also must immediately inform the party who made the Request ("**Requesting Party**") in writing that some or all the requested material is the subject of this Protective Order. In addition, the Receiving Party must deliver a copy of this Protective Order promptly to the Requesting Party.

64.     The purpose of imposing these duties is to alert the interested persons to the existence of this Protective Order and to afford the Designating Party in this case an opportunity

26

to protect its Confidential Information or Highly Confidential Information. The Designating Party shall bear the burden and the expense of seeking protection of its Confidential Information or Highly Confidential Information, and nothing in these provisions should be construed as authorizing or encouraging the Receiving Party in the Estimation Proceeding to disobey a lawful directive from another court. The obligations set forth in this paragraph remain in effect while the Receiving Party has in its possession, custody or control Confidential Information or Highly Confidential Information by the other Party in the Estimation Proceeding.

65.    Materials that have been designated as Confidential or Highly Confidential Discovery Material shall not be provided or disclosed to any third party in response to a request under any public records act, or any similar federal, state or municipal law (collectively, the "**Public Disclosure Laws**"), and are exempt from disclosure pursuant to this Protective Order. If a Party to the Estimation Proceeding receives such a request, it shall (i) provide a copy of this Protective Order to the Requesting Party and inform it that the requested materials are exempt from disclosure and that the Party is barred by this Protective Order from disclosing them, and (ii) promptly inform the Designating Party that has produced the requested material that the request has been made, identifying the name of the Requesting Party and the particular materials sought. If the Designating Party seeks a protective order, the Receiving Party shall not disclose such material until the Bankruptcy Court has ruled on the request for a protective order. The restrictions in this paragraph shall not apply to materials that (i) the Designating Party expressly consents in writing to disclosure; or (ii) this Bankruptcy Court has determined by court order to have been improperly designated as Confidential or Highly Confidential Discovery Material. The provisions of this section shall apply to any entity in receipt of Confidential or Highly Confidential Discovery Material governed by this Protective Order. Nothing in this Protective

Order shall be deemed to (1) foreclose any Party from arguing that Discovery Material is not a public record for purposes of the Public Disclosure Laws; (2) prevent any Party from claiming any applicable exemption to the Public Disclosure Laws; or (3) limit any arguments that a Party may make as to why Discovery Material is exempt from disclosure.

## XII.   HIPAA-Protected Information

66.     General. Discovery in the Estimation Proceeding may involve production of "**Protected Health Information**" as that term is defined and set forth in 45 C.F.R. § 160.103, for which special protection from public disclosure and from any purpose other than prosecuting this Estimation Proceeding is warranted.

67.     "Protected Health Information" shall encompass information within the scope and definition set forth in 45 C.F.R. § 160.103 that is provided to the Parties by a covered entity as defined by 45 C.F.R. § 160.103 ("**Covered Entities**") or by a business associate of a Covered Entity as defined by 45 C.F.R. § 160.103 ("**Business Associate**") in the course of the Estimation Proceeding, as well as information covered by the privacy laws of any individual states, as applicable.

68.     Any Party who produces Protected Health Information in the Estimation Proceeding shall designate such discovery material "**Confidential Protected Health Information**" in accordance with the provisions of this Protective Order.  In the event that a Party inadvertently produces a document containing Protected Health Information without such "Confidential Protected Health Information" designation, the document shall still be treated as Protected Health Information.  If a Party believes a document not designated as "Confidential Protected Health Information" contains Protected Health Information, the Party shall notify the Producing Party of such document.

RLF1 21396100V.1

69.     Unless otherwise agreed between counsel for the Parties, the designation of discovery material as "Confidential Protected Health Information" shall be made at the following times: (a) for documents or things at the time of the production of the documents or things; (b) for declarations, correspondence, expert witness reports, written discovery responses, court filings, pleadings, and other documents, at the time of the service or filing, whichever occurs first; (c) for testimony, at the time such testimony is given by a statement designating the testimony as "Confidential Protected Health Information" made on the record or within five (5) days after receipt of the transcript of the deposition. The designation of discovery material as "Confidential Protected Health Information" shall be made in the following manner: (a) for documents, by placing the notation "Confidential Protected Health Information" or similar legend on each page of such document, unless such document much be produced in native format, in which case the notation "Confidential Protected Health Information" or similar legend shall be placed on a cover page to the document; (b) for tangible things, by placing the notation "Confidential Protected Health Information" on the object or container thereof or if impracticable, as otherwise agreed by the parties; (c) for declarations, correspondence, expert witness reports, written discovery responses, court filings, pleadings, and any other documents containing Protected Health Information, by placing the notation "Confidential Protected Health Information" both on the face of such document and on any particular designated pages of such document; and (d) for testimony, by orally designating such testimony as being "Confidential Protected Health Information" at the time the testimony is given or by designating the portions of the transcript in a letter to be served on the court reporter and opposing counsel within fourteen (14) calendar days after receipt of the certified transcript of the deposition.

