## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| INSYS THERAPEUTICS, INC., an Arizona Corporation, *et al.*,<br><br>　　　　　　　*Debtors.*[1] | Case No. 19-11292 (KG)<br><br>(Jointly Administered)<br><br>**Hearing Date: July 8, 2019 @9:00 a.m. EDT**<br>**Responses Due: July 1, 2019 by 4:00 p.m. EDT** |

## MOTION OF THE CLASS CLAIMANTS
## FOR LEAVE TO FILE CLASS PROOF OF CLAIM

Ronald D. Stracener; F. Kirk Hopkins; Jordan Chu; Amel Eiland; Nadja Streiter; Michael Konig; Eli Medina; Barbara Rivers; Marketing Services of Indiana, Inc.; Glenn Golden, Gretta Golden and Michael Christy; Edward Grace; Debra Dawsey; Darcy Sherman; Kimberly Brand; Lou Sardella; Michael Klodzinski; Kevin Wilk; Heather Enders; Jason Reynolds; MSI Corporation; Deborah Green-Kuchta; W. Andrew Fox; Dora Lawrence; Michael Lopez; and Zachary R. Schneider (collectively, "Plaintiffs"), in their individual and representative capacities as set forth below (and with the class members, collectively, the "Class Claimants") in their 25 respective actions in the 25 states identified below (the "Class Actions"), hereby respectfully move this Court (the "Motion"), pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "Rules"), made applicable to this matter by Rules 7023 and  9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order granting the Class Claimants leave to file one or more class proofs of claim, as may be appropriate.  In support of the Motion, the Class Claimants respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LCC (6577); IPT 355, LCC (0155).

## PRELIMINARY STATEMENT

1.      Prescription opioids have devastated communities across the country and in the States of Alabama, Arizona, California, Colorado, Connecticut, Florida, Idaho, Illinois, Indiana, Louisiana, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Utah, and Wisconsin (the "States").  Since 1999, there have been more than 183,000 reported opioid-related deaths nationwide—more than three times the number of U.S. soldiers who died in the Vietnam War. In addition to the tragic loss of life and the heartbreaking impact on children and loved ones, some estimates state that the opioid crisis is costing governmental entities and private companies as much as $500 billion per year.

2.      Debtor-Defendant Insys Therapeutics, Inc. ("Insys" or "Debtor-Defendant") sells one of the most dangerous products on the market-Subsys.

3.      Subsys is an opioid-fentanyl drug approximately **fifty** times stronger than heroin and **one hundred** times more potent than morphine.  It is part of a special class of drugs, known as transmucosal immediate release fentanyl ("TIRF"), which were approved by the Food and Drug Administration ("FDA") for the single use of managing breakthrough cancer pain in patients who are tolerant to around-the-clock opioid therapy.

4.      Cognizant that selling Subsys only in compliance with its FDA-approved label would not generate the substantial revenue that it desired, Insys devised a subversive and illegal plan to promote Subsys for uses beyond the sole, narrow indication for which it sought and received FDA approval.

5.      Specifically, Insys (i) directed its sales force to push healthcare providers to write Subsys prescriptions for more patients and at higher doses to treat chronic pain of any type, despite the known attendant dangers; (ii) paid those prescribers to essentially shill for it through, sham speaking and consulting fees and other items of value; and (iii) fraudulently induced

insurers to pay for the off-label prescriptions, including by misrepresenting patients' diagnoses and treatment histories.

6.     The opioid epidemic is in part the direct result of the Debtor-Defendant's deliberately crafted, well-funded campaign of deception.  For years, it misrepresented the risks posed by the opioids it manufactures and sells, misleading susceptible prescribers and vulnerable patient populations.  As families and communities suffered from the scourge of opioid abuse, the Debtor-Defendant earned billions in profits as a direct result of the harms it imposed.

7.     The Debtor-Defendant knew that its misrepresentations about the risks and benefits of its opioids were not supported by, and sometimes were directly contrary to, the scientific evidence.

8.     The explosion in opioid prescriptions and use has created a public health crisis in the States.  An oversupply of prescription opioids has provided a source for the illicit use or sale of opioids, while their widespread use has created a population of addicted and dependent patients.  When those patients can no longer afford or legitimately obtain opioids, they often turn to the street to buy prescription opioids or even heroin.  In addition to the societal impact of deaths, overdoses, and rampant addiction, Debtor-Defendant's conduct has created higher demand and thus higher prices for opioids, as well as the need for expensive medical treatment for a number of covered health conditions, resulting in increased insurance costs for residents of the States.

9.     Debtor-Defendant's conduct has fueled skyrocketing opioid addiction and opioid-related deaths and emergency treatments and has generated huge sales of opioids at inflated prices.

