# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| **In re** | **Chapter 11** |
| **INSYS THERAPEUTICS, INC.,** *et al.*, | **Case No. 19-11292 (KG)** |
| Debtors.[1] | **Jointly Administered** |

## MOTION SEEKING APPOINTMENT OF OFFICIAL COMMITTEE OF PUBLIC ENTITIES PURSUANT TO 11 U.S.C. §§ 1102(a)(2) & 105(a)

---

1. The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LLC (6577); and IPT 355, LLC (0155). The Debtors' mailing address is 1333 South Spectrum Blvd #100, Chandler, Arizona 85286.

1171180.1/81704.01001

**TABLE OF CONTENTS**

Page

Preliminary Statement ...................................................................................................................1

Jurisdiction .....................................................................................................................................2

Background ....................................................................................................................................2

Requested Relief ............................................................................................................................3

ARGUMENT ..................................................................................................................................3

    I.    The Bankruptcy Code Clearly Provides for the Appointment of More Than One Official Committee When Necessary To Assure Adequate Representation of Creditors ............................................................................................................................3

        A.    These Chapter 11 Cases Are Large and Complex ..........................................................4

        B.    The Municipalities and Other Public Entities Will Struggle to Participate In These Cases Unless A Public Entities Committee Is Appointed. ................................5

        C.    Appointing an Official Committee of Public Entities Will Reduce Costs and Conserve Judicial Resources ................................................................................5

        D.    The Official Committee of Public Entities will Represent the Creditors With The Majority of Claims In These Cases, Who Are Not Represented by the Unsecured Creditors Committee .....................................................................6

        E.    There is Ample Precedent For The Appointment of an Official Committee of Public Entities ...........................................................................................................7

        F.    Delaware Bankruptcy Judges Have Appointed Additional Official Committees When Appropriate. ....................................................................................7

        G.    Judge Montali's Ruling Denying The Appointment of An Official Committee of Municipalities in the PG&E Case Does Not Provide A Basis For Denying This Motion. .........................................................................................8

    II.    Sections 1102(b)(1) and 101(41) Do Not Provide A Basis For Denying The Municipalities' Request. ..................................................................................................8

CONCLUSION ..............................................................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re American Home Mortgage Holding, Inc.*, No. 07-11047 (CSS) (Bankr. D. Del. Nov. 8, 2008), ECF 6529 ................................................................................... 7, 8

*In re Beker Indus. Corp.*, 55 B.R. 945 (Bankr. S.D.N.Y. 1985) ..................................................... 6

*Bessette v. Avco Fin. Servs.*, 230 F.3d 439 (1st Cir. 2000) .......................................................... 10

*In re Budd Co., Inc.*, 512 B.R. 910 (Bankr. N.D. Ill. 2014) ............................................................ 4

*In re Davis Industries, Inc.*, No. 99-bk-19302 (Bankr. C.D. Cal. Sept. 17, 1999) ......................... 7

*In re Dewey & LeBoeuf LLP*, No. 12-12321 (MG), 2012 Bankr. LEXIS 5534 (Bankr. S.D.N.Y. Nov. 29, 2012) ............................................................................................... 4

*In re Dow Corning Corp.*, 212 B.R. 258 (E.D. Mich. 1997) .......................................................... 9

*In re Enron Corp.*, 279 B.R. 671 (Bankr. S.D.N.Y. 2002) ......................................................... 3, 6

*In re Insys Therapeutics, Inc.*, No. 19-11292(KG) (Bankr. D. Del. June 10, 2019), ECF No. 29 ............................................................................................................................. 1, 4

*In re Insys Therapeutics, Inc.*, No. 19-11292(KG) (Bankr. D. Del. June 20, 2019), ECF No. 88 ................................................................................................................................. 2

*In re Lion Capital Group*, 44 B.R. 684 (Bankr. S.D.N.Y. 1984) ................................................... 7

*In re McLean Industries, Inc.*, 70 B.R. 852 (Bankr. S.D.N.Y. 1987) ............................................. 3

*In re National Prescription Opiate Litigation*, No. 17-md-2804, (N.D. Ohio May 10, 2018), ECF No. 7 ................................................................................................................ 4

