UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| INSYS THERAPEUTICS, INC., *et al.*,[1] | ) Case No. 19-11292 (KG) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

## ORDER APPOINTING MEDIATOR

**WHEREAS**, on June 10, 2019 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") each commenced a chapter 11 case (collectively, the "Chapter 11 Cases") by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court");

**WHEREAS**, on the Petition Date, the Debtors filed the *Motion of Debtors for (I) Entry of Orders Pursuant to 11 U.S.C. §§ 105(a) and 502(c) (A) Establishing Procedures and Schedule for Estimation Proceedings and (B) Estimating Debtors' Aggregate Liability for Certain Categories of Claims, (II) Entry of Protective Order, and (III) Subordination of Certain Penalty Claims* [Docket No. 29] (the "Estimation Motion") and initiated an adversary proceeding (the "Adversary Proceeding") by filing the *Complaint for Injunctive Relief* [Adv. Docket No. 1] and related *Debtors' Motion for a Preliminary Injunction Pursuant to 11 U.S.C. § 105(a)* [Adv. Pro. Docket No. 2] (the "PI Motion");

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LLC (6577); and IPT 355, LLC (0155).

**WHEREAS**, on June 19, 2019, the Office of the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "UCC"). *See Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 88];

**WHEREAS**, following the appointment of the UCC, the Debtors engaged in extensive discussions with the UCC and certain state attorneys general (the "State AGs") to resolve the objections of the State AGs to the PI Motion and to reach agreement regarding an alternative to the Estimation Procedures and the PI Motion designed to establish a protocol for reaching a consensual resolution to various issues integral to these Chapter 11 Cases;

**WHEREAS**, on June 30, 2019, the Debtors filed the *Notice of Filing of Proposed Agreed Order Regarding Estimation Motion, PI Motion and Approving Case Procedures* [Docket No. 189], pursuant to which, and as agreed upon with the UCC and the State AGs, the Debtors sought to withdraw the Estimation Motion and hold in abeyance the PI Motion subject to Court approval of certain procedures intended to maximize value, encourage settlement and reach resolutions in furtherance of a consensual chapter 11 plan;

**WHEREAS**, at the hearing on approval of the Case Protocol before this Court on July 2, 2019, the Debtors informed the Court that numerous creditors had expressed opposition to the Estimation Motion and a preference for a consensual negotiation strategy[2] and the Court raised the possibility of appointing a neutral mediator,[3] which was supported by counsel for certain creditors;[4]

---

[2] *See* July 2, 2019 Hr'g Tr. at 9:9-12.
[3] *Id.* at 38:24-25.
[4] *See e.g., id.* at 59:3-11.

**WHEREAS**, on July 2, 2019, the Court entered the *Agreed Order Regarding Estimation Motion, PI Motion and Approving Case Procedures* [Adv. Pro. 19-50261, Docket No. 45] (the "Case Protocol");

**WHEREAS**, the Case Protocol contemplates, among other things, that case constituents may attend mediation sessions co-mediated by the Debtors and the UCC in order to foster settlements and facilitate agreement on disputes necessary for confirmation of a chapter 11 plan;

**WHEREAS**, pursuant to the Case Protocol, this Court retained jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of the Case Protocol;

**WHEREAS**, following further discussions between the Debtors and the UCC, the Debtors and the UCC agree that appointment of the Mediator (as defined below) pursuant to Rule 9019-5 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") is an efficient and effective mechanism to facilitate resolution of certain disputes contemplated by the Case Protocol;

**WHEREAS**, this Court having jurisdiction to consider any amendments to the Case Protocol, and the relief requested therein and granted herein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of such matters and the relief requested therein and granted herein being core proceedings pursuant to 28 U.S.C. § 157(b); and the Court having authority to enter a final order with respect to these matters consistent with Article III of the United States Constitution; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Case Protocol having been provided; and it appearing that no further notice need be provided; and the Court having determined that the relief requested and herein granted is

in the best interests of the Debtors, their estates and their creditors; and after due deliberation and good and sufficient cause appearing therefor, it is hereby

**ORDERED** that:

1.  The Court authorizes and appoints the Honorable Kevin J. Carey (the "Mediator") to serve as Mediator and to conduct non-binding mediation among the Mediation Parties (the "Mediation").

