# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-------------------------------------------------------x
:
In re                               :           **Chapter 11**
:
**INSYS THERAPEUTICS, INC.,** *et al.,*     :           **Case No. 19-11292 (KG)**
:
Debtors.[1]                    :           **Jointly Administered**
:
-------------------------------------------------------x    Re: D.I. 32

## ORDER (1) APPROVING ASSET PURCHASE AGREEMENT BETWEEN INSYS THERAPEUTICS, INC. AND CHILION GROUP HOLDINGS US, INC., (2) APPROVING SALE OF THE PURCHASED ASSETS RELATING TO CBD FORMULATIONS, SYNDROS, AND BUPRENORPHINE, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363(b), (f) AND (m), (3) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365, (4) DETERMINING THE AMOUNTS NECESSARY TO CURE SUCH EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND OTHER LIABILITIES, AND (5) GRANTING RELATED RELIEF

The Court having considered the *Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Scheduling Auction for and Hearing to Approve Sale of Debtors' Assets, (C) Approving Form and Manner of Notice of Sale, Auction, and Sale Hearing, (D) Approving Assumption and Assignment Procedures, and (E) Granting Related Relief; and (II)(A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (ECF No. 32) (the "**Motion**"),[2] filed by Insys

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LLC (6577); and IPT 355, LLC (0155).  The Debtors' mailing address is 410 South Benson Lane, Chandler, Arizona 85224.

[2] Capitalized terms used herein but not otherwise defined have the meanings given to them in the Motion or the Asset Purchase Agreement, as applicable.

Therapeutics, Inc. and its affiliated debtors and debtors in possession (the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**"),  seeking, among other things, one or more orders, (i) authorizing and approving the sale of substantially all of the Debtors' assets (the "**Assets,**" and each sale a "**Transaction**"), free and clear of all liens, claims, interests, and encumbrances, except certain permitted encumbrances as determined by the Debtors and any purchaser of the Assets, with liens, if any, to attach to the proceeds of the applicable Transaction(s), (ii) authorizing and approving the assumption and assignment of proposed assumed executory contracts and unexpired personal property leases (collectively, the "**Proposed Assumed Contracts**") in connection with the Sale Transaction(s), and (iii) granting related relief, and having considered the Long Declaration and the Yearley Declaration (the "**Declarations**"); and the Court having entered this Court's prior order, dated July 2, 2019 (ECF No. 210) (the "**Bidding Procedures Order**"), approving competitive bidding procedures for the Assets (the "**Bidding Procedures**") and granting certain related relief; and Chilion Group Manufacturing US, LLC, as affiliate designee of Chilion Group Holdings US, Inc. (the "**Buyer**"), having submitted the highest or otherwise best bid for the Debtors' business of developing, manufacturing, and marketing the (i) INSYS CBD formulations across current pre-clinical, clinical, third-party grants and investigator initiated study activities (including any future activities or indications), (ii) THC programs of Syndros oral dronabinol solution, and (iii) Buprenorphine products (the "**Products**"), and certain equipment related to the Products (collectively with the Products, the "**Purchased Assets**"), as reflected in the Asset Purchase Agreement (as defined below); and a hearing having been held on August 22, 2019 (the "**Sale Hearing**") to consider approval of the Asset Purchase Agreement and the Transaction with the Buyer (the "**Sale Transaction**"); and the Court having reviewed and considered (i) the Motion and the exhibits thereto, (ii) the Declarations, (iii) the Asset Purchase

Agreement, dated as of August 6, 2019 by and between the Buyer and Insys Therapeutics, Inc. (the "**Seller**") (the "**Asset Purchase Agreement**"), a copy of which is attached hereto as **Exhibit A**, whereby the Seller has agreed, subject to Court approval, among other things, to sell the Purchased Assets to the Buyer, including, without limitation, the Assumed Contracts (as defined herein) that will be assumed and assigned to Buyer on the terms and conditions set forth in the Asset Purchase Agreement, and (iv) the Bidding Procedures Order and the record of the hearing before the Court on July 2, 2019 at which the Bidding Procedures Order was approved; and it appearing that due and sufficient notice of the Motion, the Asset Purchase Agreement, the Bidding Procedures Order, and the form of this order (the "**Sale Order**") have been provided in accordance with the Bidding Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice is required or necessary; and, except as otherwise provided for herein, all objections to the Sale Transaction having been withdrawn, resolved, or overruled as provided in this Sale Order; and, after due deliberation and for the reasons set forth on the record of the Sale Hearing, it appearing that the relief granted herein is in the best interests of the Debtors, their estates and creditors and all parties in interest in these Chapter 11 Cases; and good and sufficient cause appearing therefor;

### IT HEREBY IS FOUND AND DETERMINED THAT:[3]

A.    **Fed. R. Bankr. P. 7052**. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the

---

[3] All findings of fact and conclusions of law announced by the Court at the Sale Hearing are hereby incorporated herein to the extent not inconsistent herewith.

following conclusions of law constitute findings of fact, they are adopted as such. The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Sale Hearing. This Sale Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

B.    **Jurisdiction and Venue**.  This Court has jurisdiction over the Motion, the Sale Transaction, and over the property of the Debtors and their respective bankruptcy estates, including the Purchased Assets, pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), and the *Amended Standing Order Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and other legal predicates for the relief sought in the Motion and granted herein are sections 105, 362, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9008, 9014 and 9019, and Local Rules 2002-1, 6004-1, and 9006-1.

