## **Exhibit 2**

**DOJ Prepetition Civil Settlement Agreement**

SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS), and the Defense Health Agency (DHA), acting on behalf of the TRICARE Program (collectively, the "United States"); and Insys Therapeutics, Inc. (Insys) (hereafter collectively referred to as "the Parties"), through their authorized representatives.

RECITALS

A.    Insys is a specialty pharmaceutical company that markets and sells Subsys, a sublingual form of fentanyl, a powerful opioid painkiller.  Subsys has been approved by the Food and Drug Administration for the treatment of breakthrough pain in opioid-tolerant cancer patients.  Insys began selling Subsys in 2012, and has been selling the drug since then.

B.    Five separate lawsuits, United States, et al., ex rel. Guzman v. Insys Therapeutics, Inc., et al., 13-cv-5861 (C.D. Cal.); United States ex rel. Andersson v. Insys Therapeutics, Inc., 14-cv-9179 (C.D. Cal.); United States ex rel. John Doe and ABC, LLC v. Insys Therapeutics, Inc., et al., 14-cv-3488 (C.D. Cal.); United States ex rel. Erickson and Lueken v. Insys Therapeutics, Inc., 16-cv-2956 (C.D. Cal.); and United States ex rel. Jane Doe, et al. v. Insys Therapeutics, et al., 16-cv-7937 (C.D. Cal.); have been filed against Insys pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the Civil Actions), and remain pending. The Civil Actions allege that Insys violated the False Claims Act due to a number of improper marketing practices.  The United States intervened in part in the Civil Actions and filed its own Complaint in Intervention on April 13, 2018.

C.    The United States contends that Insys submitted or caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C.

§§ 1395-1395kkk-1 (Medicare), the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 (Medicaid),

and the TRICARE Program, 10 U.S.C. §§ 1071-1110b (TRICARE).

      D.      The United States contends that from May 1, 2012 through December 31, 2015,

Insys engaged in the following misconduct:

      (1)      Insys provided kickbacks to physicians and other potential Subsys

prescribers, in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), to induce

them to prescribe Subsys.  The United States contends that these kickbacks took the form

of speaking fees for sham speaking events, many of which were held at expensive

restaurants, and many of which consisted of the prescribers dining with their friends or

members of their own office staffs, and making little or no substantive presentation.  The

United States also contends that Insys employed healthcare providers' family members

and friends in order to induce the providers to prescribe Subsys, even though the family

members and friends were not qualified for the positions for which they were hired.  The

United States also contends that Insys provided kickbacks to potential prescribers in the

form of expensive meals and entertainment.

      (2)      Insys established an internal business unit, sometimes referred to as the

Reimbursement Center, that lied to representatives of federal health programs about

patients' medical histories and conditions, including whether patients had cancer, to

obtain approval for payment for Subsys prescriptions.

      (3)      Insys illegally promoted the sale and use of Subsys for uses that were not

approved by the Food and Drug Administration (i.e., "off-label" uses), and which were

not medically accepted indications as defined by 42 U.S.C. § 1396r-8(k)(6).

      (4)      Insys provided kickbacks to Medicare patients taking Subsys by using two

third-party foundations, Patient Services, Inc. and US Pain Foundation, as conduits to pay

the copay obligations of those patients.  The Reimbursement Center referred Medicare

patients taking Subsys to the foundations for copay assistance from funds ostensibly

established to assist patients with breakthrough cancer pain, even though Insys knew

some of those patients did not have cancer.

The United States contends that it has certain civil claims against Insys arising from the conduct

described in this Paragraph, which is referred to in this Agreement as the Covered Conduct.

E.      On such date as may be determined by the Court, Insys Pharma, Inc., will plead

guilty pursuant to Fed. R. Crim. P. 11(c)(1)(B) to a five-count Information to be filed in the

United States District Court for the District of Massachusetts, entitled United States v. Insys

Pharma, Inc..  At all times relevant, Insys Pharma, Inc., was a wholly owned subsidiary of Insys,

and was its main operating subsidiary.  The Information will allege that on five separate

occasions, Insys Pharma, Inc., committed mail fraud, in violation of 18 U.S.C. § 1341, by paying

bribes and kickbacks to a healthcare practitioner to induce the practitioner to prescribe Subsys.

In addition, Insys has agreed, among other things, to enter into a Deferred Prosecution

Agreement ("DPA") with the United States Attorney for the District of Massachusetts.  As

provided by the DPA, Insys agreed to the filing of an Information in the United States District

Court for the District of Massachusetts, charging it with five counts of mail fraud in violation of

18 U.S.C. § 1341, and the United States Attorney for the District of Massachusetts has agreed to

defer prosecution of Insys for a five-year period following the effective date of the DPA.

