## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

--------------------------------------------------------- x

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| INSYS THERAPEUTICS, INC., *et al.*, | : Case No. 19-11292 (KG) |
| | : |
| Debtors. [1] | : (Jointly Administered) |
| | : |
| | : **Obj. Deadline: October 21, 2019 at 4:00 p.m. (ET)** |
| | : **Hearing Date: November 5, 2019 at 2:00 p.m. (ET)** |
| | : |

--------------------------------------------------------- x

## MOTION OF DEBTORS PURSUANT TO
## 11 U.S.C. § 1121(d) FOR ENTRY OF AN ORDER (I) EXTENDING
## THE EXCLUSIVE PERIODS AND (II) GRANTING RELATED RELIEF

Insys Therapeutics, Inc. ("**Insys**") and its affiliated debtors in the above-captioned

chapter 11 cases (the "**Chapter 11 Cases**"), as debtors and debtors in possession (collectively, the

"**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**") seeking an

extension of the exclusive periods during which only the Debtors may file a chapter 11 plan and

solicit acceptances thereof:

### Preliminary Statement

1.      The Debtors' Chapter 11 Cases are undoubtedly complex by virtue of the

types of claims pending against the Debtors, the divergent views held by a number of different

creditor constituencies as to the value of their claims, the numerous sales of the Debtors' assets

thus far (three approved and one pending), and the politically charged landscape involving the

national opioid crisis.  Nevertheless, since the Debtors commenced the Chapter 11 Cases on June

10, 2019 (the "**Petition Date**"), the Debtors have made meaningful strides towards achieving their

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LLC (6577); and IPT 355, LLC (0155). The Debtors' mailing address is 410 South Benson Lane, Chandler, Arizona 85224.

stated objective of resolving the numerous and varied litigation claims asserted against the Debtors in a fair and efficient process, while maximizing the recovery to all creditors.

2.      On September 17, 2019, only three months after the Petition Date, the Debtors filed a chapter 11 plan [Docket No. 612] (the "**Plan**") and accompanying disclosure statement [Docket No. 613] (the "**Disclosure Statement**").[2]  The Plan is the product of (a) the implementation of a multi-pronged comprehensive case protocol (the "**Case Protocol**") that documented a schedule and a path forward to resolve issues regarding claim estimation, plan classification, allocation, and related issues, and (b) a Court-approved mediation facilitated by Judge Kevin Carey and involving the Debtors, the Creditors' Committee (as defined below), and representatives of most of the Debtors' key creditor constituent groups.  Although the Plan is not reflective of a complete consensus among the parties, it does represent a settlement reached with the majority of the Debtors' creditors, and the Debtors have not given up on their goal of a fully consensual plan.

3.      Consistent with the intent and purpose of chapter 11, the Debtors are dedicated to continuing the comprehensive and inclusive plan process involving all of their creditor constituencies in an effort to achieve a consensus.  Maintaining a constructive and cooperative environment for negotiations, free of competing plans, is important to these efforts.  The hearing on confirmation of the Plan is currently scheduled for December 6, 2019 (the "**Confirmation Hearing**"), which is after the expiration of the Debtors' initial 120-day period afforded under section 1121(b) of title 11 of the United States Code (the "**Bankruptcy Code**") during which they have the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**").  Accordingly,

---

[2] Capitalized terms used herein but otherwise not defined shall have the meanings ascribed to them in the Plan or the Disclosure Statement, as applicable.

2

pursuant to this Motion, the Debtors seek a modest 90-day extension of the Exclusive Filing Period and the exclusive period to solicit acceptances of a chapter 11 plan (the "**Exclusive Solicitation Period**," together with the Exclusive Filing Period, the "**Exclusive Periods**"), without prejudice to the Debtors' right to seek additional extensions of such periods. The Debtors conferred with the Creditors' Committee before the filing of this Motion and the Creditors' Committee supports the Debtors' requested 90-day extension.

