THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| INSYS THERAPEUTICS, INC., *et al* | : | Case No. 19-11292 (KG) |
|  | : |  |
|  | : |  |
|  | : | **Obj. Deadline: Nov. 4, 2019 at 4:00 p.m.[1]** |
| Debtors. | : | **Hearing Date: Nov. 8, 2019 at 9:00 a.m.** |
|  | : |  |
|  | : | **Related to Docket No. 715** |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' MOTION FOR
ENTRY OF AN ORDER (I) APPROVING THE PROPOSED DISCLOSURE
STATEMENT AND THE FORM AND MANNER OF THE NOTICE OF A HEARING
THEREON, (II) ESTABLISHING SOLICITATION AND VOTING PROCEDURES,
(III) SCHEDULING CONFIRMATION HEARING, AND (IV) ESTABLISHING
NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF THE
DEBTORS' PLAN**

In support of his Objection to the Debtors' Motion For Entry of an Order (I)

Approving the Proposed Disclosure Statement and the Form and Manner of the Notice of a

Hearing Thereon, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling

Confirmation Hearing, and (IV) Establishing Notice and Objection Procedures For

Confirmation of the Debtors' Plan   (the "Motion"), Andrew R. Vara, the Acting United

States Trustee for Region 3 ("U.S. Trustee"), by and through his undersigned counsel, states

as follows:

1.      This Court has jurisdiction to hear this Objection.

2.      Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative

oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the

---

[1] The objection deadline was extended by agreement of the parties.

"Bankruptcy Code").  This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3.      Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard with regard to this Objection.

## BACKGROUND

4.      On June 10, 2019, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5.      On June 19, 2019, an official committee of unsecured creditors (the "Committee) was appointed by the U.S. Trustee.

6.      On September 17, 2019, the Debtors filed (i) their Joint Plan of Liquidation (the "Plan") and (ii) Disclosure Statement for the Plan (the "Disclosure Statement").

7.      On October 8, 2019, the Debtors filed a motion for entry of an order approving the Disclosure Statement and approving solicitation procedures (the "Motion").

## PRELIMINARY STATEMENT

8.      The U.S. Trustee objects to certain provisions of the proposed order and notices attached to the Motion, as set forth in more detail below.  With respect to the Disclosure Statement, the U.S. Trustee objects on the basis that it does not contain adequate information to allow a creditor to make an informed judgment regarding whether to vote in

favor of the plan.    In addition, at the confirmation stage, the U.S. Trustee anticipates raising

certain inappropriate provisions currently set forth in the Plan, which may render the Plan

unconfirmable as drafted.

## ARGUMENT

**Form of Order and Notices**

9.      The U.S. Trustee objects to the form of order and notices on the following

grounds.

10.      Order.  Paragraph 13 of the proposed order seeks approval of the content and

mailing of solicitation packages.  In particular, contrary to Rule 3017(d), the Debtors propose

to provide instructions to access the Disclosure Statement and Plan through the Debtors'

restructuring website in lieu of providing copies of such documents, or a USB drive

containing electronic copies, to those parties entitled to receive such documents under

Bankruptcy Rule 3017(d).  See Motion ¶ 47.  Rule 3017(d) only permits the Court to "order

otherwise with respect to one or more unimpaired classes." The Debtors should be required

to provide copies of the Disclosure Statement and Plan to creditors and interest holders as

required by Bankruptcy Rule 3017(d).

11.      Exhibit 1.  The Motion attaches various forms of notices, including a Form of

Confirmation Hearing Notice (Exhibit 1).  The Confirmation Hearing Notice contains

contradictory language regarding the ability to opt-out of the third party release.  For

instance, page 3 states that "any creditor that submits an opt out election form to the third-

party release. . . shall be deemed to have opted out of such third party release unless the

Bankruptcy Court approves the third party release on a non-consensual basis."  The Plan

does not contain any information signaling the Debtors' intention to enforce the third-party release as to those parties who have opted out.  Later, on page 4,  the Confirmation Hearing Notice states that "if the proposed plan is approved, you will be deemed to grant the third party releases provided for in the proposed plan even if you (A) do not vote in favor of the proposed plan and (B) object to the proposed plan."  This language does not mention the opt-out election.   Exhibit 1 must be corrected and conformed to match the language of the Plan.

12.      Exhibit 3-1.  Attached as Exhibit 3-1 to the Motion is a Notice of (A) Non-Voting Status to Holders of Claims and Interests in Impaired Classes 9, 11 and 12[2] and (B) Election to Opt Out of Release of Claims.  This notice attaches a form which indicates that, if the members of these Impaired Classes seek to opt-out of giving the third party releases, then they must sign and return the form indicating that they opt out of giving such releases.  The form of order sets the voting deadline as the date by which such forms must be received by the Debtors' claims agent to be effective.

