## **Exhibit M**

Personal Injury Claims Analysis Protocol

## INDIVIDUAL SUBSYS CLAIMANT CLAIMS CRITERIA[1]

### § 1.    CLAIMS ADMINISTRATOR.

The Trust claims administrator[2] shall have the authority to determine the validity and valuation of any claim.  Pursuant to that authority, the Trust claims administrator may investigate any claim, and may request information from any claimant to ensure compliance with the terms outlined in this document.

The Trust claims administrator shall be and is appointed as the successor of the Debtors and will retain all property, rights and privileges of the Debtors with respect to any claims administered by the Trust, including all medical, prescription, or business records of the Debtors, or in the Debtors' possession, custody or control, related to any claims administered under this Criteria. Prior to the Effective Date of the Plan, the Debtors shall compile all such records and transfer the same to the Trust claims administrator on the effective date.

### § 2.    APPLICABILITY.

The claims at issue concern SUBSYS (fentanyl sublingual spray) an opioid agonist indicated for the management of breakthrough pain in cancer patients 18 years of age and older who are already receiving and tolerant to opioid therapy for their underlying persistent pain.  Patients prescribed SUBSYS must remain on around-the-clock opioids when taking SUBSYS.  This fentanyl cancer medication and its limited FDA approved use varies significantly from other manufactured, marketed and distributed opioids.

### § 3.    INITIAL CLAIM VALIDITY REQUIREMENTS.

A claimant must demonstrate both of:

(a) The claimant or decedent received a prescription for Subsys, including any prescription for off-label use; and

(b) Injury from Subsys use – The claimant must demonstrate one or more of the following:

---

[1] These claims procedures and the agreements reflected herein solely relate to the unique facts present in the Debtors' bankruptcy case and their drug Subsys.  By agreement of the parties, to be so ordered by the Court, these criteria shall have no precedential impact or effect whatsoever and shall not be used by parties or counsel in any manner as such in any other litigation or proceeding of any kind involving any entity or individual outside of the Debtors' bankruptcy cases.  The chemical composition of Subsys, the physical reactions to Subsys, and the FDA labeling and TIRF-Rems procedures associated with Subsys, as well as the financial aspects of the Insys bankruptcy case and its assets, all contribute to the parties willingness to make the compromise reflected herein and those factors are unlikely to exist in other matters.

[2] Acceptance of these Claims Criteria is contingent upon the selection of a Trust claims administrator that is acceptable to the SMT group.

1.  Prescribed use of Subsys by the claimant for a period of 30 days or more;[3]

2.  Addiction to Subsys;

3.  The decedent's death was at least partially caused by a Subsys addiction, overdose or complication; or

4.  The claimant sustained other bodily injury arising out of the claimant's use of Subsys.

## § 4.    CLAIM VALIDITY EVIDENCE.

(a) A claimant shall demonstrate a qualifying prescription of Subsys as described in § 2(a) by submitting to the Trust claims administrator:

1.  A copy of a Subsys prescription or pharmacy record issued in the name of the claimant or decedent;

2.  A photograph of a prescription container clearly showing the name of the claimant or decedent thereon;

3.  Medical records identifying a prescription of Subsys for the claimant or decedent; or

4.  Medical or insurance billing records that reflect charges for Subsys administered to claimant or decedent.

(b) Alternatively, a claimant may demonstrate the existence of a Subsys prescription by use of a certification supplied by the debtor, its successors, or by a third party at the debtor's or its successors' request, indicating that TIRF REMS or similar prescription data otherwise available to the Debtor reflects that the claimant had at least one prescription for Subsys.

(c) A claimant may demonstrate a qualifying injury by submitting to the Trust claims administrator:

1.  One or more prescriptions evidenced by the methods identified in § 2(b) for a period of and in amounts reflecting Subsys use of 30 days or more;[4]

---

[3] Evidence of a prescribed use of Subsys for 30 days or more will support an award of nominal damages.  Such use will not, however, be presumed to be proof of any other specific bodily injury.  Other bodily injury must be evidenced by appropriate specific evidence.

[4] Evidence of a prescribed use of Subsys for 30 days or more will support an award of nominal damages.  Such use will not, however, be presumed to be proof of any other specific bodily injury.  Other bodily injury must be evidenced by appropriate specific evidence.

2. A death certificate or similar official record identifying a cause of death as opioid overdose, complications arising out of opioid use, and/or drug interactions involving opioid use

3. Medical records identifying Subsys use as a cause of an injury or death;

4. A report by a qualified physician indicating that (i) he or she personally examined the claimant's medical records and/or the claimant, and (ii) based upon that review states to a reasonable medical probability that the claimant died or has an injury caused in part by a prescribed use of Subsys;

5. Documents supporting or establishing a claimant's addiction to Subsys; or

6. Any other credible evidence that tends to establish the existence of a qualifying injury, to be accepted or rejected at the Trust claims administrator's discretion.

