## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| INSYS THERAPEUTICS, INC., *et al.*,[1] | Case No. 19-11292 |
| Debtors. | Jointly Administered |
|  | Objection Deadline: Extended to January 9, 2020<br>Hearing: January 16-17, 2020 at 9:00 a.m. |
|  | Related to Docket No. 955 |

## OBJECTION OF THE CHUBB COMPANIES TO THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY INSYS THERAPEUTICS, INC. AND ITS AFFILIATED DEBTORS

ACE Property and Casualty Insurance Company, Westchester Surplus Lines Insurance Company, Illinois Union Insurance Company, Federal Insurance Company, Chubb Custom Insurance Company and Chubb Indemnity Insurance Company (and together with each of their affiliates and successors, the "Chubb Companies"), by and through their undersigned counsel, hereby object (the "Objection") to the *Second Amended Joint Chapter 11 Plan of Liquidation Proposed by Insys Therapeutics and Its Affiliated Debtors* [Docket No. 955] (the "Plan")[2] and, in support of the Objection, the Chubb Companies respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LLC (6577); and IPT 355, LLC (0155). The Debtors' mailing address is 410 S. Benson Lane, Chandler, Arizona 85224.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Plan.

**BACKGROUND**

A.    **The Bankruptcy Case**

1.        On June 10, 2019 (the "Petition Date"), Insys Therapeutics, Inc. and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2.        Upon information and belief, since the Petition Date, the Debtors continue to act as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.        On September 17, 2019, the Debtors filed the *Joint Chapter 11 Plan of Liquidation of Insys Therapeutics, Inc. and Its Affiliated Debtors* [Docket No. 612] (the "Initial Plan"), which was later amended on November 14, 2019 [Docket No. 892] (the "First Amended Plan").

4.        On November 29, 2019, the Debtors filed the Plan.

5.        On December 30, 2019, the Debtors filed the Plan Supplement [Docket No. 1049].[3]

B.    **The Insurance Programs**

6.        Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to one or more of the Debtors, as named insureds.

7.        Pursuant to certain Policies (together with any agreements related thereto, the "ACE Insurance Program"), ACE Property and Casualty Insurance Company, Westchester Surplus Lines Insurance Company and Illinois Union Insurance Company provide, *inter alia*,

---

[3]    The Chubb Companies note that none of the Insurance Programs (as defined herein) is listed on the Schedule of Assumed and Assigned Contracts in the Plan Supplement while other insurance policies provided by other insurance carriers were so listed.  Accordingly, the Chubb Companies reserve and preserve all rights to further object to the Plan Supplement and the Schedule of Assumed and Assigned Contracts.

environmental, products liability, umbrella excess, technology and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the ACE Insurance Program (the "ACE Program Obligations").

8.      Pursuant to other Policies (together with any agreements related thereto, the "Chubb Insurance Program", and collectively with the ACE Insurance Program, the "Insurance Programs"),[4] Federal Insurance Company, Chubb Custom Insurance Company and Chubb Indemnity Insurance Company provide, *inter alia*, accident, automobile liability, crime, customarq, umbrella, workers' compensation, package, directors' and officers' excess, general liability and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Chubb Insurance Program (the "Chubb Program Obligations," and collectively with the ACE Program Obligations, the "Obligations").

---

[4]     The descriptions of the Insurance Programs set forth herein are not intended to, and shall not be deemed to amend, modify or waive any of the terms or conditions of the Insurance Programs.  Reference is made to the Insurance Programs for a complete description of their terms and conditions.

9.      The Debtors' Obligations are payable over an extended period of time and are subject to future audits and adjustments.

**C.      The Plan**

**1.      Treatment of Insurance Policies Under the Plan**

10.      With respect to insurance neutrality, the Plan provides:

(a) Nothing contained in this Plan, the Plan Documents, or the Confirmation Order, including any provision that purports to be preemptory or supervening, shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying (i) the rights or obligations of any of the Insurance Companies or (ii) any rights or obligations of the Debtors arising out of or under any Insurance Policy. For all issues relating to insurance coverage, including all rights and obligations under the Insurance Policies, the provisions, terms, conditions, and limitations of the Insurance Policies shall control.

