UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

------------------------------------------------------x
                                          :
In re                                     :        **Chapter 11**
                                          :
**INSYS THERAPEUTICS, INC.,** *et al.,*   :        **Case No. 19-11292 (KG)**
                                          :
            **Debtors.**[1]               :        **Jointly Administered**
                                          :
------------------------------------------------------x   **Re: D.I. 955, 1095**

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
CONFIRMING THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF INSYS THERAPEUTICS, INC. AND ITS AFFILIATED DEBTORS**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), having:[2]

a.  commenced the above-captioned chapter 11 cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") on June 10, 2019;

b.  continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.  filed, on September 17, 2019, (i) the *Joint Chapter 11 Plan of Liquidation of Insys Therapeutics, Inc. and its Affiliated Debtors* [D.I. 612], which plan and related documents were subsequently amended, (ii) the *Disclosure Statement for Joint Chapter 11 Plan of Liquidation Proposed by Insys Therapeutics, Inc. and its Affiliated Debtors* [D.I. 613], which disclosure statement and related documents were subsequently amended, and (iii) the *Motion of Debtors for Entry of an Order (I) Approving the Proposed Disclosure Statement and the Form and Manner of the Notice of a Hearing Thereon, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling Confirmation Hearing, and (IV) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Plan* [D.I. 715];

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LLC (6577); and IPT 355, LLC (0155).  The Debtors' mailing address is 3100 West Ray Road Ste. 201, Chandler, Arizona 85226.

[2] Unless otherwise noted, capitalized terms not defined in this *Findings of Fact, Conclusions of Law, and Order Confirming the Second Amended Joint Chapter 11 Plan of Liquidation of Insys Therapeutics, Inc. and its Affiliated Debtors* (this "**Confirmation Order**") shall have the meanings ascribed to them in the Plan (as defined herein).  The rules of interpretation set forth in Section 1.2 of the Plan shall apply to this Confirmation Order.

d.  filed, on November 14, 2019, (i) the *Amended Joint Chapter 11 Plan of Liquidation of Insys Therapeutics, Inc. and its Affiliated Debtors* [D.I. 892] and (ii) the *Disclosure Statement for Amended Joint Chapter 11 Plan of Liquidation Proposed by Insys Therapeutics, Inc. and its Affiliated Debtors* [D.I. 893];

e.  filed, on November 29, 2019, (i) the *Second Amended Joint Chapter 11 Plan of Liquidation of Insys Therapeutics, Inc. and its Affiliated Debtors* [D.I. 928] and (ii) the *Disclosure Statement for Second Amended Joint Chapter 11 Plan of Liquidation Proposed by Insys Therapeutics, Inc. and its Affiliated Debtors* [D.I. 929];

f.  filed, on December 4, 2019, solicitation versions of (i) the *Second Amended Joint Chapter 11 Plan of Liquidation of Insys Therapeutics, Inc. and its Affiliated Debtors* [D.I. 955] (the "**Amended Plan**") and (ii) the *Disclosure Statement for Second Amended Joint Chapter 11 Plan of Liquidation Proposed by Insys Therapeutics, Inc. and its Affiliated Debtors* [D.I. 956] (the "**Disclosure Statement**");

g.  filed, on January 14, 2020, the *Second Amended Joint Chapter 11 Plan of Liquidation of Insys Therapeutics, Inc. and Its Affiliated Debtors* [D.I. 1095] (the "**Plan Amendment**," and together with the Amended Plan, the "**Plan**");

h.  caused solicitation materials and notice of the deadline for objecting to confirmation of the Plan to be distributed on or before December 9, 2019, consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Disclosure Statement Order (as defined herein), which Disclosure Statement Order also approved, among other things, solicitation procedures (the "**Solicitation Procedures**") and related notices, forms, and Ballots (collectively, the "**Solicitation Packages**"), as evidenced by, among other things, the *Affidavit of Service of Solicitation Materials* filed on January 2, 2020 [D.I. 1056] (the "**Solicitation Affidavit**");

i.  caused notice of the Confirmation Hearing (the "**Confirmation Hearing Notice**") to be published in the national editions of *The New York Times* and *USA Today*, as evidenced by the proofs of publication filed on December 19, 2019 [D.I. 1006, 1007] (collectively, the "**Publication Affidavit**");

j.  filed, on December 30, 2019, the *Notice of Filing of Plan Supplement Pursuant to Second Amended Joint Chapter 11 Plan of Liquidation of Insys Therapeutics, Inc. and its Affiliated Debtors* [D.I. 1049], as amended and supplemented by the *Notice of Filing of Second Plan Supplement Pursuant to Second Amended Joint Chapter 11 Plan of Liquidation of Insys Therapeutics, Inc. and its Affiliated Debtors*, filed on January 6, 2020 [D.I. 1067], and by the *Notice of Filing of Third Plan Supplement Pursuant to Second Amended Joint Chapter 11 Plan of Liquidation of Insys Therapeutics, Inc. and its Affiliated Debtors*, filed on January 16, 2020 [D.I. 1112] which filings included the following documents (collectively, the "**Plan Supplement**"):

- Amended and restated certificate of incorporation of Insys Therapeutics, Inc.

- Amended and restated by-laws of Insys Therapeutics, Inc.

- Schedule of Assumed and Assigned Contracts

- Schedule of Retained Causes of Action

- List of Non-Released Parties

- Insys Liquidation Trust Agreement

- ILT Equity and Asset Transfer Agreement

- ILT Claims Arbiter and ILT Board

- ILT Claims Arbiter Submission Procedures

- Victims Restitution Trust Agreement

- VRT Asset Transfer Agreement

- VRT Claims Administrator and VRT Board

- Personal Injury Claims Analysis Protocol

- Class Claim Procedures and Class Representative for Insurance Ratepayer Class Claims

- Class Claim Procedures and Class Representatives for Third Party Payor Class Claim

- Class Claim Procedures and Class Representatives for Hospital Class Claims

- Class Claim Procedures and Class Representative for NAS Monitoring Class Claim

k.  filed, on January 13, 2020, the *Certification of Jane Sullivan of Epiq Corporate Restructuring, LLC Regarding Voting and Tabulation of Ballots Cast on the Second Amended Joint Chapter 11 Plan of Liquidation of Insys Therapeutics, Inc. and its Affiliated Debtors* [D.I. 1086] (as may be amended, modified, or supplemented, the "**Voting Certification**");

l.  filed, on January 13, 2020, the *Declaration of Michael A. Tucker in Support of Second Amended Joint Chapter 11 Plan of Liquidation of Insys Therapeutics, Inc. and its Affiliated Debtors* [D.I. 1089] (the "**Tucker Declaration**"); and

3

m. filed, on January 13, 2020, the *Debtors' Memorandum of Law in Support of Confirmation of the Debtors' Second Amended Joint Chapter 11 Plan of Liquidation* [D.I. 1090] (the "**Confirmation Brief**").

This Court having:

a. entered, on December 4, 2019, the *Order (I) Approving the Disclosure Statement and the Form and Manner of the Notice of a Hearing Thereon, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling Confirmation Hearing, and (IV) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Plan; and (V) Granting Related Relief* [D.I. 952] (the "**Disclosure Statement Order**");

b. set January 6, 2020, at 5:00 p.m. prevailing Pacific Time, as the deadline for voting on the Plan (as extended for certain creditors, the "**Voting Deadline**");

c. set January 6, 2020, at 4:00 p.m. prevailing Eastern Time, as the deadline for filing objections to confirmation of the Plan (as extended for certain creditors, the "**Confirmation Objection Deadline**");

d. set January 16 and 17, 2020, at 9:00 a.m. prevailing Eastern Time, as the date and time for the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

e. reviewed the Plan, the Plan Supplement, the Confirmation Brief, the Tucker Declaration, the Voting Certification, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

f. held the Confirmation Hearing;

g. heard the statements and arguments made by counsel in respect of confirmation and objections to confirmation of the Plan; and

h. considered all testimony, declarations, documents, filings, and other evidence admitted at confirmation.

NOW, THEREFORE, and after due deliberation thereon and good cause appearing therefor, this Court hereby makes and issues the following Findings of Fact and Conclusions of Law and Orders:

RLF1 22747484V.1

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.      Findings of Fact and Conclusions of Law.  The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)). The Court has jurisdiction over the Debtors' Chapter 11 Cases, including this matter, pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto.  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in accordance with the terms set forth herein to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  The Debtors are eligible debtors under section 109 of the Bankruptcy Code.  The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

C.      Chapter 11 Petitions.  On June 10, 2019 (the "**Petition Date**"), each Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of

5

the Bankruptcy Code.  No trustee or examiner has been appointed or requested in these Chapter 11 Cases.  The Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

D.    Creditors' Committee.  On June 20, 2019, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these Chapter 11 Cases (the "**Creditors' Committee**").

E.    Judicial Notice.  The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court or its duly-appointed agent, Epiq Corporate Restructuring, LLC ("**Epiq**"), including all pleadings and other documents filed, all hearing transcripts, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of these Chapter 11 Cases. Any resolution of objections to confirmation of the Plan explained on the record at the Confirmation Hearing is hereby incorporated by reference.

F.    Burden of Proof.  The Debtors have met the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

G.    Modifications to the Plan.  The modifications made to the Amended Plan since the solicitation (i) complied in all respects with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, (ii) do not adversely affect the treatment of any holder of Allowed Claims, and (iii) do not require re-solicitation of votes with respect to the Plan.  Adequate and sufficient notice of such modifications has been given, no further notice is or shall be required, and such modifications are approved in full.  The votes cast to accept the Amended Plan are

deemed to have been cast with respect to the Amended Plan as modified by the Plan Amendment.

        H.    <u>Solicitation</u>.  The Solicitation Packages were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the Disclosure Statement Order.  The forms of the Ballots adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for the holders of Claims in Class 3 (Convenience Class Claims), Class 4 (Trade and Other Unsecured Claims), Class 5 (Insurance Related Claims), Class 6 (Hospital Claims and NAS Monitoring Claims), Class 7 (DOJ Claims), Class 8(a) (State Claims), Class 8(b) (Municipality/Tribe Claims), and Class 9 (Personal Injury Claims) – the Classes of Claims entitled to vote to accept or reject the Plan (the "**Voting Classes**").  The period during which the Debtors solicited votes on the Plan was a reasonable period of time for the holders of Claims in the Voting Classes to make an informed decision to accept or reject the Plan.  The Debtors were not required to solicit votes from the holders of Claims or Interests in Class 1 (Secured Claims) and Class 2 (Other Priority Claims) (the "**Unimpaired Classes**") as each such Class is Unimpaired under the Plan and is conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  The Debtors were not required to solicit votes from the holders of Class 10 (510(a)/(b) Subordinated Claims), Class 11 (510(c) Subordinated Claims), Class 12 (Intercompany Claims) and Class 13 (Equity Interests) (collectively, the "**Fully Impaired Classes**," and together with the Unimpaired Classes, the "**Non-Voting Classes**") as such holders are not entitled to receive a distribution under the Plan on account of their Claims or Interests, and, thus, pursuant to section 1126(g) of the Bankruptcy Code, such Classes are deemed to reject

the Plan. As described in and as evidenced by the Voting Certification and the Affidavit of Service, the transmittal and service of the Solicitation Packages was timely, adequate, and sufficient under the circumstances. The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, was conducted in good faith, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations.

I.      Notice. The transmittal and service of the Solicitation Packages were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

J.      Voting. Votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.

K.      Plan Supplement. On December 30, 2019 and January 6, 2020, the Debtors filed the Plan Supplement, containing the following documents:

- Amended and restated certificate of incorporation of Insys Therapeutics, Inc.

- Amended and restated by-laws of Insys Therapeutics, Inc.

