**Exhibit 1**

**Declaration of Benny W. Davis, Jr.**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re )<br>)<br>INSYS THERAPEUTICS, INC., *et al.* )<br>)<br>)<br>Debtors. )<br>)<br>) | Chapter 11<br><br>Case No. 19-11292 (KG)<br><br>Jointly Administered |

### AMENDED DECLARATION OF BENNY W. DAVIS, JR., AMERICAN LEGAL CLAIM SERVICES, LLC REGARDING CLASS ACTION NOTICE PLAN AND RELATED ADMINISTRATION

I, Benny W. Davis, Jr., declare as follows:

1. I am an adult, over the age of twenty-one, and this declaration is based on my personal knowledge.

2. I am a managing director of American Legal Claim Services, LLC ("ALCS") with over 20 years' experience in class action claims administration. ALCS is a class action administrator whose major focus is providing class action administration services in consumer class actions. ALCS has administered over 250 cases in the past 10 years with class sizes ranging into the millions of class members.

3. I have personally administered over 500 class action notice and allocation plans during the past 20 years and distributed over $2 billion to over 500 million class members.

4. If ALCS is appointed by the Court to serve as the Claims Administrator to administer the terms of the Second Amended Joint Chapter 11 Plan of Reorganization of Insys Therapeutics, Inc. and its Affiliated Debtors ("Plan"), I will be principally responsible for overseeing the dissemination of notice to the Class; processing claims; processing requests for exclusion; processing requests for objection; providing allocation of proportionate shares to claimants based on the

1

claimant's share compared to all allowed Class based upon direction of the Court; and distributing the Distribution Funds.

I. **ESTIMATED ALLOCATION**

5. ALCS was directed to provide a noticing plan via social media and publication to attempt to reach as many of the estimated 219 million potential Class members as possible while still preserving funds available to pay Class members who file a claim.

6. ALCS was given an estimated allocation of $1,667,000 from these proceedings and asked to provide the following:

    a. Provide noticing via social media in the best available format to reach as many people as possible that met the criteria for Class membership;

    b. Provide noticing via *People* magazine, a major media publication with national circulation;

    c. Provide a dynamic website where Class members can view court documents, case timelines, frequently asked questions, and file a claim, as well as contact the case administrator;

    d. Provide a dedicated toll-free phone number to provide answers to Class members questions;

    e. Process claims filed by Class members;

    f. Establish a Qualified Settlement Fund (QSF) for distribution to the Class members;

    g. Capture electronic payment information from the Class members to use in making payments in the most cost-effective manner;

    h. Distribute funds to the Class members via electronic payment;

    i. Provide tax reporting for the QSF;

  j.  Provide affidavits/declarations to the Court regarding the administration of the settlement;

  k.  Provide overall administration of the social media plans, the website, the call center, and the distribution process.

7. The noticing plan was developed to provide cost-effective notice to as many Class members as possible while not exhausting the funds available. ALCS's efforts will allow it to make a distribution to Class members who file claims, rather than exhausting Class funds on a notice program that would make it impossible to conduct any distribution whatsoever.

8. Due to the extraordinary Class size vis-à-vis the available recovery, ALCS has determined that many traditional notice plans would exhaust available funds without providing *any* recovery to the Class. As an illustrative comparison in another opioid firm bankruptcy, claims administrators in the Purdue Pharma L.P. bankruptcy proposed a supplemental notice plan that cost $23 million; ALCS has been able to develop a plan for reaching a substantial population of the Class in this case for under $450,000.

9. ALCS's proposed budget includes $360,000 for noticing the Class through social media, $90,000 for noting the class through publication, $80,000-$100,000 for overall administration, $0.40 per electronic payment (all inclusive), and a range of $0.50 to $0.20 per person for claims processing depending upon the volume.

10. Based upon a Class recovery of $1,667,000, ALCS estimates this notice and allocation plan will allow it to process up to approximately 1,600,000 claims and still be able to provide a distribution to Class members who file a claim.

