# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>INSYS THERAPEUTICS, INC., *et al.*,<br>Liquidating Debtors.[1] | Chapter 11<br>Case No. 19-11292 (JTD)<br>(Jointly Administered) |
| WILLIAM H. HENRICH, in his capacity as LIQUIDATING TRUSTEE of the INSYS LIQUIDATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>XL SPECIALTY INSURANCE COMPANY,<br><br>Defendant. | Adversary No. _____ |

## ORIGINAL COMPLAINT

William H. Henrich, as liquidating trustee (the "Trustee") of the Insys Liquidation Trust (the "Liquidation Trust"), as successor-in-interest to Insys Therapeutics, Inc. and its subsidiaries (collectively, "Insys"), and as assignee of four former Insys directors, Patrick Fourteau, Pierre Lapalme, Steven Meyer, and Brian Tambi (collectively, the "Insys Directors"), brings this action against XL Specialty Insurance Company ("XL"), and alleges as follows:

## NATURE OF ACTION

1. This is an action for declaratory judgment, breach of contract, and bad faith arising from XL's wrongful denial of coverage for a lawsuit brought against the Insys Directors by the

---

[1] The Liquidating Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LLC (6577); and IPT 355, LLC (0155).

Trustee, as the successor-in-interest to causes of action formerly belonging to Insys, in the Delaware Court of Chancery, captioned as *Henrich v. Kapoor, et al.*, C.A. 12696-JTL (Del. Ch.).

## PARTIES

2. The Trustee is an individual who resides in the State of New York. The Trustee was appointed, and the Liquidation Trust was created, pursuant to this Court's order confirming the Chapter 11 plan in the above-captioned bankruptcy case (as described below).

3. XL is a corporation organized under the laws of the State of Delaware with its principal place of business located in Stamford, Connecticut. XL may be served with process through its registered agent, The Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a) and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

6. This Court has personal jurisdiction over XL in this action because: (1) XL is a Delaware corporation; (2) through its continuous and systematic contacts with Delaware, XL has purposefully availed itself of the benefits and protections of Delaware's laws and should reasonably anticipate being haled into a court in Delaware; and (3) XL has sufficient contacts with the United States of America to be subject to nationwide service of process under Federal Rule of Bankruptcy Procedure 7004.

7. This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). The Trustee consents to the entry of final orders or judgments by this Court.

## FACTUAL BACKGROUND

A. **The Bankruptcy Case**

8. On June 10, 2019, Insys filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy case.

9. On January 14, 2020, Insys filed the *Second Amended Joint Chapter 11 Plan of Liquidation of Insys Therapeutics, Inc. and Its Affiliated Debtors* (D.I. 1095) (the "Chapter 11 Plan"), which provided for, *inter alia*, the following:

   a. The appointment of the Trustee and the formation of the Liquidation Trust as the successor-in-interest to, and representative of, Insys and its bankruptcy estate pursuant to 11 U.S.C. § 1123(b)(3)(B);

   b. The transfer to, and vesting in, the Liquidation Trust of certain causes of action held by Insys, including all causes of action against its former directors and officers;

   c. The transfer to, and vesting in, the Liquidation Trust of the rights held by Insys in certain insurance policies, including all of its director-and-officer liability insurance policies; and

   d. The retention of jurisdiction by this Court over various matters related to the Chapter 11 Plan and the above-captioned bankruptcy case.

10. On January 16, 2020, this Court entered its *Findings of Fact, Conclusions of Law, and Order Confirming the Second Amended Joint Chapter 11 Plan of Liquidation of Insys Therapeutics, Inc. and Its Affiliated Debtors* (D.I. 1115). The Chapter 11 Plan became effective on February 18, 2020.