70.     Pursuant to 45 C.F.R. § 164.512(e)(1), all Covered Entities and their Business Associates (as defined in 45 C.F.R. § 160.103), or entities in receipt of information from such entities, are hereby authorized to disclose Protected Health Information pertaining to the Estimation Proceeding to those persons and for such purposes as designated in herein. Further, all Parties that are entities subject to state privacy law requirements, or entities in receipt of information from such entities, are hereby authorized to disclose Protected Health Information pertaining to this Estimation Proceeding to those persons and for such purposes as designated in herein. The Bankruptcy Court has determined that disclosure of such Protected Health Information is necessary for the conduct of the Estimation Proceeding before it and that failure to make the disclosure would be contrary to public interest or to the detriment of one or more parties to the Estimation Proceeding.

71.     The Parties shall not use or disclose Protected Health Information – whether or not designated "Confidential Protected Health Information" – for any purpose other than the Estimation Proceeding. The Parties may disclose Protected Health Information to (a) counsel for the Parties and employees of counsel who have responsibility for the Estimation Proceeding; (b) the Bankruptcy Court and its personnel; (c) Bankruptcy Court reporters; (d) experts and consultants; and (e) the Debtors' and other Participating Parties in the Estimation Proceeding; provided, however, such disclosure shall be expressly limited to those persons who reasonably need to receive such information in connection with the Estimation Proceeding and for no other purpose.

72.     The Parties shall take all necessary efforts and precautions to limit the uses and disclosures of, and requests for, Protected Health Information – whether or not designated "Confidential Protected Health Information" – to the minimum necessary to accomplish the

RLF1 21396100V.1

intended purpose of the use, disclosure, or request pursuant to 45 C.F.R. § 164.502(b), including taking reasonable security measures to maintain any documents containing HIPAA information.

73.     Within sixty days after the completion of the Estimation Hearing – unless otherwise agreed by the Debtors – the Parties, their counsel, and any person or entity in possession of Protected Health Information received pursuant to this Protective Order shall destroy such Protected Health Information.

74.     Nothing in this Protective Order authorizes the parties to obtain Protected Health Information through means other than formal discovery requests, subpoenas, depositions, pursuant to a patient authorization, or any other lawful process.

**XIII.    Information Subject to Existing Obligation of Confidentiality Independent of this Protective Order.**

75.     In the event that a Party is required by a valid discovery request to produce any information held by it subject to an obligation of confidentiality in favor of a third party, the Party shall, promptly upon recognizing that such third party's rights are implicated, provide the third party with a copy of this Protective Order and (i) inform the third party in writing of the Party's obligation to produce such information in connection with the Estimation Proceeding and of its intention to do so, subject to the protections of this Protective Order; (ii) inform the third party in writing of the third party's right within five (5) days to seek further protection or other relief from the Bankruptcy Court if, in good faith, it believes such information to be confidential under the said obligation and either objects to the Party's production of such information or regards the provisions of this Protective Order to be inadequate; and (iii) seek the third party's consent to such disclosure if that third party does not plan to object. Thereafter, the Party shall refrain from producing such information for a period of five (5) days in order to permit the third party an opportunity to seek relief from the Bankruptcy Court, unless the third party earlier

31

consents to disclosure. If the third party fails to seek such relief, the Party shall promptly produce the information in question subject to the protections of this Protective Order, or alternatively, shall promptly seek to be relieved of this obligation or for clarification of this obligation by the Bankruptcy Court.

### XIV.    Miscellaneous Provisions

76.    Nothing in this Protective Order or any action or agreement of a party under this Protective Order limits the Bankruptcy Court's power to make any orders that may be appropriate with respect to the use and disclosure of any documents produced or used in the Estimation Proceeding or chapter 11 cases.