10.    The direct and proximate consequence of Debtor-Defendant's misconduct is that every purchaser in the States of private health insurance paid higher premiums, co-payments, and deductibles.  Insurance companies have considerable market power and pass onto their insureds the expected cost of future care—including opioid-related coverage.  Accordingly, insurance companies factored in the unwarranted and exorbitant healthcare costs of opioid-related coverage

caused by Debtor-Defendant and passed them through to insureds in the form of higher premiums, deductibles, and co-payments.

11.     Plaintiff Ronald D. Stracener seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on Alabama purchasers of private health insurance, in the action *Stracener v. Purdue Pharma, L.P., et. al.*, No. 19-cv-86 (S.D. Ala.), currently stayed in connection with *In re National Prescription Opiate Litigation*, No. 1:17-md-2804 (N.D. Ohio) (the "MDL").

12.     Plaintiff F. Kirk Hopkins seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on Arizona purchasers of private health insurance, in the action *Hopkins v. Purdue Pharma, L.P., et. al.*, No. 18-cv-2646 (D. Ariz.), currently stayed in connection with the MDL.

13.     Plaintiff Jordan Chu seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on California purchasers of private health insurance, in the action *Chu v. Purdue Pharma, L.P., et. al.*, No. 18-cv-2576 (N.D. Cal.), currently stayed in connection with the MDL.

14.     Plaintiff Amel Eiland seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on Colorado purchasers of private health insurance, in the action *Eiland v. Purdue Pharma, L.P., et. al.*, No. 18-cv-46283 (D. Colo.), currently stayed in connection with the MDL.

15.     Plaintiff Nadja Streiter seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on Connecticut purchasers of private health insurance, in the action *Streiter v. Purdue Pharma, L.P., et. al.*, No. 18-cv-1425 (D. Conn.), currently stayed in connection with the MDL.

16.     Plaintiff Michael Konig seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on Florida purchasers of private health insurance, in the action *Konig v. Purdue Pharma, L.P., et. al.*, No. 18-cv-61960 (S.D. Fla.), currently stayed in connection with the MDL.

17.    Plaintiff Eli Medina seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on Idaho purchasers of private health insurance, in the action *Medina v. Purdue Pharma, L.P., et. al.*, No. 18-cv-369 (D. Idaho), currently stayed in connection with the MDL.

18.    Plaintiff Barbara Rivers seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on Illinois purchasers of private health insurance, in the action *Rivers v. Purdue Pharma, L.P., et. al.*, No. 18-cv-3116 (N.D. Ill.), currently stayed in connection with the MDL.

19.    Plaintiff Marketing Services of Indiana, Inc. seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on Indiana purchasers of private health insurance, in the action *Marketing Services of Indiana, Inc. v. Purdue Pharma, L.P., et. al.*, No. 18-cv-2778 (S.D. Ind.), currently stayed in connection with the MDL.

20.    Plaintiffs Glenn Golden, Gretta Golden and Michael Christy seek to hold Debtor-Defendant accountable for the economic harm it has imposed on Louisiana purchasers of private health insurance, in the action *Golden et. al. v. Purdue Pharma, L.P., et. al.*, No. 19-cv-1048 (E.D. La.), currently stayed in connection with the MDL.

21.    Plaintiff Edward Grace seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on Massachusetts purchasers of private health insurance, in the action *Grace v. Purdue Pharma, L.P., et. al.*, No. 18-cv-10857 (D. Mass.), currently stayed in connection with the MDL.

22.    Plaintiff Deborah Dawsey seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on Michigan purchasers of private health insurance, in the action *Dawsey v. Purdue Pharma, L.P., et. al.*, No. 19-cv-94 (W.D. Mich.), currently stayed in connection with the MDL.

23.    Plaintiff Darcy Sherman seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on Minnesota purchasers of private health insurance, in the action

*Sherman v. Purdue Pharma, L.P., et. al.*, No. 18-cv-3335 (D. Minn.), currently stayed in connection with the MDL.

24.     Plaintiff Kimberly Brand seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on Missouri purchasers of private health insurance, in the action *Brand v. Purdue Pharma, L.P., et. al.*, No. 18-cv-653 (W.D. Mo.), currently stayed in connection with the MDL.

25.     Plaintiff Lou Sardella seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on New Jersey purchasers of private health insurance, in the action *Sardella v. Purdue Pharma, L.P., et. al.*, No. 18-cv-8706 (D.N.J.), currently stayed in connection with the MDL.

26.     Plaintiff Michael Klodzinski seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on New York purchasers of private health insurance, in the action *Klodzinski v. Purdue Pharma, L.P., et. al.*, No. 18-cv-3927 (S.D.N.Y.), currently stayed in connection with the MDL.

27.     Plaintiff Kevin Wilk seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on North Carolina purchasers of private health insurance, in the action *Wilk v. Purdue Pharma, L.P., et. al.*, No. 18-cv-181 (E.D.N.C.), currently stayed in connection with the MDL.