*New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86 (2d Cir. 2003) ............................................. 10

*In re PG&E Corporation*, No. 19-30088 (Bank. N.D.C.A. Mar. 13, 2019), ECF No. 885 ................................................................................................................................... 8

*In re PG&E Corporation*, No. 19-30088 (Bank. N.D.C.A. Mar. 14, 2019), ECF No. 884 ................................................................................................................................... 8

*In re Pilgrim's Pride Corp.*, 407 B.R. 211 (Bankr. N.D. Tex. 2009) ............................................. 6

*In re Residential Capital, LLC*, 480 B.R. 550 (Bankr. S.D.N.Y. 2012) ......................................... 4

*In re Salant Corp.*, 53 B.R. 158 (Bankr. S.D.N.Y. 1985)............................................................3

*United States v. Ron Pair Enters.*, 489 U.S. 235 (1989)..............................................................10

**Statutes and Rules**

11 U.S.C. § 101(41) ..................................................................................................................8, 9

11 U.S.C. § 105 ............................................................................................................................10

11 U.S.C. § 105(a) ...............................................................................................................1, 3, 10

11 U.S.C. § 502(c) ..........................................................................................................................1

11 U.S.C. § 1102(a) .......................................................................................................................9

11 U.S.C. § 1102(a)(2)................................................................................................................1, 3

11 U.S.C. § 1102(b)(1) ....................................................................................................7, 8, 9, 10

28 U.S.C. § 157(b) .........................................................................................................................2

28 U.S.C. § 1334............................................................................................................................2

28 U.S.C. § 1408............................................................................................................................2

28 U.S.C. § 1409............................................................................................................................2

**Others/ Miscellaneous**

5 L. King *Collier on Bankruptcy* ¶ 1102.2 (15th Ed. 1984) ............................................................6

*Number of Municipal Governments & Population Distribution*, National League
    of Cities, https://www.nlc.org/number-of-municipal-governments-population-
    distribution (last visited June 24, 2019)......................................................................................4

The City of Prescott, Arizona; City of Surprise, Arizona; Carroll County, Maryland; and Henry County, Missouri (collectively, the "Municipalities"), by and through their undersigned attorneys, submit this Motion Seeking Appointment of Official Committee of Public Entities Pursuant to 11 U.S.C. §§ 1102(a)(2) and 105(a) (the "Motion"), by which the Municipalities are asking this Court to direct the Office of the United States Trustee (the "UST") to appoint an Official Committee of Public Entities (a "Public Entities Committee") pursuant to 11 U.S.C. §§ 1102(a)(2) and 105(a).

**Preliminary Statement**

1. The Debtors commenced these Chapter 11 Cases so that they could deal with the overwhelming tide of litigation they face. States, cities, counties and other governmental units (the "Public Entities") have already brought 1,000 lawsuits[2], which comprise the overwhelming majority of the claims asserted against the Debtors as of the Petition Date. (By contrast, there are only some 30 personal injury suits pending (Debtors' Estimation Motion at 10)). They seek to be made whole for costs arising out of the opioid epidemic that they assert have been borne by the public. Indeed, substantially more than half of the creditors that expressed interest in serving on the official unsecured creditors' committee (the "UCC") were Public Entities. But despite the Public Entities' eagerness to serve — as evidenced by their submission of applications to serve and proxies, and the fact that they sent representatives from all over the country to the formation meeting — and their numerical claim amount dominance of the creditor body, the UST summarily excluded them from service on the UCC appointed in these Chapter 11 Cases. By contrast, out of

---

[2] *See* Motion of Debtors for (I) Entry of Orders Pursuant to 11 U.S.C. §§ 105(a) and 502(c) (A) Establishing Procedures and Schedule for Estimation Proceedings and (B) Estimating Debtors' Aggregate Liability for Certain Categories of Claims, (II) Entry of Protective Order, and (III) Subordination or Certain Penalty Claims (the "Estimation Motion"), *In re Insys Therapeutics, Inc.*, No. 19-11292(KG) (Bankr. D. Del. June 10, 2019), ECF No. 29 at 8.

the 30 personal injury plaintiffs, the UST seated five on the Committee (a majority of the nine-member committee). As a result, the UCC is not representative of the creditor body as a whole.