2.  The mediation parties shall include the parties listed on **Exhibit A** hereto (the "Mediation Parties"), and any other creditor or interested party wishing to participate in the Mediation (subject to consultation between the Debtors and the UCC that such party's participation is necessary for resolution of the case disputes that are the subject of the mediation) that agrees to execute a confidentiality agreement acceptable to the Debtors and the UCC and to be bound by the Protective Order governing these Chapter 11 Cases. As set forth and defined in Exhibit A, the Liability Insurance Carriers shall participate in the Mediation as required by Local Rule 9019-5(c)(iv)(A)(5) (requiring to attend mediation "[o]ther interested parties, such as insurers or indemnitors or one or more of their representatives, whose presence is necessary for a full resolution of the matter assigned to mediation"). A representative from the Office of the United States Trustee for the District of Delaware may also attend the Mediation.

3.  Any creditor or interested party, or group of creditors or interested parties, seeking to participate in the Mediation (other than the Mediation Parties) shall file with the Court and serve on (a) the Mediator and (b) each Mediation Party a notice indicating its intention to participate in the Meditation by no later than 4:00 P.M. (prevailing Eastern time) on August 6, 2019 (the "Additional Parties Deadline"). Following receipt of such notice, and such party's execution of a confidentiality agreement acceptable to the Debtors and the UCC and agreement to abide by the

Protective Order, such party shall be deemed a Mediation Party for purposes of this Order, subject to paragraph 2 hereof. The Mediator may, in his sole discretion, permit participation in the Mediation by any person, entity, municipality, or group of persons, entities or municipalities that requests permission to participate (subject to the execution of an appropriate confidentiality agreement and agreement to abide by the Protective Order) notwithstanding such person, entity, municipality or group's failure to provide notice by the Additional Parties Deadline. To the extent practicable, parties holding similar claims against the Debtors are encouraged to form formal or informal working groups for purposes of participating in the Mediation.

4. Each Mediation Party shall appear with at least one (1) principal or other individual designee appearing in person who is empowered with full authority to settle any issues within the scope of the Mediation, in full or in part, and thereby bind the Mediation Party for whom such designee acts, or such other representative as requested by the Mediator.

5. Each Mediation Party shall bear its own costs and expenses incurred in connection with the Mediation such as attorney's fees, travel, lodging, and meals; *provided*, for the avoidance of doubt, the Debtors' estates will bear the expenses of the Debtors and the UCC (solely to the extent of expenses of counsel and the financial advisor to the UCC and the designated representative of the UCC) in accordance with the applicable provisions of the Bankruptcy Code. The Debtors' estates will not bear any expenses for members of the UCC, or any of their representatives, participating in the Mediation on their own behalf as a Mediation Party. For the avoidance of doubt, at no time during or after the Mediation shall the Debtors, any Mediation Party, or any party in the Chapter 11 Cases seek an order from this Court to claw-back or disgorge the payment of any such costs, fees, or expenses.

6. The Mediation shall take place from August 6, 2019 to August 20, 2019 according to the following schedule:

   a. **August 6-7**: Mediator to meet with the Debtors and the UCC, together, at a time and place to be determined by the Mediator.

   b. **August 8-9**: Mediator to conduct 1 to 1.5-hour mediation sessions with any creditor group or creditor of his choosing. The time and place of such mediation sessions to be determined by the Mediator. Creditor groups may provide presentation material to the Mediator, but there shall be no requirement of formal mediation statements due to the exigencies of these Chapter 11 Cases.

   c. **August 12**: Mediator to meet with the Debtors and the UCC, together, at a time and place to be determined by the Mediator.

   d. **August 13-20**: Mediation Parties to meet in Delaware for formal mediation sessions. The time and place of such mediation sessions will be determined by the Mediator.

7. The scope of the Mediation shall be to facilitate discussions between and among the Debtors, the UCC, and the other Mediation Parties regarding the appropriate allocation of estate value among unsecured creditor classes. The scope of the Mediation may be expanded to include other matters identified by the Mediator, the Debtors and the UCC. It is anticipated that other potential topics shall include, among others: construction and formulation of a chapter 11 plan; the proper mechanic for implementing a plan including, but not limited to, one or more liquidation or litigation trusts, or some other appropriate structure; voting procedures; appropriate earmarking (if any) of estate assets; and retention of estate causes of action.

8. Without limiting the applicability of Rule 9019-5(d) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (a) discussions among the Mediation Parties, including discussions with or in the presence of the Mediator, (b) any mediation statements or any other documents or information provided to the Mediator or the Mediation Parties in the course of the Mediation, and (c) correspondence, draft resolutions, offers,

and counteroffers produced for, or as a result of, the Mediation ((a) through (c), collectively, the "Mediation Information"), shall be strictly confidential and shall not be admissible for any purpose in any judicial or administrative proceeding, and no person or Mediation Party, including counsel for any Mediation Party, or any other party, shall in any way disclose to any non-party or to any court, including, without limitation, in any pleading or other submission to any court, any such discussion, mediation statement, other document or information, correspondence, resolution, offer, or counteroffer that may be made or provided in connection with the Mediation, unless otherwise available and not subject to a separate confidentiality agreement that would prevent its disclosure or as authorized by this Court, *provided, however*, evidence shall not be excluded or otherwise considered improper in any judicial or administrative proceeding on the ground that it was developed as an outgrowth of information supplied in the Mediation, unless such disclosure is otherwise prohibited in a separate confidentiality agreement governing the use of such derivative information.