C.    **Final Order**. This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale Transaction as contemplated by the Asset Purchase Agreement. In the absence of a stay pending appeal, Buyer, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may close the sale contemplated by the Asset Purchase Agreement at any time after entry of this Sale Order, subject to the provisions of the Asset Purchase Agreement, and shall not be subject to any applicable stay, including any stay provided by Bankruptcy Rules 6004(h) and 6006(d).

D.    **Notice and Opportunity to Object.**  As evidenced by the affidavits of service on file with the Court, due, proper, timely, adequate, and sufficient notice and a reasonable

4

opportunity to object or be heard with respect to the Motion, the Sale Hearing, the Sale Transaction, the Asset Purchase Agreement, and the assumption and assignment of the Assumed Contracts has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Bidding Procedures Order, to all known interested parties, including to (a) all persons and entities known by the Debtors to have expressed an interest to the Debtors in a transaction with respect to the Purchased Assets during the past twelve (12) months; (b) all persons and entities known by the Debtors to have asserted any lien, claim, interest or encumbrance on the Purchased Assets; (c) all non-debtor parties to the Assumed Contracts; (d) the U.S. Trustee; (e) the official committee of unsecured creditors (the "**Committee**"); (f) any governmental authority known to have a claim in the Chapter 11 Cases; (g) all applicable federal, state, and local taxing and regulatory authorities, including the Internal Revenue Service; (h) all environmental authorities having jurisdiction over any of the Assets, including the Environmental Protection Agency; (i) the Federal Trade Commission; (j) the Antitrust Division of the United States Department of Justice; (k) the United States Attorney General; (l) the Office of the Attorney General and Office of the Secretary of State in each state in which the Debtors operate; (m) the United States Attorney for the District of Delaware; (n) all other known creditors of the Debtors; (o) all of the persons and entities entitled to notice pursuant to Rule 2002 of the Bankruptcy Rules; and (p) all other persons as directed by the Court.  In addition, the Debtors caused the Sale Notice (as defined in the Bidding Procedures Order) to be published in *The New York Times* and *The Arizona Republic* on July 10, 2019.  Accordingly, except as otherwise set forth herein, no other or further notice of the foregoing or this Sale Order is necessary or required.  The disclosures made by the Debtors concerning the Motion, the Sale Hearing, the Sale Transaction, the Asset Purchase

Agreement, and the assumption and assignment of the Assumed Contracts were complete and adequate.

E.    **Marketing Process.**  (i) The Debtors and their advisors engaged in a robust and extensive marketing and sale process through the prepetition sale process and the postpetition sale process pursuant to the Bidding Procedures Order and the Bidding Procedures; (ii) the Debtors and their advisors conducted a fair and open sale process; (iii) the sale process and the Bidding Procedures were non-collusive and duly noticed and provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Purchased Assets; and (iv) the process conducted by the Debtors pursuant to the Bidding Procedures Order and the Bidding Procedures obtained the highest or otherwise best value for the Purchased Assets for the Debtors, their estates and their creditors, and any other transaction would not have yielded as favorable an economic result..

F.    **Corporate Authority.**  The Debtors (i) have full corporate power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby, (ii) have all necessary power and authority to consummate the Sale Transaction, and (iii) have taken all necessary action to authorize and approve the Asset Purchase Agreement and to consummate the Sale Transaction.  No consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, are required for the Debtors to consummate the Sale Transaction.

G.    **Business Justification.**  The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for approval of and entry into the Asset Purchase Agreement and the other agreements, documents, and instruments deliverable thereunder, pursuant to section 363(b) of the Bankruptcy Code.

RLF1 21911851V.1

H.    **Highest and Otherwise Best Offer.**    The consideration to be provided by the Buyer pursuant to the Asset Purchase Agreement: (i) is fair and reasonable; (ii) is the highest and otherwise best offer for the Purchased Assets; (iii) will provide a greater recovery to the Debtors' creditors than would be provided by any other available alternative; (iv) will maximize the value of the Debtors' estates; and (v) constitutes reasonably equivalent value and fair consideration for the Purchased Assets.    No other person, entity, or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors than the Buyer has.    The Debtors' determination that the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets was a valid, sound, and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties.    The terms and conditions set forth in the Asset Purchase Agreement are fair and reasonable under the circumstances.    The Asset Purchase Agreement was not entered into by the Buyer or the Debtors for the purpose of, nor does it have the effect of, hindering, delaying, or defrauding any creditor of the Debtors under any of the foregoing federal or state laws or any other applicable laws.

I.    **Good Faith Purchaser.**    The Asset Purchase Agreement and the Sale Transaction were proposed, negotiated, and entered into by and among the Debtors and the Buyer without collusion or fraud, in good faith, and at arm's length.    The Buyer is a good faith purchaser within the meaning of Bankruptcy Code section 363(m) and otherwise has proceeded in good faith in all respects in connection with this proceeding, and is therefore entitled to the full protection of that provision with respect to the Asset Purchase Agreement, the Sale Transaction, each term of the Asset Purchase Agreement (and any ancillary documents executed in connection therewith) and each term of this Sale Order.    The protections afforded by Bankruptcy Code section 363(m) are integral to the Sale Transaction and the Buyer would not consummate the Sale Transaction without

RLF1 21911851V.1

such protections.  There has been no showing that the Debtors or the Buyer have engaged in any action or inaction that would cause or permit the Asset Purchase Agreement or the Sale Transaction to be avoided or any costs or damages to be imposed under Bankruptcy Code section 363(n). Neither, the Buyer, nor any of its affiliates, members, partners, officers, directors, principals, or shareholders is an "insider" of the Debtors as that term is defined in Bankruptcy Code section 101(31).  No common identity of directors, managers, controlling shareholders, or members exists between the Debtor and the Buyer.