F.      Insys may enter into separate settlement agreements (hereinafter referred to as the

"Medicaid State Settlement Agreements") with certain states and the District of Columbia in

settlement of the Covered Conduct.  States with which Insys executes a Medicaid State

Settlement Agreement in the form to which Insys and the National Association of Medicaid

Fraud Control Units (NAMFCU) Negotiating Team have agreed, or in a form otherwise agreed to by Insys and an individual State, shall be defined as "Medicaid Participating States."

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1.    Insys shall pay the United States and the Medicaid Participating States $195 million, plus applicable interest (collectively, the "Settlement Amount") in six installments, as described below, by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Central District of California and the NAMFCU.  The entire Settlement Amount shall be considered restitution. 96.3% of each payment described in this paragraph shall be paid to the United States, and 3.7% shall be paid to the Medicaid Participating States.  The entire balance of the Settlement Amount, or any portion thereof, may be prepaid without penalty.  If Insys elects to pre-pay the Settlement Amount, or any portion thereof, interest shall accrue through the date on which Insys makes said pre-payment.

Insys shall pay the Settlement Amount to United States and the Medicaid Participating States in six installments, as follows:

(a)    $5 million, plus interest, shall be due within one day of the Effective Date of this Agreement.

(b)    $40 million, plus interest, shall be due one year after the Effective Date of this Agreement.

(c)    $40 million, plus interest, shall be due two years after the Effective Date of this Agreement.

(d)     $40 million, plus interest, shall be due three years after the Effective
Date of this Agreement.

(e)     $40 million, plus interest, shall be due four years after the Effective
Date of this Agreement.

(f)     $30 million, plus interest, shall be due five years after the Effective
Date of this Agreement.

Interest on each of these payments shall accrue at a rate of 2.875%, from August 7, 2018 until the date of each payment.

2.      Subject to the exceptions in Paragraph 5 (concerning excluded claims) below, and conditioned upon Insys' full payment of the Settlement Amount, and subject to Paragraph 16, below, the United States releases Insys, together with its current and former parent corporations and subsidiaries, from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; any statutory provision creating a cause of action for civil damages or civil penalties for which the Civil Division of the Department of Justice has actual and present authority to assert or compromise pursuant to 28 C.F.R. Part 0, Subpart I, § 0.45(d); or the common law theories of payment by mistake, unjust enrichment, and fraud.

3.      OIG-HHS expressly reserves all rights to institute, direct, or to maintain any administrative action seeking exclusion against Insys and/or its officers, directors, and employees from Medicare, Medicaid, and all other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) under 42 U.S.C. § 1320a-7(a) (mandatory exclusion), or 42 U.S.C. § 1320a-7(b) or 42 U.S.C. § 1320a-7a (permissive exclusion).

4.    In consideration of the obligations of Insys set forth in this Agreement, and conditioned upon Insys' full payment of the Settlement Amount, DHA agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from the TRICARE Program against Insys under 32 C.F.R. § 199.9 for the Covered Conduct, except as reserved in this Paragraph and in Paragraph 5 (concerning excluded claims), below. DHA expressly reserves authority to exclude Insys from the TRICARE Program under 32 C.F.R. §§ 199.9 (f)(1)(i)(A), (f)(1)(i)(B), and (f)(1)(iii) (mandatory exclusion), based upon the Covered Conduct.  Nothing in this Paragraph precludes DHA or the TRICARE Program from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 5, below.

5.    Notwithstanding the releases given in Paragraphs 2 and 4 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

      a.    Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

      b.    Any criminal liability;

      c.    Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal health care programs;

      d.    Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

      e.    Any liability based upon obligations created by this Agreement;

      f.    Any liability of individuals;

g.      Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

h.      Any liability for failure to deliver goods or services due; and

i.      Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

6.      Insys has provided sworn financial disclosure statements and written supplemental financial information (collectively, the Financial Disclosures) to the United States, and the United States has relied on the accuracy and completeness of the Financial Disclosures in reaching this Agreement. Insys warrants that the Financial Disclosures that it provided to the United States were complete, accurate, and current as of the date those disclosures were made. If the United States learns of asset(s) in which Insys had an interest at the time of this Agreement that were not disclosed in the Financial Disclosures, or if the United States learns of any misrepresentation by Insys on, or in connection with, the Financial Disclosures, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Disclosures by $15 million or more, the United States may at its option: (a) rescind this Agreement and file suit based on the Covered Conduct, or (b) let the Agreement stand and collect the full Settlement Amount plus one hundred percent (100%) of the value of the net worth of Insys previously undisclosed. Insys agrees not to contest any collection action undertaken by the United States pursuant to this provision, and immediately to pay the United States all reasonable costs incurred in such an action, including attorney's fees and expenses. Insys may, however, contest the United States' assertion that a misrepresentation changed the estimated net worth set forth in the Financial Disclosures by $15 million or more.