4.      The requested extensions of the Exclusive Periods in these Chapter 11 Cases are warranted and appropriate. As set forth more fully below, ample cause exists to grant the Debtors the extensions of the Exclusive Periods because, *inter alia*, the Debtors have filed a chapter 11 plan and they are at a critical juncture in these cases where they are effectively managing a complex plan process with multiple parties in interest. The Debtors are best situated and the most effective party to manage a plan process for the benefit of all stakeholders. Indeed, in a case with several constituencies with differing interests, the Chapter 11 Cases serve as the paradigm for why plan exclusivity should be maintained with the Debtors to avoid one party from leveraging its self-interests ahead of the best interests of the Debtors' estates and all of the Debtors' stakeholders.

5.      The requested extensions of the Exclusive Periods will enable the chapter 11 plan process to be carried out in an atmosphere where a level playing field will be maintained and the dynamics of a complicated and multi-faceted negotiation process will not be upset or undermined. Most importantly, the requested extensions will promote the optimal conditions to

3

achieve a consensual plan and to avoid the costs, expenses, and loss of value necessarily attendant to a competing plan process.

6.     For the reasons set forth herein, including the good faith progress the Debtors have made in the administration of these cases and the plan process and to afford the Debtors the full and fair opportunity contemplated by Congress for the Debtors to prosecute a viable, fair, and comprehensive chapter 11 plan and solicit acceptances thereof, the Debtors respectfully submit that the relief requested herein should be granted.

## **Background**

7.     On the Petition Date, the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.     The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

9.     On June 20, 2019, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these Chapter 11 Cases (the "**Creditors' Committee**").  No trustee or examiner has been appointed in these Chapter 11 Cases.

10.    On July 2, 2019, the Court entered the *Order (A) Approving Bidding Procedures for Sale of Debtors' Assets, (B) Scheduling Auction for and Hearing to Approve Sale of Debtors' Assets, (C) Approving Form and Manner of Notice of Sale Auction, and Sale Hearing,*

4

*(D) Approving Assumption and Assignment Procedures, and (E) Granting Related Relief* [Docket No. 210] (the "**Bidding Procedures Order**").  In accordance with the Bidding Procedures Order, the Debtors have or are in the process of selling all or substantially all of their assets.  *See* [Docket Nos. 515, 525, 641 and 671].

11.     On August 28, 2019, the U.S. Trustee appointed a consumer privacy ombudsman [Docket No. 535].

12.     Additional information regarding the circumstances leading to the commencement of these Chapter 11 Cases and the Debtors' business and capital structure is set forth in the declaration of Andrew G. Long, the Debtors' Chief Executive Officer, filed on the Petition Date [Docket No. 11].

<u>**Jurisdiction**</u>

13.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

14.     Pursuant to Local Rule 9013–1(f) , the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

<u>**Relief Requested**</u>

15.     As stated above, by this Motion, pursuant to section 1121(d) of the Bankruptcy Code, the Debtors request entry of an order, substantially in the form attached hereto as <u>**Exhibit A**</u> (the "**Proposed Order**"), extending the Exclusive Filing Period to and including

5

January 6, 2020 and the Exclusive Solicitation Period to and including January 27, 2020, without prejudice to their right to seek a further extension of such periods.[3]

**Basis for Relief Requested**

16.     Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan.  *See* 11 U.S.C. § 1121(b) ("Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.").  Section 1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan within the 120-day Exclusive Filing Period, it has a 180-day period from its petition date to solicit acceptance of its plan.  11 U.S.C. §11 1121(c)(3).  The Debtors' initial Exclusive Filing Period and Exclusive Solicitation Period are currently set to expire on October 8, 2019 and December 7, 2019, respectively.

17.     Pursuant to section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for cause.  *See* 11 U.S.C. § 1121(d) ("[O]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.").  The Exclusive Periods established by Congress were incorporated in the Bankruptcy Code to afford a debtor a full and fair opportunity to propose a chapter 11 plan and enable solicitation of acceptances of the plan without the deterioration and disruption that might be caused by the filing of multiple competing plans.  Indeed, the primary objective of a chapter 11

---

[3] Pursuant to Local Rule 9006-2, "if a motion to extend the time to take any action is filed before the expiration of the period prescribed by the Bankruptcy Code, Bankruptcy Rules, Local Rules or Court order, the time shall automatically be extended until the Court acts on the motion, without the necessity for the entry of a bridge order."  This Motion was filed prior to the expiration of the Exclusive Periods. Accordingly, such periods are automatically extended until the Court has an opportunity to consider the Motion.