13.      The Debtors have proposed a plan whereby Holders of Claims and Interests in Classes 9, 11 and 12, including public shareholders, will receive no distribution under the plan and are therefore deemed to reject the plan.  Despite such treatment, the Debtors seek Court approval of a process whereby the Debtors will serve such parties with an opt-out form, which must be returned by the voting deadline for such parties to avoid being deemed to give third party releases.

14.      In *In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011), the

---

[2] These consist of Class 9 (510(a) and 510(b) Subordination Claims, Class 11 (Intercompany Claims) and Class 12 (Equity Interests).

Court ruled that "any third party release is effective only with respect to those who *affirmatively consent* to it by voting in favor of the Plan and not opting out of the third party releases." *Id.* at 355 (emphasis added). The Court clarified that an "opt out mechanism is not sufficient to support the third party releases . . . particularly with respect to parties who do not return a ballot (*or are not entitled to vote in the first place*). Failing to return a ballot is not a sufficient manifestation of consent to a third party release." *Id.* (emphasis added), citing *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999).

15.     Failure to return an opt-out form should be no different.  Affirmative consent is especially important here, because the parties from whom releases are being sought include public shareholders, many of whom likely hold their stock in street name. The Debtors will not be serving all such shareholders directly with the opt-out form.  Rather, the Debtors will serve the form on the brokers, and expect the brokers to pass on those forms to the beneficial owners of the stock.  Yet, the Debtors have no control over the brokers, and therefore have no way of knowing whether beneficial stockholders actually received the opt-out form.

16.     The Debtors have the ability at this stage of the proceedings to change the opt-out form into an opt-in form, thereby ensuring that only those parties who actually received such form, and truly consent to give third party releases, will be deemed to provide the same. This is especially important because Classes 9, 11 and 12 are receiving no distribution under the plan, and therefore no consideration for giving any release.

17.     Other decisions from Court in this District are in accord with *Washington Mutual*.  *See In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del.

2004)(holding that the "Trustee (and the Court) do not have the power to grant a release of the Noteholders on behalf of third parties," and that such release must be based on consent of the releasing party); *In re Exide Technologies*, 303 B.R. 48, 74 (Bankr. D. Del. 2003)(approving releases which were binding only on those creditors and equity holders who accepted the terms of the plan); *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999)(release provision had to be modified to permit third parties' release of non-debtors only for those creditors who voted in favor of the plan).

18.     While the Court in *In re Indianapolis Downs, LLC*, 486 B. R. 286 (Bankr. D. Del. 2013) reached a different conclusion concerning the need for affirmative consent to third party releases, the plan in that case did not propose that third party releases be given by parties who are deemed to reject the plan. *See id.* at 304-05. The Court in *In re Spansion, Inc.*, 426 B.R. 114 (Bankr. D. Del 2010), also reached a different conclusion with respect to affirmative consent, but only as to releases given by unimpaired classes, who were "being paid in full." *Id.* at 144. In fact, as discussed in more detail below, in *Spansion,* the Court determined that non-consensual releases being deemed to be given by parties who were not receiving any distribution under the plan did not pass muster under applicable law. *See id.* at 145.

19.     Under the holding of *Washington Mutual*, and the other cases cited above, the Debtor' proposed opt-out procedure must be rejected. Classes 9, 11 and 12 "are not entitled to vote in the first place" (*Washington Mutual, Inc.*, 442 B.R. at 355), because they are deemed to reject the plan. And if "[f]ailing to return a ballot is not a sufficient manifestation of consent to a third party release" (*id.*), then failing to return an opt-out form cannot be a

manifestation of such consent.  Thus, the third party releases the Debtors seek to impose on the equity holders are not consensual.

**Inadequate Information**

20.     "[T]he general purpose of a disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan."  *In re Phoenix Petroleum, Inc.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001).  Section 1125(a) of the Bankruptcy Code defines "adequate information" as "information of a kind, and in sufficient detail to enable such hypothetical, reasonable investor to make an informed judgment about the plan.

21.     The Disclosure Statement does not contain adequate information to allow a creditor to make an informed judgment as to whether such creditor would receive at least as much as it would receive in a chapter 7 liquidation.  In particular, it does not have attached a liquidation analysis.  The Disclosure Statement provides only general information regarding the various administrative costs associated with chapter 7 and does not provide any estimate of the cost if such assets were liquidated by a chapter 7 trustee.

22.     The application of the best interest test involves a hypothetical application of chapter 7 to a chapter 11 plan.  *See In re Stone & Webster, Inc*., 286 B.R. 532 (Bankr. D. Del. 2002).  If the plan fails the section 1129(a)(7) test, then the creditors are better off in a chapter 7 liquidation.  Here, the creditors are essentially being asked to accept a general statement from the Debtors without any comparative analysis demonstrating that a chapter 7 trustee would distribute cash proceeds less efficiently than the chapter 11 estate.