(c) A claimant and their attorney must deliver a certification signed by both the claimant and their attorney attesting to the accuracy and truthfulness of the claimant's submission.

a. Such certification must include an attestation to the best of their knowledge that the claimant has provided all evidence, consistent with this procedure, of his or her use of other opioids, legal or illegal, prior to, during, of after his or her use of Subsys.

b. Such certification must include an attestation that no records or information that would reasonably be relevant to the valuation of the claim have been withheld.

## § 5.    CLAIM VALUATION.

(a) The Trust claims administrator will determine the amount of any claim that has satisfied the initial claim validity requirements described in § 2. Such claim valuation shall be limited as described below. These limitations shall apply collectively to all claims that arise from a single individual's use of Subsys regardless of the number of claimants. Such allowed claims may include:

1. Actual present and future damages as described below in § 4(d), subject to any limitations on such amounts as provided herein and as would be applied under applicable law; and

2. Pain and suffering damages, as may be permitted under applicable law, and subject to the further limitations provided in § 2(b) or (c), as applicable.

(b) Wrongful death claims may include pain and suffering damages in an amount not to exceed $575,000 per claim.

3

(c) Claims that are not based upon a wrongful death claim may include pain and suffering damages in an amount set by the Trust claims administrator so the aggregate of all pain and suffering components of all non-wrongful death claims administered by the Trust that have satisfied the requirements of § 2 will not exceed an average of $195,000 per Subsys user.

(d) The claimant will provide the following information to the Trust claims administrator. The Trust claims administrator will consider, as he or she deems appropriate, the following non-exhaustive factors in deciding the value of any claim:

1. The amount of any medical expenses incurred due to injuries caused by the claimant or decedent's use of Subsys;

2. The duration of any medical, mental health, or rehabilitative treatment arising out of the claimant or decedent's use of Subsys;

3. The amount of any lost wages caused by the claimant or decedent's use of Subsys;

4. The amount of any funeral or burial expenses for the decedent, so long as the claimants' death was consistent with Section 2(b)(3) of this Procedure.

5. The claimant or decedent's age;

6. The claimant or decedent's employment history;

7. The claimant or decedent's medical history, including, specifically, the conditions that prompted any prescription for opioid use, including Subsys;

8. Whether the claimant or decedent had surviving spouse, parents, or dependents, and if so, the age of those dependents;

9. The nature of the claimant or decedent's bodily injury caused by the use of Subsys;[5]

10. The nature, extent and duration of a claimant's addiction to Subsys;

11. The nature of claimant's neurological, cardiovascular, or any other injury related to Subsys use (e.g., hypoxic brain injury);

12. The claimant or decedent's prior use usage of opioid analgesics, including the duration, quantity, dosage, and escalation of any opioid mediations;

---

[5] Evidence of a prescribed use of Subsys for 30 days or more will support an award of nominal damages. Such use will not, however, be presumed to be proof of any other specific bodily injury. Other bodily injury must be evidenced by appropriate specific evidence.

13. The claimant or decedent's prior usage of fentanyl products, including transmucosal immediate release fentanyl (TIRF) products (Actiq, Lazanda, Fentora, Abstral, Onsolis, Subsys), including the duration, quantity, dosage, and escalation of such medications;

14. The claimant or decedent's usage concurrent with Subsys of any around the clock and short acting opioid analgesics, including any other fentanyl or TIRF product;

15. The claimant or decedent's prior usage of any benzodiazepine concurrent with another opioid;

16. The claimant or decedent's history of prior substance abuse, including opioid use disorder, as reflected in the claimant or decedent's medical records;

17. The claimant or decedent's prior use of illicit drugs or of distribution or diversion of controlled dangerous substances;

18. Information that might suggest the existence of another source or condition  that may have caused or contributed to any injuries;

19. The potential liability of other entities or persons for some or all of the claimant's injuries or damages of decedent's death and any compensation and recoveries, of any kind received from any person or entities connected to claimants' injuries; and

20. Information as to why the claimant did not pursue a claim against Insys substantially contemporaneous with any assertion of a claim related to opioid use against any other party if the claimant pursued other claims and did not assert a claim against Insys; and

21. Information as to any explanation as to why the claimant did not pursue a claim against Insys prior to the filing of the bankruptcy case if no such claim was filed prior to the Insys bankruptcy petition date.

(e) In no circumstance shall the Trust claims administrator assign any claim value for any punitive damages, statutory enhanced damages, attorney's fees or costs, or claims presentation-related expenses.