(b) For the avoidance of doubt, nothing contained in this Plan, the Plan Documents, or the Confirmation Order shall operate to require any Insurance Company to indemnify or pay the liability of any Debtor or Liquidating Debtor that it would not have been required to pay in the absence of this Plan. This subsection (b) in no way modifies, alters or limits the rights and/or obligations set forth in subsection (a), above.

(c) None of (i) the Bankruptcy Court's confirmation of the Plan or approval of the Plan Documents, (ii) the Confirmation Order or any findings and conclusions entered with respect to confirmation, nor (iii) any estimation or valuation of any Claims, either individually or in the aggregate in the Chapter 11 Cases shall, with respect to any Insurance Company, constitute a trial or hearing on the merits or an adjudication or judgment with respect to any Claim or Cause of Action.

Plan § 5.10.

11.      Similarly, the Plan also notes that, with respect to insurance generally:

(a) On or prior to the Effective Date, the Debtors, with the consent of the Creditors' Committee (which shall not be unreasonably withheld), may fund an upfront premium payment to purchase "tail insurance" to continue either or both of (i) the Debtors' existing

directors' and officers' insurance and (ii) the fiduciary policy related to the Debtors' 401(k) plan.

(b) On and after the Effective Date, all Insurance Policies and all Products Liability Insurance Policies shall be deemed to be and treated as Assumed and Assigned Contracts, and shall vest in the Insys Liquidation Trust and the Victims Restitution Trust, respectively, and continue in full force and effect thereafter in accordance with their respective terms such that the Liquidating Trustee and the VRT Claims Administrator, as applicable, shall become and remain jointly and severally liable in full for all of the Debtors' obligations under the Insurance Policies and the Products Liability Insurance Policies, as applicable.

Plan § 8.7.

12.    However, the Plan notes that, with respect to the Insurance Rights Transfer and the

Products Liability Insurance Rights Transfer:

The Insurance Rights Transfer *is made free and clear of all Claims, Liens, encumbrances, or Causes of Action of any nature whatsoever*, except available limits of liability for coverage of certain types of Claims under one or more Insurance Policies that may have been reduced by certain prepetition payments made by an Insurance Company to, or on behalf of, one or more of the Debtors.

Plan § 5.7(e)(ii) (emphasis added).

The Products Liability Insurance Rights Transfer *is made free and clear of all Claims, Liens, encumbrances, or Causes of Action of any nature whatsoever*, except available limits of liability for coverage of certain types of Claims under one or more Products Liability Insurance Policies that may have been reduced by certain prepetition payments made by a Products Liability Insurance Company to, or on behalf of, one or more of the Debtors.

Plan § 5.8(c)(ii) (emphasis added).

**2.    The Insys Liquidation Trust and the Victims Restitution Trust**

13.    The Plan provides that the Debtors' Insurance Rights and Products Liability

Insurance Rights are to be transferred to the Insys Liquidation Trust and the Victims Restitution

Trust, respectively. *See* Plan §§ 5.7(d) and 5.8(c).

14.     On October 15, 2019 the Chubb Companies filed the *Objection Of The Chubb Companies To The Disclosure Statement For Joint Chapter 11 Plan Of Liquidation Proposed By Insys Therapeutics, Inc. And Its Affiliated Debtors* [Docket No. 746] (the "<u>Chubb Disclosure Statement Objection</u>") which illuminated various deficiencies and other shortcomings inherent in the Initial Plan and the *Disclosure Statement for Joint Chapter 11 Plan of Liquidation Proposed by Insys Therapeutics and Its Affiliated Debtors* [Docket No. 613] (the "<u>Initial Disclosure Statement</u>") with respect to, among other things, the Insurance Rights Transfer, the Products Liability Insurance Rights Transfer, matters pertaining to the treatment of insurance policies and agreements generally, and material misstatements with respect to the Coverage Dispute (as defined in the Chubb Disclosure Statement Objection).