- Schedule of Assumed and Assigned Contracts

8

- Schedule of Retained Causes of Action

- List of Non-Released Parties

- Insys Liquidation Trust Agreement

- ILT Equity and Asset Transfer Agreement

- ILT Claims Arbiter and ILT Board

- ILT Claims Arbiter Submission Procedures

- Victims Restitution Trust Agreement

- VRT Asset Transfer Agreement

- VRT Claims Administrator and VRT Board

- Personal Injury Claims Analysis Protocol

- Class Claim Procedures and Class Representative for Insurance Ratepayer Class Claims

- Class Claim Procedures and Class Representatives for Third Party Payor Class Claim

- Class Claim Procedures and Class Representatives for Hospital Class Claims

- Class Claim Procedures and Class Representative for NAS Monitoring Class Claim

All such materials comply with the terms of the Plan, and the filing and notice of such documents, including the notice of filing of the Plan Supplement, is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations, and no other or further notice is or shall be required. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan, the Debtors reserve all rights to alter, amend, update, or modify any of the documents included within the Plan Supplement and any schedules, exhibits, or amendments thereto, prior to the Effective Date subject to compliance with the Bankruptcy

9

Code and the Bankruptcy Rules, provided that no such alteration, amendment, update, or modification shall be inconsistent with the terms of this Confirmation Order or the Plan.

L.      Liquidating Trustees.  Pursuant to Section 5.6 of the Plan, the Liquidating Trustee may be selected by mutual agreement of the Creditors' Committee and the SMT Group Representatives. The Creditors' Committee and the SMT Group Representatives have selected a Liquidating Trustee for each of the Insys Liquidation Trust and the Victims Restitution Trust in lieu of the single Liquidating Trustee.  Ms. Carmin Reiss has been selected as the initial Liquidating Trustee for the Victims Restitution Trust and Mr. William Henrich has been selected as the initial Liquidating Trustee for the Insys Liquidation Trust.

### Compliance with Requirements of
### Bankruptcy Code Section 1129 and the Bankruptcy Rules

M.      Bankruptcy Rule 3016.  In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as proponents.  The Debtors appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b). The release and injunction provisions of the Plan are set forth in bold and with specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

N.      Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code and, thereby satisfies section 1129(a)(1) of the Bankruptcy Code.  More particularly:

(a)      Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).  In addition to Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims, which need not be classified, Articles III and IV of the Plan classify thirteen (13) Classes of Claims against and Interests in the Debtors, based on differences in the legal nature or priority of such Claims against and Interests in each Debtor.  The Claims and Interests placed in each Class are substantially similar to the other Claims and Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and

10

Interests created under the Plan the classifications were not implemented for improper purposes, and such Classes do not unfairly discriminate between holders of Claims and Interests. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)    Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Articles III and IV of the Plan specify that Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Articles III and IV of the Plan designate Class 3 (Convenience Class Claims), Class 4 (Trade and Other Unsecured Claims), Class 5 (Insurance Related Claims), Class 6 (Hospital Claims and NAS Monitoring Claims), Class 7 (DOJ Claims), Class 8(a) (State Claims), Class 8(b) (Municipality/Tribe Claims), and Class 9 (Personal Injury Claims) as Impaired within the meaning of section 1124 of the Bankruptcy Code and specify the treatment of the Claims in such Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)    Equal Treatment (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e)    Implementation of the Plan (11 U.S.C. § 1123(a)(5)). The Plan and the various documents and agreements set forth in the Plan Supplement, as well as the exhibits and schedules to the Plan, provide adequate and proper means for the implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including, without limitation: (i) the appointment of the Liquidating Trustees, the ILT Claims Arbiter and establishment of the Insys Liquidation Trust to administer the Plan (other than with respect to Personal Injury Claims); (ii) the appointment of the Liquidating Trustee for the Victims Restitution Trust, the VRT Claims Administrator and establishment of the Victims Restitution Trust to administer the Personal Injury Claims, among other things; (iii) appointment of the members of the ILT Board and the VRT Board pursuant to the lists filed with the Plan Supplement; (iv) the substantive consolidation of the Debtors for certain purposes related to the Plan, including distribution under the Plan; (v) the transfer of assets to the Trusts; (vi) establishment of the Class Claims Procedures; and (vii) the funding of the Trust Operating Reserves.

(f)    Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)). As part of the Plan Supplement, the Debtors filed forms of a Second Amended and

Restated Certificate of Incorporation and Second Amended and Restated Bylaws for Insys Therapeutics, Inc. ("**Insys**") to be filed with the Secretary of State of the State of Delaware, which documents, among other things change the purpose of Insys to be solely to facilitate the orderly administration of the winding up and dissolution of the Debtors. The Plan provides that the only new securities to be issued under the Plan pursuant to Section 5.7(b) of the Plan will be the Parent Equity Interest to the Insys Liquidation Trust in order to allow the Liquidating Trustee for the Insys Liquidation Trust to control Insys. Accordingly, the requirements of section 1123(a)(6) are satisfied in the Chapter 11 Cases.

(g)     Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). The Debtors filed with this Court, as part of the Plan Supplement, the identity of each of the Trustees, the ILT Claims Arbiter, the VRT Claims Administrator, and each member of the Trust Boards. The Plan provisions concerning the selection or appointment of any officer, director, or manager under the Plan are consistent with the interests of creditors and equity security holders and with public policy in accordance with section 1123(a)(7) of the Bankruptcy Code.

(h)     Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1)). Pursuant to Articles III and IV of the Plan, as set forth in section 1123(b)(1) of the Bankruptcy Code, and pursuant to section 1124 of the Bankruptcy Code, Class 1 (Secured Claims) and Class 2 (Other Priority Claims) are Unimpaired and Class 3 (Convenience Class Claims), Class 4 (Trade and Other Unsecured Claims), Class 5 (Insurance Related Claims), Class 6 (Hospital Claims and NAS Monitoring Claims), Class 7 (DOJ Claims), Class 8(a) (State Claims), Class 8(b) (Municipality/Tribe Claims), Class 9 (Personal Injury Claims), Class 10 (510(a)/(b) Subordinated Claims), Class 11 (510(c) Subordinated Claims), Class 12 (Intercompany Claims) and Class 13 (Equity Interests) are Impaired.

(i)     Assumption and Rejection (11 U.S.C. § 1123(b)(2)). Article VIII of the Plan addresses the assumption and rejection of executory contracts and unexpired leases, and meets the requirements of section 365(b) of the Bankruptcy Code. Consistent with section 1123(b)(2) of the Bankruptcy Code, Section 8.1 of the Plan provides that on the Effective Date, except as otherwise provided in the Plan, each executory contract and unexpired lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such executory contract or unexpired lease (i) is listed on the Schedule of Assumed and Assigned Contracts or (ii) as of the Effective Date is subject to a pending motion to assume, reject, or assume and assign such executory contract or unexpired lease.

In accordance with the Disclosure Statement Order, counterparties to the Debtors' executory contracts and unexpired leases were each served with

12

an individualized assumption and assignment notice (the "**Cure Notices**"), in the form attached to the Disclosure Statement Order, which included the proposed Cure Amounts for each contract thereon. In accordance with Section 8.2 of the Plan, the Debtors have filed and served, as Exhibit C to the Plan Supplement, the Schedule of Assumed and Assigned Contracts [D.I. 1049]. The time given to parties in interest to object to the assumption, assumption and assignment, and rejection of their executory contracts or expired leases was good and sufficient and no other or further notice is required.

(j)    Settlement and Retention of Claims and Causes of Action and Reservation of Rights (11 U.S.C. § 1123(b)(3)). As permitted by section 1123(b)(3)(A) of the Bankruptcy Code, Section 10.5 of the Plan provides for a release of certain Claims and Causes of Action owned by the Debtors or the Debtors' Estates. Moreover, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code, Section 10.9 of the Plan provides that, except as provided in the Plan, nothing contained in the Plan or herein shall be deemed to be a waiver or the relinquishment of any Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of the Estates or itself in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, any affirmative Causes of Action against parties with a relationship with the Debtor, other than the Released Parties. Following the Effective Date, all such Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses shall be transferred to the Insys Liquidation Trust or the Victims Restitution Trust, as applicable, which shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' and the Liquidating Debtors' legal and equitable rights with respect to any Claim or Interest may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

(k)    Modification of Rights of Holders of Certain Classes of Claims (11 U.S.C. § 1123(b)(5)). In accordance and in compliance with section 1123(b)(5) of the Bankruptcy Code, the Plan properly modifies the rights of holders of Claims in Class 3 (Convenience Class Claims), Class 4 (Trade and Other Unsecured Claims), Class 5 (Insurance Related Claims), Class 6 (Hospital Claims and NAS Monitoring Claims), Class 7 (DOJ Claims), Class 8(a) (State Claims), Class 8(b) (Municipality/Tribe Claims), Class 9 (Personal Injury Claims), Class 10 (510(a)/(b) Subordinated Claims), Class 11 (510(c) Subordinated Claims), Class 12 (Intercompany Claims) and Class 13 (Equity Interests). The Plan leaves unaffected the rights of holders of Claims in Class 1 (Secured Claims) and Class 2 (Other Priority

Claims). Thus, the Plan complies with section 1123(b)(5) of the Bankruptcy Code.

(l) <u>Additional Plan Provisions (11 U.S.C. § 1123(b)(6))</u>. The permissive provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code. The failure to address specifically a provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the effectiveness of any provision of the Plan or this Confirmation Order.

(m) <u>Debtors Are Not Individuals (11 U.S.C. § 1123(c))</u>. The Debtors are not individuals. Accordingly, section 1123(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

(n) <u>Cure of Defaults (11 U.S.C. § 1123(d))</u>. Sections 8.3 and 8.4 of the Plan provide for the satisfaction of default Claims associated with each executory contract and unexpired lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. All Cure Amounts will be determined in accordance with the underlying agreements and applicable non-bankruptcy law. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

O. <u>The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically, the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, applicable non-bankruptcy law, and the Disclosure Statement Order in transmitting the Disclosure Statement, the Plan, the Plan Supplement, the Ballots, and related documents and notices and in soliciting and tabulating votes on the Plan.

P. <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtors have proposed the Plan (and all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, including the declarations and other pleadings filed in support of confirmation of the Plan, and the record of

14

the Confirmation Hearing and these Chapter 11 Cases. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and recoveries to holders of Claims under the circumstances of the Chapter 11 Cases. The Plan (including the Plan Supplement and all other documents necessary to effectuate the Plan) was negotiated at arm's length among representatives of the Debtors, the Creditors' Committee, SMT Group Representatives, and representatives of numerous other creditor groups, and their respective professionals. Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each integral to the Plan, supported by valuable consideration, and necessary for the Debtors' successful liquidation.

Q. <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any payment made or to be made by any of the Debtors or the Trusts, as applicable, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

R. <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the persons proposed to serve as Trustees, the ILT Claims Arbiter, the VRT Claims Administrator, and each member of the Trust Boards upon the Effective Date of the Plan, and the identity of and nature of any compensation for any insider to be employed or retained by the Trustees, the VRT Claims Administrator and/or the ILT Claims Arbiter, as applicable, have been fully disclosed, to the extent such information is available and applicable, and the appointment

15

to, such offices of such persons is consistent with the interests of holders of Claims against and Interests in the Debtors and with public policy.

       S.    <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  The Plan does not provide for rate changes.  Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

       T.    <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>.  The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis provided with the Disclosure Statement and other evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that each holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

       U.    <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>.  Class 1 (Secured Claims) and Class 2 (Other Priority Claims) are Classes of Unimpaired Claims that are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  As reflected in the Voting Certification, each of the Voting Classes, other than Class 7 (DOJ Claims), have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code.  Holders of Claims in Class 7 (DOJ Claims) did not submit votes to accept or reject the Plan; accordingly, pursuant to section 3.3 of the Plan, Class 7 (DOJ Claims) is presumed to accept the Plan.