## II. ALCS IMPLEMENTATION OF THE NOTICE CAMPAIGN

11. Notice will be effectuated through a digital campaign across the Facebook, Instagram, and Google Ads platforms that will provide the Notice to viewers.

12. Google is the world's dominant search engine with over 87% market share in the United States in 2020 and over 259 million active users in the United States during that same time.

13. According to Edison Research, 63% of the U.S. population over age 12 and 74% of adults ages 35-54 use Facebook, making it the most-used social media site in the nation, with Instagram as the second most popular.

14. ALCS will target notice to employed, retired, and unemployed Facebook/Instagram users over the age of 20. We will utilize Facebook Reach and Traffic Ad campaigns with the goal of reaching as many potential class members as possible in order to build awareness of the case's status and the potential claims they may have. This ad messaging will drive the target audience of insurance ratepayers to a dedicated website for more information about the case, permitting Class members to file a claim if they are eligible. Facebook Traffic campaigns segment a given target audience to show ads to people who regularly click links on Facebook—both ads and organic posts. This means the notice campaign will reach people within the specified audience who are more likely to engage with the ad and visit the case website for more information.

15. ALCS will also advertise through Google Display Ads. These ads appear across the Google Display Network when users visit websites containing specific topics, industries, or areas of interest. The Google Display Network itself is designed to help advertisers find the right audience. Its targeting mechanism allows ALCS to strategically show our message to specified insurance purchaser audiences who are more likely to be interested in the case. Google Display Ads also use data, like remarketing lists, to help re-engage people who have previously visited the case site or one like it. Internet users will see an ad when they are visiting their favorite websites, showing a friend a YouTube video, checking a Gmail account, or using mobile devices or applications.

16. ALCS will promote these advertisements throughout the entire claims period.

17. These measures are taken as the best means practicable for reaching the largest number of potential Class members possible without exhausting the resources available for recovery.

18. ALCS will begin its social media campaign utilizing 60% Google ads and 40% Facebook ads. This social media campaign is designed to provide an estimated 160 million impressions for view by potential Class members in the United States. This strategy allows for modifications to ad allocation as trends in viewership begin to appear.

19. In conjunction with the social media campaign, ALCS will publish the Summary Notice in *People* magazine. *People* Magazine has an estimated readership of 3,400,000 Americans per issue, and is an appropriate choice for notice publication in print media.

20. ALCS will also publish the Notice and other materials on a website to be developed specifically for the administration of this case ("Claims Website"). ALCS has reserved www.insysratepayerclaims.com for this purpose. The website will contain a set of frequently asked questions; will allow for Class members to view and download the Plan and motions relevant to the resolution of the Ratepayer claims; and will accept online claim submissions and the information required for electronic payment of claims.

21. ALCS will also provide a dedicated toll-free phone number to provide answers to Class members' questions. The toll-free number will provide an automated call tree of frequently asked questions and their answers, and it will be available 24 hours per day.

## III. RECEIPT AND PROCESSING OF CLAIM FORMS

22. ALCS will receive electronic submissions of claims through the Claims Website.

23. ALCS will determine the validity of claims and determine each claimant's pro rata recovery based upon their claim compared to the total claims of all Class claimants (as set forth in the Insurance Ratepayer Allocation Plan, or in such other plan of allocation as the Court approves).

24. Limiting claims to electronic submissions from the Claims Website will further preserve resources available to the Class.

## IV. DISTRIBUTION TO CLASS MEMBERS

25. ALCS will establish a Fund for distribution of claim payments to Class members with approved claims.

26. When Class members file their claim, they will be required to provide an electronic payment option that will include Zelle, PayPal, Direct Deposit/ACH, or Venmo, as well as others as they become available.

27. Electronic payment is substantially more cost effective than utilizing hard checks for payment, and it will aid in reserving value for distribution to the Class members.

28. ALCS will make distributions to Class members for approved claims as soon as practicable after receiving the allotted funds and receiving approval to make such distribution.

I declare under penalty of perjury pursuant to the laws of the State of Florida that the foregoing is true and correct to the best of my knowledge.

Executed on April 6, 2021
Jacksonville, Florida.

Benny W. Davis, Jr.