B. **The D&O Action**

11. Following his appointment, the Trustee investigated potential causes of action held by the Liquidation Trust against Insys's former directors and officers (collectively, the "D&Os"), including the Insys Directors. As part of his investigation, the Trustee analyzed the allegations in

an existing pre-petition action filed by certain shareholders asserting derivative claims against the D&Os in the Delaware Court of Chancery (the "D&O Action"). *See In re Insys Therapeutics Inc. Derivative Litigation*, C.A. No. 12696-JTL (Del. Ch.).[2] The Trustee also analyzed documents and other information gathered from Insys and various third parties. Based upon his investigation, the Trustee ultimately determined that the Liquidation Trust had viable claims against the D&Os.

12. On June 10, 2021, the Trustee filed a motion in the D&O Action requesting that: (a) Insys be realigned as the plaintiff in the action; and (b) the Trustee be substituted as the real party in interest in the action. The Delaware Court of Chancery entered an order granting the Trustee's motion on June 11, 2021.

13. The Trustee prepared a draft amended complaint (the "Amended Complaint") to be filed in the D&O Action.[3] In the Amended Complaint, the Trustee alleges that:

    a.    Two of the D&Os—John Kapoor ("Kapoor") and Michael Babich ("Babich")—implemented an unlawful three-part scheme for selling and marketing the Debtors' pharmaceutical product, SUBSYS® ("Subsys"), a fentanyl-based spray approved by the U.S. Federal Drug Administration (the "FDA") for treatment of cancer patients: (i) bribing doctors to write more Subsys prescriptions, even where not medically appropriate or necessary; (ii) directing the Debtors' salesforce to pressure doctors into writing prescriptions for stronger doses of Subsys than medically indicated or FDA-approved; and (iii) defrauding third-party insurers and government payors into covering the costs of medically unnecessary or otherwise unlawful Subsys prescriptions.[4]

    b.    The four remaining D&Os—the Insys Directors—failed (i) to implement sufficient board-level monitoring of compliance risks involving the sale and marketing of Subsys; and (ii) to respond to

---

[2] The D&O Action was filed in August 2016, but it was stayed in November 2017 due to the pendency of: (a) a federal securities class action against Insys and certain D&Os; and (b) criminal indictments against certain D&Os.

[3] A copy of the Amended Complaint is attached hereto as **Exhibit A**.

[4] Kapoor and Babich were convicted for their roles in the unlawful sale and marketing of Subsys. Kapoor was convicted of engaging in a racketeering conspiracy and was sentenced to 66 months in prison, three years of supervised release, and ordered to pay restitution and forfeiture. Babich pleaded guilty to mail and wire fraud charges and was sentenced to 30 months in prison, three years of supervised release and ordered to pay restitution and forfeiture.

"red flags" regarding the apparent non-compliant activity surrounding Subsys.

The Trustee further alleges in the Amended Complaint that this misconduct caused Insys to suffer substantial damages, including $150 million in out-of-pocket costs, a $225 million settlement with the federal government, and literally billions of dollars in criminal, civil, and regulatory liabilities.

14. Before filing the Amended Complaint and pressing forward in the D&O Action, the Trustee offered to participate in mediation with the D&Os in a good-faith attempt to resolve the action. The D&Os, in turn, accepted the Trustee's offer. The Trustee and the D&Os then scheduled the mediation for late November 2021, and they retained Layn Phillips, a well-respected former federal district judge with experience in opioid-related cases, to serve as the mediator.

15. The Trustee and the D&Os invited insurers that had issued director-and-officer liability insurance policies to Insys to attend this mediation. Specifically, the following insurers had issued policies providing $25 million in aggregate coverage for claims made during the policy period beginning May 2, 2013, and ending May 2, 2014 (collectively, the "2013-14 Tower"):

   a. National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") issued the primary policy, bearing Policy No. 02-157-02-94 (the "National Union Policy"), with aggregate limits of $10 million.[5]

   b. XL issued the first excess policy, bearing Policy No. ELU129710-13 (the "XL Policy"), with aggregate limits of $10 million excess the limits of the National Union Policy.[6]

   c. Old Republic Insurance Company ("Old Republic") issued the second excess policy, bearing Policy No. CUG 35844 (the "Old Republic Policy"), with aggregate limits of $5 million excess the limits of the National Union Policy and the XL Policy.[7]

---

[5] A copy of the National Union Policy is attached hereto as **Exhibit B**.