77.    Nothing in this Protective Order shall abridge the right of any person to seek judicial review or to pursue other appropriate judicial action to seek a modification or amendment of this Protective Order.

78.    In the event anyone shall violate or threaten to violate the terms of this Protective Order, the Producing Party may immediately apply to obtain injunctive relief against any person violating or threatening to violate any of the terms of this Protective Order, and in the event the Producing Party shall do so, the respondent person, subject to the provisions of this Protective Order, shall not employ as a defense thereto the claim that the Producing Party possesses an adequate remedy at law.

79.    This Protective Order shall not be construed as waiving any right to assert a claim of privilege, relevance, or other grounds for not producing Discovery Material called for, and access to such Discovery Material shall be only as provided for by separate agreement of the Parties or by the Bankruptcy Court.

80.    This Protective Order may be amended without leave of the Bankruptcy Court by agreement of Outside Counsel for the Parties in the form of a written stipulation filed with the

Bankruptcy Court. The Protective Order shall continue in force until amended or superseded by express order of the Bankruptcy Court, and shall survive and remain in effect after the termination of the Estimation Proceeding.

81.     Notwithstanding any other provision in the Protective Order, nothing in this Protective Order shall affect or modify Debtors' ability to review Producing Parties' information and report such information to any applicable regulatory agencies.

82.     This Protective Order is entered based on the representations and agreements of the Parties and for the purpose of facilitating discovery. Nothing herein shall be construed or presented as a judicial determination that any documents or information designated as Confidential or Highly Confidential by counsel or the Parties is subject to protection under Rule 26(c) of the Federal Rules of Civil Procedure, Rule 7026 of the Federal Rules of Bankruptcy Procedure, or otherwise until such time as the Bankruptcy Court may rule on a specific document or issue.

**IT IS SO ORDERED.**

Dated:

_____          _____
                                                    The Honorable Kevin Gross
                                                    United States Bankruptcy Judge

RLF1 21396100V.1

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-------------------------------------------------------x
                                    :

**In re**                               :           **Chapter 11**

                                    :

**INSYS THERAPEUTICS, INC.,** *et al.,*     :           **Case No. 19-11292 (KG)**

                                    :

            **Debtors.**[1]                   :           **Joint Administration Requested**

                                    :

-------------------------------------------------------x

## <u>EXHIBIT A</u>

## <u>ACKNOWLEDGMENT AND AGREEMENT TO<br>BE BOUND BY PROTECTIVE ORDER</u>

The undersigned agrees:

I declare under penalty of perjury that I have read in its entirety and understand the Protective Order that was issued by the United States Bankruptcy Court for the District of Delaware on June 10, 2019 in *In re Insys Thereapeutics, Inc.* (the "**Protective Order**").

I agree to comply with and to be bound by all the terms of the Protective Order, and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to the Protective Order to any person or entity except in strict compliance with the provisions of the Protective Order.

I further agree to submit to the jurisdiction of the United States Bankruptcy Court for the District of Delaware for the purposes of enforcing terms of the Protective Order, even if such enforcement proceedings occur after termination of the Estimation Proceeding or Insys's chapter 11 cases.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LLC (6577); and IPT 355, LLC (0155).  The Debtors' mailing address is 1333 South Spectrum Blvd #100, Chandler, Arizona 85286.

Date:_____

City and State where sworn and signed:_____

Printed Name:_____

Signature:_____

## **Exhibit D**

**Notice of Estimation Participating Party**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------------------------------x
                                                       :
In re                             :        **Chapter 11**
                                                       :
**INSYS THERAPEUTICS, INC.,** *et al.,*        :        **Case No. 19-11292 (KG)**
                                                       :
Debtors.[1]                       :        **Jointly Administered**
                                                       :
------------------------------------------------------x        Re: D.I. _____

## NOTICE OF ESTIMATION PARTICIPATING PARTY

By this Notice of Estimation Participating Party (the "**Notice of Estimation**")

_____ (the "**Participating Party**") elects to participate

in the estimation proceedings to estimate certain categories of claims (the "**Estimation**

**Proceedings**") – State AG Claims, Municipality Claims, Personal Injury Claims, and Private

Insurer Claims (collectively, the "**Claims Categories**") – brought against one or more of the

Debtors, pursuant to section 502(c) of title 11 of the United States Code.