28.     Plaintiff Heather Enders seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on Ohio purchasers of private health insurance, in the action *Enders v. Purdue Pharma, L.P., et. al.*, No. 19-cv-448 (S.D. Ohio), currently stayed in connection with the MDL.

29.     Plaintiff Jason Reynolds seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on Oregon purchasers of private health insurance, in the action *Reynolds v. Purdue Pharma, L.P., et. al.*, No. 18-cv-1911 (D. Or.), currently stayed in connection with the MDL.

30.     Plaintiff MSI Corporation seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on Pennsylvania purchasers of private health insurance, in the action *MSI Corp.  v. Purdue Pharma, L.P., et. al.*, No. 18-cv-1109 (W.D. Pa.), currently stayed in connection with the MDL.

31.     Plaintiff Deborah Green-Kuchta seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on South Dakota purchasers of private health insurance, in the action *Green-Kuchta v. Purdue Pharma, L.P., et. al.*, No. 18-cv-4132 (D.S.D.), currently stayed in connection with the MDL.

32.     Plaintiff W. Andrew Fox seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on Tennessee purchasers of private health insurance, in the action *Fox v. Purdue Pharma, L.P., et. al.*, No. 18-cv-194 (E.D. Tenn.), currently stayed in connection with the MDL.

33.     Plaintiff Dora Lawrence seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on Texas purchasers of private health insurance, in the action *Lawrence v. Purdue Pharma, L.P., et. al.*, No. 18-cv-2889 (S.D. Tex.), currently stayed in connection with the MDL.

34.     Plaintiff Michael Lopez seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on Utah purchasers of private health insurance, in the action *Lopez v. Purdue Pharma, L.P., et. al.*, No. 18-cv-719 (D. Utah), currently stayed in connection with the MDL.

35.     Plaintiff Zachary R. Schneider seeks to hold Debtor-Defendant accountable for the economic harm it has imposed on Wisconsin purchasers of private health insurance, in the action *Schneider v. Purdue Pharma, L.P., et. al.*, No. 19-cv-611 (E.D. Wis.) currently stayed in connection with the MDL.

36.     Insys's role in causing this national nightmare has hardly gone unnoticed.  Insys has reached a deal to pay at $195 million to resolve a U.S. Justice Department investigation into claims that the drugmaker paid doctors kickbacks to prescribe Subsys.  In connection therewith,

Insys agreed to terms of a stipulation executed after Insys's bankruptcy petition and has filed a motion for approval pursuant to section 9019 of the Bankruptcy Code in this Court, pursuant to which Insys agrees that the United State will have a $243 million allowed unsecured claim in its bankruptcy proceedings (capped at a $195 million recovery).

37.     In May 2019, a Boston jury in a fentanyl bribery case convicted Insys founder, and current owner of 60% of Insys's Stock, John Kapoor and four former executives of racketeering and other crimes that federal prosecutors say helped fuel the opioid epidemic.

38.     Indeed, Insys is the subject of numerous lawsuits filed in every state seeking billions of dollars in tort liabilities.  This exposure pales in comparison to the modest amount of declared cash approximating $37 million and lack of *any* funded debt reflected in the initial filings and disclosures in this bankruptcy case.

39.     Class Claimants are among the hardest hit victims of Insys's conduct and represent a key constituency in the cases to hold Insys accountable.  *See* Declaration of Andrew G. Long in Support of Debtors' Chapter 11 Petition and First Day Relief ("Declaration"; D.I 11), ¶54.  At bottom, this case is for the benefit of Insys's countless tort claimants.

40.     In so moving, Class Claimants have a proposal to streamline the claims resolution process and some of the key components thereof.

## JURISDICTION, VENUE, CONSTITUTIONAL AUTHORITY TO ENTER A FINAL ORDER, AND STANDING

41.     The Court has jurisdiction to consider this matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b) (1) and (2) (A).  Venue is proper in this district under 28 U.S.C. § 1408.

## SUMMARY OF RELIEF REQUESTED

42.    By this motion, the Class Claimants seek authority to file one or more class proofs of claim (the "Class Proof of Claim")[2] for all monetary components of the relief sought in the Class Actions, including (but not limited to) money damages, restitution, statutory and civil penalties, and any claim for counsel fees and expenses.

43.    The Class Claimants, on whose behalf Plaintiffs move, consist of all persons (including natural persons and entities) who purchased private health insurance policies in the States from 1996 through the present, and all persons who paid for any portion of employer-provided health insurance from 1996 through the present.