2. The Municipalities make this Motion to seek to redress the imbalance created by the blanket exclusion of Public Entities from the UCC.[3] The UCC, as now constituted, will be driven by the interests of individual personal injury plaintiffs (who make up a majority of the UCC), which are manifestly different from, and potentially adverse to, the Public Entities' claims.[4] Where, as in these Chapter 11 Cases, virtually all claims are unliquidated litigation claims of different kinds, and the critical issue in the case is how to handle those claims, it is unfair to hand the steering wheel to creditors that do not represent the interests of the creditors that have the most and the largest claims.

## Jurisdiction

3. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

4. The Municipalities, along with dozens of other Public Entities, are creditors in these Chapter 11 Cases and indicated their interest in serving on the UCC. At the UCC formation meeting on June 19, 2019, the UST did not appoint any of the Public Entities interested in serving on the UCC.[5]

5. On June 23, 2019, the Municipalities formally requested via letter, attached hereto

---

[3] *See* Notice of Appointment of Committee of Unsecured Creditors, *In re Insys Therapeutics, Inc.*, No. 19-11292(KG) (Bankr. D. Del. June 20, 2019), ECF No. 88.

[4] *See id.*

[5] *See id.*

as <u>Exhibit A</u>, that the UST form and appoint an Official Committee of Public Entities. In support of the relief requested herein, the Municipalities submit the Declaration of Eric J. Fromme, Esq. (the "<u>Fromme Declaration</u>"), filed contemporaneously herewith and attached hereto, as <u>Exhibit B</u>. As of the filing of this Motion, the UST has not responded to the Municipalities' request.

**Requested Relief**

6. The Municipalities seek the entry of an order directing the UST to appoint an Official Committee of Public Entities pursuant to 11 U.S.C. §§ 1102(a)(2) and 105(a).

**ARGUMENT**

I. **The Bankruptcy Code Clearly Provides for the Appointment of More Than One Official Committee When Necessary To Assure Adequate Representation of Creditors**

7. By virtue of the UST's blanket exclusion of Public Entities from service on the UCC despite the nature, amount, and number of their claims, the UST constituted a UCC that does not adequately represent the creditor body. *See* Fromme Declaration at 2. The Bankruptcy Code (the "<u>Code</u>") accommodates the possibility that this problem might arise, and provides a specific remedy: the appointment of an additional committee, with the specific goal of assuring "adequate representation of creditors." 11 U.S.C. §1102(a)(2).

8. Although the Code does not define the term "adequate representation" and there is no statutory test, this Court has discretion to appoint an additional committee based upon the facts and circumstances of the case. *In re McLean Industries, Inc.*, 70 B.R. 852, 861 (Bankr. S.D.N.Y. 1987) ("[T]he Code neither mandates nor precludes multiple creditors' committees in a Chapter 11 reorganization case. In each instance, the court is directed to determine whether an additional committee is required to assure adequate representation of creditors," *quoting In re Salant Corp.*, 53 B.R. 158, 161 (Bankr. S.D.N.Y. 1985)). Therefore, the decision whether to appoint an additional creditors' committee is to be made on a case-by-case basis. *In re Enron Corp.*, 279 B.R.

3

671, 684-85 (Bankr. S.D.N.Y. 2002).

9. In evaluating adequate representation, the court must consider all relevant factors including (1) the size and complexity of the case, (2) creditors' ability to participate without an additional committee, (3) the delay and additional cost that would result if the court grants the motion, (4) the tasks which a separate committee is to perform, and (5) other factors relevant to the issue of adequate representation. *In re Dewey & LeBoeuf LLP*, No. 12-12321 (MG), 2012 Bankr. LEXIS 5534, at *11-12 (Bankr. S.D.N.Y. Nov. 29, 2012); *see also In re Budd Co., Inc.*, 512 B.R. 910, 912-13 (Bankr. N.D. Ill. 2014) (citing *In re Residential Capital, LLC*, 480 B.R. 550 (Bankr. S.D.N.Y. 2012)). No one factor is dispositive and the court must focus on the circumstances of the particular case. *In re Budd*, 512 B.R. at 913. The factors favor the appointment of a Public Entities Committee in these Chapter 11 Cases.