9. To the extent that any Mediation Party is in possession of privileged or confidential information provided to such Mediation Party pursuant to the terms and conditions of a confidentiality agreement, or other similar agreement, executed (or agreed to via email) with the Debtors or order of this Court entered in connection with the Chapter 11 Cases, such information may be disclosed to the Mediator, but shall otherwise remain privileged and/or confidential and shall not be disclosed to any other Mediation Party; *provided, however*, that confidential, but not privileged, information may be disclosed to another Mediation Party that is also subject to a confidentiality agreement with the Debtors or subject to such Court order, as applicable. Any Mediation Party may provide documents and/or information to the Mediator that are subject to a privilege or other protection from discovery, including the attorney-client privilege, the work-

product doctrine, or any other privilege, right, or immunity the parties may be entitled to claim or invoke (the "Privileged Information"). The party producing such documents and/or information (the "Producing Party") to the Mediator must designate such documents and/or information as Privileged Information. By providing the Privileged Information solely to the Mediator and no other party, no Mediation Party nor its respective professionals intends to, or shall, waive, in whole or in part, the attorney-client privilege, the work-product doctrine, or any other privilege, right or immunity they may be entitled to claim or invoke with respect to any Privileged Information or otherwise. The Mediator shall not provide Privileged Information or disclose the contents thereof to any other party without the consent of the Producing Party. No Mediation Party is obligated to provide any documents and/or information, including Privileged Information, to the Mediator. For purposes of this paragraph, the term "Mediator" shall also include the Debtors and the UCC.

10. All Mediation Information shall (a) remain confidential, (b) be subject to protection under Rule 408 of the Federal Rules of Evidence and any equivalent or comparable state law and (c) not constitute a waiver of any existing privileges and immunities.

11. Notwithstanding anything to the contrary in the Local Rules, the Mediator may conduct the Mediation as he sees fit, establish rules of the Mediation, and consider and take appropriate action with respect to any matters the Mediator deems appropriate to conduct the Mediation, subject to the terms of this Order.

12. At the conclusion of the Mediation, the Mediator shall file with the Court a memorandum stating (a) that the Mediator has conducted the Mediation, (b) the names of counsel and principals who participated in the Mediation, (c) the identification of any party that has not acted in good faith during or in connection with the Mediation, (d) whether and to what extent the

Mediation was successful, and (e) any other comments, statements, or analysis that the Mediator would like to include, in the reasonable discretion of the Mediator.

13. No written record or transcript of any discussion had in the course of the Mediation is to be kept, absent express written agreement by the Mediation Parties; *provided, however*, that the Mediator and any person assisting the Mediator in the performance of his mediation duties shall be entitled to keep such records and take such notes as the Mediator deems necessary or helpful to carry out such duties; and *provided, further*, that the Debtors and the UCC may take such notes in the course of the Mediation as reasonably necessary for the sole purpose of preparation of a plan, disclosure statement and solicitation procedures, and that all such notes will be treated as Mediation Information.

14. The Mediation Parties and their respective counsel shall participate in the Mediation in good faith and comply with all directions issued by the Mediator. Failure to do so may result in the imposition of sanctions. The Mediator shall be authorized to report to the Court on the good faith (or lack thereof) of any or all of the Mediation Parties.

15. The results of the Mediation are non-binding unless the applicable Mediation Parties otherwise agree. Any resolution that is reached at the Mediation will be subject to Court approval after notice and opportunity for hearing.

16. For the avoidance of doubt, to the extent any part of this Order shall conflict with Local Rule 9019-5, the terms and provisions of this Order shall govern.

17. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

18. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, or 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

19. At all times in the performance of his mediation duties, the Mediator will be acting in his official capacity as a United States Bankruptcy Judge, with all the privileges and immunities of a United States Bankruptcy Judge.

20. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

21. The Court acknowledges its receipt and review of the Opioid MDL's Objection to Certification. D.I. 397. The Court is nonetheless entering this Order without ruling on the Opioid MDL's concerns and instead is focusing solely on the mediation process which is the responsibility of Debtors and the Committee.

August 5, 2019

_Kevin Gross_
KEVIN GROSS, U.S.B.J.

WEIL:\97136116\5\53602.0003