J.    **Validity of the Transfer**.  As of the Closing, the transfer of Purchased Assets to the Buyer will be a legal, valid, and effective transfer of such Purchased Assets, and will vest Buyer with all right, title, and interest of the Debtors in and to the Purchased Assets, free and clear of all liens, claims, encumbrances, and other interests.  The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, sections 105(a), 363(b), 363(f), 363(h), 365(f), and 365(m), and all of the applicable requirements of such sections have been complied with in respect of the Sale Transaction.

K.    **Legal, Valid, and Binding Transfer.**  The Asset Purchase Agreement is a valid and binding contract between the Debtors and the Buyer and shall be enforceable pursuant to its terms. The Asset Purchase Agreement, the Sale Transaction, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and any chapter 7 or chapter 11 trustee appointed in these chapter 11 cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other person.

L.    **Free and Clear.**  The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction if the transfer of the Purchased Assets to the Buyer and the assumption and assignment of the Assumed Contracts to the Buyer were not

free and clear of all liens, claims, encumbrances and other interests, as provided for herein, or if the Buyer would, or in the future could, be liable for any such claims. Subject to the provisions of this Sale Order and except as may be specifically provided in the Asset Purchase Agreement or this Sale Order, the Debtors may sell the Purchased Assets free and clear of any and all interests, including all liens, claims, and encumbrances, because, in each case, one or more of the standards set forth in sections 363(f)(1) through (5) of the Bankruptcy Code have been satisfied. Each entity with an interest, including any lien, claim, or encumbrance, in the Purchased Assets to be transferred on the Closing Date: (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale Transaction or is deemed to have consented; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such lien, claim, interest, or encumbrance; or (iii) otherwise falls within the provisions of Bankruptcy Code section 363(f). Those holders of liens, claims, encumbrances and other interests that did not object to the Motion are deemed to have consented to the Sale Transaction and the relief provided for herein pursuant to Bankruptcy Code section 363(f)(2). Except to the extent expressly set forth in the Asset Purchase Agreement, this Sale Order is and shall be effective on the Closing Date as a determination that all liens, claims, encumbrances, and other interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date have been unconditionally released, discharged, and terminated, in each case to the fullest extent permitted by law, and that the conveyances described herein have been effected; provided that such liens, claims, encumbrances, and other interests shall attach to the proceeds of the Sale Transaction in the order of their priority, with the same validity, force, and effect which they now have against the Purchased Assets. Except to the extent expressly set forth in the Asset Purchase Agreement, the Buyer shall not be responsible for any liens, claims, encumbrances, and other interests, including

any derivative, successor, transferee or vicarious liability as a result of the transactions authorized herein, including liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of Debtors' businesses prior to the Closing or by reason of the transactions contemplated by this Sale Order.  Upon the Closing Date, all persons having liens of any kind or nature whatsoever against the Debtors or against the Purchased Assets arising prior to the Closing Date shall be forever barred, estopped, and permanently enjoined from pursuing or asserting such liens against the Buyer or any of their respective assets, property, affiliates, successors, assigns, or the Purchased Assets.

M.      **Not a _Sub Rosa_ Plan.**  The Asset Purchase Agreement and Sale Transaction do not constitute an impermissible _sub rosa_ chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.  The Asset Purchase Agreement and the Sale Transaction neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate a liquidating plan for the Debtors.

N.      **No Successor, Derivative or Similar Liability.**  The Buyer (i) is not, and shall not be, considered a successor in interest to the Debtors, (ii) has not, _de facto_ or otherwise, merged or consolidated with or into the Debtors, (iii) is not a continuation or substantial continuation of the Debtors or any enterprise of the Debtors, and (iv) is not holding itself out to the public as a continuation of the Debtors.  There is no continuity or common identity between the Buyer, any of its affiliates and any of the Debtors.  The sale and transfer of the Purchased Assets to the Buyer, including the assumption by the Debtors and assignment, transfer and/or sale to the Buyer and the Buyer's occupation and use of the Purchased Assets will not subject the Buyer to any liability (including any successor liability) with respect to the operation of any of the Debtors' businesses before Closing (as defined in the Asset Purchase Agreement) or by reason of such transfer, except

10

that, upon the Closing, the Buyer shall become liable for the applicable Assumed Liabilities. Buyer shall have no obligations with respect to any liabilities of the Debtors or the Debtors' estates arising out of or related to the Purchased Assets, except as expressly provided in the Asset Purchase Agreement. The Sale Transaction contemplated under the Asset Purchase Agreement does not amount to a consolidation, merger or de facto merger of the Buyer and the Debtors and/or the Debtors' estates.  The Buyer would not have acquired the Purchased Assets if it were liable for claims based upon "successor liability" theories.

O. **Personally Identifiable Information.**  As contemplated in the Bidding Procedures Order, and subject to the terms of this Order, the sale to the Buyer under the Asset Purchase Agreement of any personally identifiable information (as such term is defined in section 101(41A) of the Bankruptcy Code) shall be consistent with the recommendations of a consumer privacy ombudsman to be appointed in these chapter 11 cases, and as such, satisfies the requirements of section 363(b)(1)(A).