7.      In the event that the United States, pursuant to Paragraph 6 (concerning disclosure of assets), above, opts to rescind this Agreement, Insys agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within sixty calendar days of written notification to Insys that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on August 12, 2013.

8.      Insys waives and shall not assert any defenses Insys may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

9.      Insys fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Insys has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

10.      The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier), TRICARE, or any state payer, related to the Covered Conduct; and Insys agrees not to resubmit to any Medicare or TRICARE contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

11.    Insys agrees to the following:

a.    <u>Unallowable Costs Defined</u>:  All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Insys, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)    the matters covered by this Agreement and any related plea agreements;

(2)    the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

(3)    Insys' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)    the negotiation and performance of this Agreement and any plea agreements;

(5)    the payments Insys makes to the United States pursuant to this Agreement and any payments that Insys may make to Relators, including costs and attorneys fees; and

(6)    the negotiation of and obligations undertaken pursuant to Insys' Corporate Integrity Agreement and Conditional Exclusion Agreement to: (1) retain an independent review organization to perform annual reviews and described in Section III of the Corporate Integrity Agreement and Conditional Exclusion Release; and (2) prepare and submit reports to the OIG-HHS

9

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs). However, nothing in Paragraph 11.a.(6) that may apply to the obligations undertaken pursuant to the Corporate Integrity Agreement and Conditional Exclusion Release between OIG-HHS and Insys affects the status of costs that are not allowable based on any other authority applicable to Insys.

      b.    <u>Future Treatment of Unallowable Costs</u>:  Unallowable Costs shall be separately determined and accounted for by Insys, and Insys shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Insys or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

      c.    <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>:  Insys further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Insys or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs.  Insys agrees that the United States, at a minimum, shall be entitled to recoup from Insys any overpayment plus applicable interest and penalties as a result of the

inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Insys or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Insys or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

       d.      Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Insys' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

12.      Insys agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Insys shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Insys further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

13.      This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 14 (waiver for beneficiaries paragraph), below.

14.     Insys agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

15.     The Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Insys, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.  Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Insys was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

16.     If Insys commences, or a third party commences against Insys, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of any of Insys 'debts, or seeking to adjudicate Insys as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Insys or for all or any substantial part of any Insys assets, then Insys agrees as follows:

(a)     Insys' obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547 or 11 U.S.C. § 548(a)(1), and Insys shall not argue or otherwise take the position in any such case, proceeding, or action that:  (i) Insys' obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous

exchange for new value given to Insys; or (iii) the mutual promises, covenants, and obligations set forth herein are not intended to and do not, in fact, represent a reasonably equivalent exchange of value or that such mutual promises, covenants and obligations are intended to hinder, delay, or defraud any entity to which Insys was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

(b)     If Insys' obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Insys for the claims that would otherwise be covered by the releases provided in Paragraphs 2 and 4, above.  Insys agrees that (i) any such rescission and discontinuance of forbearance, as well as any such claims, actions, or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph because it would be an exercise of the United States' police and regulatory power to protect public policy and public health, safety and welfare, and Insys shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay and Insys consents to lifting of the automatic stay for cause pursuant to 11 U.S.C. § 362(d); (ii) Insys shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States within sixty (60) calendar days of written notification to Insys that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on August 12, 2013; (iii) the United States has an undisputed, non-contingent, liquidated

allowed claim against Insys for treble damages under the FCA in the amount of Six Hundred Million dollars of ($600,000,000), and penalties; and (iv) the United States may pursue its claims in the Civil Actions, as well as in any other case, action, or proceeding.

(c)    Insys acknowledges that its agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

17.    In the event that Insys fails to make any of the payments set forth in Paragraph 1 within the deadlines provided therein, Insys shall be in Default of its payment obligations (hereinafter "Default").  In the event of Default, the remaining unpaid balance of the Settlement Amount (Remaining Settlement Amount) shall become immediately due and payable, and interest shall accrue at the rate of 12% per annum compounded daily (Remaining Settlement Amount and Default Interest Balance) from the date of Default until all amounts due have been paid in full.  The United States, at its sole option, may: (a) offset the Remaining Settlement Amount and Default Interest Balance from any amounts due and owing to Insys by any department, agency, or agent of the United States; (b) collect the entire Remaining Settlement Amount and Default Interest Balance, and all other amounts due upon the event of Default as specified in this Paragraph; or (c) exercise any other rights granted by law or in equity, including but not limited to referring such matters for private collection.  Insys agrees not to contest any consent judgment or offset imposed and Insys agrees not to contest, and hereby waives and discharges any defenses to, any collection action undertaken by the United States or its agents or contractors pursuant to this Paragraph, either administratively or in any state or federal court. Insys shall pay the United States all reasonable costs of collection and enforcement under this Paragraph applicable to them, respectively, including attorney's fees and expenses ("Collection Costs").