6

case is the formulation, confirmation, and consummation of a consensual chapter 11 plan. Terminating the Exclusive Periods at this juncture of the Chapter 11 Cases would defeat the very purpose of section 1121 of the Bankruptcy Code, i.e., affording a debtor the full and fair opportunity to formulate and prosecute its proposed chapter 11 plan.

18.     As stated, section 1121(d) of the Bankruptcy Code empowers a Bankruptcy Court to extend the Exclusive Periods "for cause."  The Bankruptcy Code neither defines the term "cause" for purposes of section 1121(d) nor establishes formal criteria for an extension of the Exclusive Periods. The legislative history of section 1121 of the Bankruptcy Code indicates, however, that "cause" is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231-32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give bankruptcy courts great flexibility to protect a debtor's interests by allowing a debtor an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

19.     In exercising its broad discretion and determining whether cause exists to extend a debtor's exclusive periods, the Bankruptcy Court may consider a variety of factors to assess the totality of circumstances in each case.  *See, e.g.*, *First Am. Bank of N.Y. v. Southwest Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986) ("Section 1121(d) provides the Bankruptcy Court with flexibility to either reduce or increase that period of exclusivity in its discretion."); *In re Burns and Roe Enterprise, Inc*., 2005 WL 6289213, *3 (D.N.J. 2005) ("Whether or not to grant an extension of exclusivity "is a matter of discretion based on all facts and circumstances," and a bankruptcy court has "broad discretion to determine what is sufficient cause in each individual case.") (internal citations omitted); *see also In re Borders Group, Inc.*, 460 B.R. 818, 821–22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d)

7

is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity"); *In re Adelphia Comm. Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying objective factors courts historically have considered in determining whether cause exists to extend or terminate exclusivity).  These factors include, without limitation:

> (i)    the size and complexity of the debtor's case;
>
> (ii)    the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;
>
> (iii)    the existence of good faith progress towards reorganization;
>
> (iv)    the fact that the debtor is paying its bills as they become due;
>
> (v)    whether the debtor has demonstrated reasonable prospects for filing a viable plan;
>
> (vi)    whether the debtor has made progress in negotiations with its creditors;
>
> (vii)    the amount of time which has elapsed in the case;
>
> (viii)    whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and
>
> (ix)    whether an unresolved contingency exists.

*Adelphia Comm.*, 352 B.R. at 587 (noting that the nine factors listed above are "objective factors which courts *historically* have considered in making determinations of this character"); *see In re Cent. Jersey Airport Servs., LLC,* 282 B.R. 176, 184 (Bankr. D.N.J. 2002) (noting that Courts consider the nine factors listed above to demonstrate "cause" to extend the exclusive periods); *see also Borders*, 460 B.R. at 822 (evaluating the nine factors set forth in *Adelphia* to hold that debtor established cause to extend exclusivity); *In re McLean Indus.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); *accord In re Express One Int'l, Inc*., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (identifying all of the nine factors set forth in *Adelphia* as relevant in determining whether cause exists to

extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.C. 1986) (holding that debtor showed cause to extend exclusive period based upon certain of the nine factors). The exercise of the Court's discretion is not simply a check-off process, and the above factors are not the exclusive bases for the exercise of the Court's discretion to extend the exclusive periods.

20.    Application of the identified standards to the facts of these Chapter 11 Cases demonstrates that ample cause exists to grant the Debtors' requested extensions of the Exclusive Periods. The extensions are necessary and appropriate for the Debtors to have the opportunity contemplated by the Bankruptcy Code to propose a chapter 11 plan, including amending the existing Plan if necessary, and solicit acceptances thereof.