7

Accordingly, the Disclosure Statement fails to provide sufficient information for creditors and parties in interest to make an informed decision regarding whether to vote in favor of or to reject the Plan.

23.     The Disclosure Statement also fails to describe the injunction and third-party release provisions contained in the Plan (albeit in bracketed form), in violation of Bankruptcy Rule 3016(c).  Rule 3016 (c) provides that "[i]f a plan provides for an injunction against conduct not otherwise enjoined under the Code, the plan and disclosure statement shall describe in specific and conspicuous language (bold, italic or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction."

**Objections to Plan Provisions**

24.     Without waiving the right to raise further issues at confirmation, the U.S. Trustee hereby gives notice of several problematic provisions that could ultimately make the Plan unconfirmable.

   **a.  Release and Exculpation Provisions**

25.     The Debtor release provision contained in section 10.5 of the Plan is overbroad and impermissible without a showing of the necessity of such releases.  *See Washington Mutual, Inc.*, 442 B.R. at 349;  *In re Zenith Electronics Corp.*, 241 B.R. 92 (Bankr. D. Del. 1999).  If the provision is necessary for confirmation, then absent the showing of the necessity, for example, that employees, officers or directors have made substantial contributions supporting such releases, the Debtors appear to have proposed a plan that is unconfirmable as a matter of law.

26.     In *In re Zenith Electronics Corp.*, 241 B.R. 92 (Bankr. D. Del. 1999), the

bankruptcy court considered the permissibility of the release of a debtors' claims. In *Zenith*, the bankruptcy court notes that a plan, notwithstanding section 524(e), may provide for releases by the debtor against third parties under certain limited circumstances. The bankruptcy court in *Zenith* adopted a five part test enunciated in *Master Mortgage Inv. Fund, Inc*., 168 B.R. 930 (Bankr. W.D. Mo. 1994) to determine whether a release by a debtor of a third party as part of a plan is permissible. These factors are:

> ". . . (1) an identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate; (2) substantial contribution by the non-debtor of assets to the reorganization; (3) the essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success; (4) an agreement by a substantial majority of creditors to support the injunction, specifically if the impacted class or classes "overwhelmingly" votes to accept the plan; and (5) provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the injunction." *Id.* at 937.

27.    The enumerated factors must be separately applied to each of the entities. Absent such a showing, and appropriate findings by the Court, the plan is unconfirmable. In *In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001), the court examined a similar provision and tested its applicability as to each party to be affected by the provision. For example, the attempt in *Genesis* to release the debtor's post-petition management was rejected, with the Court stating: "[a]s to the debtor's management personnel here, there is no showing that the individual releasees have made a substantial contribution of assets to the reorganization." *Id.* at 606. In the present case, none of the proposed parties to be released can meet the *Master Mortgage* test.

28.    As currently drafted, the Plan definitions of Released Parties and Exculpated

Parties, both in bracketed form, are identical.  As such, the application of both the release and exculpation provisions to such parties is duplicative and unnecessary.  *See Washington Mutual, Inc.*, 442 B.R. at 350.

### b.  Liquidating Chapter 11 Debtor Not Entitled to a Discharge

29.    Section 1141(d)(3) of the Bankruptcy Code provides that:

> The confirmation of a plan does not discharge a debtor if-
> (A) the plan provides for the liquidation of all or substantially all of the property of the estate;
> (B) the debtor does not engage in business after consummation of the plan; and
> (C) the debtor would be denied a discharge under section 727 (a) of this title if the case were a case under chapter 7 of this title.

30.    The assets of the estate have been substantially liquidated and the Plan is a liquidating plan.  The Debtors are not entitled to a discharge within the meaning of section 1141(d)(3).  Sections 4.3, 4.4, 4.5, 4.6, 4.7, 4.8 and 6.19 of the Plan each provide that holders of claims will receive distributions in "full and final satisfaction, settlement, release and discharge" of such claims.  This language renders the Plan unconfirmable pursuant to 1129(a)(1) because the Plan proposes provisions that do not comply with the Bankruptcy Code.

### c.  Payment of Statutory Fees

31.    Section 12.5 of the Plan, which provides for the payment of statutory fees, should be revised to clearly provide for the joint liability of the post-confirmation Debtors and the Liquidating Trustee for statutory fees until entry of an order closing or converting the cases.

WHEREFORE, the U.S. Trustee requests that this Court issue an order denying

10

approval of the Motion as written and/or granting such other relief as this Court deems appropriate, fair and just.

Respectfully submitted,

**ANDREW R. VARA**
**ACTING UNITED STATES TRUSTEE**

**By:**  */s/ Jane M. Leamy*
      Jane M. Leamy (#4113)
      Trial Attorney
      J. Caleb Boggs Federal Building
      844 King Street, Suite 2207, Lockbox 35
      Wilmington, DE 19801
      (302) 573-6491
Dated: November 4, 2019      (302) 573-6497 (Fax)

11