## § 6.    CLAIM VALUATION EVIDENCE.

(a) To permit the Trust claims administrator to evaluate the value of a claim, a claimant shall submit if applicable, all of the following, non-exhaustive, types of documents, to the extent reasonably available and unless for good cause shown:

1. A properly completed claim form as established by the Trust claims administrator, consistent with the requirements herein;

2. A death certificate, if the claim is presented for a deceased individual;

3. Evidence of the claimant's condition at the time of the claimant's use of Subsys and evidence of the condition that prompted a prescription of Subsys;

4. Medical records that document, the claimant's injuries, and the nature and cost of treatments resulting from use of Subsys;

5. Documents reflecting payment of medical expenses, *e.g.*, receipts, hospital records, insurance records, any applicable funeral or burial expenses;

6. Copies of all claims, complaints, proofs of claim, notices, settlement documents, releases, recoveries, compensation received, or similar documents that claimant submits or entered into in respect of claims asserted against or to be asserted against any other entity or person arising from or related to claimant's or decedent's use of opioids or related to any of the injuries that underlie that claim presented to the Trust claims administrator. (To the extent that additional such documents or evidence becomes available to the claimant after his or her claim submission and before the claims administrator determines the amount of the claim, the claimant will supplement his or her claim with such additional evidence); and

7. Affidavits from claimant, heirs, or others with personal knowledge, describing the timing, length and circumstances of claimant or decedent's addiction to Subsys, injuries, or history of use.

(b) The claimant may submit such additional information as the claimant believes will assist the Trust claims administrator determine that appropriate amount of any claim that has satisfied the initial claim validity requirements.

(c) The Trust claims administrator may request additional information as reasonably necessary in the opinion of the Trust claims administrator to determine the amount of a claim.

(f) A claimant that has satisfied the initial claim validity requirements described in § 2 and who has submitted the required claim supporting evidence described in § 3 may request an opportunity – by personal appearance, telephone, or video conference – to make a presentation to the Trust claims administrator regarding the amount of a claimant's claim, and shall be granted, at least, one thirty (30) minute oral presentation.

(g) Representatives of the SMT group will be permitted to submit a memorandum to the Trust claims administrator highlighting scientific or medical background, research, or

literature that the SMT group believes may assist the Trust claims administrator generally to evaluate the claims asserted against Insys or to assist the Trust claims administrator to judge the causal connection between Subsys use and particular forms of injury. Such memorandum may cite generally available published materials. Such memorandum will not address any specific claim but will instead focus on the general experience of Subsys users. Such memorandum will not exceed 20 pages in length and will be made available by the Trust claims administrator to claimants. Claimants may submit as part of their claims submission any rebuttal material that they believe will assist the Trust claims administrator achieve a just conclusion.

## § 7.   CLAIM VALUATION FACTORS.

(a) The following factors will tend to reduce the amount of an allowed claim below the maximum values established as to such claims:

1. Any illegal drug use prior to the prescribed use of an opioid for pain management;

2. The manifestation of particular injuries prior to the fist prescribed use of Subsys;

3. Forms of injury that, based on the medical research or literature, the Trust claim administrator concludes are more commonly associated with other opioids that were also utilized by the claimant prior to or concurrent with the claimant's first prescribed use of Subsys where the claimant has not demonstrated to the Trust claims administrator a likelihood of causal connection between the injury and the claimant's Subsys use;

4. Forms of injury that would have been expected given the nature of claimant's or decedent's pre-existing medical condition at the time of the first Subsys prescription, although the acceleration or exacerbation of any such conditions after prescription of Subsys may ameliorate any downward implication of any appropriate award; and

5. Any assertion by claimant in any other claims or pleadings that is inconsistent with claimant's contentions that Subsys was a significant contributor to any element of claimant's damages.

(b) The following factors will tend to increase the amount of an allowed claim closer to any maximum values established as to such claims:

1. The claimant's likely inability to recover material compensation from other potentially liable entities for the same injuries supporting claimants' asserted damages;

2.  A substantial worsening of elements of injury or initial manifestation of injuries after the first prescribed use of Subsys;

3.  Use of relatively high doses of Subsys; and

4.  Indications that use of other opioid drugs with generally less serious side effects were successful in managing claimant's pain issues prior to the first prescribed use of Subsys;

(c) The following factors will generally not, alone, tend to increase or reduce the allowed amount of a claim:

1.  The fact that the prescribing doctor has been accused of improper conduct with respect to opioid prescriptions where the circumstances do not clearly indicate some wrongful conduct by the claimant; and

2.  The illegal use of opioids after a prescribed use;