15.     After filing the Chubb Disclosure Statement Objection, counsel to the Debtors and the Chubb Companies engaged in discussions geared at resolving the Chubb Disclosure Statement Objection, and ultimately did so resolve the Chubb Disclosure Statement Objection for purposes of approval of the Initial Disclosure Statement only. *See, e.g.,* Exhibit C to *Debtors' Omnibus Reply In Support Of Motion to Approve Disclosure Statement And Solicitation And Coting Procedures* [Docket No. 932] at pp. 11-14.

16.     Crucial to this resolution was the incorporation of various revisions to the Initial Plan and Initial Disclosure Statement requested by the Chubb Companies.

17.     Indeed, for example, with respect to the Insurance Rights Transfer and Products Liability Insurance Rights Transfer, the First Amended Plan included revisions addressing these issues and provided that "[t]he Insys Liquidation Trust shall comply with all terms and provisions of the Insurance Policies and applicable law" and that the "[t]he Victims Restitution Trust shall

comply with all terms and provisions of the Products Liability Insurance Policies and applicable law." *See* First Amended Plan §§ 5.7(e)(iv) and 5.8(e)(iv).

18.    Following the resolution of the Chubb Disclosure Statement Objection, the Debtors filed the Plan which, without any explanation or notification to the Chubb Companies, incorporated revisions that omitted both of the foregoing clauses, such that the Plan now conflicts with the insurance neutrality provisions set forth elsewhere therein, and is contrary to the resolution of the Chubb Disclosure Statement Objection. *Compare* Plan § 5.10 *with* Plan §§ 5.7(e)(ii) and 5.8(c)(ii)

19.    To add to the internal conflict and confusion, the Plan then later notes that the ". . .the Liquidating Trustee and the VRT Claims Administrator, as applicable, shall become and remain jointly and severally liable in full for all of the Debtors' obligations under the Insurance Policies and the Products Liability Insurance Policies, as applicable." *See* Plan § 8.7.

20.    Plan Section 8.7 accurately reflects the agreement that the Debtors and the Chubb Companies had reached as part of the resolution of the Chubb Disclosure Statement Objection and the appropriate concept as it pertains to the transfer of insurance policies and rights generally, and consequently, as discussed further herein, the Plan must be revised to correct and clarify the ambiguities created by the contradictory concepts advanced in Plan provisions such as Plan Sections 5.7(e)(ii) and 5.8(c)(ii).

## SUMMARY OF OBJECTION

21.    The Chubb Companies object to the Plan on the basis that: (i) the Plan contemplates an improper assignment of the Insurance Programs; (ii) while it appears that the Debtors seek to obtain the benefits of the Insurance Programs (*see* Plan §§ 5.10, 8.7), the Plan contains inconsistent provisions related thereto (*see* §§ 5.7(e)(ii) and 5.8(c)(ii)) and further fails to adequately address

the fact that in order to do so, the Debtors' successors must remain liable in full for the Obligations under the Insurance Programs; (iii) the Plan attempts to improperly alter or otherwise modify the terms of the Insurance Programs; (iv) the Plan disregards applicable coverage defenses, and that any disputes related thereto should be adjudicated and determined under the terms of the Insurance Programs and applicable non-bankruptcy law; and (v) the Plan fails to provide that workers' compensation claims and direct action claims must continue to be administered, handled, defended, settled, and/or paid in the ordinary course of business, as required by applicable state law.

## OBJECTION

I.    **The Insurance Programs Cannot Be Assigned Or Otherwise Transferred Without The Prior Written Consent Of The Chubb Companies, Which Has Not Been Sought Or Given.**

22.    To the extent that the Debtors under the Plan seek to transfer or assign any part of the Insurance Programs to the Trusts, such transfer or assignment cannot occur without the express written consent of the Chubb Companies.

23.    Pursuant to 11 U.S.C. § 365(c), a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or rendering performance to an entity other than the debtor and such party does not consent to the assumption or assignment.  11 U.S.C. § 365(c)(1)(A) and (B).

24.    Applicable non-bankruptcy law does, in fact, prohibit the assignment of insurance policies without the insurer's consent. *See, e.g., Allied Corp. v. Frola*, No. 87-462, 1992 U.S. Dist. LEXIS 15778 (D.N.J. Oct. 6, 1992) (holding that insurance policies are not assignable without the consent of the insurers); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance policy is a personal contract between the insurer and the named insured; and that, ". . . coverage terminates when the contract is assigned or transferred without the consent, permission,

8

and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property); *see also*, Chubb Products Liability Policies Insuring Agreement at § VI(M).