       V.    <u>Treatment of Administrative Expense Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9))</u>.  The treatment of Allowed Administrative

16

Expense Claims and Professional Fee Claims pursuant to Sections 2.3 and 2.4, respectively, of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Other Priority Claims pursuant to Article IV of the Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code. The treatment of Priority Tax Claims pursuant to Section 2.5 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code. The Debtors have sufficient Cash to pay Allowed Administrative Expense Claims, Professional Fee Claims, Other Priority Claims, and Priority Tax Claims.

W.    <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))</u>. The Voting Classes are Impaired Classes, and each Voting Class has voted to or is presumed to accept the Plan. Accordingly, at least one Class of Claims against the Debtors that is Impaired under the Plan has voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

X.    <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The information in the Disclosure Statement, the Tucker Declaration, and the evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establishes that the Plan is feasible and provides adequate and appropriate means for its implementation and an orderly wind down and liquidation of the Debtors' Estates, as contemplated by the Plan, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

Y.    <u>Payment of Statutory Fees (11 U.S.C. § 1129(a)(12))</u>. The Plan provides that all fees payable under section 1930 of title 28 of the United States Code, as determined by

the Court, have been or will be paid on or before the Effective Date pursuant to Section 12.5 of the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

Z.      <u>Benefit Plans (11 U.S.C. § 1129(a)(13))</u>.  The Plan complies with section 1129(a)(13) of the Bankruptcy Code by reason of the provisions of Section 8.6 of the Plan.  In addition, the Debtors do not have any obligations to pay retiree benefits (as defined in section 1114 of the Bankruptcy Code).  Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

AA.     <u>No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>.  The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

BB.     <u>Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15))</u>.  The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

CC.     <u>No Applicable Non-Bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>.  Each of the Debtors is a moneyed business, commercial corporation, or trust, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

DD.     <u>Nonconsensual Confirmation (11 U.S.C. § 1129(b))</u>.  Each Voting Class has voted to or is presumed to accept the Plan.  Therefore, section 1129(b) of the Bankruptcy Code is inapplicable to the Voting Classes in these Chapter 11 Cases.  The Plan does not "discriminate unfairly" and is "fair and equitable" with respect to the Classes that are impaired and are deemed to reject the Plan, because no Class senior to any rejecting Class is being paid

18

more than in full and the Plan does not provide a recovery on account of any Claim or Interest that is equal to or junior to such rejecting Classes.  Thus, the Debtors have demonstrated that the Plan satisfies section 1129(b) of the Bankruptcy Code.

      EE.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>.  The Plan is the only plan filed in each of these Chapter 11 Cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

      FF.    <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, and no governmental entity has objected to the confirmation of the Plan on any such grounds.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

      GG.    <u>Small Business Case (11 U.S.C. § 1129(e))</u>.  None of these Chapter 11 Cases are a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

      HH.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based on the record before the Court in these Chapter 11 Cases, including evidence presented at the Confirmation Hearing, the Debtors, the Creditors' Committee, and their respective directors, officers, employees, members (and such members' counsel), agents, advisors, and professionals have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections

19

afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 10.6 of the Plan.

II.     Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**Other Findings**

JJ.     <u>Likelihood of Satisfaction of Conditions Precedent to the Effective Date</u>. Each of the conditions precedent to the Effective Date, as set forth in section 9.2 of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with the Plan.

KK.     <u>Executory Contracts and Unexpired Leases</u>.    Article VIII of the Plan, governing the assumption, rejection, and assumption and assignment of executory contracts and unexpired leases, satisfies the requirements of section 365(b) of the Bankruptcy Code. The rejection of any Executory Contract pursuant to Article VIII of the Plan shall be legal, valid, and binding upon the Debtors and the Trustees, and their successors and assigns and all non-Debtor parties and their successors and assigns to such Executory Contracts, all to the same extent as if such rejection had been effectuated pursuant to an order of this Court before entry of this Confirmation Order.  As part of the Plan Supplement, the Debtors filed the Schedule of Assumed and Assigned Contracts.   The Debtors provided adequate assurance that the Debtors, the Liquidating Debtors, the Trusts, or any other party authorized to implement the Plan, will cure defaults (if any) under or relating to each of the executory contracts and unexpired leases that are being assumed and assigned by the Debtors pursuant to the Plan.   No objections to Cure Amounts have been filed.

LL.     <u>Class 11 (510(c) Subordinated Claims)</u>.  Except as otherwise provided in this Confirmation Order or by an agreement between the Debtors and the holder of an applicable Claim, the 510(c) Subordinated Claims whose holders were served with the Class 11 Non-Voting

20

Status Notice (as defined in the Disclosure Statement Order), as evidenced by the affidavit of service filed at D.I. 1015, and whose holders did not file an objection to such notice and classification, are properly classified as Class 11 (510(c) Subordinated Claims).

MM.    <u>Injunction, Releases, and Exculpation</u>.  This Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the releases, exculpations, and injunctions set forth in Section 10 of the Plan.  Sections 105(a) and 1123(b) of the Bankruptcy Code permit issuance of the injunctions and approval of the releases, exculpations, and injunctions set forth in Article 10 of the Plan.  Based upon the record of the Chapter 11 Cases and the evidence proffered or adduced at the Confirmation Hearing, this Court finds that the releases, exculpations, and injunctions set forth in Article 10 of the Plan are consistent with the Bankruptcy Code and applicable law.  Further, the releases, exculpations, and injunctions contained in Article 10 of the Plan (as well as the carve-outs to such releases and exculpations) are integral components of the Plan.  The releases, exculpations, and injunctions set forth in Article 10 of the Plan are hereby approved and authorized in their entirety.

The releases (as well as the carve-outs to such releases and exculpations) by the Debtors described in Section 10.5(a) of the Plan (the "**Debtors' Releases**") are an integral and necessary part of the Plan and represent a valid exercise of the Debtors' business judgment.  The Debtors' Releases are in the best interests of the Debtors, the Debtors' Estates, and all holders of Claims and Interests.  The Debtors' Releases are a key component of the Plan and the Plan Settlement included therein.

The releases by holders of Claims and Interests (the "**Third Party Releases**") described in Section 10.5(b) of the Plan are essential provisions of the Plan, and were agreed to by the Creditors' Committee and the SMT Group Representatives specifically because they are

narrowly tailored per the provisions of the Plan.  The Third Party Releases provide for releases for the Released Parties by a) the holders of all Claims who vote to accept the Plan, (b) the holders of all Claims that are Unimpaired under the Plan, (c) the holders of all Claims whose vote to accept or reject the Plan is solicited but who (i) do not vote either to accept or to reject the Plan and (ii) do not opt out of granting the releases set forth in the Plan, (d) the holders of all Claims or Interests who vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth in the Plan, and (e) all other holders of Claims and Interests to the maximum extent permitted by law.  The Ballots (in the form approved by the Disclosure Statement Order and distributed by the Debtors) explicitly stated that a vote to accept the Plan constitutes an acceptance and consent to the releases set forth in the Plan, included the language from the release provision in Section 10.5(b).  In addition, the Third Party Releases were conspicuously disclosed in boldface type in the Plan, the Disclosure Statement, on the Ballots, and on the Opt Out Election Form (in the form approved by the Disclosure Statement Order and distributed by the Debtors), each of which provided parties in interest with sufficient notice of the releases. Thus, (i) those holders of Claims voting to accept the Plan were given due and adequate notice that they would be granting the releases by acting in such a manner, and (ii) all other holders of Claims and Interests were given due and adequate notice that they would be granting the releases by failing to complete and return their opt out election either on the Ballot or the Opt Out Election Form.

Further, the Third-Party Releases are: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) materially beneficial to, and in the best interests of, the Debtors, their Estates, and their stakeholders, and are important to the overall objectives of the Plan; (iii) fair, equitable, and reasonable; (iv) given and made after due notice

22

and opportunity for hearing; (v) within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (vi) an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; and (vii) consistent with sections 105, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

The exculpation provisions set forth in Section 10.6 of the Plan are appropriate under applicable law because they were proposed in good faith and are essential to the Plan. Further, the exculpations granted under the Plan are appropriately narrowly tailored and reasonable in scope as the exculpation provisions do not relieve any party of liability for an act or omission to the extent such act or omission is the result of fraud, gross negligence, or willful misconduct. The record in the Chapter 11 Cases fully supports the exculpation provisions.

The injunction provisions set forth in Section 10.7 of the Plan: (i) are within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (ii) are an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) are an integral element of the transactions incorporated into the Plan; (iv) confer material benefits on, and are in the best interests of, the Debtors, the Estates, and their creditors; (v) are important to the overall objectives of the Plan to resolve all Claims or Causes of Action among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; and (vi) are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, and other applicable law. The injunction provisions are necessary to preserve the authority of the Debtors and the Liquidating Trustee, as applicable, to pursue retained claims and Causes of Action under the Plan, and to preserve and enforce the terms of the Plan. The injunction provisions are also a key component of the efficient wind down of the Debtors' Estates. Furthermore:

23

(a)     Identity of Interest.  An identity of interest is established where a debtor and a released party share a common goal of confirming a plan.  Here, the Released Parties were instrumental in negotiating and formulating the Plan and share the common goal of an orderly liquidation that maximizes value for all parties.  Absent the involvement of the Released Parties, the settlements and contributions required for, or entered into in connection with, the confirmation of the Plan would not be possible, and few, if any, assets would be available for distribution to the Debtors' creditors.

(b)     Exclusions. Further, the Creditors' Committee and the Debtors negotiated the Releases to exclude any act or omission of a Released Party that is a criminal act or constitutes fraud, gross negligence, or willful misconduct and/or any Claims or Causes of Action arising out of, or related to, any act or omission of a Released Party prior to the Effective Date that is later found to be a criminal act or to constitute fraud, gross negligence, or willful misconduct, including findings after the Effective Date.  Plan ¶ 10.5(b).  In addition, the list of Released Parties is narrowly tailored and includes only those Persons that were employed or engaged by the Debtors, the Creditors' Committee or its members on or after the Petition Date, or, in the case of any professional, were retained pursuant to sections 327 or 1102 of the Bankruptcy Code in these Chapter 11 Cases, and further includes a list of "Non-Released Parties" from such subset that are not receiving releases except subject to the terms of the Plan.

(c)     Substantial Contribution.  The Released Parties and Exculpated Parties have provided substantial contributions necessary to implement the Plan Settlement and to make the Plan feasible and to provide a fair result and fair consideration for affected creditors in exchange for the releases and injunctions provided in Sections 5.13, 10.5, 10.6 and 10.7 of the Plan.  The Released Parties were instrumental in: (i) negotiating the orderly and value-maximizing liquidation contemplated by the Plan; (ii) preserving substantial value for unsecured creditors; and (iii) devoting significant time to navigating the Debtors through these Chapter 11 Cases and maximizing value for the benefit of creditors in addition to their regular duties.    Moreover, the Released Parties assisted in the preparation of materials for potential transaction parties in the marketing and sales process and participated in meetings with potential counterparties.  The participation by the Released Parties in the negotiation, structuring, and implementation of the orderly liquidation infrastructure contemplated by the Plan constitutes a substantial contribution.

(d)     Necessity for Plan Success.  The injunction and release provisions are critical to the success of the Plan.  Without the substantial contributions of the Released Parties expediting the resolution of these Chapter 11 Cases, the increased costs associated with developing and finalizing a Plan would have dramatically decreased the potential recoveries from the Debtors' Estates available to the Debtors' creditors.