[6] A copy of the XL Policy is attached hereto as **Exhibit C**.

[7] The Old Republic Policy provides Side-A coverage to the directors and officers and will "drop down" if an underlying insurer wrongly denies coverage. A copy of the Old Republic Policy is attached hereto as **Exhibit D**.

As the primary insurer, National Union took the position that the D&O Action triggered coverage under the 2013-14 Tower,[8] but National Union declined to attend the mediation because its policy in that tower had already been exhausted by Insys-related defense and indemnity costs. XL declined to attend the mediation and denied coverage for the D&O Action under its policy in the 2013-14 Tower.[9] Old Republic, in contrast, agreed to attend the mediation.[10]

16. In October and November 2021, the Trustee and the D&Os exchanged substantial mediation briefing—including opening briefs, reply briefs, and supporting exhibits—totaling more than 1,700 pages. On November 22, 2021, the Trustee and the D&Os (along with Old Republic) engaged in arms-length negotiations in a full-day mediation session with Judge Phillips. Following the mediation session, the Trustee and some of the D&Os (along with Old Republic) engaged in further arms-length negotiations through Judge Phillips or one of his colleagues in late 2021 and throughout most of 2022.[11] Their negotiations ultimately resulted in a settlement agreement (the "Settlement Agreement").[12]

17. The Settlement Agreement had several key components for the Trustee: (a) a stipulated judgment for $175 million against the Insys Directors (the "Judgment"), with a covenant not to execute against them; (b) an initial payment of $2.35 million toward the Judgment,

---

[8] National Union asserted that certain portions of the D&O Action relate back to an earlier securities lawsuit that was filed during the 2013-2014 policy period.

[9] A copy of XL's letter declining to attend the mediation and denying coverage for the D&O Action under the XL Policy is attached hereto as **Exhibit E**.

[10] The 2013-14 Tower had been significantly depleted before the mediation because: (a) the National Union Policy had exhausted its $10 million coverage with defense and indemnity costs; and (b) the Old Republic Policy had depleted its $5 million coverage with approximately $3.5 million in defense costs. Consequently, XL was the only insurer in the 2013-14 Tower refusing to defend or indemnify with respect to the D&O Action.

[11] In addition, the Trustee and XL engaged in a separate mediation session regarding insurance coverage issues with Michelle Yoshida, a colleague of Judge Phillips, in March 2022. It did not result in a settlement.

[12] A copy of the Settlement Agreement is attached hereto as **Exhibit F**.

consisting of an $850,000 payment from the personal assets of the Insys Directors and a $1.5 million payment from the Old Republic Policy, thereby exhausting that policy; and (c) an assignment by the Insys Directors of their rights under the Insys director-and-officer liability insurance policies, including the 2013-14 Tower.

### C.     XL's Refusal to Settle the D&O Action

18.     Before entering into the Settlement Agreement, the Trustee provided XL with another opportunity to settle the D&O Action with coverage under the XL Policy. First, on October 25, 2022, the Trustee provided written notice to XL of his intent to enter into the Settlement Agreement based on XL's denial of coverage.[13] Second, on December 22, 2022, the Trustee made a within-policy-limits demand on XL, offering to finally settle and fully release any and all claims against the Insys Directors and their insurers in exchange for the payment of $12.35 million, comprised of the following: (a) $850,000 paid from the personal assets of the Insys Directors; (b) $1.5 million paid from the Old Republic Policy, thereby exhausting that policy; and (c) $10 million paid from the combined limits of the remaining Insys director-and-officer liability policies, including the XL Policy.[14]

19.     The Trustee explained in his December 2022 letter that: (a) his claims presented clear liability for the Insys Directors; (b) his claims sought damages that vastly exceeded the available insurance coverage, including the coverage limits of the XL Policy; and (c) his settlement demand was reasonable for multiple reasons.