By submitting this Notice of Estimation, the Participating Party (1) represents that it

believes in good faith that it has a claim against one or more of the Debtors and that its claim is

within one or more of the Claims Categories; (2) agrees to participate in the Estimation

Proceedings; (3) agrees to comply with all of the deadlines set forth in the *Order Pursuant to 11*

*U.S.C. § 502(C) Authorizing Estimation of Debtors' Aggregate Liability for Certain Contingent*

*and Unliquidated Claims and Establishing Schedule for Estimation Proceeding* (D.I. ___) (the

"**Scheduling Order**"), and any modifications thereto agreed to by the parties and/or ordered by

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LLC (6577); and IPT 355, LLC (0155). The Debtors' mailing address is 1333 South Spectrum Blvd #100, Chandler, Arizona 85286.

the Court; (4) acknowledges and agrees to be bound by the Protective Order entered in the above

captioned case; and (5) agrees to have any discovery disputes arising from the Scheduling Order

resolved by an emergency hearing before the Court pursuant to Rule 9013-1(f) of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware.

Dated: _____

_____
Participating Party

Address:
Phone Number:
Email Address:

_____
Attorney for Participating Party (if any)

## File a Motion:

19-11292-KG Insys Therapeutics, Inc.

| | | |
|---|---|---|
| Type: bk | Chapter: 11 v | Office: 1 (Delaware) |
| Assets: y | Judge: KG | Case Flag: MEGA, PlnDue, DsclsDue |

**U.S. Bankruptcy Court**

**District of Delaware**

Notice of Electronic Filing

The following transaction was received from Paul Noble Heath entered on 6/10/2019 at 9:03 PM EDT and filed on 6/10/2019

**Case Name:**  Insys Therapeutics, Inc.

**Case Number:**  19-11292-KG

**Document Number:** 29

**Docket Text:**

Motion to Approve *//Motion of Debtors for (I) Entry of Orders Pursuant to 11 U.S.C. Sections 105(a) and 502(c) (A) Establishing Procedures and Schedule for Estimation Proceedings and (B) Estimating Debtors' Aggregate Liability for Certain Categories of Claims, (II) Entry of Protective Order, and (III) Subordination of Certain Penalty Claims* Filed by Insys Therapeutics, Inc.. (Attachments: # (1) Exhibit A # (2) Exhibit B # (3) Exhibit C # (4) Exhibit D) (Heath, Paul)

The following document(s) are associated with this transaction:

**Document description:** Main Document

**Original filename:** \\im-file\data\MLM\Estimation\Insys - Motion.pdf

**Electronic document Stamp:**

[STAMP bkecfStamp_ID=983460418 [Date=6/10/2019] [FileNumber=15821838-0 ] [50d702c1e8a7b724e2911007405c69fbe9ee7323bdeacdcd08fac9218a91f045e10 107fe1a781cef11de4cfb4a349b961f7d8fa30cf8d551a1c4f37166061f46]]

**Document description:** Exhibit A

**Original filename:** \\im-file\data\MLM\Estimation\Insys - Ex A.pdf

**Electronic document Stamp:**

[STAMP bkecfStamp_ID=983460418 [Date=6/10/2019] [FileNumber=15821838-1 ] [35c1f64866a82aa6dc9230b07d9d61b31065cc972e9f2bcdf45295fb5e98a0a9cf6 08fb4a682710d61cd8b0317b53ad86ba93130ab3e68621efb1fd31605ee5c]]

**Document description:** Exhibit B

**Original filename:** \\im-file\data\MLM\Estimation\Insys - Ex B.pdf

**Electronic document Stamp:**

[STAMP bkecfStamp_ID=983460418 [Date=6/10/2019] [FileNumber=15821838-2 ] [926706626f48f3a973fd9ccf29bea2dc72d2bb1164ef84c93ed23ecc42f4c608428 007ec10cb9910e38652e04675f3b055a390fbf45f27dd4d7a982b429ba7b8]]

**Document description:** Exhibit C

**Original filename:** \\im-file\data\MLM\Estimation\Insys - Ex C.pdf

**Electronic document Stamp:**