44.    The Class Actions allege and seek compensation for, and the Class Proofs of Claim will seek compensation for (among other things), Debtor-Defendant's cunning and deceptive marketing scheme to encourage doctors and patients to use opioids to treat chronic pain.  In doing so, Debtor-Defendant falsely minimized the risks of opioids, overstated their benefits, and generated far more opioid prescriptions than should have been issued.  The opioid epidemic is the product of the Debtor-Defendant's deliberately crafted, well-funded campaign of deception.  For years, Debtor-Defendant consciously underplayed the risks posed by the opioids they manufactured and sold, misleading susceptible prescribers and vulnerable patient populations.  As families and communities suffered from the scourge of opioid abuse, Debtor-Defendant earned billions in profits as a direct result of the harms it imposed.  The direct and proximate consequence of Debtor-Defendant's misconduct is that every purchaser in the States of private health insurance paid higher premiums, co-payments, and deductibles.  Insurance companies have considerable market power and pass on to their insureds the expected cost of

---

[2] A copy of the Class Proof of Claim is attached hereto as Exhibit A.

future care—including opioid-related coverage.  Accordingly, insurance companies factored in

the unwarranted and exorbitant healthcare costs of opioid-related coverage caused by Debtor-

Defendant and passed it along to insureds in the form of the higher costs referred to above.

45.    No materially adverse determination of substance or procedure against the Class

Claimants had been made by the courts in the Class Actions at the time they were consolidated

into and stayed in the MDL, and as against the Debtor-Defendant as of the commencement of

these cases.

46.    Plaintiffs respectfully submit that it is in the interest not only of the Class

Claimants, but also of all other creditors, for these claims to proceed on a class basis, and such

relief is certainly within the sound discretion of the Court.

47.    Therefore, pursuant to Federal Rules of Bankruptcy Procedure 9014 and 7023,

Class Claimants seek leave to file the Class Proofs of Claim under the standards set forth in

Federal Rule of Civil Procedure 23.

48.    To accommodate any putative bar date[3] in these cases, Class Proofs of Claim will

be submitted subject to this Court's granting the relief sought herein.  They do not include claims

for administrative expenses, which will be made prior to any bar date therefor, and which are

estimated to be substantial in amount.

49.    Courts routinely grant motions for class proof of claims.  *See In re Trebol Motors*

*Distrib. Corp.*, 220 B.R. 500 (1st Cir. 1998); *In re Pac. Sunwear of Cal., Inc.*, No. 16-10882,

---

[3] Debtor-Defendant has moved for the Court to set a General Bar Date in this matter.  *See*
Motion of Debtors Pursuant to 11 U.S.C. §§ 502 (b)(9) and 105(a) Fed. R. Bankr. P. 2002,
3003(c)(3), 5005, and 9007, and Local Rules 2002-1(e), 3001-1, and 3003-1 for Authority to (I)
Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice
Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and Other Important
Deadlines (D.I 25).

2016 WL 3564484 (Bankr. D. Del. June 22, 2016); *In re United Cos. Fin. Corp.*, 276 B.R. 368

(Bankr. D. Del. 2002); *In re Kaiser Group Int'l Inc.*, 278 B.R. 58 (Bankr. D. Del. 2002); *In re*

*Chaparral Energy, Inc.*, 571 B.R. 642 (Bankr. D. Del. 2017); *In re First Interregional Equity*

*Corp.*, 227 B.R. 358 (Bankr. D.N.J. 1998); *In re CommonPoint Mortgage Co.*, 283 B.R. 469,

475-76 (Bankr. W.D. Mich. 2002); *In re Livaditis*, 122 B.R. 330 (Bankr. N.D. Ill. 1990); *In re*

*Matter of Ret. Builders, Inc.*, 96 B.R. 390 (Bankr. S.D. Fla. 1988).

50.     Accordingly, and for the reasons set forth below, Plaintiffs' request for leave to

file the Class Proofs claim should be granted.

51.     Plaintiffs do not seek the allowance of the Class Proofs of Claim in any amount[4],

nor the determination that the Class Proofs of Claim are entitled to any particular priority under

the Bankruptcy Code.  The grant of the relief sought by Plaintiffs will not be applied to prejudice

any defense of law or fact relating to the alleged breaches of federal or state law by the Debtor-

Defendant.

## ALLEGATIONS OF THE CLASS ACTION; FACTUAL
## AND PROCEDURAL BACKGROUND

52.     The Class Action Complaints allege that Debtor-Defendant's concerted scheme to

misrepresent the risks of its opioid drugs improperly increased the number opioid prescriptions.

This in turn increased the costs of Class Claimants health insurance in order for Class Claimants'

insurers to pay for both Debtor-Defendant's addictive drugs and the health effects of addiction

they caused.

---

[4] Debtor-Defendant has moved for the Court to establish procedures and a schedule for estimation proceedings and propose a plan for estimating Debtor-Defendants' liabilities. *See* Motion of Debtors for (I) Entry of Orders Pursuant to 11 U.S.C. §§ 105(a) and 502(c) (A) Establishing Procedures and Schedule for Estimation Proceedings and (B) Estimating Debtors' Aggregate Liability for Certain Categories of Claims, (II) Entry of Protective Order, and (III) Subordination of Certain Penalty Claims. (D.I 29).