### A. These Chapter 11 Cases Are Large and Complex

10. The litigation arising out of the opioid crisis spans the United States and comprises thousands of cases in hundreds of federal and state courts, including a multidistrict litigation pending in the Northern District of Ohio, *In re National Prescription Opiate Litigation*, No. 1:17-md-2804 (N.D. Ohio Dec. 12, 2017) (the "MDL") that has been called the most complex litigation ever brought.[6] There are over 3,000 counties and county equivalents in the United States, and over 35,000 cities and towns in the United States.[7] While each of these Public Entities may not have claims in these Chapter 11 Cases, the sheer numbers indicate the magnitude of the claims of the Public Entities.

---

[6] Tr. of Record, *In re National Prescription Opiate Litigation*, No. 17-md-2804, (N.D. Ohio May 10, 2018), ECF No. 418 at 7; Declaration of Andrew G. Long in Support of Debtors' Chapter 11 Petitions and First Day Relief, *In re Insys Therapeutics, Inc.*, No. 19-11292(KG) (Bankr. D. Del. June 10, 2019), ECF No. 11.

[7] *Number of Municipal Governments & Population Distribution*, National League of Cities, https://www.nlc.org/number-of-municipal-governments-population-distribution (last visited June 24, 2019).

11. Insys Therapeutics, Inc., one of the Debtors, is one of many defendants in the MDL and in hundreds of other cases pending across the country. These cases will necessarily involve significant questions of the reach of the automatic stay, the appropriate means of quantifying thousands of unliquidated claims, and res judicata and collateral estoppel.

12. Moreover, in these cases the Debtors have front-loaded issues that are critical to Public Entity creditors and that must be addressed by bankruptcy counsel, not litigation counsel. Chief among these is the motion to approve procedures for estimating the Public Entities' claims. The Public Entity creditors have vital interests in these procedures that are different from the interests of personal injury plaintiffs, and it is impractical and inequitable to require individual Public Entities to retain separate bankruptcy counsel to address these outcome-determinative issues.

### B. The Municipalities and Other Public Entities Will Struggle to Participate In These Cases Unless A Public Entities Committee Is Appointed.

13. Without representation in the form of an official committee, the Municipalities and the other Public Entities will have no choice but to assert their interests individually or to be silent in these Chapter 11 Cases. Putting Public Entities to the choice of "going it alone" or forgoing the opportunity to be heard is unfair to these creditors. They have no profit motive and assets limited by stringent and regulated budgets that cannot be increased on the fly to accommodate the need to protect their claims in these Chapter 11 Cases.

### C. Appointing an Official Committee of Public Entities Will Reduce Costs and Conserve Judicial Resources

14. Appointing a Public Entities Committee will promote judicial efficiency. Absent such a Committee, the tens of thousands of Public Entities with significant interests in these Chapter 11 Cases will have no choice but to take positions in their own names, potentially resulting in chaos. The Debtors will need to respond to each of these Public Entities, at the expense of the

5

estates, while simultaneously draining judicial resources. Unified representation will assist the Debtors in expediting these Chapter 11 Cases while significantly reducing costs. *In re Enron*, 279 B.R. at 690 ("A Committee is a catalyst for negotiation and compromise between parties in the reorganization process.").

> **D.  The Official Committee of Public Entities will Represent the Creditors With The Majority of Claims In These Cases, Who Are Not Represented by the Unsecured Creditors Committee**

15. The UCC that has been appointed in these cases is not representative of the creditor body. While the amounts of claims are as yet unliquidated, the Debtors acknowledge that the largest creditor contingent in these Chapter 11 Cases is the Public Entities. (Debtors' Estimation Motion at 7-11). In other cases in which a substantial faction of the creditor body was not represented on the official unsecured creditors' committee, courts have appointed additional official committees. *In re Pilgrim's Pride Corp.*, 407 B.R. 211 (Bankr. N.D. Tex. 2009) (equity committee appointed where the court found that neither management nor an *ad hoc* committee could adequately represent shareholder interests). Committees should be representative of the creditor body as a whole, as opposed to being handed over to factions of particular classes. *In re Beker Indus. Corp.*, 55 B.R. 945, 949 (Bankr. S.D.N.Y. 1985) (citing 5 L. King *Collier on Bankruptcy* para. 1102.2 at 1102-18 (15th Ed. 1984)). Every case is different, and in this case, given that the UST has excluded the entities that together hold the majority of unsecured claims in the case from the UCC, a Public Entities Committee should be formed.