P. **Cure Costs.**  As evidenced by the certificates of service filed with this Court, and in accordance with the provisions of the Bidding Procedures Order, the Debtors have served notice of the Debtors' intent to assume and assign certain Contracts and Leases and of the related proposed Cure Costs upon each non-Debtor counterparty to the Contracts and Leases (the "**Assumption and Assignment Notice**"), which Cure Costs shall be paid by Buyer in accordance with the Asset Purchase Agreement. The service of the Assumption and Assignment Notice was timely, good, sufficient, and appropriate under the circumstances and no other or further notice need be given with respect to the Cure Costs for the assumption and assignment of the Contracts and Leases.  All non-debtor parties to the Contracts and Leases have had a reasonable opportunity to object both to the Cure Costs listed on the Assumption and Assignment Notice and to the

11

assumption and assignment of the Assumed Contracts to the Buyer, as noticed to non-Debtor parties to Contracts and Leases with the Notice of Designation, listing the Proposed Assumed Contracts designated for assumption and assignment by the Buyer (the "**Assumed Contracts**").

Q.      **Assumption and Assignment of Assumed Contracts**. The assumption and assignment of each of the Assumed Contracts is an integral element of the Asset Purchase Agreement, is in the best interests of the Debtors and their estates, and represents the reasonable exercise of the Debtors' sound business judgment.   Each Assumed Contract constitutes an executory contract, unexpired personal property lease, or unexpired non-residential real property lease under section 365 of the Bankruptcy Code.   No defaults exist in the Debtors' performance under the Assumed Contracts as of the date of this Sale Order other than the failure to pay the applicable Cure Costs, as may be required, or such defaults that are not required to be cured.   In addition, the Buyer has provided adequate assurance of its ability to perform its obligations under each of the Assumed Contracts within the meaning of section 365 of the Bankruptcy Code.   The assumption and assignment of the Assumed Contracts, subject to the conditions in the Asset Purchase Agreement, is integral to the Asset Purchase Agreement, is in the best interests of the Debtors, their estates and their creditors, and represents the valid and reasonable exercise of the Debtors' sound business judgment. Specifically, the assumption and assignment of the Assumed Contracts (i) is necessary to sell the Purchased Assets to the Buyer, (ii) limits the losses suffered by counterparties to the Assumed Contracts, and (iii) maximizes value for all of the Debtors' stakeholders by limiting the amount of claims against the Debtors' estates that would otherwise arise from the rejection of the Assumed Contracts.   The Debtors have met all applicable requirements of section 365(b) of the Bankruptcy Code and the Bidding Procedures Order and all other requirements and conditions under the Bankruptcy Code for the assumption by the Debtors

and assignment to the Buyer of the Assumed Contracts. Therefore, the Assumed Contracts may be assumed by the Debtors and assigned to the Buyer. The assumption and assignment of each Assumed Contract is approved notwithstanding any provisions in such Assumed Contract or other restrictions prohibiting its assignment or transfer.

R.    **Prompt Consummation**.    The Sale Transaction must be approved and consummated promptly in order to maximize value for the Debtors' estates. Time is of the essence in consummating the Sale Transaction. The Debtors have demonstrated compelling circumstances and good and sufficient cause for the immediate approval and consummation of the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, prior to, and outside of, a chapter 11 plan. Accordingly, there is sufficient cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regard to the transactions contemplated by this Sale Order.

S.    **Legal and Factual Bases**. The legal and factual bases set forth in the Motion and herein establish just cause for the relief granted herein.

T.    **Necessity of Sale Order**. The Buyer would not consummate the transactions without all of the relief provided for in this Sale Order.

**THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT**:

1.    The Motion is GRANTED as set forth herein.

2.    Any objections, responses or reservations of rights filed or asserted in response to the Motion and the relief granted herein, to the extent not resolved as set forth herein, settled, or waived as announced to the Court on the record at the Sale Hearing, are hereby overruled on the merits in their entirety.

**Approval of the Asset Purchase Agreement**

13

3.      The Asset Purchase Agreement with the Buyer, including all of its terms and conditions, all schedules and exhibits, all ancillary documents, and all transactions contemplated therein, including, without limitation, the Sale Transaction, and the assumption and assignment of the Assumed Contracts, are hereby approved in all respects.

4.      Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors and their respective officers, employees and agents are authorized and empowered to (i) execute, deliver, perform under, consummate, and implement the Asset Purchase Agreement and the Sale Transaction together with all additional documents as may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale Transaction, (ii) take any and all actions as they deem necessary, appropriate, or advisable for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer or reducing to possession the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement and the Sale Transaction, including, without limitation, any and all actions reasonably requested by the Buyer which are consistent with the Asset Purchase Agreement and the Sale Transaction, and (iii) pay, without further order of this Court, whether before, at or after the Closing Date, any expenses or costs that are required or reasonably contemplated to be paid by the Debtors in order to consummate the transactions contemplated by the Asset Purchase Agreement or perform their obligations under the Asset Purchase Agreement.