18.    In the event of Default, the United States may also, at its sole option, rescind this Settlement Agreement (Rescindment) and bring any civil and/or administrative claim, action, or proceeding against Insys for the Covered Conduct.  Rescindment shall be automatically effective upon the United States' bringing of the same.  In the event of Rescindment, Insys shall not plead, argue, or otherwise raise, and hereby waives and discharges, any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States within one hundred-twenty (120) calendar days of Default, except to the extent such defenses were available as of the date of execution of this Agreement.  Insys agrees that in the event of Rescindment it shall not plead, argue, or otherwise raise any defenses that any amounts paid to the United States pursuant to this Agreement should be used to reduce the determination of single damages for purposes of calculating treble damages or penalties under the False Claims Act. The option for Rescindment identified in this Paragraph is in addition to, and not in lieu of, other options identified in this Agreement or otherwise available.

19.    Notwithstanding the foregoing, in the event of Default as defined in Paragraph 17, above, OIG-HHS may exclude Insys from participating in all Federal health care programs until Insys pays the Remaining Settlement Amount and Default Interest Balance, and Collection Costs as set forth in Paragraph 17 above.  OIG-HHS will provide written notice of any such exclusion to Insys.  Insys waives any further notice of exclusion under 42 U.S.C. § 1320a-7(b)(7), and agrees not to contest exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic.  If at the end of the period of exclusion Insys wishes to apply for reinstatement, Insys must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001.3005.  Insys will not be reinstated unless and until HHS-OIG approves such request for reinstatement.  The option for

Exclusion for Default as defined in this Paragraph is in addition to, and not in lieu of, the options identified in this Agreement or otherwise available.

20.     Upon receipt of the first fixed payment described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Actions Joint Motions to Dismiss the United States' claims against Insys from the Civil Actions pursuant to Rule 41. Such dismissal shall be (1) with prejudice to the Relators with respect to all claims against Insys under 31 U.S.C. § 3729-33 excepting those claims reserved pursuant to 31 U.S.C. § 3730(d)(1) and § 3730(h); (2) with prejudice to the United States with respect to the Covered Conduct; and (3) without prejudice to the United States with respect to all other claims.

21.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

22.     Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

23.     This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Central District of California. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

24.     This Agreement constitutes the complete agreement between the Parties to resolve the Civil Actions. This Agreement may not be amended except by written consent of the Parties.

25.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

26.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

27.    This Agreement is binding on Insys' successors, transferees, heirs, and assigns.

28.    All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

29.    This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

### THE UNITED STATES OF AMERICA

DATED: _6/5/19_    BY: _____

David T. Cohen
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice


DATED: _6/5/19_    BY: _____

John E. Lee
Assistant United States Attorney
Central District of California


DATED: _____    BY: _____

Lisa M. Re
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services


DATED: _____    BY: _____

Leigh A. Bradley
General Counsel
Defense Health Agency
United States Department of Defense

27.    This Agreement is binding on Insys' successors, transferees, heirs, and assigns.

28.    All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

29.    This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

## THE UNITED STATES OF AMERICA

DATED: _____    BY: _____
David T. Cohen
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice

DATED: _____    BY: _____
John E. Lee
Assistant United States Attorney
Central District of California

DATED: 06|05|2019  BY: _____
Lisa M. Re
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

DATED: _____    BY: _____
Leigh A. Bradley
General Counsel
Defense Health Agency
United States Department of Defense

17

27.     This Agreement is binding on Insys' successors, transferees, heirs, and assigns.

28.     All parties consent to the United States' disclosure of this Agreement, and
information about this Agreement, to the public.

29.     This Agreement is effective on the date of signature of the last signatory to the
Agreement (Effective Date of this Agreement).  Facsimiles and electronic transmissions of
signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

## THE UNITED STATES OF AMERICA

DATED: _____     BY:     _____
                            David T. Cohen
                            Senior Trial Counsel
                            Commercial Litigation Branch
                            Civil Division
                            United States Department of Justice

DATED: _____     BY:     _____
                            John E. Lee
                            Assistant United States Attorney
                            Central District of California

DATED: _____     BY:     _____
                            Lisa M. Re
                            Assistant Inspector General for Legal Affairs
                            Office of Counsel to the Inspector General
                            Office of Inspector General
                            United States Department of Health and Human Services

DATED: 2/5/2019     BY:     _____
                     for    Leigh A. Bradley
                            General Counsel
                            Defense Health Agency
                            United States Department of Defense

17

**INSYS THERAPEUTICS, INC.**

DATED: _6/5/18_        BY: _____
                            Andrece Housley
                            Chief Financial Officer

DATED: _6/5/2019_      BY: _____ / MFD
                            Geoffrey E. Hobbart, Esq.
                            Covington & Burling
                            Counsel for Insys Therapeutics, Inc.

18