**A.    (i) The Debtors' Cases Are Complex and (ii) Little Time Has Elapsed Since The Petition Date**

21.    The complex nature of these Chapter 11 Cases supports extensions of the Exclusive Periods. Indeed, it is well established that the complexity of a debtor's case alone may constitute cause to extend the Exclusive Periods. *See In re Borders Group, Inc.*, 2011 WL 9155779, *3 (Bankr. S.D.N.Y. June 2, 2011) (citing *In re Texaco, Inc.*, 76 B.R. at 326 and granting extension of exclusivity periods for 120 days); *In re Burns and Roe Enterprise*, *Inc.*, 2004 WL 6289213 at *3 (noting that factors constituting "cause" for extension of exclusivity periods include "the size and complexity of the case").

22.    The Debtors operate a complex business and maintain multidimensional vendor relationships. Additionally, as reflected in the Debtors' filed schedules of assets and liabilities ("**Schedules**") and statements of financial affairs ("**Statements**"), the Debtors are a party to over 1,000 pending lawsuits and they have over 11,000 creditors on a consolidated basis. The Debtors face thousands of claims by public and private entities and individuals, including (a) trade creditors, (b) personal injury plaintiffs, (c) insurance providers and insurance rate payers,

9

(d) private hospitals, (e) the federal government, and (f) various counties, states, and Native American tribes.  The aforementioned creditor groups have wide ranging views with respect to the appropriate value of their respective claims and the treatment that should be afforded to such claims under a chapter 11 plan.  The Debtors have expended significant efforts since the Petition Date to bridge competing views successfully and garner consensus to obtain even routine relief, with the added complexity of the politically charged atmosphere surrounding the national opioid crisis.

23.     This is the Debtors' first request for extensions of the Exclusive Periods, and the request comes approximately four months into these Chapter 11 Cases and after the filing of both a chapter 11 plan and disclosure statement.  The Debtors achieved this milestone while also making significant progress in administering the Chapter 11 Cases and maximizing value for creditors through the successful execution of a global sale process that culminated in the Debtors' estates entering into agreements that provide (upon closing) for the estates to realize upfront cash payments in the aggregate approximate amount of $30.4 million.  In the first 90 days of the Chapter 11 Cases, the Debtors:

- sought and obtained approval of eight "first day" motions, including obtaining authority to pay certain critical vendors and continue important customer programs, honor employee wages, benefit programs and non-insider incentive programs in the ordinary course of business, pay prepetition tax and insurance obligations, and maintain their cash management system;

- obtained a stay of all pending government actions that were the subject of the *Debtors' Motion for a Preliminary Injunction Pursuant to U.S.C. § 105(a)* [Adv. Pro. 19-50261 Docket No. 2] either consensually through a stipulation or through the order approving the Case Protocol;

- developed, together with the Creditors' Committee and certain State Attorneys General, the Case Protocol;

- participated in a mediation before Judge Kevin Carey to address, among other things, issues related to allocation of estate value, plan classification, and implementation among the Debtors' various creditors, and which resulted in the

10

Debtors reaching consensus and settlement with the Creditors' Committee and certain Personal Injury Claimants, Hospitals, NAS Children, Insurance Ratepayers, certain non-MDL Municipalities, and the TPPs;

- obtained Court approval of the Bidding Procedures Order and orders approving the sale of (i) Subsys, (ii) Syndros, and other assets related to CBD, (iii) Epinephrine, (iv) Naloxone, and (v) Buprenorphine;

- filed their Schedules and Statements and four operating reports; and

- established certain deadlines and procedures for the filing of proofs of claim in the Chapter 11 Cases [Docket No. 294].

24.     Considering the challenges facing the Debtors at the outset of the Chapter 11 Cases, the Debtors have proceeded with speed and efficiency.  The brief time that has elapsed during these complex Chapter 11 Cases and the progress the Debtors have made to date support the relief requested in this Motion.

**B.     (i) There Has Not Been Sufficient Time to Solicit and Prosecute the Plan and (ii) Substantial Good Faith Progress Has Been Made to Achieve the Objectives of Chapter 11**

25.     The Debtors' Exclusive Filing Period expires before the hearing scheduled to approve the adequacy of the Disclosure Statement and the proposed procedures for solicitation of the Plan.  Accordingly, there is insufficient time within the existing Exclusive Periods for the Debtors to solicit and prosecute the Plan.