25.      Similarly, insurers cannot be compelled to provide insurance coverage to any entity. *See Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to accept insurance from some other company (in which he may have no confidence) than the one contracted with.").

26.      Therefore, because the Chubb Companies have not consented to any proposed transfer or assignment of the Insurance Programs, the Chubb Companies object to any and all such transfers or assignments at this time

27.      Some courts have found that insurance policies may be assigned to a trust created under 11 U.S.C. § 524(g) pursuant to a plan under 11 U.S.C. § 1123 without the consent of the insurer. *See, e.g., In re Federal-Mogul Global*, 684 F.3d 355, 382 (3d Cir. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) of the Bankruptcy Code to the extent they prohibit transfer to a § 524(g) trust); *In re W.R. Grace & Co.*,

475 B.R. 34, 198-99 (D. Del. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) in the context of the establishment of a § 524(g) trust).

28.    In this case, however, the Debtors are not proposing an assignment to a trust created pursuant to 11 U.S.C. § 524(g) and, as such, the consent of the insurers is mandatory.

29.    Accordingly, the assumption and assignment of the Insurance Programs is improper.

## II.    The Debtors' Successors Cannot Continue To Receive The Benefits Of The Insurance Programs Without Remaining Liable For The Obligations Thereunder.

30.    Pursuant to the Sections 5.7, 5.8, 5.10 and 8.7 of the Plan quoted above, it appears that the Debtors seek to have the Trusts enjoy the benefits of the Insurance Programs, if any benefits or proceeds are available under the terms of the insurance contracts, without being liable for compliance with the terms and provisions of the Policies and applicable non-bankruptcy law.

31.    It is well-established that debtors (and their successors) cannot seek to receive benefits of a contract without being liable for obligations thereunder. *See In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) (holding that a debtor must adopt the burdens of a contract if the debtor receives the benefits under such contract, recognizing that a debtor "may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.") (internal citation omitted); *Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owner's Association, Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge

its validity in order to escape its burdens"); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party.").

32.    Further, each of the Insurance Programs is an integrated insurance program and therefore, each must be read, interpreted and enforced in its entirety. *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225 (D. Del. 2015) (reversing bankruptcy court decision which permitted debtor to assume one agreement between itself and another party, and not the related agreements; holding that all agreements must be assumed or rejected together); *Dunkin' Donuts Franchising LLC v. CDDC Acquisition Co. LLC (In re FPSDA I, LLC)*, 470 B.R. 257, 269 (E.D.N.Y. 2012) (holding that "two agreements [were] so interrelated, [that] they form[ed] a single overarching executory contract"); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

33.    Therefore, to the extent that the Debtors seek to retain the benefits of the Insurance Programs, the Debtors' successor(s), including the Trusts, must remain liable in full for the Obligations thereunder.

34.    While Plan Section 8.7 notes that ". . .the Liquidating Trustee and the VRT Claims Administrator, as applicable, shall become and remain jointly and severally liable in full for all of the Debtors' obligations under the Insurance Policies and the Products Liability Insurance Policies,

as applicable," Plan Sections 5.7(e)(ii) and 5.8(c)(ii) purport to transfer the Insurance Rights and the Products Liability Insurance Rights "free and clear" of all liens, encumbrances and interests.[5]

35.     As such, the Plan is inconsistent and the Chubb Companies are accordingly unsure as to what Obligations, if any, the Trusts are required to perform.

36.     Accordingly, in order to be entitled to any of the benefits of the Insurance Programs, if any benefits are available under the terms of the insurance contracts, the Trusts, as successors to the Debtors, must remain liable in full for the obligations thereunder, and the Plan must therefore be clarified in accordance with the foregoing.