(e)     <u>Support of Affected Creditors</u>.  The Creditors' Committee and the SMT Group Representatives (as directed by the holders of State Claims and Municipality/Tribe Claims that have been active in these Chapter 11 Cases) do not object to the release and injunction provisions in favor of the Released Parties and the Exculpated Parties.

(f)     <u>Fair Consideration</u>.  The Plan affords recoveries to holders of Claims affected by the releases and injunctions that would not otherwise be available.  The Plan provides for payments to substantially all of the claims of the classes affected by the Debtors' Release.  Holders of General Unsecured Claims are receiving recoveries under the Plan that they would otherwise not have received in the absence of the Plan Settlement, and holders of General Unsecured Claims in each of the Voting Classes have voted to accept the Plan by the requisite majorities, or, in the case of Class 7 (DOJ Claims), did not vote, and were presumed to accept the Plan.

(g)     <u>The Record Supports Specific Factual and Legal Findings</u>.  The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the releases and injunctions contained in the Plan.

(h)     <u>Subject Matter Jurisdiction</u>.  The Court has subject matter jurisdiction over the Claims subject to the release and injunction provisions in the Plan.

(i)     <u>Extraordinary Circumstances</u>.   Extraordinary circumstances surrounding the Chapter 11 Cases support the release and injunction provisions contained in the Plan.  The Debtors filed these Chapter 11 Cases as a result of an onslaught of litigation in connection with the Debtors' marketing and sale of opioid products—the first such chapter 11 filing of any opioid manufacturer.  The Plan Settlement resolves in significant part numerous substantial, complex litigation claims – including several complex class action claims - the resolutions of which the Debtors and the Creditors' Committee have worked hard to achieve.  The Released Parties were involved with the Debtors' chapter 11 process since the Petition Date, and the Plan, which incorporates the Plan Settlement and has the support of the Creditors' Committee and the SMT Group Representatives, maximizes the value of the Debtors' estates.  The extensive efforts and substantial contributions by the Released Parties, along with the recoveries under the Plan, constitute extraordinary circumstances warranting the releases and injunctions set forth in the Plan.

NN.     <u>9019 Settlement</u>.  The complexity of the Debtors' Chapter 11 Cases necessitated a consensual exit strategy, particularly in light of the potential for complex disputes on multiple fronts.  Litigating the Claims and issues at hand in these Chapter 11 Cases would be costly and time consuming, reducing liquidity and value otherwise available for creditor

recoveries.  The evidence establishes that the Debtors concluded that it was in the best interests of the Debtors' stakeholders to resolve such disputes and related matters on the terms set forth in the Plan, including the Plan Settlement.  For the reasons stated herein, the Court agrees and so finds.  The evidence establishes that each of the factors to be considered in determining whether to approve a settlement pursuant to Bankruptcy Rule 9019 — probability of success, complexity, and likely duration of litigation, and certain other factors bearing on the wisdom of the compromise — weighs in favor of resolution of the parties' disputes on the terms set forth in the Plan.  In addition, the evidence establishes that sound business justifications exist for the Debtors to enter into the Plan Settlement.  Each component of the Plan Settlement, including the Administrative Expense Claim for professional fees for counsel to holders of State Claims and Municipality/Tribe Claims in the amount of $800,000, and the substantive consolidation of the Debtors, is an integral, integrated, and inextricably linked part of the Plan that is not severable from the entirety of the Plan.  Accordingly, the Debtors have met their burden of proving that the Plan Settlement, and the treatment of creditors as provided under the Plan, are fair, reasonable, and in the best interests of the Debtors' Estates and the Debtors' stakeholders.

OO.    <u>Substantive Consolidation</u>.    Section 105(a) of the Bankruptcy Code empowers the Bankruptcy Court to substantively consolidate multiple debtors.  Substantive consolidation of the Debtors is an important element of the successful implementation of the Plan, and the following findings of fact constitute sufficient basis for the substantive consolidation of the Debtors:

(a)     Each of the Debtors has historically engaged in a distinct aspect of the overall business such that they depended upon each of the other Debtors and were not intended to—and did not—function as stand-alone businesses. Prior to the end of 2015, Insys was the parent company with publicly traded stock, and was the primary holder of cash for financial investments, as well as the Debtors' leases. Insys Pharma, Inc. held all

26

operational assets and activities, including employee affairs, distribution, marketing, operating cash, inventory, accounts receivable and payable, and fixed assets. Beginning at the end of 2015 and throughout 2016, the Debtors formed additional subsidiaries of Insys Pharma, Inc. to serve particular roles formerly served by Insys Pharma, Inc. Beginning at the start of 2016, Insys Manufacturing, LLC conducted manufacturing, contract manufacturing, and payroll for non-sales employees, and held fixed manufacturing assets, inventory, and more; Insys Development Company, Inc. conducted research and development, clinical trials, and regulatory activity, and held the majority of the Debtors' intellectual property and some trade accounts receivable and payable; and IPSC, LLC employed the Debtors' patient service employees, and conducted the Debtors' patient services. IC Operations, LLC, formed in early 2019, assumed some or all of the sales force, marketing, distribution, employment activities, and other commercial activities of the Debtors previously performed by Insys Pharma, Inc., which gradually wound down its operations. Each Debtor engaged in certain intercompany transactions relating to the use of cash or the provision of intercompany goods and services because such cash, goods, and services of other Debtors were required for each of the Debtors to perform their respective functions within the business.

(b)     The Debtors directed substantially all of their operations from one corporate headquarters under the same management team. The Debtors prepared and reported their financial statements and filed their federal tax returns on a consolidated basis. The majority of key vendor relationships are with Insys, the parent entity, which is also the Debtor party to most of the Debtors' key contracts. Upon receipt, cash was distributed on an as-needed basis to other Debtor entities. Any additional funding needs of the Debtor entities were funded from cash or investments held by Insys (the parent entity). The Debtors did log each prepetition intercompany transfer of cash and goods, but such intercompany activity was so regular and in the Debtors' ordinary course that the prepetition Debtors effectively functioned as one unit, with cash, assets, and liabilities flowing to the entity in which such cash or assets could be most effectively utilized, or such liabilities most effectively assessed, at any given time. As a result, the Debtors' balance sheets reflect large intercompany balances made up of multiple components, and tracking each balance's origination would likely be an onerous and costly endeavor. Due in large part to the foregoing, prepetition, the Debtors' operational and financial affairs were inextricably intertwined and any disentanglement efforts are likely to be time-consuming and expensive, and ultimately are unlikely to produce a clear benefit to the Debtors' Chapter 11 Cases.

(c)     The prepetition and postpetition litigation against the Debtors related to Subsys would be very difficult, and time consuming, to apportion to any one particular Debtor or Debtors. The recoveries for unsecured creditors in

the Chapter 11 Cases will predominantly derive from the Debtors' cash on hand, asset sale proceeds, and, potentially, the Debtors' affirmative Causes of Action (which may be paid from proceeds of insurance or from the defendants themselves). It will be difficult if not nearly impossible to allocate such sales proceeds or recoveries among each Debtor's individual Estate given the interconnectedness of the Debtors' operations and assets subject to the asset sales. The asset sales themselves did not allocate proceeds among legal entities. In the event that a particular creditor may receive a better recovery in the absence of substantive consolidation, that recovery is likely to be consumed by the costs associated with investigating and litigating any: (i) inter-creditor claims, and (ii) inter-creditor allocation disputes regarding those recoveries. Furthermore, the consolidation of the Debtors will expedite the conclusion of the Chapter 11 Cases. Accordingly, attempting to disentangle the Debtors' Estates would result in significant difficulties and enormous costs that would be borne by the Estates, which would deplete the recoveries for all creditors and cause unnecessary and costly delays in the confirmation of the Plan and Distributions to creditors. The result would likely be worse recoveries for all creditors. Furthermore, no party has objected to substantive consolidation. The particular facts and circumstances of these Chapter 11 Cases present unique arguments warranting substantive consolidation.

PP.    <u>Implementation</u>.  The Plan Documents and all other related, necessary, or appropriate documents have been negotiated in good faith and at arm's length, the terms and conditions thereof are fair and reasonable and entry therein is in the best interests of the Debtors, the Estates, and all holders of Claims and Interests.  The Plan Documents and all other related, necessary, or appropriate documents shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements that are not in conflict with any federal or state law.

QQ.    <u>Claims Resolution Procedures</u>. For the avoidance of doubt, (i) the procedures for resolving Disputed Claims set forth in Article VII of the Plan, (ii) the Class Claim Procedures included as Exhibits N, O, P and Q to the Plan Supplement for the Insurance Ratepayer Class Claims, Third Party Payor Class Claims, Hospital Class Claims, and NAS Monitoring Claims, and (iii) the procedures for the ILT Claims Arbiter to determine the issues set forth in Plan Section 5.7(i)(ii) (including the ILT Claims Arbiter Submission Procedures included as Exhibit I to the Plan Supplement), are an integral components of the Plan Settlement,

28

are fair and appropriate under the circumstances, and all parties required to be given notice of such procedures have been given due, proper, timely, and adequate notice of such procedures and such parties have had an opportunity to appear and be heard with respect thereto.

RR.    <u>Good Faith</u>.  The Debtors and the Creditors' Committee have been acting, are acting, and will continue to act in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions, and transfers set forth therein and (ii) take the actions authorized and directed by this Confirmation Order.

SS.    <u>Objections</u>.  All parties have had a full and fair opportunity to litigate all issues raised, or which might have been raised, in objections to confirmation of the Plan, and informal comments, and all objections have been fully and fairly litigated.

TT.    <u>Waiver of Stay</u>.  Given the facts and circumstances of these Chapter 11 Cases, it is appropriate that the stays of effectiveness of this Confirmation Order imposed by Bankruptcy Rules 3020(e), 6004(h), 6006(d), and 7062, to the extent applicable, be waived.

UU.    <u>Retention of Jurisdiction</u>.  Except as otherwise provided for in the Plan, the Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

## **ORDER**

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1.    <u>Findings of Fact and Conclusions of Law</u>.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule

29

7052, made applicable herein by Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by this Court at the Confirmation Hearing in relation to confirmation of the Plan are hereby incorporated into this Order.   To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

2.    <u>Objections</u>.  All objections that have not been withdrawn, waived, settled, or deferred, and all reservations of rights pertaining to confirmation of the Plan, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Confirmation Hearing, shall be, and hereby are, overruled on the merits.

3.    <u>Confirmation Hearing Notice</u>.    The Confirmation Hearing Notice complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.  No further notice of the Confirmation Hearing was required or need be given.

4.    <u>Solicitation</u>.  The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and applicable non-bankruptcy law.

5.    <u>Confirmation of the Plan</u>.  The Plan and each of its provisions shall be, and hereby are, **CONFIRMED** under section 1129 of the Bankruptcy Code.  The terms of the Plan, all exhibits and schedules thereto, the Plan Documents, and the Plan Supplement are

30

incorporated by reference into and are an integral part of the Plan and this Confirmation Order (whether or not such terms are expressly referenced or described herein).

6.      <u>Plan Supplement and Exhibits and Schedules to the Plan</u>.  The documents, substantially in the form contained in the Plan Supplement, the exhibits and schedules to the Plan, and any amendments, modifications, and supplements thereto, and the execution, delivery, and performance thereof by the Debtors, the Liquidating Debtors, the Trustees, the VRT Claims Administrator, the ILT Claims Arbiter, or any other party authorized to implement the Plan (through the Trusts, the Debtors, or the Liquidating Debtors, as applicable,) are authorized and approved.