20.     With respect to liability, the Trustee explained that the Insys Directors had evident liability for breaching their fiduciary duties to Insys. The underlying fact pattern closely parallels

---

[13] A copy of the Trustee's letter dated October 25, 2022 is attached hereto as **Exhibit G**.
[14] A copy of the Trustee's letter dated December 22, 2022 is attached hereto as **Exhibit H**.

that recognized as giving rise to director liability in the Delaware Supreme Court's decision in *Marchand v. Barnhill* and its progeny.[15] That is, the Insys Directors failed to implement board-level monitoring of the company's mission critical compliance risks related to its highly regulated and dangerous fentanyl-based narcotic product, and thereafter the Insys Directors failed to respond to numerous red flags indicative of compliance issues. The Insys Directors, therefore, were liable for breaching their fiduciary duties.

21. With respect to damages, the Trustee detailed the approximately $150 million in out-of-pocket damages sustained by Insys due to breaches of fiduciary duty by the Insys Directors. In addition, the Trustee described the billions of dollars in criminal, civil, and regulatory liabilities owed by Insys due to breaches of fiduciary duty by the Insys Directors, including $225 million owed by the company under its June 2019 settlement with the federal government. These damages vastly exceeded the available insurance coverage, including the $10 million in aggregate coverage limits under the XL Policy.

22. With respect to his settlement demand, the Trustee explained that the demand for $12.35 million was reasonable for many reasons, including:

  a. First, the demand was reasonable based on the strength of the Trustee's case on both liability and damages, as reflected in the Amended Complaint and recent developments in binding Delaware law following *Marchand*.

  b. Second, the demand was reasonable because it was within the remaining limits of the available insurance coverage, including the XL Policy.

  c. Third, the demand was reasonable because it was significantly less than the enormous liability facing the Insys Directors. Indeed, the demand was only 8% of the Trustee's out-of-pocket damages (*i.e.*, approximately $150 million), and was a miniscule percentage of the

---

[15] *Marchand*, 212 A.3d 805 (Del. 2019); *see also, e.g., In re Boeing Co. Deriv. Litig.*, 2021 WL 4059934 (Del. Ch. Sept. 7, 2021); *In re Clovis Oncology, Inc. Deriv. Litig.*, 2019 WL 4850188 (Del. Ch. Oct. 1, 2019).

        Trustee's total damages (*i.e.*, billions of dollars).

    d.    Fourth, the demand was reasonable compared to the dire financial consequences to the Insys Directors of an adverse judgment with little or no remaining insurance coverage. If the Trustee obtained a judgment against them, the Insys Directors would suffer serious consequences, including seizure and liquidation of their personal assets through post-judgment collection efforts and/or bankruptcy.

    e.    Fifth, the demand was reasonable because the Insys Directors and one of their insurers (Old Republic) had already indicated their willingness to contribute their respective portions of the demand ($850,000 and $1.5 million, respectively) toward a settlement with the Trustee.

23.    As explained in his December 2022 letter, the Trustee's settlement demand was one which a reasonably prudent person would have accepted under the same or similar circumstances. And XL—if it was acting with utmost good faith, putting the interests of the Insys Directors on at least equal priority to its own, and attempting to satisfy its affirmative obligations to settle within policy limits—should have immediately agreed to pay the $10 million coverage limits under the XL Policy to satisfy the Trustee's settlement demand. XL, however, declined to fund the settlement demand and continued to deny coverage for the D&O Action.[16]

24.    Given the continued denial of coverage by XL and faced with the catastrophic risk of an adverse judgment in the D&O Action, the Insys Directors proceeded to enter into the Settlement Agreement with the Trustee. Shortly thereafter, the Trustee filed a motion (D.I. 1899) (the "<u>Rule 9019 Motion</u>") seeking this Court's approval of the Settlement Agreement, and served the motion on XL (D.I. 1900). The Trustee also provided XL with one final opportunity to settle the D&O Action, offering to withdraw the Rule 9019 Motion if XL agreed to pay the $10 million

---

[16] A copy of XL's letter continuing to deny coverage is attached hereto as **Exhibit I**.

coverage limits under the XL Policy to fund the Trustee's settlement demand from December 2022.[17] But XL rejected the offer, opting to continue denying coverage for the D&O Action.