53.     In settlements with Department of Justice, Debtor-Defendant has entered agreements prohibiting it from making misrepresentations identified in the Class Action Complaints.  In discovery still ongoing in the MDL, Debtor-Defendant has demonstrated its intentional, multifaceted scheme designed to sell more pills, cognizant that costs associated therewith would be disproportionately borne by Class Claimants, among others.

54.     Counsel to Plaintiffs and the Class Claimants diligently pursued class certification in the Class Actions but no determination of the propriety of class certification had been made by the time the commencement of these cases stayed all proceedings in state and federal court.

55.     On June 10, 2019, Debtor-Defendant filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in this Court, automatically staying the Class Actions.

56.     The purpose of Debtor-Defendant's voluntary bankruptcy petition is to "maximize the value for all of [its] stakeholders and treat all stakeholders fairly in a transparent and equitable process."  Declaration, ¶76.

57.     Debtor-Defendant has made the determination that filing for Chapter 11 bankruptcy "was the only path to avoid running out of money and to maximize recoveries for [its] numerous stakeholders." *Id.*, ¶34.  These stakeholders include Class Claimants.

58.     "Put simply, the Debtors have limited assets and they want to use those assets to pay creditors." *Id.*, ¶79.

59.     Without filing one or more class proofs of claim, it is unlikely Class Claimants will be able to obtain relief against Debtor-Defendant, as Debtor-Defendant's bankruptcy petition contemplates "the sale of substantially all of the Debtors' assets[.]" *Id.*, ¶6.

60.     With what is essentially the liquidation of Debtor-Defendant, this may be Class Claimants' only opportunity to investigate not only Debtor-Defendant's illegal marketing of

opioids, but also any appropriate litigation claims against officers, directors, shareholders, and other insiders, and those who aided and abetted their improper conduct.

## **PLAINTIFFS SHOULD BE ALLOWED TO FILE CLASS PROOFS OF CLAIM**

***Legal Standard.***

61.     As this Court held in *Chaparral Energy, Inc.,* 571 B.R. 642, 646 (Bank. D. Del. 2017) in deciding whether to grant leave to file a class proof of claim, the Court must complete a two-step analysis.  First, the Court must determine whether Federal Bankruptcy Rule 7023 should be invoked.  *Id.*  Second, the Court must then determine whether the requirements of Federal Rule 23 have been satisfied.  *Id.*[5]

62.     Under this analysis, "[t]he vast majority of courts conclude that class proofs of claim are permissible in bankruptcy proceeding."  *See In re United,* 276 B.R. at 371-72 (Bankr. D. Del. 2002) (compiling cases).  Indeed, virtually all courts of appeals that have addressed the issue have concluded that class claims are permissible.  *See In re Wilborn,* 609 F.3d 748 (5th Cir. 2010); *In re Am. Reserve Corp.,* 840 F.2d 487 (7th Cir. 1988); *Birting Fisheries, Inc. v. Lane (In re Birting Fisheries, Inc.),* 92 F.3d 939 (9th Cir. 1996); *In re Charter Co.,* 876 F.2d 866 (11th Cir. 1989); *Reid v. White Motor Corp.,* 886 F.2d 1462 (6th Cir. 1989).

### ***The Court Should Invoke Federal Bankruptcy Rule 7023.***

63.     The Court should proceed pursuant to  Federal Bankruptcy Rule 7023 in determining whether Plaintiffs should be granted leave to file the Class Proofs of Claim for themselves and all other Class Members.

---

[5] While Rule 7023 generally applies in adversary proceedings, it may also be appropriate in a contested matter by invoking operation of Bankruptcy Rule 9014.  Bankruptcy Rule 9014(c) provides that the "court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply."  Thus, a class may be certified under Bankruptcy Rule 7023 and Rule 23 in either an adversary proceeding or a contested matter.

64.    Rule 7023 of the Federal Rules of Bankruptcy Procedure expressly allows class action proceedings, thus applying the class action requirements under the Federal Rules of Civil Procedure.  See FED. R. BANKR. P. 7023; *see also In re United*, 276 B.R. at 372 ("Rule 7023 of the Federal Rules of Bankruptcy Procedure expressly allows class certification in adversary actions, by incorporating Rule 23 of the Federal Rules of Civil Procedure."); *In re Am. Reserve Corp.*, 840 F.2d 487, 488 (7th Cir. 1988) (The Bankruptcy Rules "allow[] bankruptcy judges to apply Rule 7023-and thereby Fed. R. Civ. P. 23, the class action rule-to 'any stage' in contested matters.  Filing a proof of claim is a 'stage.'"); *In re Chateaugay Corp.*, 104 B.R. 626, 630 (S.D.N.Y. 1989) ("Rule 7023 would be meaningless if § 501 was deemed to bar class proofs of claim.") (citation omitted).