16. Indeed, the Debtors have acknowledged that the Municipality Litigation Claimants have claims that are different from those asserted by the personal injury plaintiffs. The Debtors' Estimation Motion puts the Municipality Claims in their own category, distinct from Personal Injury Claims.

6

### E. There is Ample Precedent For The Appointment of an Official Committee of Public Entities

17. In appointing a Public Entities Committee, this Court will not be alone. At least two courts have previously done so.[8] The Court in *In re Lion Capital Group* appointed a committee made up of municipalities and school districts, over the objection of the UST in that case, citing "the heavy preponderance of the claims of municipalities and school districts (over 90%)." 44 B.R. 684, 686 (Bankr. S.D.N.Y. 1984). The *Lion Capital* Court further held that "the municipalities and school districts claimants in this case could so serve because, inter alia, the provision of § 1102(b)(1) that only 'persons' could 'ordinarily' serve on a committee was not an absolute bar and because the claims of municipalities and school districts were not tax claims entitled to priority." *Id.* at 685.

### F. Delaware Bankruptcy Judges Have Appointed Additional Official Committees When Appropriate.

18. In the *In re American Home Mortgage Holding, Inc.* case, Judge Sontchi appointed an official committee of homeowners to represent some 450 unsecured creditors whose interests were not represented on the unsecured creditors' committee. No. 07-11047 (CSS) (Bankr. D. Del. Nov. 8, 2008). Judge Sontchi's reasoning was twofold: first, the committee membership did not include any of the homeowners, even though there were hundreds of them, and therefore did not represent the homeowners' interests, and second, it would be very difficult for the homeowners to represent their own interests effectively without having an official committee to speak for the group.[9]

---

[8] *See In re Lion Capital Group*, 44 B.R. 684 (Bankr. S.D.N.Y. 1984); *see also In re Davis Industries, Inc.*, No. 99-bk-19302 (Bankr. C.D. Cal. Sept. 17, 1999).

[9] Tr. of Record, *In re American Home Mortgage Holding, Inc.*, No. 07-11047 (CSS) (Bankr. D. Del. Nov. 8, 2008), ECF No. 6529 at 76.

19. The situation in these cases is similar to that in *American Home*. The UCC does not include a proportional number of Public Entity claimants (not one Public Entity is on the UCC), whose claims are distinct from those of the members of the UCC, and given the very nature of governmental entities, they are unlikely to be able to engage counsel to protect their interests.

### G. Judge Montali's Ruling Denying The Appointment of An Official Committee of Municipalities in the PG&E Case Does Not Provide A Basis For Denying This Motion.

20. The situation in *In re PG&E Corporation* is very different from the situation in these cases. In *PG&E*, Judge Montali declined to appoint an official committee of California municipalities (which would have been the third official committee in the case had it been appointed).[10] First, unlike the municipalities in *PG&E*, the Public Entities here represent the vast majority of the claims against the Debtors. Second, the Debtors here seek radically expedited relief in the form of injunctions and approval of bidding procedures and estimation processes that will irrevocably affect the Public Entities' rights in substantial litigation pending outside of this Court, a scenario not present in *PG&E*. Third, in *PG&E* the moving municipalities had already constituted themselves as an *ad hoc* committee that was actively participating in the case through *ad hoc* committee counsel; the Court indicated that their interests were being more than adequately represented and heard.[11]

## II. Sections 1102(b)(1) and 101(41) Do Not Provide A Basis For Denying The Municipalities' Request.

21. According to section 1102(b)(1), an official committee of creditors

> shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor **of the kinds represented on such**

---

[10] *See* Order Denying the Motion of Public Entities for Appointment of Official Committee of Public Entities, *In re PG&E Corporation*, No. 19-30088 (Bank. N.D.C.A. Mar. 14, 2019), ECF No. 884.