**Transfer of the Purchased Assets Free and Clear**

5.      Pursuant to sections 105(a), 363(f), and 365(b) of the Bankruptcy Code, upon the Closing of the Sale Transaction:  (i) the transfer of the Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement shall constitute a legal, valid, and effective transfer of the Purchased Assets and shall vest the Buyer with all right, title, and interest in and to the Purchased Assets; and

14

(ii) the Purchased Assets shall be transferred to the Buyer free and clear of any and all interests, including all liens, claims, and encumbrances, except those specifically assumed by the Buyer pursuant to the Asset Purchase Agreement, with any such liens, claims, encumbrances and other interests of which the Purchased Assets are sold free and clear to attach to the proceeds of the Sale Transaction, in the order of their priority, with the same validity, force, and effect which they had against the Purchased Assets prior to the entry of this Sale Order, subject to any rights, claims, and defenses the Debtors, their estates, and all interested parties may possess with respect thereto; and all persons are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, against the Buyer or the Purchased Assets with respect to any such liens, claims, encumbrances, and other interests.  Accordingly, Buyer shall not have any derivative, successor, transferee or vicarious liability as a result of the transactions authorized herein, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' businesses prior to the Closing or by reason of the transactions contemplated by this Sale Order.

6.      Notwithstanding anything herein or in the Asset Purchase Agreement to the contrary, in no instance shall the Buyer or its designee have any liability for, or be deemed to have assumed, any Excluded Liability.

7.      Notwithstanding anything in the Asset Purchase Agreement to the contrary, (i) no claims and/or causes of actions under chapter 5 of the Bankruptcy Code are being purchased by, or transferred to, the Buyer, (ii) no claims and/or causes of action that the Debtors may have, if any, against the Debtors' current and former insiders, affiliates, directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and

other professional advisors, whether under the Bankruptcy Code, state or federal law, or otherwise, are being purchased by, or transferred to, the Buyer, and (iii) no claims and/or causes of actions against counterparties to the Debtors' Contracts and Leases (other than claims and/or causes of actions against counterparties to Contracts and Leases assumed and assigned to the Buyer in accordance with the Asset Purchase Agreement) are being purchased by, or transferred to, the Buyer, and all such claims and causes of action in clauses (i) through (iii) herein are preserved for the benefit of the Debtors' estates.

8.      On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a legal, valid, binding, and effective, full and complete general assignment, conveyance, and transfer of the Debtors' interests in the Purchased Assets or a bill of sale transferring good and marketable title in and to the Purchased Assets.

9.      This Sale Order is and shall be effective as a determination that all liens, claims, encumbrances and other interests (other than those expressly assumed by the Buyer or permitted to survive under the Asset Purchase Agreement), attributable to any period ending on or before the Closing Date, shall be and are, without further action by any person or entity, unconditionally released, discharged, and terminated with respect to the Purchased Assets as of the Closing Date, except as may otherwise be set forth in the Asset Purchase Agreement or this Sale Order.  The provisions of this Sale Order authorizing the sale and assignment of the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests shall be self-executing, and notwithstanding the failure of the Debtors, the Buyer, or any other party to execute, file, or obtain releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and/or implement the provisions hereof, all liens, claims, encumbrances, and other interests (other than those expressly assumed by the Buyer or permitted to survive under the Asset

Purchase Agreement) on or against the Purchased Assets, if any, shall be deemed released, discharged, and terminated.

10.    All persons (and their respective successors and assigns) including all debt security holders, equity security holders, governmental tax and regulatory authorities, lenders, customers, vendors, employees, former employees, litigation claimants, trade creditors, and any other creditors or parties-in-interest who may or do hold claims against the Debtors, the Purchased Assets, and/or the Debtors' business, are hereby forever barred, estopped, and permanently enjoined from asserting or pursuing such claims against the Buyer, its affiliates, successors, assigns, its property or the Purchased Assets, including taking any of the following actions with respect to any such claims: (i) commencing or continuing in any manner any action, whether at law or in equity, in any judicial, administrative, arbitral, or any other proceeding, against the Buyer, its affiliates, successors, assigns, assets (including the Purchased Assets), or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyer, its affiliates, successors, assigns, assets (including the Purchased Assets), or properties; (iii) creating, perfecting, or enforcing any claim against the Buyer, its affiliates, successors, assigns, assets (including the Purchased Assets), or properties; (iv) asserting a claim as a setoff or right of subrogation against any obligation due to the Buyer, its affiliates, or its successors or assigns; or (v) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Sale Order or the agreements or actions contemplated or taken in respect thereof.  Following the Closing, no holder of any lien, claim, encumbrance or other interest shall interfere with the Buyer's title to or use and enjoyment of the Purchased Assets based on or related to any such lien, claim, encumbrance or other interest or based on any action the Debtors may take in the Chapter 11 Cases.

11.     Except as otherwise provided herein or in the Asset Purchase Agreement, on the Closing Date, the Debtors and the Debtors' creditors are authorized to execute such documents and instruments and to take all other actions as may be reasonably necessary to document and effectuate the release of their liens, claims, encumbrances, and other interests in the Purchased Assets (other than those expressly assumed by the Buyer or permitted to survive under the Asset Purchase Agreement), if any, as such liens, claims, encumbrances, and other interests, may have been recorded or may otherwise exist.  If any such creditor fails to execute any such documents or instruments or take any such actions, the Buyer is authorized to execute such documents and instruments and to take such actions on behalf of the creditor so as to document the release of such liens, claims, encumbrances, and other interests.

12.     To the maximum extent permitted under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors (to the extent of the Debtors' right, title and interest therein) with respect to the Purchased Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer with respect to the Purchased Assets as of the Closing Date.

13.     No governmental unit (as defined in Bankruptcy Code section 101(27)) or any representative thereof may deny, revoke, suspend or refuse to renew any right, license, copyright, patent, trademark, or other permission or similar grant relating to the operation of the Purchased Assets on account of the filing or pendency of the Chapter 11 Cases or the consummation of the Sale Transaction to the extent that any such action by a governmental unit or any representative thereof would violate Bankruptcy Code section 525.