26.     Significant good faith progress has been made towards developing and confirming a consensual chapter 11 plan, and terminating the Debtors' exclusivity at this time will only serve to derail the Chapter 11 Cases and result in the disruption that comes with the filing of multiple competing plans.  The progress towards filing and confirming a chapter 11 plan is a consideration when determining whether there is "cause" to justify an extension of a debtor's exclusivity periods.  *See In re Cent. Jersey Airport Servs., LLC*, 282 B.R. at 184 (granting an extension because the debtor almost completed the chapter 11 plan).  When determining whether

11

there is sufficient progress, courts consider the success in negotiations with the creditors and other stakeholders. *See In re Pine Run Tr., Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (allowing a ninety-day extension because debtors were close to concluding negotiations that were critical to plan confirmation); *In re Swatara Coal Co.*, 49 B.R. 898, 899 (Bankr. E.D. Pa. 1985) (authorizing an extension in light of the reasonable possibility that necessary negotiations will be commenced and concluded); *In re Serv. Merch. Co., Inc.*, 256 B.R. 744, 751 (Bankr. M.D. Tenn. 2000) (showing cash flow that was better than anticipated under the business plan was progress to warrant a further extension).

27.    Since the Petition Date, the Debtors have engaged in extensive negotiations with their key creditors to reach an agreement on the factual and legal bases for the various creditors' claims and the alleged value of those claims against the Debtors, the fair allocation of estate value, including the allocation of such value to each creditor group, and the material terms of a chapter 11 plan. The record of these Chapter 11 Cases only buttress the considerable efforts expended by the Debtors to work constructively with all of their constituents and ultimately achieve the objectives of chapter 11. The Debtors seek the relief set forth herein to ensure that the considerable progress already achieved does not unravel by the loss of exclusivity.

28.    Accordingly, the Debtors respectfully submit that the above factors weigh in favor of granting an extension of the Exclusive Periods.

**C.    (i) The Debtors Have Proposed a Viable Chapter 11 Plan and (ii) The Requested Extension of the Exclusive Periods Is Not to Pressure Creditors**

29.    The Debtors have already filed a viable chapter 11 plan supported by numerous creditor groups, which weighs in favor of granting the requested extensions. *See In re Cent. Jersey Airport Servs., LLC*, 282 B.R. at 184 (approving a 30-day extension because the debtor asserted that it almost had a viable plan completed and it had made sufficient progress in

the case in reaching negotiations with its creditors); *In re Pine Trust*, *Inc*., 67 B.R. 432 (Bankr. E.D. Pa. 1986) (granting 90 day extension of exclusive periods to allow sufficient time for the debtors to submit a viable plan).  The meaningful headway the Debtors have made in achieving the primary tenants of chapter 11 – confirming a chapter 11 plan, should not be derailed at this juncture.

30.     As stated above, this is the Debtors' first request for extensions of the Exclusive Periods.  The Debtors are not making this request to delay these Chapter 11 Cases.  The Debtors' continue to work constructively with the Creditors' Committee and given that the Debtors and the Creditors' Committee do not have any stake in any intercreditor disputes and have no pecuniary interest in the outcome, the fact that two estate fiduciaries have agreed on the framework and material terms of the Plan is a testament to its fundamental fairness and viability. Moreover, the Plan reflects a consensus reached, in a relatively short amount of time, with the majority of the Debtors' creditor groups.

31.     The Debtors are using the Exclusive Periods to engage constructively with their key stakeholders in a reasonable timeframe to confirm a chapter 11 plan and not to pressure creditors.  See*, e.g.*, *Pine Trust*, 67 B.R. at 435 (finding that the fact that there was no evidence presented that the debtors sought the additional extension to pressure their creditors to accede to their reorganization demands was an equally important factor in granting the relief requested); *see also In re Serv. Merch. Co., Inc.*, 256 B.R. 744, 751 (Bankr. M.D. Tenn. 2000) (finding no improper purpose without objections suggesting otherwise).   Rather than pressuring their stakeholders, the Debtors are managing an inclusive process that will maximize the potential for achieving a consensual plan. The requested extensions simply recognize the current posture of these cases and the status of the plan negotiation and confirmation process.  Granting an extension

of exclusivity would be fully consistent with the intent and purpose of section 1121 of the Bankruptcy Code.