### III.    The Plan Improperly Alters The Terms Of The Insurance Programs.

37.     Neither the Debtors nor this Court can rewrite the Insurance Programs, but rather, the Insurance Programs must be enforced as written. *See, e.g., In re WorldCorp, Inc.*, 252 B.R. 890, 897 (Bankr. D. Del. 2000) (a court may not "rewrite [a] contract to include terms that a party wishes [it] had bargained for, but did not, prior to execution of the agreement."); *Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 769 F. Supp. 671, 707 (D. Del. 1991) aff'd, 988 F.2d 414 (3d Cir. 1993) ("Courts do not rewrite contracts to include terms not assented to by the parties."); *In re Best Mfg. Grp. LLC*, 2012 WL 589643, at *6 (Bankr. D.N.J. 2012) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written").

---

[5]    Furthermore, the Trust Agreements, included within the Plan Supplement, provide that the transfer of the Trust Assets is made "free and clear of all Claims, Interests, Liens, other encumbrances, and liabilities of any kind except as provided in the Plan *and this Trust Agreement*. . . [.]" *See* Trust Agreements § 1.02(a) (emphasis added).  Similarly, the Trust Agreements further purport to effectuate the Insurance Rights Transfer and Products Liability Insurance Rights Transfer respectively "free and clear of all Claims, Liens, encumbrances, or Causes of Action of any nature whatsoever. . . [.]" *See* Trust Agreements § 1.02(b)(ii). These provisions are inconsistent with the terms of the Plan, are contradictory to the concept that the Plan controls, and are contrary to the insurance neutrality provisions set forth therein.

38.     However, the Plan contains provisions which provide for the release of claims and other causes of action, the vesting and transfer of assets in the Trusts free and clear of liens, releases of certain third-parties, and exculpation and injunctions against certain actions. *See* Plan §§ 5.7(e)(ii) and 5.8(c)(ii); Plan Article X.

39.     While the Plan purports to provide that nothing in the Plan, the Plan Documents, or the Confirmation Order, shall operate or have the effect of modifying insurance policies (Plan § 5.10), various provisions of the Plan, including, but not limited to those provisions providing for releases of claims and actions and vesting and transfer of assets in the Trusts free and clear of liens (Plan §§ 5.7(e)(ii) and 5.8(c)(ii)), in fact modify the Policies.

40.     Further, the Plan contemplates an improper transfer of proceeds under the Insurance Programs between the Trusts resulting in a further impermissible modification of the terms and conditions of the Insurance Programs.

41.     Indeed, the Plan purports to (i) transfer rights and proceeds between the Trusts, as opposed to the Policies themselves, and (ii) potentially split the proceeds of certain Policies between the Trusts, without adequately providing for the retention of the Obligations thereunder.

42.     The Policies are part of the Insurance Programs and inseparable from the balance of the respective Insurance Program. *See infra.*

43.     Any such attempt to transfer rights under the Insurance Programs between the two separate Trusts (which the Plan currently provides) would result in the Chubb Companies being forced to insure two separate and unrelated entities under the same Policies.

44.     This improperly modifies and contradicts the terms of the Insurance Programs, and should not be permitted.

45.     Further, the Plan inexplicably removed provisions requiring the Insys Liquidation Trust and the Victims Restitution Trust from complying with all terms and provisions of the applicable Insurance Policies and Products Liability Insurance Policies respectively.

46.     These revisions suggest a conflict with and a potential contradiction of the terms of the Insurance Policies and applicable non-bankruptcy law.  Further, these sections work an impermissible modification of the Insurance Programs, in direct contradiction to Plan Section 5.10 which allegedly preserves and leaves unaltered the terms of insurance policies.

47.     As such, the Plan must clarify that all rights, obligations, proceedings and disputes under insurance policies, including the Insurance Programs, should be adjudicated and determined under the terms of the Insurance Programs and applicable non-bankruptcy law.

**IV.     The Plan Disregards Applicable Coverage Defenses, And Any Disputes Related Thereto Should Be Adjudicated And Determined Under The Terms Of The Insurance Programs And Applicable Non-Bankruptcy Law.**

48.     The Chubb Companies' right to enforce the terms of the Insurance Programs should not be altered by operation of bankruptcy, and the Debtors' act of filing petitions for relief in this Court does not alter those facts or the Chubb Companies' coverage positions.