7.      <u>Settlement of Claims and Controversies</u>.  Pursuant to sections 105(a) and 1123 of the Bankruptcy Code, Bankruptcy Rule 9019, and Article V of the Plan, the Plan incorporates an integrated compromise, settlement, and release of claims.  The entry of this Confirmation Order shall constitute the Court's approval, as of the Effective Date, of the Plan Settlement as well as the Court's determination that the Plan Settlement is (i) in the best interest of the Debtors and the Estates and their respective property and stakeholders; and (ii) fair, equitable, and within the range of reasonableness.  In the event that, for any reason, the Effective Date does not occur, the Debtors and the Creditors' Committee reserve all of their respective rights with respect to any and all disputes resolved and settled under the Plan Settlement.

8.      The Plan Documents and the Plan shall not constitute or be construed as admissions of any fact or liability, stipulation or waiver, but rather are in furtherance of settlement in the Chapter 11 Cases.

9.      The amendments and modifications to the Amended Plan since the filing thereof, including as reflected in the Plan Amendment and herein, and incorporated into and

31

reflected in the Plan, are approved in accordance with section 1127(a) of the Bankruptcy Code and Rule 3019(a) of the Bankruptcy Rules.

10.    <u>Release, Injunction and Exculpation Provisions</u>. For the avoidance of doubt, pursuant to Bankruptcy Rule 3020(c)(1), the following provisions in the Plan are hereby approved and will be effective immediately on the Effective Date without further order or action by the Court, any of the parties to such release, or any other Entity: ((a) Debtors' Releases (Plan section 10.5(a)); (b) Third Party Releases (Plan section 10.5(b)); (c) Exculpation (Plan section 10.6); (d) Injunction (Plan sections 10.2, 10.4, 10.7); and carve-outs for the United States (Plan sections 10.7, 12.1).

11.    <u>Release and Exculpation Provisions</u>.   All release and exculpation provisions embodied in the Plan, including those contained in Article X of the Plan, are (i) integral parts of the Plan, (ii) fair, equitable, and reasonable, (iii) given for good and valuable consideration, (iv) necessary to the proposed liquidation, (v) reasonable in scope, and (vi) in the best interest of the Debtors and their Estates, the Liquidating Debtors, and all other parties in interest, and such provisions are approved and shall be effective and binding on all persons, to the extent provided in the Plan.  The release provisions contained in section 10.5(b) of the Plan were disclosed and explained on the Ballots, on the Opt Out Election Form, in the Disclosure Statement, and in the Plan and are consensual under applicable law.

12.    <u>Substantive Consolidation</u>.  As of the Effective Date: (a) all assets and liabilities of the Debtors will be deemed merged; (b) all guarantees by one Debtor of the obligations of any other Debtor will be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be a single obligation of the Debtors; (c) each and every Claim

filed or to be filed in the Chapter 11 Case of any Debtor will be deemed filed against the Debtors and will be deemed one Claim against and a single obligation of the Debtors, and the Debtors may file and the Bankruptcy Court will sustain objections to Claims for the same liability that are filed against multiple Debtors; and (d) Intercompany Claims between any Debtors will be eliminated and extinguished in accordance with Section 4.12 of the Plan and no Distributions shall be made under the Plan on account of any Intercompany Claim.

This consolidation will not: (a) affect the legal and corporate organizational structures of the Debtors; (b) affect the vesting of assets in the Debtors, the Liquidating Debtors or the Trusts; (c) affect the rights of any Claimant with respect to the collateral securing such Claim, if any; (d) constitute a change of control of any Debtor for any purpose, (e) cause a merger or consolidation of any legal entity, (f) affect executory contracts that were entered into during the Chapter 11 Cases or that have been or will be assumed, assumed and assigned, or rejected; (g) affect the Debtors', the Insys Liquidation Trust's or the Victims Restitution Trust's ability to subordinate or challenge Claims on an entity by entity basis; or (h) prejudice the rights of any Debtor with respect to the prosecution or defense of any Cause of Action including, but not limited to, preferential transfers and fraudulent conveyances, against any person or entity as if there was no substantive consolidation, including payments or transfers by and among the Debtors and any related or affiliated entity prior to the Petition Date.

Further, this consolidation will not affect the obligation of the consolidated Debtors to (a) pay quarterly fees to the U.S. Trustee in accordance with 28 U.S.C. § 1930 based upon the consolidated disbursements made by the substantively consolidated Debtors or (b) seek the closing of their substantively consolidated Chapter 11 Cases.

33

13.     <u>Binding Effect</u>.  On or after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall be immediately effective and enforceable and binding on the Debtors, the Liquidating Debtors, the Liquidating Trustees, the VRT Claims Administrator, the VRT Board, the ILT Claims Arbiter, the ILT Board, any entity acquiring or receiving property or a Distribution under the Plan, every holder of a Claim against or Interest in any Debtor (whether or not such holder has filed a proof of claim in the Chapter 11 Cases), any and all non-Debtor parties to executory contracts and unexpired leases with any of the Debtors, any other party in interest in the Chapter 11 Cases, and the respective heirs, executors, administrators, successors, estates, or assigns, if any, of any of the foregoing regardless of whether the Claim or Interest of such holder is Impaired under the Plan or whether such holder has accepted or is deemed to have accepted the Plan.

14.     <u>No Action</u>.   Pursuant to applicable non-bankruptcy law and section 1142(b) of the Bankruptcy Code, no action of the respective directors, managers, members, or stockholders, as applicable, of the Debtors shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including any contract, instrument, or other document included in the Plan Supplement.

15.     <u>Plan Classification Controlling</u>.  The classification of Claims and Interests for purposes of the Distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors in connection with voting on the Plan (i) were set forth on the Ballots for purposes of voting to accept or reject the Plan, (ii) do not necessarily represent, and in no event shall be

34

deemed to modify or otherwise affect, the actual classifications of such Claims and Interests under the Plan for distribution purposes, and (iii) shall not be binding on the Debtors.

16.    <u>Implementation of the Plan</u>.  Pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, on, prior to the Effective Date, or as soon thereafter as is reasonably practicable, the Debtors, the Liquidating Debtors, the Trustees, the VRT Claims Administrator, or the ILT Claims Arbiter, as applicable, are authorized to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including (a) a substantive consolidation of the assets and liabilities of the Debtors with one another, (b) the vesting of the Debtors' Assets in the Insys Liquidation Trust or the Victims Restitution Trust, as applicable, (c) the cancellation of all Equity Interests and all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing Claims against or Interests in the Debtors or obligations of the Debtors or Liquidating Debtors, as applicable, thereunder or in any way related to the foregoing, (d) the appointment of the Trustees, the VRT Claims Administrator and the ILT Claims Arbiter, and the establishment of the Insys Liquidation Trust and the Victims Restitution Trust, (e) the consummation of the Plan Settlement, (f) allocation of Available Cash for payment of Distributions and Claims, and (g) the taking of all necessary or appropriate actions by the Debtors, the Liquidating Debtors, the Trustees, the VRT Claims Administrator or the ILT Claims Arbiter, as applicable, to effectuate the Trust Formation Transactions and the Plan.  All such actions taken or caused to be taken consistent with the terms of this Confirmation Order and the Plan, including any such actions taken with respect to the Trust Formation Transactions prior to the date of entry of this Confirmation Order, shall be deemed to have been authorized and

35

approved by the Court without further approval, act, or action under any applicable law, order, rule, or regulation.

17.  <u>Plan Distributions</u>.  The Liquidating Debtors and the Trustees, or any other party authorized to make Distributions under the Plan, as applicable, are hereby authorized to make all Distributions pursuant to the terms of the Plan and to pay any other applicable fees and expenses approved by any other order of this Court.  In accordance with Section 4.7 of the Plan, Distributions on account of Allowed DOJ Claims will be made as restitution, other than Distributions made on account of the Allowed DOJ Forfeiture Claim.  Additionally, in accordance with Section 4.8 of the Plan, Distributions on account of Allowed State Claims and Allowed Municipality/Tribe Claims will be made as restitution.

18.  <u>Free and Clear</u>.  On the Effective Date, and if applicable, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, all Assets shall vest in the Insys Liquidation Trust or the Victims Restitution Trust, as applicable. The Trusts shall own such Assets, as of the Effective Date, free and clear of all Claims, Interests, Liens, other encumbrances, and liabilities of any kind.

19.  <u>Compliance with Section 1123(a)(6) of the Bankruptcy Code</u>.  As part of the Plan Supplement, the Debtors filed forms of a Second Amended and Restated Certificate of Incorporation and Second Amended and Restated Bylaws for Insys Therapeutics, Inc., to be filed with the Secretary of State of the State of Delaware, which documents, among other things change the purpose of Insys to be solely to facilitate the orderly administration of the winding up and dissolution of Insys.  The Plan provides that the only new securities to be issued under the Plan pursuant to Section 5.7(b) of the Plan will be the Parent Equity Interest to the Insys

Liquidation Trust in order to allow the Liquidating Trustee to control Insys. Accordingly, the requirements of section 1123(a)(6) are satisfied in the Chapter 11 Cases.

20.     Cancellation of Notes, Interests, Instruments, Certificates, and Other Documents. Except as otherwise provided herein and in the Plan, on and after the Effective Date, all Equity Interests and all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing Claims against the Debtors or obligations of the Debtors or Liquidating Debtors, as applicable, thereunder or in any way related to the foregoing shall be deemed cancelled, satisfied in full, and of no further force and effect without any need for further action or approval of this Court.

21.     Setoffs and Recoupments. Subject to Section 4.14, Article VII and sections 10.5 through 10.8 and Section 5.13 of the Plan, the Liquidating Debtors or the Trustees, on behalf of the Trusts, may, but shall not be required to, set off against or recoup from any Claim and from any payments to be made pursuant to the Plan in respect of such Claim any claims of any nature whatsoever (to the extent permitted by applicable law) that the Debtors may have against the claimant; provided, that neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Liquidating Debtors or the Trusts of any such Claim it may have against such claimant.

22.     Claims Resolution Procedures Approved. The procedures for resolving Disputed Claims set forth in Article VII of the Plan are hereby approved. The Class Claim Procedures included as Exhibits N, O, P and Q to the Plan Supplement for the Insurance Ratepayer Class Claims, Third Party Payor Class Claims, Hospital Class Claims, and NAS Monitoring Class Claims, are hereby approved.

RLF1 22747484V.1

23.    <u>SMT Allocation Protocol</u>.  In accordance with Section 4.8 of the Plan and the ILT Agreement, the SMT Group Representatives shall follow, and the SMT Board Members may follow, national negotiations regarding global allocation and distributions to and among non-federal governmental entities (States, their subdivisions and local governments, and Native American Tribes) by and from opioid defendants within and outside of opioid defendant bankruptcy cases.  Should a global allocation agreement be reached in the national opioid litigation or within other bankruptcy cases of opioid defendants that allocates distributions or recoveries among governmental entities on a nationwide basis, then the SMT Group Representatives shall prepare, in consultation with the holders of Class 8(a) and Class 8(b) Claims, an allocation protocol or model that follows such global allocation agreement or otherwise allocates the Trust Assets reserved for Class 8(a) and Class 8(b) in a manner substantially consistent with the global allocation agreement. Should there not be a global allocation agreement reached before the initial termination date of the Insys Liquidation Trust, as described in section 9.01(b) of the ILT Agreement, then, reasonably in advance of that initial termination date, the SMT Group Representatives shall prepare an allocation protocol or model, in consultation with the holders of Class 8(a) and Class 8(b) Claims, to be used for distribution to such holders (any proposal under this SMT Allocation Protocol a "**SMT Global Allocation Proposal**").  An SMT Global Allocation Proposal may provide for the contribution of such assets into a global allocation program, fund or mechanism established outside of these Chapter 11 Cases.  It is anticipated that such SMT Global Allocation Proposal shall provide for allocation on a nationwide basis and without regard to whether any governmental entity (*i.e.*, State, Municipality, or Tribe) filed a proof of claim in these Chapter 11 Cases, except to the extent that any such non-federal governmental entity has independently of these Chapter 11 Cases waived

38

or released claims against the Debtors in which case such entity shall not be entitled to distributions hereunder.  The SMT Group Representatives and the Liquidating Trustee must receive Bankruptcy Court approval upon notice and a hearing for the implementation of such SMT Global Allocation Proposal. In connection with the Bankruptcy Court's approval of the SMT Global Allocation Proposal, the SMT Group Representatives and the Liquidating Trustee shall seek, within the same order, a determination from the Bankruptcy Court that all Class 8(a) and Class 8(b) Claims in these Chapter 11 Cases are allowed on a final basis and satisfied in full by entry of the Bankruptcy Court-approved SMT Global Allocation Proposal.  For the avoidance of doubt, the SMT Global Allocation Proposal shall (a) not treat Municipality/Tribe Claims differently solely because they were within or outside the MDL, and (b) shall comply with section 1123(a)(4) of the Bankruptcy Code.