25. On May 3, 2023, this Court granted the Rule 9019 Motion (D.I. 1917), thereby authorizing the Trustee to proceed with the Settlement Agreement, including the assignment of insurance-related claims against XL. The Court's order stated that "the Settlement Agreement is the result of good-faith, arms-length negotiations, is within the reasonable range of litigation possibilities in the D&O Action, and is fair, equitable, and in the best interests of the Debtors' estates, their creditors, and other parties in interest."

26. On July 31, 2023, as required by the Settlement Agreement, the Trustee and the Insys Directors filed a stipulation seeking entry of the Judgment with the Chancery Court, which promptly entered the Judgment that same day.[18] Under the Settlement Agreement, the entry of the Judgment also triggered the assignment of insurance-related claims against XL.

27. Importantly, XL is the only insurer in the 2013-14 Tower that refused to defend or indemnify the Insys Directors. National Union, the primary insurer in the 2013-14 Tower, had exhausted the $10 million coverage limits under the National Union Policy with defense and indemnity costs in other Insys-related matters. Old Republic, the second excess insurer in the 2013-14 Tower, had depleted approximately $3.5 million of the coverage limits under the Old Republic Policy with defense and indemnity costs in other Insys-related matters. Old Republic, moreover, had committed to paying its remaining $1.5 million of coverage limits under that policy to settle the D&O Action. Thus, XL stands alone as the only insurer in the 2013-14 Tower denying coverage for the D&O Action.

---

[17] A copy of the Trustee's letter dated April 14, 2023 is attached hereto as **Exhibit J**.

[18] A copy of the Judgment entered by the Chancery Court is attached hereto as **Exhibit K**.

28. XL denied coverage for the D&O Action based primarily on a prior and pending litigation exclusion (the "PPL Exclusion") in the XL Policy.[19] According to XL, a *qui tam* lawsuit alleging claims under the False Claims Act ("FCA"), which was filed under seal by a relator in September 2012, triggers the exclusion. That action, however, was never served on Insys, and first became known to Insys only after the *qui tam* lawsuit was unsealed by the court and voluntarily dismissed by the relator, well after the May 2, 2013 date listed in the PPL Exclusion. As a result, the *qui tam* lawsuit was not "brought" for purposes of the PPL Exclusion until Insys became aware of it.[20] Indeed, at the time of entering into the XL Policy, Insys could not have reasonably expected that XL would attempt to use the PPL Exclusion to deny coverage for future claims based on a sealed *qui tam* lawsuit that Insys would not learn about until several years later, when the action was voluntarily dismissed by the relator without ever being served on Insys.

29. XL's coverage denial is unreasonable and not made in good faith.

## CONDITIONS PRECEDENT

30. All conditions precedent to bringing the causes of action alleged in this action, including the payment of all premiums to XL, have occurred, been satisfied, or been waived.

---

[19] The PPL Exclusion precludes coverage for "claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or wrongful act, underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to May 2, 2013." Ex. C at 18.

[20] *See My Left Foot Children's Therapy, LLC v. Certain Underwriter's at Lloyd's London*, 207 F. Supp. 3d 1168, 1172 (D. Nev. 2016) (concluding that prior or pending litigation exclusion did not apply to sealed *qui tam* lawsuit because "it is commonly understood that a qui tam suit under the FCA becomes active once the defendant has notice of the lawsuit and that notice most often occurs at the time of service"), *rev'd on other grounds*, 731 F. App'x 659 (9th Cir. 2018).