65.    Class Proofs of Claim will facilitate the proceedings in this matter by streamlining potentially thousands of unsecured claims on Debtor-Defendant's assets into a single manageable claim; granting leave to file class Proofs of Claim will aid Debtor-Defendant in their goal of providing "the forum to be able to negotiate a consensual resolution with some or most of their creditor groups, as they did with the DOJ, and they welcome the opportunity to negotiate with their creditors during these Chapter 11 Cases." Declaration, ¶76.

66.    Here, the Court should follow Bankruptcy Rule 7023 and apply the class action requirements under Rule 23 of the Federal Rules of Civil Procedure.

***Class Members Satisfy the Requirements for Class Certification Under Rule 23.***

67.    In order to satisfy the Rule 23 requirements, Plaintiffs must first show that the four elements – numerosity, commonality, typicality and adequacy – have been met variously as to the Class Members, themselves as class claimants, and their counsel.  *See* FED. R. CIV. P. 23(a).  Further, Rule 23 also requires that Class Members must satisfy at least one of the subdivisions of Rule 23(b).

68.    Applying these requirements, courts routinely uphold the jurisdiction of bankruptcy courts over class actions when the Rule 23 requirements are satisfied.  *See In re Pac. Sunwear of Cal., Inc.*, No. 16-10882 (LSS), 2016 WL 3564484 (Bankr. D. Del. June 22, 2016)

(granting motion to file a class proof of claim); *In re United*, 276 B.R. at 371 (granting motion to certify class to permit the filing of a class proof of claim); *In re First Interregional Equity Corp.*, 227 B.R. 358 (Bankr. D. N.J. 1998) (granting motion to file class proof of claim); *In re Trebol Motors Distrib. Corp.*, 220 B.R. 500 (B.A.P. 1st Cir. 1998) (affirming district court's decision to grant motion for class proof of claim); *In re Livaditis*, 122 B.R. 330 (Bankr. N.D. Ill. 1990) (granting plaintiffs' motion to certify class for purposes of filing a class proof of claim and granting plaintiffs' motion to file a class proof of claim); *In re Matter of Ret. Builders, Inc.*, 96 B.R. 390 (Bankr. S.D. Fla. 1988).

69.     As set forth below, Class Members satisfy all of the requirements for class certification under Rule 23.

**The Rule 23(a) Requirements are Satisfied.**

<u>Numerosity is Satisfied</u>

70.     A class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).  Numerosity is presumed at a class size of 40 members.  *See Stewart v. Abraham,* 275 F.3d 220, 226-227 (3d Cir. 2001) (citation omitted).

71.     Although the exact number of Class Members is unknown at this time, it is beyond fair dispute that several million residents in each of the States purchased private health insurance or paid for a portion of employer-provided health insurance during the period at issue; as many as half of each of the States' respective populations.

72.     Here, upon information and belief, the millions of Class Members will ultimately be easily identified through third-party business records.

<u>Commonality is Satisfied.</u>

73.     The commonality requirement is satisfied when "there are questions of law or fact common to the class."  *See* FED. R. CIV. P. 23(a)(2)

74.     In *Wal-Mart Stores, Inc. v. Dukes*, the United States Supreme Court held that a case met the commonality requirement whenever the plaintiffs raised a common contention and the "determination of its truth or falsity will resolve an issue that is central to the validity of each

one of the claims in one stroke." 564 U.S. 338, 350 (2011). The Court went on to hold that,
"[w]e quite agree that for purposes of Rule 23(a)(2), even a single common question will do . . .
." *Id.* at 359 (quotations omitted). While there need to be *common* claims, they "need not be
identical." *Stoffels v. SBC Commc'n Inc.*, 238 F.R.D. 446, 452 (W.D. Tex. 2006).

75.    These cases easily meets the commonality requirement. Class Members here
claim to have been injured by policies that allegedly violate the same laws in each of the
individual States. Additionally, the common legal and factual questions are uniform for all Class
Members and include, but are not necessarily limited to the following:

- whether Debtor-Defendant made material misrepresentations regarding the benefits and
  risks of its products;

- whether Debtor-Defendant acted intentionally with respect to the foregoing;

- whether Debtor-Defendant was negligent in the distribution of its products;

- whether Debtor-Defendant acted in violation of state and federal law;

- whether the Class is entitled to restitution and/or disgorgement, in addition to or as a
  substitute for damages under the laws of the individual States; and

- whether is the Class Claimants are entitled to damages and/or injunctive relief.

76.    Once liability is established, damages (by whatever formula is established) for
individual Class Members can be calculated mechanically by reviewing Class Members'
insurance companies' records. Further, commonality is not defeated by the need for an
individualized damages determination. *See Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 57
(3d Cir.1994). Accordingly, commonality is easily satisfied here.

### *Typicality is Satisfied*

77.    Typicality is established where the "claims or defenses of the representative
parties are typical of the claims or defenses of the class . . . ." Fed. R. Civ. P. 23(a)(3).