[11] Tr. of Record, *In re PG&E Corporation*, Doc. 19-30088 (Bank. N.D.C.A. Mar. 13, 2019), ECF No. 885 at 167.

> **committee,** or of the members of a committee organized by creditors before the commencement of the case under this chapter, if such committee was fairly chosen and is representative of the different kinds of claims to be represented.

11 U.S.C. § 1102(b)(1) (emphasis supplied). Unlike section 1102(a), which references "creditors," section 1102(b)(1) refers to "persons." In turn, section 101(41) defines "person" to exclude most governmental units. In the unique circumstance of these Chapter 11 Cases, the language of section 1102(b)(1) creates a tautology: if the definition of the word "persons" is used to exclude from service the holders of an entire group of claims — here the claims held by Public Entities — then the appointed UCC does not represent the types of claims held by the excluded creditors at all, and the statement that the committee should include the holders of the seven largest claims "of the type represented by the committee" doesn't apply to the Public Entities — because their claims are not represented by the UCC.

22. The Municipalities are not taking a position on the UST's decision to exclude Public Entities from service on the UCC and are not questioning the individual UCC members and or its professionals. Instead, the Municipalities' position is that, taking the current composition of the UCC as a given, the Public Entities need their own official committee because they are the biggest faction in the creditor body and are not represented on the UCC. In an official committee that includes only creditors who are Public Entities, section 1102(b)(1) means only that ordinarily the Public Entities holding the seven largest unsecured claims would be appointed to serve on the committee. It would be absurd to argue that the use of the word "person" in 1102(b)(1) is actually an under-the-radar prohibition of committees of governmental units in all cases.[12]

---

[12] *See In re Dow Corning Corp.*, 212 B.R. 258, 264 (E.D. Mich. 1997) ("Section 1102(b)(1) appears to give the United States Trustee a 'guide' to the type of persons the Trustee may appoint on the committees. Section 1102(b)(1) provides that 'ordinarily' the membership of a committee should consist of the seven largest creditors of the creditor class. It could be interpreted that in a matter that is not an 'ordinary' case, such as a mass tort case, the United States Trustee may appoint members who are not the largest creditors.").

9

23. In considering the Municipalities' Motion, this Court should focus on the plain language of section 1102(b)(1), which does not prohibit governmental units from serving on official committees, and does not prohibit the appointment of an official committee comprising only governmental units. *United States v. Ron Pair Enters.*, 489 U.S. 235, 240-241 (1989) ("there generally is no need for a court to inquire beyond the plain language of the statute").

24. In addition to the authority given the Court in section 1102(b)(1) of the Code, section 105 provides the Court with the authority to appoint an official committee of Public Entities if to do so preserves a right provided in the Code. *Bessette v. Avco Fin. Servs.*, 230 F.3d 439 (1st Cir. 2000) (holding that a district or bankruptcy court may invoke section 105(a) if the equitable remedy is necessary to preserve a right provided in the Code); *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86 (2d Cir. 2003) (the equitable power of section 105 is to be used in carrying out other provisions of the Code). Here, the Municipalities' statutory right to participate in these Chapter 11 Cases will be substantially prejudiced absent the appointment of a Public Entities Committee.

[Intentionally Left Blank]

**CONCLUSION**

25. The Municipalities' request is tailored to the unique circumstances of this case and the specific composition of the creditors' committee appointed in this case.

26. WHEREFORE, the Municipalities respectfully request that this Court (a) enter an order, substantially in the form attached hereto as Exhibit C, granting the relief requested herein; and (b) grant such other and further relief as the Court may deem proper.

Dated: June 24, 2019

GELLERT SCALI BUSENKELL & BROWN LLC

By: */s/ Michael Busenkell*
Michael G. Busenkell (DE 3933)
Sarah M. Ennis (DE 5745)
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
Telephone: 302-425-5812
Facsimile: 302-425-5814
Email: mbusenkell@gsbblaw.com
sennis@gsbblaw.com

and

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

*Counsel to City of Prescott, Arizona; City of Surprise, Arizona; Carroll County, Maryland; and Henry County, Missouri*