## No Successor, Derivative, or Similar Liability

14.      The Buyer and its successors and assigns shall not be deemed, as a result of any action taken in connection with the transfer of the Purchased Assets, to (i) be a successor (including a successor employer) to the Debtors or their estates, (ii) have, *de facto* or otherwise, merged or consolidated with or into the Debtors or their estates, or (iii) be an alter ego or mere continuation or substantial continuation of the Debtors or any enterprise of the Debtors, and the Buyer shall have no liability, whether successor, transferee, derivative, vicarious, or assignee liability of any kind or character, including, but not limited to, under any theory of foreign, federal, state, or local antitrust, environmental, successor, tax, ERISA, assignee, or transferee liability, labor, product liability, employment, de facto merger, substantial continuity, or other law, rule, or regulation, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the sale or marketing of product or material produced in operation of the Purchased Assets or the operation of the Purchased Assets prior to the Closing Date or any other obligations or liabilities of the Debtors arising prior to the Closing Date.  Except as otherwise provided herein or in the Asset Purchase Agreement, the transfer of the Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement shall not result in the Buyer or the Purchased Assets having any liability or responsibility for, or being required to satisfy in any manner, whether in law or in equity, whether by payment, setoff, or otherwise, directly or indirectly, any claim against the Debtors or against any insider of the Debtors or any liens, claims, encumbrances, or other interests, including any derivative, successor, transferee, or vicarious liability as a result of the transactions authorized herein, including liabilities on account of any taxes arising, accruing, or payable under,

out of, in connection with, or in any way relating to the operation of Debtors' businesses prior to the Closing, the Purchased Assets, or by reason of the transactions contemplated by this Sale Order.

15.    Without limiting the generality of the foregoing, except as otherwise expressly provided in the Asset Purchase Agreement with respect to Assumed Liabilities, the Buyer shall not be liable for any claims against, and liabilities of, the Debtors or any of the Debtors' predecessors, insiders, affiliates, or their respective current and former directors, officers, employees, or agents or otherwise be required to satisfy in any manner any claims relating to the operation of the Debtors' businesses prior to the Closing, the Purchased Assets, or by reason of the transactions authorized hereunder.  Except as provided in the Asset Purchase Agreement, the consideration given by the Buyer shall constitute valid and valuable consideration for the release of any potential claims of successor, derivative, or similar liability against the Buyer, which release shall be deemed to have been given in favor of the Buyer by all holders of liens, claims, encumbrances, and other interests against the Debtors or the Purchased Assets.

### Good Faith; Arm's-Length Sale

16.    The consideration provided by the Buyer under the Asset Purchase Agreement constitutes reasonably equivalent value, fair consideration and fair value for the Purchased Assets under the Asset Purchase Agreement and may not be avoided under section 363(n) of the Bankruptcy Code.  None of the Debtors or the Buyer has engaged in any conduct that would cause or permit the Asset Purchase Agreement or the Sale Transaction to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

17.    The Asset Purchase Agreement and the Sale Transaction are undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein

to consummate the Asset Purchase Agreement and the Sale Transaction shall not affect the validity of the sale of the Purchased Assets to the Buyer, unless this Sale Order is duly stayed pending such appeal. The Buyer is a good faith Buyer of the Purchased Assets and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

**<u>Assumption and Assignment Procedures</u>**

18.     Pursuant to sections 105(a), 363, and 365, of the Bankruptcy Code, the Debtors are authorized to assume the Assumed Contracts designated for assumption and assignment in accordance with the Asset Purchase Agreement, make or cause the Buyer to pay the Cure Costs for the Assumed Contracts (or such other Cure Costs as agreed, in writing, by the Buyer and the counterparty to the applicable Assumed Contract or ordered by this Court), and assign the Assumed Contracts to the Buyer, free and clear of all claims, liens, encumbrances, and other interests of any kind or nature whatsoever, without the need for any further documentation. Upon the Closing Date, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors in, to, and under the Assumed Contracts. Subject to and conditioned upon the closing of the Sale Transaction, and subject to the designation rights and procedures contained in this Sale Order, the Bidding Procedures Order, and the Asset Purchase Agreement, the Buyer shall pay the undisputed portion of the Cure Costs for the Assumed Contracts (or such other Cure Costs as agreed, in writing, by the Debtors, in consultation with the Committee, the Buyer and the counterparty to the applicable Assumed Contract or ordered by this Court, <u>provided that</u> such agreement shall not impose any liability on the Debtors for the Cure Costs, including without limitation any new or additional Cure Costs) within three (3) business days of the Closing.

19.     The Buyer has provided adequate assurance of future performance under the Assumed Contracts within the meaning of section 365 of the Bankruptcy Code.

RLF1 21911851V.1

20.    The Assumed Contracts, consistent with the provisions contained herein, shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, following payment of the Cure Costs for the Assumed Contracts (or such other Cure Costs as agreed, in writing, by the Debtors, the Buyer and the counterparty to the applicable Assumed Contract or ordered by this Court), the Debtors shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to the Buyer.  No sections or provisions of any Assumed Contract that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor counterparty to the Assumed Contracts shall have any force or effect with respect to the Sale Transaction and assignments authorized by this Sale Order.  Such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and are otherwise unenforceable under section 365(e) of the Bankruptcy Code.  There shall be no accelerations, assignment fees, increases, or any other fees charged to the Buyer or the Debtors as a result of the assumption or assignment of Assumed Contracts, the Sale Transaction, or the commencement of these Chapter 11 Cases.  No Assumed Contract may be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" clause, by any other party thereto, as a result of the transactions contemplated by the Asset Purchase Agreement.