**D.      The Debtors are Paying Required Postpetition Administrative Expenses as They Come Due**

32.      In determining whether to grant an extension of exclusivity, courts also assess a debtor's liquidity and whether the debtor continues to pay its debts as they come due.  *See In re Texaco, Inc.*, 76 B.R. 322 (Bankr. S.D.N.Y. 1987).

33.      The Debtors continue to manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have sufficient liquidity to pay their administrative expenses as they come due.  The Debtors will continue to pay all ongoing, ordinary course expenses, or they have made arrangements for the payment of such expenses under the Plan.  Accordingly, this factor weighs in favor of granting an extension of the Exclusive Periods.

**E.      Additional Factors Support an Extension of the Exclusive Periods**

34.      Ending exclusivity at this critical juncture in the Debtors' Chapter 11 Cases will likely be highly disruptive to the Debtors' efforts to limit their time in chapter 11 and confirm a consensual plan.  Allowing parties to file alternative plans and disclosure statements now would frustrate the Debtors' ability to manage an orderly plan process and undermine months of extensive negotiations among parties and the successful Court directed plan mediation, without any clear benefit.

35.      At the same time, the Debtors' limited extension will not prejudice any party in interest.  All parties' rights to oppose plan confirmation will remain in place if the Debtors are ultimately unsuccessful in reaching broader consensus.  Conversely, failure to extend the Exclusive Periods would defeat the very purpose of section 1121 of the Bankruptcy Code, *i.e.*, to

afford the debtor a meaningful and reasonable opportunity to negotiate with creditors and propose a confirmable chapter 11 plan of reorganization.  The termination of the Exclusive Periods and the threat of multiple plans would lead to unnecessary adversarial situations and confrontations that would likely lead to a deterioration of the Debtors' limited liquidity.

<h3 align="center"><u>Conclusion</u></h3>

36.     The Debtors have responded to the exigent demands of these Chapter 11 Cases and have worked diligently with the Creditors' Committee and their other stakeholders to formulate a confirmable chapter 11 plan.  The Debtors should be afforded a full, fair, and reasonable opportunity to fully exhaust plan negotiations, address any remaining open issues that may be present with the Plan, and solicit acceptances thereof.  For the reasons stated herein, this first requested extension of the Exclusive Periods is warranted and necessary to afford the Debtors a meaningful opportunity to pursue the chapter 11 process and build a consensus among their stakeholders, all as contemplated by chapter 11 of the Bankruptcy Code.

<h3 align="center"><u>Notice</u></h3>

37.     Notice of this Motion will be provided to (a) the U.S. Trustee (Attn: Jane M. Leamy); (b) counsel to the Creditors' Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Attorney's Office for the District of Delaware; (f) the Department of Justice; and (g) any other party entitled to notice pursuant to Local Rule 9013 1(m) (the "**Notice Parties**").  The Debtors submit that, in view of the facts and circumstances, such notice to the Notice Parties is sufficient and no further notice is required.

38.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

15

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as is just and appropriate.

Dated: October 7, 2019
      Wilmington, Delaware

*/s/ Megan E. Kenney*
RICHARDS, LAYTON & FINGER, P.A.
John H. Knight (No. 3848)
Paul N. Heath (No. 3704)
Zachary Shapiro (No. 5103)
Megan E. Kenney (No. 6426)
One Rodney Square
920 N. King Street
Wilmington, Delaware  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

WEIL, GOTSHAL & MANGES LLP
Gary T. Holtzer (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
Candace M. Arthur (admitted *pro hac vice*)
Olga F. Peshko (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for the Debtors*
*and Debtors in Possession*

RLF1 22160424V.1