49.     Indeed, the *Disclosure Statement For The Second Amended Joint Chapter 11 Plan Of Liquidation Proposed By Insys Therapeutics, Inc. And Its Affiliated Debtors* [Docket No. 929] (the "Disclosure Statement") incorporated revisions as part of the resolution of the Chubb Disclosure Statement Objection to acknowledge and put all parties on notice that all of the Chubb Companies' defenses, rights and obligations with respect to the Coverage Dispute (as defined in the Disclosure Statement) are not impaired or otherwise affected by the Disclosure Statement, and that nothing therein shall constitute a determination, consent to, or waiver of jurisdiction as to the Coverage Dispute. *See* Disclosure Statement § 5.6(b)(ii).

50.     The Plan, however, only passively provides for the possibility of such defenses, and, in referencing the Disclosure Statement, the Plan proposes distributions to Class 9 Personal Injury Claims in a range between 0%-100%, depending upon the availability of Products Liability Insurance Proceeds, if any. *See* Disclosure Statement § 1.4.

51.     A Plan premised on the funding of Trusts with the proceeds of insurance policies, but which fails to clearly explain and adequately provide for the existence of applicable coverage defenses is inadequate and must be clarified.

## V.    The Plan Must Provide That Workers' Compensation Claims And Direct Action Claims Must Continue In The Ordinary Course.

52.     The Plan does not provide for the handling of workers' compensation claims and direct action claims.

53.     Both workers' compensation claims and direct action claims are subject to state-law regulations that dictate the resolution of such claims, which cannot be modified by the terms of the Debtors' Plan. *See, e.g., Ohio v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.)*, 660 F.2d 1108 (6th Cir. 1981) (finding that the administration of workers' compensation claims was a valid exercise of a state's police powers and exempt from the automatic stay provisions); *see also* La. R.S. 22:1269 (2012) (Louisiana grants injured persons a right of direct action against a tortfeasor's insurer, which, in several instances, may be brought against the insurer alone, or against both the insured and insurer jointly and *in solido*); Wis. Stat. § 632.24 (2012) (Wisconsin grants injured persons a right of direct action against a tortfeasor's insurer irrespective of whether liability is presently established or is contingent and to become fixed or certain by final judgment against the insured).

54.     Accordingly, the Plan must clarify that workers' compensation and direct action claims may continue to be administered, handled, defended, settled, and/or paid in the ordinary course.

55.     Relatedly, the Plan must also provide that the Chubb Companies may continue to so administer, handle, defend, settle, and/or pay covered claims in the ordinary course, and pursuant to the terms of the Insurance Programs.

## VI.     Reservation Of Rights.

56.     The Chubb Companies specifically reserve all of their rights with respect to the Insurance Programs and their right to assert additional objections to the Plan.

## VII.     Proposed Resolution Of Objection.

57.     The Chubb Companies have requested and continue to negotiate appropriate and necessary language for inclusion in the Plan to consensually resolve the Objection but have yet to reach an agreement with the Debtors on the same.[6]

58.     Courts in this and other districts have often approved disclosure statements and confirmed plans that have included language similar to, and often times, more thorough than what the Chubb Companies have requested in order to resolve this Objection. *See, In re Diesel USA, Inc.*, D.I. 116, ¶ 61 (Bankr. D. Del. 19-10432); *In re PES Holdings, LLC*, D.I. 323, ¶ 119 (Bankr. D. Del. 18-10122); *In re Horsehead Holding Corp.*, D.I. 1695 at ¶ 163 (Bankr. D. Del. 16-10287); *In re Quiksilver, Inc.*, D.I. 533, at 63-64 and D.I. 740, § 7.3 (Bankr. Bankr. D. Del 15-11880); *In re MPM Silicones, LLC*, D.I. 516, at 55-56, and D.I. 943, § VII.7.12 (Bankr. D. Del. 14-22503); *In re Trump Entertainment Resorts, Inc.*, D.I. 840, at 57-59, and D.I. 1123, § X.10.9 (Bankr. D.

---

[6]     Notwithstanding the filing of this Objection, the Chubb Companies intend to continue negotiations with the Debtors in an effort to reach a consensual resolution of the Objection.