24.    <u>ILT Claims Arbiter.</u> For the avoidance of doubt, the appointment of the ILT Claims Arbiter and the procedures for the ILT Claims Arbiter to determine the issues set forth in Plan Section 5.7(i)(ii) (including without limitation the ILT Claims Arbiter Submission Procedures included as Exhibit I to the Plan Supplement) are hereby approved.

25.    <u>Disputed Claims Reserves.</u>  In accordance with Section 6.4 of the Plan, from and after the Effective Date, and until such time as all Disputed Claims have been compromised and settled or determined by a Final Order of the Court, the Liquidating Trustees shall, consistent with and subject to section 1123(a)(4) of the Bankruptcy Code, retain from the Available Cash an aggregate amount equal to the Pro Rata Share of each Distribution that would have been made to a holder of a Disputed Claim and allocate such amount to the applicable Disputed Claims Reserve in accordance with the Plan as if such Disputed Claim were an Allowed Claim against the Debtors in an amount equal to the least of (i) the filed amount of such

Disputed Claim, (ii) the amount determined, to the extent permitted by the Bankruptcy Code and Bankruptcy Rules, by the Court for purposes of fixing the amount to be reserved for such Disputed Claim, and (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Liquidating Trustee for the Insys Liquidation Trust (if such Disputed Claim is not a Personal Injury Claim), or the Liquidating Trustee for the Victims Restitution Trust, or the VRT Claims Administrator (if such Disputed Claim is a Personal Injury Claim).

26.     <u>Assumption, Rejection, or Assignment of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))</u>.  Pursuant to Article VIII of the Plan, as of and subject to the occurrence of the Effective Date, it is hereby authorized and approved that on the Effective Date, except as otherwise provided in the Plan, each executory contract and unexpired lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such executory contract or unexpired lease (i) is listed on the Schedule of Assumed and Assigned Contracts, (ii) as of the Effective Date is subject to a pending motion to assume, reject, or assume and assign such executory contract or unexpired lease, or (iii) is assigned to the Insys Liquidation Trust or to the Victims Restitution Trust pursuant to the terms of the Plan.

27.     In accordance with the terms of Article VIII of the Plan, as of and subject to the occurrence of the Effective Date, the Court hereby approves, pursuant to sections 365 and 1123 of the Bankruptcy Code, (i) the assumption of the executory contracts or unexpired leases in accordance with the Plan, and (ii) the assignment of such executory contracts and unexpired leases to the applicable entity or Trust, as applicable.

28.     <u>Rejection Claims</u>.  Pursuant to Section 8.4 of the Plan, if the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to Section 8.1 of the

40

Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, if not heretofore evidenced by a timely filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtors or their Estates, unless a proof of Claim is filed with the Court and served upon the Debtors no later than thirty (30) days after the Effective Date of the Plan.  Any such Claims, to the extent Allowed, shall be classified as Trade and Other Unsecured Claims in Class 4.

29.     <u>Determination of Cure Disputes and Deemed Consent</u>.  Pursuant to the Disclosure Statement Order, the Debtors served individualized Cure Notices on counterparties to the Debtors' executory contracts and unexpired leases, which set forth the proposed Cure Amount (if any) for each executory contract and unexpired lease for those contracts the Debtors or the Trusts, as applicable, proposed to assume after the Effective Date.   On December 30, 2019, as part of the Plan Supplement, the Debtors filed the Schedule of Assumed and Assigned Contracts which listed those executory contracts and unexpired leases to be assumed and assigned, and the proposed Cure Amount (if any) for each executory contract and unexpired lease.

30.     To the extent any Cure Dispute with respect to an Assumed and Assigned Contract has not been resolved prior to the Effective Date, the Debtors shall establish the Disputed Cure Claims Reserve.  Any amounts remaining in the Disputed Cure Claims Reserve after the resolution and payment, if applicable, of all Disputed Cure Claims with respect to the Assumed and Assigned Contracts, shall be included in the Priority Reserve.

31.     To the extent an objection is not timely filed and properly served on the Debtors with respect to a Cure Dispute, then the counterparty to the applicable contract or lease shall be deemed to have assented to (i) the Cure Amount proposed by the Debtors and (ii) the

assumption of such contract or lease, notwithstanding any provision thereof that (a) prohibits, restricts, or conditions the transfer or assignment of such contract or lease, or (b) terminates or permits the termination of a contract or lease as a result of any direct or indirect transfer or assignment of the rights of the Debtor under such contract or lease or a change in the ownership or control as contemplated by the Plan, and shall forever be barred and enjoined from asserting such objection against the Debtors or terminating or modifying such contract or lease on account of transactions contemplated by the Plan.

32.    <u>General Authorizations</u>.  Each of the Debtors, the Liquidating Debtors, the Insys Liquidation Trust, the Victims Restitution Trust, the Trustees, the VRT Claims Administrator and the ILT Claims Arbiter is authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of the Plan and the Plan Settlement.  The Debtors, Liquidating Debtors, the Trustees, the VRT Claims Administrator and the ILT Claims Arbiter and their respective directors, officers, members, agents, and attorneys are authorized and empowered to issue, execute, deliver, file, or record any agreement or document, including any documents contained in the Plan Supplement and the Exhibits and Schedules to the Plan, as may be modified, amended, and supplemented, in substantially the form included therein, and to take any action necessary or appropriate to implement, effectuate, and consummate the Plan in accordance with its terms, or take any or all corporate actions authorized to be taken pursuant to the Plan, including merger of any of the Liquidating Debtors and the dissolution of each of the Liquidating Debtors, and any release, amendment, or restatement of any bylaws, certificates of incorporation, or other organizational documents of the Debtors or Liquidating Debtors, whether or not specifically

42

referred to in the Plan or the Plan Supplement, without further order of the Court, and any or all such documents shall be accepted by each of the respective state filing offices and recorded in accordance with the applicable state law and shall become effective in accordance with their terms and the provisions of state law.  Pursuant to Section 5.17 of the Plan, the Liquidating Debtors or the Trustees, as applicable, are authorized to file certificates of cancellation or dissolution, or merger without further action under applicable law, regulation, order, or rule, including, without express or implied limitation, any action by the stockholders, members, or directors (or other governing body) of the Liquidating Debtors.

33.    <u>Transferability of Distribution Rights</u>.  Any and all Trust Interests, rights to receive a Distribution from the Trust, the Priority Reserve, the Trust Operating Reserves, or the Recovery Funds will not constitute "securities" and will not be registered pursuant to the Securities Act or any applicable state or local securities law.  However, if it should be determined that any such interests constitute "securities," the exemption provisions of section 1145 of the Bankruptcy Code will be satisfied and the offer and sale under the Plan of the Trust Interests will be exempt from registration under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations. Further, any and all Trust Interests, rights to receive a Distribution from the Trust, the Priority Reserve, the Trust Operating Reserves, or the Recovery Funds shall not be certificated, shall be non-transferable other than if transferred by will, intestate succession, or otherwise by operation of law, and shall be subject to certain other restrictions.  Moreover, any and all Trust Interests shall not be listed for trading on any national securities exchange.

34.    <u>Establishment of Insys Liquidation Trust</u>.  This Confirmation Order authorizes (i) the creation and implementation of the Insys Liquidation Trust in accordance with

the terms of this Confirmation Order, the Plan, and the ILT Agreement, and (ii) appointment of the Liquidating Trustee for the Insys Liquidation Trust to accomplish the purposes of the Insys Liquidation Trust, as set forth in and subject to the ILT Agreement and the Plan, notwithstanding any otherwise applicable non-bankruptcy law.  The Insys Liquidation Trust may be established prior to the Effective Date to the extent necessary, desirable, or appropriate to effectuate the Plan.

35.    <u>Establishment of Victims Restitution Trust</u>. This Confirmation Order authorizes (i) the creation and implementation of the Victims Restitution Trust in accordance with the terms of this Confirmation Order, the Plan, and the VRT Agreement, and (ii) appointment of the Liquidating Trustee of the Victims Restitution Trust to accomplish the purposes of the Victims Restitution Trust, as set forth in and subject to the VRT Agreement and the Plan, notwithstanding any otherwise applicable nonbankruptcy law.

36.    To the extent required, Section 5.6 and other applicable sections of the Plan are modified to provide for the selection of a Liquidating Trustee for each of the Insys Liquidation Trust and the Victims Restitution Trust.  The appointments of Ms. Carmin Reiss as the initial Liquidating Trustee for the Victims Restitution Trust and Mr. William Henrich as the initial Liquidating Trustee for the Insys Liquidation Trust are approved.  Each Liquidating Trustee shall have the powers specified in the Plan with respect to the applicable Trust and shall not have any authority to act on behalf of the other Trust, unless later appointed as Liquidating Trustee for such other Trust.  The appointment of two Liquidating Trustees does not limit the ability of the Trust Boards, in the future, to select a single Liquidating Trustee for both Trusts.

37.    <u>Role of the Trustees</u>.  In accordance with the Trust Agreements, and in furtherance of, and consistent with, the purposes of the Trusts and the Plan, the Trustees shall

RLF1 22747484V.1

have the power and authority to act as trustee of the applicable Trusts and perform the Authorized Acts pursuant to the Plan.

38.    <u>Insurance Rights Transfer</u>.    This Confirmation Order confirms that the Insurance Rights Transfer, as provided by Section 5.7(e) of the Plan, is valid and enforceable under sections 541(c)(1)(a), 1123(a)(5)(B), and 1129(a)(1) of the Bankruptcy Code, and that the Bankruptcy Code preempts any anti-assignment contractual provisions and applicable state law.

39.    <u>Products Liability Insurance Rights Transfer</u>.    This Confirmation Order confirms that the Products Liability Insurance Rights Transfer, as provided by Section 5.8(c) of the Plan, is valid and enforceable under sections 541(c)(1)(a), 1123(a)(5)(B), and 1129(a)(1) of the Bankruptcy Code, and that the Bankruptcy Code preempts any anti-assignment contractual provisions and applicable state law.

40.    <u>Insurance Neutrality</u>.

(a)    Nothing contained in the Plan, the Plan Documents, or this Confirmation Order (including any provision that purports to be preemptory or supervening) shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying (i) the rights or obligations of any of the Insurance Companies arising out of or under any Insurance Policy or (ii) any rights or obligations of the Debtors arising out of or under any Insurance Policy. For all issues relating to insurance coverage, including all rights and obligations under the Insurance Policies, the provisions, terms, conditions, and limitations of the Insurance Policies shall control. For the avoidance of doubt, (i) none of the Debtors' or any Insurance Company's defenses, rights, and obligations with respect to the coverage, denial of coverage, the proper court, forum or jurisdiction for any disputes regarding coverage or regarding the Insurance Companies' rights and obligations under

45

the Insurance Policies (collectively, the "**Coverage Dispute**") shall be impaired or otherwise affected in any way; and (ii) nothing herein shall constitute a determination, consent to, or waiver of jurisdiction as to the Coverage Dispute.