11

## CAUSES OF ACTION

### Count I
### Declaratory Judgment that the Settlement Agreement and
### Stipulated Judgment Are Reasonable and Enforceable against XL

31. The Trustee re-alleges the allegations set forth in the above paragraphs.

32. The D&O Action is covered under the XL Policy.

33. XL refused one or more reasonable demands to settle the D&O Action within the coverage limits of the XL Policy.

34. Due to XL's denial of coverage and refusal to settle the D&O Action, and in order to avoid exposure to even greater damages, the Insys Directors entered into the Settlement Agreement with the Trustee.

35. The Trustee and the Insys Directors provided notice to XL of their intention to enter into the Settlement Agreement, which included the Judgment, assignment of insurance rights, and covenant not to execute on the Judgment.

36. The negotiations between the Trustee and the Insys Directors were conducted in good faith and at arm's length, and the negotiations were free of any fraud or collusion.

37. On April 14, 2023, the Trustee filed the Rule 9019 Motion and served it on XL, who did not object to the motion. On May 3, 2023, the Court entered an order granting the Rule 9019 Motion, approving the Settlement Agreement and finding, in part, that "the Settlement Agreement is the result of good-faith, arms-length negotiations, is within the reasonable range of litigation possibilities in the D&O Action, and is fair, equitable, and in the best interests of the Debtors' estates, their creditors, and other parties in interest."

38. A reasonable and prudent person in the position of the Insys Directors would have settled the D&O Action for the amounts set forth in the Settlement Agreement, including the

Judgment, based on the nature of the Trustee's allegations and the risk of an adverse judgment of liability if the D&O Action had gone to trial.

39. The Trustee has a tangible legal interest in the reasonableness and enforceability of the Settlement Agreement, including the Judgment, while XL has an opposing interest.

40. An actual and justiciable controversy has arisen and currently exists between the Trustee and XL regarding the reasonableness and enforceability of the Settlement Agreement and the Judgment.

41. Accordingly, the Trustee is entitled to a declaration that the Settlement Agreement and the Judgment are reasonable and prudent, free of collusion and fraud, and therefore valid and enforceable against XL.

### Count II
### Breach of Contract – Failure to Settle

42. The Trustee re-alleges the allegations set forth in the above paragraphs.

43. The XL Policy is a valid and enforceable contract.

44. The Insys Directors are insureds under the XL Policy.

45. The D&O Action is covered under the XL Policy.

46. The Insys Directors have assigned their insurance claims against XL to the Trustee.

47. XL had an affirmative duty to pursue settlement negotiations and to act diligently on behalf of the Insys Directors to attempt to settle the D&O Action at a reasonable settlement amount in order to avoid the risk of large, adverse judgments against the Insys Directors.

48. XL wrongfully refused to accept one or more settlement offers by the Trustee that were reasonable and within policy limits.

49. By breaching its duty to settle the D&O Action, XL placed its own interests over those of its insureds, and exposed the Insys Directors to liability in excess of policy limits.

50. Due to XL's refusal to accept one or more reasonable, policy-limits settlement offers by the Trustee, and in order to avoid exposure to even greater damages, the Insys Directors were forced to settle the D&O Action for the amounts specified in the Settlement Agreement and the Judgment.

51. XL has breached its contractual obligations by failing to indemnify the Insys Directors for the reasonable settlement entered into with the Trustee in the D&O Action.

52. As a direct result of XL's breach, the Insys Directors and the Trustee will continue to be deprived of the full benefits of the XL Policy sold to Insys for the benefit of the Insys Directors and for which Insys paid substantial premiums.

53. As a direct result of XL's breach, the Insys Directors and the Trustee have been forced to incur and will continue to incur additional consequential damages, including without limitation, attorneys' fees and other expenses in bringing this action.

## Count III
### Common-Law Bad Faith – Failure to Settle

54. The Trustee re-alleges the allegations set forth in the above paragraphs.

55. The D&O Action is covered under the XL Policy.

56. XL had an affirmative duty to pursue a reasonable settlement of the D&O Action and to act diligently on behalf of the Insys Directors to settle the claims in order to avoid excess judgments.