78.    Generally, "the commonality and typicality requirements" tend to merge. *Dukes*,
564 U.S. at 349 n.5. Indeed, "like commonality, the typicality requirement does not mandate
that all class members share identical claims." *In re United*, 276 B.R. at 373 (citation omitted);

*see also Driver*, 265 F.R.D. at 304 ("typicality is a low hurdle that requires neither complete coextensively nor even substantial identity of claims.") (citations and quotation marks omitted). "Typicality entails an inquiry into whether 'the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'" *In re United*, 276 B.R. at 373 (citation omitted); *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 304 (N.D. Ill. 2010) ("[t]ypicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff.") (citation omitted). Further, factual differences do not defeat typicality. *In re Pac. Sunwear of Cal.*, 2016 WL 3564484, at *8.

79.    In *Driver*, the court held that typicality was satisfied because the class representatives' claims were typical of the class. *Driver,* 265 F.R.D. at 304. In particular, there was no suggestion that the proposed class representatives were treated differently from other class members as a result of debtor-defendant's conduct. *Id.*; *Mooney,* 2016 WL 4576996, at *7-8.

80.    Each of the Plaintiffs purchased health insurance during the applicable time period. Further, Plaintiffs and Class Members have been injured in the same manner by the same Debtor-Defendant and Plaintiffs seek the same relief as and for each class member in their respective Class Actions. Therefore, the proposed representatives' claims have the same essential characteristics as the claims of the class at large, and the typicality requirements of Rule 23 are met.

### *Adequacy is Satisfied*

81.    The final requirement of Rule 23(a)—whether the representative parties will fairly and adequately protect the interests of the class—is also satisfied here.

82.    Adequacy is satisfied if (1) counsel for the named plaintiffs is able to competently handle the suit; and (2) the class representative's interests are not antagonistic to those of the class members. *See In re United*, 276 B.R. at 374.

83.     In *In re United*, the court held that adequacy was satisfied because plaintiffs' counsel was experienced in litigating the type of action at issue and as such would "promote the interests of the class representatives." *Id*.  Further, the named plaintiff had the same interests as putative class members and there appeared to be no claims conflicts with putative class members.  *Id*.; *see also Driver*, 265 F.R.D. at 301; *Mooney*, 2016 WL 4576996, at *8.

84.     Here, Plaintiffs have no interests that diverge from those of their respective classes, and their claims are typical of the claims of their classes.  As noted above, they have been injured in the same manner (by Debtor-Defendant's conduct) and seek the same relief as each Class Member.  Further, the same strategies that will vindicate Plaintiffs' claims will vindicate those of their respective Classes.

85.     Thus, Plaintiffs are adequate representatives for the Class Proofs of Claim.  Additionally, counsel is qualified and able to litigate the claims.  Keller Lenkner LLC, Consovoy McCarthy PLLC, and Morgan & Morgan, P.A. have substantial experience in prosecuting complex litigation and class actions and have the financial resources to do so.

86.     Thus, Plaintiffs and their counsel will adequately represent the proposed classes in accordance with Rule 23(a)(4).

**The Rule 23(b) Requirements are Satisfied.**

87.     Once the requirements of Rule 23(a) are met, plaintiffs must also satisfy the requirements of at least one of the subdivisions of Rule 23(b).  Rule 23(b) provides (1) that Class Members' claims not only have common questions of law or fact but they also predominate over any individual questions; and (2) the class action is the superior method to adjudicate the action fairly and efficiently.  FED. R. CIV. P. 23(b)(3).  Here, Plaintiffs satisfy the requirements of Rule 23(b)(3).

<u>Common Questions of Law and Fact Predominate</u>

88.     The Class Members' claims easily meet Rule 23(b)(3)'s requirement that the questions of law or fact common to the class members predominate over any individual questions.  FED. R. CIV. P.23(b)(3).

89.    When all Class Members were injured by the same challenged conduct, the common questions and methodology in the litigation predominate over individual issues. *See Clark*, 2013 WL 1789519, at \*2.

90.    Courts routinely find that the predominance factor has been met where, as here, Class Members' claims will be determined based on common proof. *See Mooney*, 2016 WL 4576996, at \*7. For instance, in *Mooney*, the court held that predominance was satisfied because records and representative testimony "would allow a common answer to the common question." *Id*.

91.    Additionally, the relevant inquiry under Rule 23(b)(3) of whether common issues will predominate does not require a determination of whether plaintiffs will actually prevail on the merits. *See Clark*, 2013 WL 1789519, at \*2 ("the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits.") (citation omitted); *In re United*, 276 B.R. at 372; *Driver*, 265 F.R.D. at 300.

92.    Here, the claims for recompense for increased health insurance costs attributable to Debtor-Defendant's conduct predominates over individual issues. Additionally, the resolution of that issue will require common proof and predominate over any individualized issues; indeed, the only individual issue would appear to be the amount by which each Class Member has been injured. Therefore, predominance is satisfied.