21.    All defaults or other obligations of the Debtors under the Assumed Contracts arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be

deemed cured, upon payment of the Cure Costs for the Assumed Contracts (or such other Cure Costs as agreed, in writing, by the Debtors, the Buyer and the counterparty to the applicable Assumed Contract or ordered by this Court), and in no event shall the Buyer or the Debtors have any liability whatsoever under any Assumed Contract arising from or related to the time period prior to the Closing Date.  The non-debtor counterparties to the Assumed Contracts are forever barred and permanently enjoined from asserting against the Debtors, their estates, the Buyer, and their respective successors and assigns, any default or unpaid obligation allegedly arising or occurring before the Closing, any pecuniary loss resulting from such default, or any other claim or obligation under the Assumed Contracts arising or incurred prior to the Closing, other than the Cure Costs for the Assumed Contracts (or such other Cure Costs as agreed, in writing, by the Debtors, the Buyer and the counterparty to the applicable Assumed Contract or ordered by this Court).  The Cure Costs shall not be subject to further dispute or audit, including, without limitation, any based on performance prior to the Closing Date, irrespective of whether such Assumed Contract contains an audit clause.  After the payment of the applicable Cure Costs, none of the Debtors or the Buyer shall have any further liabilities to the counterparties to the Assumed Contracts other than the Buyer's obligations under the Assumed Contracts that accrue and become due and payable on or after the Closing Date.

22.     In the event of a dispute as of, or after, the Closing Date regarding assumption and assignment or cure of any Assumed Contract, any applicable cure payments with respect to such Assumed Contract shall be made following the entry of an order resolving any such dispute (or upon the consensual resolution of such dispute as may be agreed by the Debtors, the Buyer, and such non-Debtor counterparty).

23.     The failure of the Debtors or the Buyer to enforce, at any time, one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions or of the right of the Debtors or the Buyer, as the case may be, to enforce every term and condition of the Assumed Contracts.  The validity of the assumption and assignment of the Assumed Contracts to the Buyer shall not be affected by any existing dispute between any of the Debtors and any non-debtor counterparty to such Assumed Contract.  Any party that may have had the right to consent to the assignment of any Assumed Contract is deemed to have consented for the purposes of section 365 of the Bankruptcy Code and otherwise if such party failed to file a timely objection to the assumption and assignment of such Assumed Contract.

24.     To the extent a non-debtor counterparty to an Assumed Contract failed to timely object to Cure Costs, (i) such Cure Costs shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Costs at any time, and (ii) such counterparty shall be deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, and the Buyer shall enjoy all of the Debtors' rights and benefits under each such Assumed Contract as of the applicable date of assumption without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

**Ipso Facto Clauses Ineffective**

25.     Except as otherwise specifically provided for by order of this Court, the Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, including all rights of the Buyer as the assignee of the Assumed Contracts, notwithstanding any provision in any such Assumed Contracts (including, without limitation, those of the type described in sections 365(e)(1) and (f) of the Bankruptcy

24

Code) that prohibits, restricts, or conditions such assignment or transfer.  There shall be no, and all non-Debtor parties to any Assumed Contract are forever barred and permanently enjoined from raising or asserting against the Debtors or the Buyer any defaults, breaches, claims, pecuniary losses, rent accelerations, escalations, assignment fees, increases, or any other fees charged to the Buyer or the Debtors as a result of the assumption or assignment of the Assumed Contracts.

26.    Except as otherwise specifically provided for by order of this Court, upon the Debtors' assignment of the Assumed Contracts to the Buyer, no default shall exist under any Assumed Contracts, and no counterparty to any Assumed Contracts shall be permitted to declare a default by any Debtor or the Buyer, or otherwise take action against the Buyer, as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assumed Contracts.  Any provision in an Assumed Contract that prohibits or conditions the assignment or sublease of such Assumed Contract in accordance with the Asset Purchase Agreement (including without limitation, the granting of a lien therein) or allows the counterparty thereto to terminate, recapture, set off, recoup, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect, but only in connection with the assignment or sublease of such Assumed Contract in connection with the sale to the Buyer approved by this Sale Order.  The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Assumed Contract.

RLF1 21911851V.1

### Related Relief

27.     All persons that are in possession of some or all of the Purchased Assets as of or after the Closing are hereby directed to surrender possession of such Purchased Assets to the Buyer as of the Closing or at such time thereafter as the Buyer may request.  All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Purchased Assets to the Buyer.  The Debtors agree to exercise commercially reasonable efforts to assist the Buyer in assuring that all persons that are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets in which the Debtors hold an interest will surrender possession of the Purchased Assets either to (i) the Debtors before the Closing Date, or (ii) the Buyer on or after the Closing Date.