Del. 14-12103); *In re Ablest, Inc.*, D.I. 238, ¶ 35 (Bankr. D. Del. 14-10717); *In re Rural/Metro Corp.*, D.I. 605, at 60-61, and D.I. 842, §§ VII.7.14, X.10.6 (Bankr. D. Del. 13-11952); *In re OSH 1 Liquidating Corp.*, D.I. 726-1, at 38-39, and D.I. 836, § VII.E (Bankr. D. Del. 13-11565); *In re Rotech Healthcare Inc.*, D.I. 511, at 41-42, and D.I. 1007, §§ VII.7.7, VII.7.8 (Bankr. D. Del. 13-10741); *In re Buffets Restaurants Holdings, Inc.*, D.I. 513, at 42-46, and D.I. 743, §§ VII.G.3, VII.G.4 (Bankr. D. Del. 12-10237); *In re Perkins & Marie Callender's Inc.*, D.I. 923, at 72-73, and D.I. 1287 § VIII.F (Bankr. D. Del. 11-11795); *In re Buffets Holdings, Inc.*, D.I. 2211, at 68-71, and D.I. 2209, §§ VIII.F.3., VIII.F.4 (Bankr. D. Del. 08-10141); *In re Global Brokerage, Inc.*, D.I. 67, ¶ 31 (Bankr. S.D.N.Y. 17-13532); *In re CGG Holdings (U.S.) Inc.*, D.I. 337-1, Art. V.E. (Bankr. S.D.N.Y. 17-11637); *In re BCBG Max Azria Global Holdings LLC*, D.I. 587, Art. V.H. (Bankr. S.D.N.Y. 17-10466); *In re Tops Holding II Corporation*, D.I. 658, § 8.6 (Bankr. S.D.N.Y. 18-22279); *In re Southeastern Grocers, LLC*, D.I. 487, ¶ 41 (Bankr. S.D.N.Y. 18-10700); *In re Cenveo, Inc.*, D.I. 685, ¶ 81 (Bankr. S.D.N.Y. 18-22178); *In re Toys "R" Us, Inc.*, D.I. 5940, Art. V.D. (Bankr. E.D. Va. 17-34665); *In re Gymboree*, D.I. 583, Art. V.E. (Bankr. E.D. Va. 17-32986); *In re Halcon Resources Corporation*, D.I. 321 ¶ 25(g) (Bankr. S.D.Tex. 19-34446); *In re Weatherford International PLC*, D.I. 343 ¶ 67(f) (Bankr. S.D. Tex. 19-33694); *In re Parker Drilling Company*, D.I. 459, ¶ 97 (Bankr. S.D. Tex. 18-36958); *In re Exco Resources, Inc.*, D.I. 2103, §V.F. (Bankr. S. D. Tex. 18-30155); *In re iHeartMedia, Inc.*, D.I. 2521, Art. V.G.1. (Bankr. S.D. Tex. 18-31274); *In re Forbes Energy Sers.*, D.I. 205 at ¶ 50 (Bankr. S.D. Tex. 17-20023); *In re Peabody Energy Corporation*, D.I. 2704 § IV.L.2. (Bankr. E.D. Mo. 16-4259-399);.

59.     Accordingly, the Chubb Companies' proposed resolution of the Objection is reasonable and proper under the circumstances.

WHEREFORE, the Chubb Companies respectfully request that this Court (a) either (i) deny confirmation of the Plan, or (ii) condition confirmation of the Plan on inclusion of the modifications requested herein; and (b) grant such other relief as the Court deems appropriate.

Dated: January 9, 2020

Respectfully submitted,

DUANE MORRIS LLP

By: /s/ Lawrence J. Kotler
Lawrence J. Kotler, Esq. (DE 4181)
Drew S. McGehrin, Esq. (DE 6508)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801
Telephone: 302-657-4900
Email: LJKotler@duanemorris.com
Email: DSMcGehrin@duanemorris.com

-and-

Wendy M. Simkulak, Esq.
30 South 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1000
Email: WMSimkulak@duanemorris.com

*Counsel for the Chubb Companies*