(b)     For the avoidance of doubt, nothing contained in the Plan, the Plan Documents, or this Confirmation Order shall operate to require any Insurance Company to indemnify or pay the liability of any Debtor or Liquidating Debtor that it would not have been required to pay in the absence of this Plan.   Furthermore, nothing in the Plan, the Plan Documents, or this Confirmation Order shall operate to make either the Victims Restitution Trust or the Insys Liquidation Trust insureds under the Insurance Policies with respect to any action taken by the Victims Restitution Trust or the Insys Liquidation Trust.   This subsection (b) in no way modifies, alters or limits the rights and/or obligations set forth in subsection (a), above.

(c)     None of (i) this Court's confirmation of the Plan or approval of the Plan Documents, (ii) this Confirmation Order or any other findings and conclusions entered with respect to confirmation, or (iii) any estimation or valuation of any Claims, either individually or in the aggregate in the Chapter 11 Cases shall, with respect to any Insurance Company, constitute a trial or hearing on the merits or an adjudication or judgment with respect to any Claim or Cause of Action.

41.     Notwithstanding anything to the contrary in the Plan, the Plan Documents or this Confirmation Order, on and after the Effective Date, the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Section 10.4 of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, to permit: (a) claimants with valid workers' compensation claims to proceed with their claims in accordance with such applicable workers' compensation policies and applicable state law in the

46

appropriate judicial or administrative forum against the proceeds of such policies only and; (b) the Insurance Companies to administer, handle, defend, settle and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, such claims and all costs in relation to the foregoing.

42.    Merger; Dissolution; Consolidation.   On or after the date(s) upon which the Trusts are established, the Liquidating Debtors or the Trustees may, subject to the terms of the Plan and the Liquidating Debtors' Organizational Documents, cause any or all of the Liquidating Debtors to be merged into one or more of the Liquidating Debtors, dissolved, or otherwise consolidated, and engage in any other transaction in furtherance of the Plan. Notwithstanding the foregoing, on the Dissolution Date (which is to be no later than thirty (30) days after completion of the acts required of the Debtors or the Liquidating Debtors by Article V of the Plan, or as soon as reasonably practicable thereafter), each Liquidating Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of each Liquidating Debtor; provided, however, that each Liquidating Debtor, or the Trustees, as applicable, shall file with the office of the Secretary of State, or other appropriate office for the state of its organization, a certificate of cancellation or dissolution. Upon the liquidation and dissolution of any Liquidating Debtor, any proceeds thereof shall be treated as Available Cash and allocated in accordance with Section 5.14 of the Plan.

43.    Survival of Debtors' Indemnification Obligations.    Any obligations (including any limitations contained therein) of the Debtors pursuant to their corporate charters, by-laws, limited liability company agreements, memorandum and articles of association, or other organizational documents and agreements to indemnify officers, directors, agents, or employees of the Debtors who were employed by the Debtors as of the Petition Date with respect to all

47

present and future actions, suits, and proceedings against the Debtors or such officers, directors, agents, or employees based upon any act or omission for, or on behalf of, the Debtors shall not be discharged, impaired, or otherwise affected by the Plan or this Confirmation Order; *provided, however*, for the avoidance of doubt, the Insys Liquidation Trust shall not (i) assume indemnification obligations with respect to any parties on the Non-Released Parties Exhibit or (ii) indemnify any Person to the extent indemnification is not available under any of the Debtors' corporate charters, by-laws, limited liability company agreements, memorandum and articles of association, or other organization documents and agreements.  All indemnification obligations that are assumed and assigned to the Insys Liquidation Trust shall be deemed and treated as Assumed and Assigned Contracts under the Plan.  Any Claim based on the Insys Liquidation Trust's assumption of the Debtors' obligations described herein shall not be a Disputed Claim or subject to any objection, in either case, by reason of section 502(e)(1)(B) of the Bankruptcy Code.

44.    <u>Administrative Expense Claims Bar Date</u>.  Except as otherwise provided in Section 2.1 of the Plan, the applicable deadline for filing requests for payment of Administrative Expense Claims (other than Professional Fee Claims) and shall be the date that is sixty (60) days after the Effective Date with respect to (x) unpaid Claims arising in the ordinary course of business between the Petition Date and September 9, 2019, and (y) all unpaid Claims arising after September 9, 2019 through and including the Effective Date, in each case, unless otherwise ordered by the Bankruptcy Court (each such date the "**Administrative Expense Claims Bar Date**").  Holders of Administrative Expense Claims that are required to, but do not, file and serve requests for the payment of such Administrative Expense Claims by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from

48

asserting such Claims against the Debtors or their assets or properties, and such Claims shall be deemed discharged as of the Effective Date.

45.    <u>Professional Fee Claims</u>.    Pursuant to Section 2.4 of the Plan, all Professional Persons seeking awards by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 1103 of the Bankruptcy Code shall (i) file, on or before the date that is forty-five (45) days after the Effective Date, or as soon as reasonably practicable thereafter, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (ii) be paid in full, in Cash, (a) first, from any existing amounts held by a Professional Personal as a fee advance, retainer, or security that such Professional Person is authorized to use to satisfy Allowed Professional Fee Claims pursuant to the Interim Compensation Order or the order of the Bankruptcy Court authorizing the retention of such Professional Person (other than a reasonable retainer to cover post-Effective Date work), and (b) second, from the Professional Fee Escrow Account, in such aggregate amounts as are Allowed by the Bankruptcy Court or authorized to be paid in accordance with the order(s) relating to or allowing any such Professional Fee Claim.

46.    On the Effective Date, the Debtors, the Liquidating Debtors, or the Liquidating Trustee shall establish the Professional Fee Escrow Account and, on the Effective Date, fund the Professional Fee Escrow Account with (i) the funds held in the escrow account established pursuant to Paragraph 4 of the Interim Compensation Order, and (ii) any additional Cash such that the total amount held in the Professional Fee Escrow Account is equal to the sum of each Professional Person's good faith estimates of its Professional Fee Claims.

47.     The deadline for filing objections to Professional Persons' applications for final allowance of compensation for services rendered and expenses incurred shall be 20 days after the date of service of the applicable application, unless otherwise ordered by the Court.

48.     No Claims, Interests, Liens, other encumbrances, or liabilities of any kind shall encumber the Professional Fee Escrow Account in any way.   Notwithstanding the foregoing, Professional Persons performing services on behalf of the Debtors or the Creditors' Committees following the Effective Date in connection with the preparation of, or objection to, fee applications (or, in the case of the Creditors' Committee, with respect to any services listed in Section 12.14 of the Plan), are entitled to payment of reasonable fees and reimbursement of reasonable expenses related to such work.   Solely with respect to the immediately foregoing sentence, any such Professional Person may seek compensation for such fees and expenses by submitting invoices to the Liquidating Trustee for payment out of Available Cash, and any undisputed invoices shall be paid in the ordinary course of business and without further order of the Bankruptcy Court.

49.     Insurance Policies.  On or prior to the Effective Date, the Debtors, with the consent of the Creditors' Committee (which shall not be unreasonably withheld), may fund an upfront premium payment to purchase "tail insurance" to continue either or both of (i) the Debtors' existing directors' and officers' insurance and (ii) the fiduciary policy related to the Debtors' 401(k) plan.  As contemplated in Sections 5.7(e)(iii), 5.8(c)(iii) and 5.10(a) of the Plan, on and after the Effective Date, all Insurance Policies and all Products Liability Insurance Policies shall be deemed to be and treated as Assumed and Assigned Contracts, and shall vest in the Insys Liquidation Trust and the Victims Restitution Trust, respectively, and continue in full force and effect thereafter in accordance with their respective terms such that the Liquidating

Trustee and the VRT Claims Administrator, as applicable, shall become and remain jointly and severally liable in full for all of the Debtors' obligations under the Insurance Policies and the Products Liability Insurance Policies, as applicable.

          50.    <u>Retention of Causes of Action and Reservation of Rights</u>.  Except as expressly provided in the Plan or this Confirmation Order, pursuant to section 10.9 of the Plan, the Insys Liquidation Trust or Victims Restitution Trust, as applicable, shall have the right to prosecute any and all Causes of Action that have not been waived pursuant to the Plan or purchased by any of the purchasers of the Debtors' Assets. Pursuant to section 1123(b) of the Bankruptcy Code, except as expressly provided in Sections 10.4 through 10.7 of the Plan, nothing contained in the Plan or this Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately before the Effective Date on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including but not limited to any actions specifically enumerated in the Schedule of Retained Causes of Action to be filed as part of the Plan Supplement. Subject to Sections 10.4 through 10.7 of the Plan, all such Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses shall be transferred to the Insys Liquidation Trust or the Victims Restitution Trust, as applicable, which shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' and the Liquidating Debtors' legal and equitable rights with respect to any Claim or Interest may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

51.     <u>Compromise and Settlement of Claims, Interests, and Controversies</u>.  In consideration for the distributions and other benefits, including releases, provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of Claims and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest holder may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim.   The entry of this Confirmation Order hereby constitutes approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of such Claims and Interests, and is fair, equitable, and reasonable.

52.     <u>Dissolution of the Creditors' Committee</u>.  In accordance with Section 12.14 of the Plan, on the Effective Date, the Creditors' Committee will dissolve; provided, however, that following the Effective Date, the Creditors' Committee shall continue in existence and have standing and a right to be heard (and shall be compensated) for the following limited purposes: (i) assisting the Trusts for a limited transitional period of time; (ii) applications, and any relief related thereto, for compensation by Professionals and requests for allowance of Administrative Expense Claims; and (iii) any appeals of, or related to, this Confirmation Order or other appeal to which the Creditors' Committee is a party. Upon the dissolution of the Creditors' Committee, the Creditors' Committee and its respective Professionals will cease to have any duty, obligation, or role arising from, or related to, the Chapter 11 Cases and shall be released and discharged from all rights and duties from, or related to, the Chapter 11 Cases.

53.     <u>Removal of Related Proceedings</u>.  Notwithstanding anything herein or in any prior order of the Court to the contrary, including the *Order Pursuant to Fed. R. Bankr. P.*

*9006(b) and 9027 and Local Rule 9006-2 Enlarging the Time Within Which to File Notices of Removal of Related Proceedings* [D.I. 660] (the "**Removal Order**"), the time period provided by Bankruptcy Rule 9027 within which the Debtors or any other party as contemplated by 28 U.S.C. § 1452 may file notices of removal of the Civil Actions (as defined in the Removal Order), as well as any other civil proceeding that may be removed pursuant to 28 U.S.C. § 1452, is enlarged and extended to the date that is seven (7) days following the filing with the Court of the Notice of Effective Date (as herein defined), without prejudice and subject to any further requests to extend such time period.[3]

54.     <u>Documents and Instruments</u>.  Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Confirmation Order.

55.     <u>Revocation or Withdrawal of the Plan</u>.  The Debtors are hereby granted the right, subject to consultation with the Creditors' Committee, to revoke or withdraw the Plan prior to the Effective Date as to any or all of the Debtors.  If, with respect to a Debtor, the Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date as to such Debtor does not occur on the Effective Date, then, with respect to such Debtor: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the

---

[3] On January 3, 2020, the Debtors filed a second request to extend the time period provided by Bankruptcy Rule 9027 within which the Debtors or any other party as contemplated by 28 U.S.C. § 1452 may file notices of removal of the Civil Actions.