57. XL owed the Insys Directors a duty under Delaware law to settle claims within policy limits where recovery in excess of those limits is substantially likely.

58. XL also owed the Insys Directors a duty under Delaware law to make decisions regarding the handling of the D&O Action in good faith and with due regard for the interests of its insureds.

59. XL is the only insurer in the 2013-2014 Tower that has refused to defend or indemnify the Insys Directors.

60. Considering all of the circumstances, the Trustee's settlement demands were ones which a reasonably prudent person would have accepted under the same or similar circumstances. And XL—if it was acting with utmost good faith, putting the interests of the Insys Directors on at least equal priority to its own, and attempting to satisfy its affirmative obligation to settle within policy limits—should have immediately paid its $10 million limits to satisfy the demands.

61. XL, however, wrongfully and in bad faith failed to accept one or more reasonable settlement demands within policy limits made by the Trustee. XL acted in bad faith by rejecting those settlement demands without reasonable grounds to believe that the amount demanded was excessive.

62. Had XL acted fairly and honestly towards its insureds, the Insys Directors, and with due regard for their interests, XL would have accepted the Trustee's settlement demands.

63. As a direct and proximate result of XL's bad faith, the Insys Directors and the Trustee have been forced to incur and will continue to incur additional consequential damages, including without limitation, attorneys' fees and other expenses in bringing this action.

64. Accordingly, the Trustee is entitled to damages for XL's bad-faith conduct with respect to the D&O Action, including, without limitation, payment of the full amount of the Judgment, or $175 million, plus interest, costs, and disbursements.

**PRAYER FOR RELIEF**

WHEREFORE, the Trustee prays for judgment against XL as follows:

a. Awarding the Trustee actual money damages according to proof at trial, plus interest according to applicable law, that the Trustee and the Insys Directors have suffered as a result of XL's breach of its duty to settle and indemnify the D&O Action;

b. Awarding the Trustee actual money damages according to proof at trial, plus interest according to applicable law, that the Trustee and the Insys Directors have suffered as a result of XL's bad faith conduct with respect to the D&O Action, including, without limitation, payment of the full amount of the Judgment, or $175 million, plus interest, costs, and disbursements;

c. Declaring that the Settlement Agreement and the Judgment are reasonable and prudent, free of collusion and fraud, and therefore valid and enforceable against XL;

d. Granting such other and further relief as this Court deems just and proper, including awarding the Trustee the attorneys' fees and costs incurred by the Trustee in connection with this action; and

e. Granting such other and further relief, at law or equity, as this Court deems just and proper.

*(Remainder of page intentionally left blank)*

| | |
|---|---|
| Date: August 15, 2023 | Respectfully submitted, |

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Matthew O. Talmo*
Derek C. Abbott (No. 3376)
Matthew O. Talmo (No. 6333)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
dabbott@morrisnichols.com
mtalmo@morrisnichols.com

*Counsel to the Trustee of the
Insys Liquidation Trust*

-and-

**REID COLLINS & TSAI LLP**
Eric D. Madden (admitted *pro hac vice*)
Michael J. Yoder (admitted *pro hac vice*)
1601 Elm Street, Suite 4200
Dallas, TX 75201
Telephone: (214) 420-8900
emadden@reidcollins.com
myoder@reidcollins.com

-and-

Ryan M. Goldstein (admitted *pro hac vice*)
Morgan M. Menchaca (admitted *pro hac vice*)
1301 S. Capital of Texas Hwy, C-300
Austin, TX 78746
Telephone: (512) 647-6100
rgoldstein@reidcollins.com
mmenchaca@reidcollins.com

-and-

**BURNS BAIR LLP**
Timothy W. Burns (*pro hac vice* forthcoming)
Jesse J. Bair (*pro hac vice* forthcoming)
10 E. Doty St., Suite 600
Madison, WI 53703-3392
Telephone: (608) 286-2808
tburns@burnsbair.com
jbair@burnsbair.com

*Special Litigation Counsel to the*
*Trustee of the Insys Liquidation Trust*