### *The Class Action is the Superior Method of Adjudication*

93.    Additionally, the Class Members' claims also meet Rule 23(b)(3)'s requirement that a class action be a superior method of adjudicating the matter. Rule 23(b)(3) includes a list of factors for courts considering the superiority requirement, including: (1) interest of members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of litigation already commenced by class members; (3) the desirability of concentrating litigation of claims in a particular forum; and (4) the difficulties likely to be encountered in managing a class action. FED. R. CIV. P.23(b)(3).

94.     Here all of the factors demonstrate that a class action is the superior method of adjudicating this matter.  First, if, as we expect, few if any individual proofs of claim will have been made by the bar date this Court sets as applicable to general unsecured and priority unsecured claims; accordingly, it will have been made clear that there is not an interest in individually prosecuting their claims.  Moreover, many of the Class Members would be discouraged from vindicating their rights if they were required to pursue their claims on an individual basis.  Second, this forum certainly has the capacity and experience to handle this litigation.  Third, given the common issues in this case, there will be little difficulty in the management of a class action.  Indeed, this procedure is far superior to other methods, which would likely overburden the court and claims administration systems with individuals trying to navigate through them without legal representation, or which would entirely foreclose *any* private health insurance purchaser from *any* relief.

95.     Therefore, Plaintiffs have demonstrated that all of the requirements of Rule 23(b)(3) have been satisfied.

## **CONCLUSION**

96.     For all the foregoing reasons, Plaintiffs requests that the Court grant their request to file the Class Proofs of Claim.

Respectfully submitted,

Dated: June 16, 2019                    By: /s/ *Joseph H. Huston, Jr.*
                                          Joseph H. Huston, Jr. (No. 4035)
                                          STEVENS & LEE, P.C.
                                          919 North Market Street, Suite 1300
                                          Wilmington, DE 19801
                                          Tel: 302.425.3310
                                          *jhh@stevenslee.com*

                                          Nicholas F. Kajon*
                                          STEVENS & LEE, P.C.
                                          485 Madison Avenue, 20th Floor
                                          New York, NY 10022
                                          Tel: 212.319.8500
                                          *nfk@stevenslee.com*

Ashley Keller*
ack@kellerlenkner.com
Seth Meyer*
sam@kellerlenkner.com
KELLER LENKNER LLC[6]
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
Tel: 312.741.5220

U. Seth Ottensoser*
so@kellerlenkner.com
KELLER LENKNER LLC
477 Madison Ave., Suite 621
New York, NY 10022
Tel: 516.782.3817

William S. Consovoy*
will@consovoymccarthy.com
J. Michael Connolly*
mike@consovoymccarthy.com
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Boulevard, Suite 700
Arlington, Virginia 22201
Tel: 703.243.9423

James Young*
jyoung@ForThePeople.com
MORGAN & MORGAN, P.A.[7]

---

[6] Keller Lenkner LLC and Consovoy McCarthy Park PLLC also represent clients in divers other matters pending against Debtor-Defendant Insys Therapeutics, Inc., including Bannock County, Idaho; City of Boise, Idaho; City of Pocatello, Idaho; City of Preston, Idaho; City of Duluth, Minnesota; City of Rochester, Minnesota; Yellow Medicine County, Minnesota; City of Superior, Wisconsin; and  Ramon Martin of Arizona, individually and on behalf of all others similarly situated.

[7] Morgan & Morgan, P.A. also represent clients in divers other matters pending against Debtor-Defendant Insys Therapeutics, Inc. and Debtor Insys Pharma, Inc., including City of Deerfield Beach, Florida; City of Hallandale Beach, Florida; City of Pembroke Pines, Florida; City of Miramar, Florida; City of Lauderhill, Florida; City of Ft. Lauderdale, Florida; Monroe County, Florida; County Commission of Crawford County, Kansas; County Commission of Neosho County, Kansas; County Commission of Mayes County, Oklahoma; County Commission of Rogers County, Oklahoma; County Commission of Nowata County, Oklahoma; County Commission of Creek County, Oklahoma: County Commission of Washington County, Oklahoma; County Commission of Okmulgee County, Oklahoma; Town of Kermit, West Virginia; City of Welch, West Virginia; Town of West Hamlin, West Virginia; McDowell County, West Virginia; Clay County, West Virginia; Lincoln County, West Virginia; Mercer County, West Virginia; Town of Chapmanville, West Virginia; Mingo County, West Virginia; Town of Chapmanville, West Virginia; Town of Hamlin, West Virginia; City of Williamson,

COMPLEX LITIGATION GROUP
76 S. Laura St., Suite 1100
Jacksonville, FL 32202
Tel: 904.361.0012

Juan R. Martinez*
juanmartinez@ForThePeople.com
MORGAN & MORGAN, P.A.
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel: 813.223.5505

* Admission *pro hac vice* to be sought

*Counsel for Plaintiff and the Putative Classes*

---

West Virginia; Town of Gilbert, West Virginia.