28.     This Sale Order is and shall be binding upon and shall govern acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons, who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Buyer is the assignee and owner of the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests (other than those expressly assumed by the Buyer or permitted to survive under the Asset Purchase Agreement) (all such entities being referred to. the "**Recording Officers**").  All Recording Officers are authorized to strike recorded liens, claims, interests, and encumbrances against the Purchased Assets recorded prior to the date of this Sale Order unless the Asset Purchase Agreement expressly provides that the Buyer is acquiring the Purchased Assets subject to such liens, claims, encumbrances, and other interests.  A certified copy of this Sale Order may be filed

RLF1 21911851V.1

with the appropriate clerk and/or recorded with the recorder to act to cancel any liens and other encumbrances of record, and this Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state or local government agency, department or office.  If any person or entity which has filed statements or other documents or agreements evidencing liens on, or other interests in, all or any portion of the Purchased Assets shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens, and any other documents necessary for the purpose of documenting the release of all liens, claims, encumbrances, or other interests which the person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Debtors are hereby authorized, and the Buyer is hereby authorized, on behalf of the Debtors and each of the Debtors' creditors, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Purchased Assets, or take such other appropriate action, including seeking relief in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction and releases of all such liens, claims, encumbrances, or other interests with respect to the Purchased Assets.

29.    Each and every filing agent, filing officer, title agent, recording agency, governmental department, secretary of state, federal, state and local official, and any other person and entity who may be required by operation of law, the duties of its office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets, is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale Transaction contemplated by the Asset Purchase Agreement and approved by this Sale Order.

30.     Following the Closing, no holder of any liens, claims, encumbrances, or other interests with respect to the Purchased Assets (other than those expressly assumed by the Buyer or permitted to survive under the Asset Purchase Agreement) or other party in interest may interfere with the Buyer's use and enjoyment of the Purchased Assets based on or related to such liens, claims, encumbrances, or other interests, or any actions that the Debtors may take in their Chapter 11 Cases, and no party may take any action to prevent, interfere with, or otherwise enjoin consummation of the Sale Transaction.

31.     No "bulk sales," "bulk transfer" or similar laws (including those relating to taxes) of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including the Asset Purchase Agreement and the Sale Transaction.

32.     Nothing in this Order shall affect the priority of the ad valorem tax liens, if any, which may arise during the pendency of these cases.

33.     The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Asset Purchase Agreement or any other related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence.

34.     This Sale Order shall be binding in all respects upon, and the terms and provisions of the Asset Purchase Agreement and this Sale Order shall inure to the benefit of the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, the official committee of unsecured creditors, any holders of liens, claims, encumbrances, or other interests against or on all or any portion of the Purchased Assets, all counterparties to any executory contract or unexpired lease of the Debtors, the Buyer and its affiliates, successors, and assigns, and any subsequently appointed estate representative or other fiduciary in the Chapter 11 Cases.  The Asset Purchase

Agreement, the Sale Transaction and this Sale Order shall be enforceable against and binding upon, and shall not be subject to rejection or avoidance by, any chapter 7 or chapter 11 trustee appointed in the Chapter 11 Cases. Further, nothing contained in any plan of reorganization (or liquidation) confirmed in these Chapter 11 Cases or any order confirming any plan of reorganization (or liquidation) or any other order entered in these Chapter 11 Cases shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order.

35.    The Asset Purchase Agreement and any related agreements, documents, or other instruments contemplated thereby may be waived, modified, amended, or supplemented by the Debtors and the Buyer in a writing signed by such parties without further order of the Court; provided that any such waiver, modification, amendment, or supplement does not, based on the Debtors' business judgment and in consultation with the Committee, have a material adverse effect on the Debtors or the Debtors' estates. The Debtors shall provide the Committee with prior notice of any such waiver, modification, amendment or supplement of the Asset Purchase Agreement.

36.    The failure to include specifically any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

37.    To the extent of any inconsistency between the provisions of this Sale Order, the Asset Purchase Agreement, and any documents executed in connection therewith, the provisions contained in the Sale Order, the Asset Purchase Agreement, and any documents executed in connection therewith shall govern, in that order.

38.     Notwithstanding the provisions of Bankruptcy Rule 6004(h) and 6006(d) or any other applicable provision of the Bankruptcy Code or the Bankruptcy Rules that may stay the effectiveness of this Sale Order, this Sale Order shall be effective and enforceable immediately and shall not be stayed.

39.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Sale Order.

40.     Notwithstanding anything in this Order to the contrary:  (i) the Cigna Employee Benefits Agreements (each as identified in Cigna's Objection [ECF No. 331] (the "**Cigna Objection**")) shall not be assumed and assigned pursuant to this Order; and (ii) neither the CHLIC Listings nor the HealthSpring Listings (each as defined in the Cigna Objection) shall be assumed and assigned pursuant to this Order.

41.     The Debtors shall retain copies of all Transferred Records (as defined in the Asset Purchase Agreement).

42.     Without further approval of this Court, the Debtors and Buyer are authorized to execute and deliver, and perform under, one or more amendments, waivers, consents or other modifications to and under the Asset Purchase Agreement and ancillary documents, in each case, in such form as the Debtors and Buyer may agree; provided that such amendment, waiver, consent, or modification does not, based on the Debtors' business judgment and in consultation with the Committee, materially modify, in a manner adverse to the Debtors, the terms of the Asset Purchase Agreement. The Debtors shall provide the Committee with prior notice of any such amendment, waiver, consent or other modification to the Asset Purchase Agreement.

43.     This Court shall retain exclusive jurisdiction and power to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order, the Sale Transaction,

RLF1 21911851V.1

and the Asset Purchase Agreement, all amendments thereto and any waivers and consents thereunder, and each of the agreements executed in connection therewith and the transactions contemplated thereby.

**Dated: August 23rd, 2019**
**Wilmington, Delaware**

**KEVIN GROSS**
**UNITED STATES BANKRUPTCY JUDGE**

31