Plan shall be deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claim by or against, or any Interest in, such Debtor or any other Person; (b) prejudice in any manner the rights of such Debtor or any other Person; or (c) constitute an admission of any sort by any Debtor or any other Person.

56.    <u>Reversal/Stay/Modification/Vacatur of Confirmation Order</u>.    Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors or the Liquidating Debtors, or any other party authorized or required to take action to implement the Plan, as applicable, prior to the effective date of such reversal, stay, modification, or  vacatur.  Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, the Plan Documents, or any amendments or modifications to the foregoing.

57.    <u>Retention of Jurisdiction</u>.  Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, except as otherwise provided in the Plan, the Plan Documents, or this Confirmation Order, this Court shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases to the fullest extent as is legally permissible, including jurisdiction over the matters set forth in Article XI of the Plan.

58.    <u>Exemption from Certain Transfer Taxes</u>.    To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments, or assignments executed in connection with any disposition of assets contemplated by the Plan (including transfers of assets to and by the Insys Liquidation Trust and the Victims Restitution Trust) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales or use tax, mortgage recording tax, or other similar tax or governmental assessment..

59.    <u>Modifications and Amendments</u>.    The Plan and the other Plan Documents may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Court; *provided, however*, that any such amendments, modifications, or supplements shall be made in accordance with the terms of the Plan Settlement, and shall not be made without the reasonable consent of the Creditors' Committee and the SMT Group Representatives solely with respect to any amendments, modifications, or supplements that directly and materially adversely affect the SMT Group Claims or the SMT Group Representatives, including, without limitation, with respect to governance provisions in respect of the Trusts described in the Plan. In addition, after the Confirmation Date, as long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to the Plan, the Debtors may remedy any defect or omission or reconcile any inconsistencies in the Plan or this Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of the Plan, and any

55

holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.  Prior to the Effective Date, the Debtors, with the reasonable consent of the Creditors' Committee, may make appropriate technical adjustments and modifications to the Plan and the Plan Documents without further order or approval of the Court; *provided*, *however*, that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Interests under the Plan.

60.    Notwithstanding anything contained in the Plan, this Confirmation Order, and any implementing Plan documents, nothing shall (i) preclude the United States Securities and Exchange Commission (the "**SEC**") from enforcing its police or regulatory powers; or (ii) enjoin, limit, impair, or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-Debtor person or non-Debtor entity in any forum; *provided,* that the foregoing shall not diminish the scope of any exculpation to which any party is entitled under the provisions of the Plan, applicable provisions of Title 11, including section 1125(e) of the Bankruptcy Code, or other applicable law consistent with *In re PWS Holding Corp.,* 228 F.3d 224 (3d Cir. 2000).

61.    Notwithstanding the proposed classification of claim nos. 10247 and 10253 (collectively, the "White & Case Claims") in Class 11 (510(c) Subordinated Claims) of the Plan, the White & Case Claims shall be classified in Class 4 (Trade and Other General Unsecured Claims) of the Plan for purposes of voting and confirmation; *provided, however*, that the Debtors and the Trusts, as applicable, reserve any and all rights, claims, and Causes of Action of any sort whatsoever with respect to White & Case LLP and the White & Case Claims, including, without limitation, seeking to reclassify or subordinate the White & Case Claims or

56

objecting to the White & Case Claims on any grounds, and White & Case LLP reserves any and all rights, claims and defenses.

62.     Notwithstanding any provision to the contrary in the Plan, this Confirmation Order or any Plan Documents:

(a)     As to the United States, on behalf of its agency the Internal Revenue Service ("**IRS**"),  nothing in the Plan, this Confirmation Order or any Plan Documents shall: (1) cause an IRS Secured Claim to be deemed unsecured solely because it includes a Claim that meets the definition of Priority Tax Claim; (2) cause distributions made after the Effective Date on account of IRS claims allowed by the Bankruptcy Code or the Plan to be deemed to be made on a date other than the date the distribution is actually made; (3) alter the treatment and payment of penalties on IRS claims and such penalties shall be paid and treated in accordance with the applicable provisions of the Bankruptcy Code; (4) affect any setoff or recoupment rights of the IRS and such rights are preserved; (5) release, enjoin or exculpate any non-debtor from any liability arising under the Internal Revenue Code; (6) require the IRS to file an administrative claim in order to receive payment for any liability described in Section 503(b)(1)(B) and (C) of the Bankruptcy Code in accordance with Section 503(b)(1)(D); (7) be construed as a compromise or settlement of any claim, cause of action or interest of the IRS; (8) expand or limit the scope of Section 502 of the Bankruptcy Code with respect to the claims of the IRS; or (9) expand the scope of Section 505 of the Bankruptcy Code with respect to claims of the IRS.

(b)     Administrative Expense Claims of the IRS Allowed pursuant to the Plan or the Bankruptcy Code shall accrue interest and penalties as provided by non-bankruptcy law until paid in full.

(c)     To the extent the Priority Tax Claims of the IRS (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code) allowed pursuant to the Bankruptcy Code or the Plan are not paid in full in cash on the Effective Date, then such Priority Tax Claims shall accrue interest commencing on the Effective Date at the rate set forth in Section 511 of the Bankruptcy Code.  Moreover, nothing shall effect a release, injunction or otherwise preclude any claim whatsoever against any Debtor or any of the Debtors' Estates by or on behalf of the IRS for any liability arising a) out of pre-petition or post-petition tax periods for which a return has not been filed or b) as a result of a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period. Further, nothing shall enjoin the IRS from amending any claim against any Debtor or any of the Debtors' Estates with respect to any tax liability a) arising out of pre-petition or post-petition tax periods for which a tax

57

return has not been filed or b) from a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period. Any liability arising a) out of pre-petition or post-petition tax periods for which a return has not been filed or b) as a result of a pending audit or audit which may be performed with respect to any pre-petition or post-petition tax period shall be paid in accordance with 1129(a)(9)(A) and (C) of the Bankruptcy Code. Without limiting the foregoing but for the avoidance of doubt, nothing contained in the Plan, this Confirmation Order or any Plan Documents shall be deemed to bind the IRS to any characterization of any transaction for tax purposes or to determine the tax liability of any person or entity, including, but not limited to, the Debtors and the Trusts, nor shall the Plan, this Confirmation Order or any Plan Documents be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of the Plan, nor shall anything in the Plan, this Confirmation Order or any Plan Documents be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment, except as provided under Section 505 of the Bankruptcy Code.

63.     <u>Williamson County</u>.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, Williamson County shall retain its statutory liens securing its prepetition claims, if applicable, and post-petition taxes, until such time as the Allowed amount of such pre-petition tax claims and post-petition taxes is paid in full.  Nothing in the Plan or this Confirmation Order shall be construed as an admission as to the validity of any claim asserted by Williamson County against the Debtors or a waiver of the Debtors' rights to subsequently dispute such claim on any grounds.  The Debtors' and, if applicable, the Liquidating Debtors', ad valorem tax obligations shall be paid in the ordinary course of business by the Liquidating Debtors or the Insys Liquidation Trust.  In the event any ad valorem taxes are not paid in the ordinary course of business, to the extent that interest is payable with respect to such ad valorem taxes, the rights of Williamson County to interest at the state statutory rate pursuant to section 511 of the Bankruptcy Code shall be reserved.  The Liquidating Debtors and Insys Liquidation Trust reserve all bankruptcy and non-bankruptcy defenses to such ad valorem tax Claims, as well

58

as the right to prepay all or a portion of any such amounts at any time with no prepayment penalty.

64.     The exculpation set forth in section 10.6 of the Plan shall be limited to the postpetition period.

65.     Solely in the event any entity coverage under the Debtors' existing directors' and officers' insurance policies ("**D&O Policies**") is available and accessible pursuant to the priority of payments clauses therein after the resolution of all claims under Side A and Side B of such D&O Policies, then the lead plaintiff in the Securities Litigation,[4] on behalf of himself and the certified class in the Securities Litigation, may seek an order of the Bankruptcy Court, upon notice and a hearing, estimating or otherwise determining the allowed amounts of their Class 10 Claims (POC Nos. 10585, 10586) solely to the extent of the remaining entity insurance coverage under, and subject to all of the provisions of, the D&O Policies.  For the avoidance of doubt, nothing in this paragraph shall require the Debtors, the Liquidating Debtors, the Insys Liquidation Trust, or the Liquidating Trustee to be responsible for Distributions on the Class 10 Claim, or defense of the Securities Litigation, the estimation or other proceeding determining the Class 10 Claim, or any other costs of defense or liability not covered by available insurance.  The Insys Litigation Trust shall notify lead counsel in the Securities Litigation if and when the Insys Litigation Trust determines that there is remaining entity coverage available and accessible under the D&O Policies.  Nothing herein shall (a) in any way obligate or require the Insys Litigation Trust to preserve or maintain any Insurance Rights for the benefit of the certified class in the Securities Litigation, or (b) provide the certified class with any interest in the D&O Policies. Nothing in this paragraph shall be deemed to limit the

---

[4] "Securities Litigation" means the class action suit *Di Donato v. Insys Therapeutics, Inc., et al.*, Case No. CV-16-00302-PHX-NVW (D. Ariz.).

Insurance Rights Transfer or any Insurance Rights the Insys Liquidation Trust, as assignee of the Debtors, may have under the D&O Policies pursuant to the Insurance Rights Transfer.

66.    <u>Applicable Non-Bankruptcy Law</u>.    Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, and related documents, or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

67.    <u>Headings</u>.    Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Order for any other purpose.

68.    <u>Governmental Approvals Not Required</u>.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

69.    <u>Notice of the Effective Date</u>.    On the Effective Date, the Liquidating Debtors or the Liquidating Trustee shall file a notice (the "**Notice of Effective Date**") of entry of this Confirmation Order, pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), and of the occurrence of the Effective Date with the Court.  As soon as practicable after the occurrence of the Effective Date, the Liquidating Trustee, on behalf of the Liquidating Debtors, shall serve the Notice of Effective Date on all holders of Claims and Interests, the U.S. Trustee, and other parties in interest, by causing the Notice of Effective Date to be delivered to such parties by first-class mail, postage prepaid.  A form Notice of Effective Date is attached hereto as **<u>Exhibit B</u>**.

70.     <u>Substantial Consummation</u>.   On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

71.     <u>Severability</u>.   Each term and provision of the Plan, as it may have been altered or interpreted by the Court in accordance with Section 12.6 of the Plan, is (i) valid and enforceable pursuant to its terms, (ii) integral to the Plan and may not be deleted or modified except in accordance with the terms of the Plan, and (iii) nonseverable and mutually dependent.

72.     <u>Governing Law</u>.   Except to the extent that the Bankruptcy Code or other federal law is applicable or to the extent that a Plan Document provides otherwise, the rights, duties, and obligations arising under the Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, without giving effect to the principles of conflicts of laws thereof (other than section 5-1401 and section 5-1402 of the New York General Obligations Law).

73.     <u>Immediate Effectiveness; Waiver of Stay</u>.   The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of fourteen (14) days after entry of the order are hereby waived.  The terms and provisions of this Confirmation Order shall be immediately effective and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062.

74.     <u>Inconsistency</u>.   In accordance with Section 1.4 of the Plan, if there is determined to be any inconsistency between any provision of the Plan and any provision of this Confirmation Order that cannot be reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern, and any such provisions of this Confirmation Order shall be deemed a modification of the Plan.

RLF1 22747484V.1

75.    <u>No Waiver</u>.  The failure to include specifically any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of the Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

76.    <u>Final Order</u>.  This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

**Dated: January 16th, 2020**
**Wilmington, Delaware**

**KEVIN GROSS**
**UNITED STATES BANKRUPTCY JUDGE**