IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>INSYS THERAPEUTICS, INC., *et al.*,<br><br>Liquidating Debtors.[1] | Chapter 11<br><br>Case No. 19-11292 (JTD)<br><br>(Jointly Administered) |
| WILLIAM H. HENRICH, in his capacity as LIQUIDATING TRUSTEE of the INSYS LIQUIDATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL L. BABICH,<br><br>Defendant. | Adversary No. _____ |

**TRUSTEE'S ORIGINAL COMPLAINT AND
APPLICATION FOR INJUNCTIVE RELIEF**

William H. Henrich, as liquidating trustee (the "Trustee") of the Insys Liquidation Trust (the "Liquidation Trust"), the successor to the above-captioned debtors (collectively, "Insys" or "Debtors"), brings this action against Michael L. Babich ("Babich"), and alleges as follows:

**NATURE OF ACTION**

1. In this action, the Trustee seeks declaratory, injunctive, and other relief against Babich related to his prosecution of purported counterclaims against the Trustee in violation of: (a) this Court's order confirming the Chapter 11 plan in these bankruptcy cases; and (b) the *Barton* doctrine as recognized by the United States Supreme Court and the Third Circuit.

---

[1] The Liquidating Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LLC (6577); and IPT 355, LLC (0155).

2.  Babich is the former Chief Executive Officer of Insys. In 2019, after being indicted alongside several other former Insys executives, Babich entered into a cooperation agreement with the government and pleaded guilty to conspiracy to commit mail and wire fraud in connection with his role in an illegal sales and marketing scheme regarding the company's fentanyl product. Babich then testified about his criminal activities for six days during the trial of his co-defendants, who were each convicted of participating with Babich in the criminal conspiracy.

3.  Babich took full responsibility for his crimes during his sentencing. He refused to "offer any excuses," and admitted that "I know I had a choice and I made the wrong one." The district court concurred in that assessment, observing that Babich was one of the "co-architects" of a criminal scheme that never would have transpired without his efforts. The district court then sentenced Babich to 30 months in prison and ordered him to pay $48 million in criminal restitution.

4.  Babich now takes a different tack in his attempt to defend against the Trustee's claims related to Babich's admitted misconduct as a former Insys officer. Babich asserts counterclaims against the Trustee, absurdly alleging—contrary to Babich's guilty plea and conviction—that he "believed his actions were legal," that he was "effectively compelled to plead guilty," and that Insys is liable to him for negligence, fraud, and negligent misrepresentation.[2]

5.  Babich's counterclaims constitute an improper collateral attack on his guilty plea and conviction. But more importantly, Babich's counterclaims violate the Chapter 11 plan injunction and the *Barton* doctrine, which bar creditors like Babich—who never even filed a proof of claim in these bankruptcy cases—from prosecuting claims against post-confirmation trustees like the Trustee here.

---

[2] The utter absurdity of Babich's about-face claim of innocence is further exemplified by his choice of conflicted counsel to assert his counterclaims. *See infra* ¶ 34.

6. The Trustee demanded that Babich dismiss his counterclaims, but Babich refused to do so. Accordingly, through this action, the Trustee seeks declaratory and injunctive relief barring Babich from prosecuting his defective counterclaims against the Trustee, along with an appropriate award of damages and sanctions.

## PARTIES

7. The Trustee is an individual who resides in the State of New York. The Trustee was appointed, and the Liquidation Trust was created, pursuant to this Court's order confirming the Chapter 11 plan in these bankruptcy cases (as described below).

8. Babich is an individual who, upon information and belief, resides in the State of North Carolina. Upon information and belief, Babich may be served with process at his home address, 409 Eagle Bend Drive, Waxhaw, North Carolina 28173.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a) and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

10. This Court has personal jurisdiction over Babich in this action because: (1) Babich is the former Chief Executive Officer of Insys, which is a Delaware corporation; (2) through his continuous and systematic contacts with Delaware, Babich has purposefully availed himself of the benefits and protections of Delaware's laws and should reasonably anticipate being hauled into court in Delaware; and (3) Babich has sufficient contacts with the United States of America to be subject to nationwide service of process under Federal Rule of Bankruptcy Procedure 7004.

11. This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (L), and (O). Pursuant to Bankruptcy Local Rule 7008-1, the Trustee consents to the entry of a final order or judgment by this Court.

## FACTUAL BACKGROUND

**A. The Criminal Action**

12. Prior to its bankruptcy, Insys and many of its former executives, including Babich, became the target of a federal government investigation regarding an illegal sales and marketing scheme for the company's narcotic product, SUBSYS® ("Subsys"), a fentanyl-based painkiller approved by the U.S. Federal Drug Administration solely for treatment of cancer patients.[3]

13. On December 6, 2016, Babich and five other executives were criminally indicted on multiple counts, including for violating 18 U.S.C. § 1962(d) (racketeering conspiracy), 18 U.S.C. § 1349 (mail fraud and wire fraud conspiracy to defraud insurers), and 18 U.S.C. § 371 (conspiracy to violate the Anti-Kickback Statute), in *United States v. Babich, et al.*, No. 16-CR-10343 (D. Mass.) (the "Criminal Action"). The indictment alleged that Babich and others had devised and fostered an illegal scheme: (a) to bribe doctors to prescribe Subsys for non-cancer patients; and (b) to defraud insurers into paying for those prescriptions.

14. On January 9, 2019, and shortly before the trial commenced in the Criminal Action, Babich waived indictment and pleaded guilty to a criminal information charging him with violating 18 U.S.C. § 371 (conspiracy to commit mail and wire fraud) and 18 U.S.C. § 1341 (mail fraud).[4]

---

[3] Fentanyl—a synthetic opioid that is 50 times more powerful than heroin and 100 times more powerful than morphine—is a Schedule II controlled substance with high potential for abuse and dependence.

[4] A true and correct copy of the criminal information is attached hereto as Exhibit A.

15. In connection with his guilty plea, Babich agreed to cooperate with the federal government. As part of his cooperation agreement, Babich and the government submitted an agreed statement of facts (the "Statement of Facts") for his plea hearing, acknowledging that:

- Babich "conspired with others . . . to bribe doctors and other clinicians to prescribe Subsys for their patients," without regard to medical necessity or other risks posed to the patients; and

- Babich agreed to and participated in directing Insys employees to "provide false and misleading information to insurance companies and [pharmacy benefit managers] to obtain authorization and payments for Subsys."[5]

Babich affirmed the accuracy of the Statement of Facts during his plea hearing.[6]

16. On January 17, 2019, with Babich as a cooperating witness for the government, a 53-day trial commenced against the other former Insys executives in the Criminal Action. Babich testified for nearly six days during the trial, describing the inner workings of the illegal conspiracy among himself and other former Insys executives to bribe doctors and to defraud insurance companies. Babich testified under oath that that the conspiracy existed between at least May 2012 and December 2015, when he was forced to resign as the company's Chief Executive Officer.

17. On May 2, 2019, the jury rendered a guilty verdict in the Criminal Action, finding that five former Insys executives had violated 18 U.S.C. § 1962(d) (racketeering conspiracy). The U.S. Department of Justice issued a press release, declaring:

> Today's convictions mark the first successful prosecution of top pharmaceutical executives for crimes related to the illicit marketing and prescribing of opioids. . . . Just as we would street-level drug dealers, we will hold pharmaceutical executives responsible for fueling the opioid epidemic by recklessly and illegally distributing these drugs, especially while conspiring to commit racketeering along the way.

---

[5] A true and correct copy of the agreed Statement of Facts is attached hereto as Exhibit B.

[6] A true and correct copy of the transcript of Babich's plea hearing is attached hereto as Exhibit C. Babich further affirmed that: (a) no one was forcing him to plead guilty; and (b) he was pleading guilty of his own free will because he was, in fact, guilty. *See* Ex. C at 12.

Following their convictions, the five former Insys executives were sentenced to prison terms ranging from 12 months to 66 months.[7]

18. Babich himself was sentenced to 30 months in prison, with three years of supervised release. He was also ordered to pay $48,344,036 in criminal restitution. During his sentencing hearing, Babich accepted responsibility for his central role in the illegal sales and marketing scheme, testifying:

> Let there be no doubt in the court's mind, I take responsibility for my actions. Part of taking responsibility was admitting what I had done wrong to the government, cooperating with them, and taking the stand here at trial to account for my crimes. I do not offer any excuses . . . .
>
> It's my own fault for not quitting when I should have. It all happened so fast and the fraud started and then increased until I found myself in a bad situation. I know I had a choice and I made the wrong one.

Before sentencing him, the district judge remarked that while she appreciated Babich's cooperation with the government, she viewed him as one of the "co-architects" of the underlying conspiracy.[8]

19. On June 5, 2019, only a month after the convictions in the Criminal Action, an Insys affiliate agreed to plead guilty to five counts of mail fraud and Insys agreed to pay a $225 million settlement to resolve the federal government's civil and criminal investigations regarding the company's illegal sales and marketing scheme.

B.    **The Bankruptcy Cases**

20. On June 10, 2019, only five days after its settlement with the federal government, Insys commenced the above-captioned bankruptcy cases.

---

[7] These convictions were upheld by the First Circuit, which described the case as "a chilling tale of suffering that did not need to happen," with "a group of pharmaceutical executives who chose to shunt medical necessity to one side and shamelessly proceeded to exploit the sickest and most vulnerable among us—all in an effort to fatten the bottom line and pad their own pockets." *United States v. Simon*, 12 F.4th 1, 14-15 (1st Cir. 2021).

[8] A true and correct copy of the transcript of Babich's sentencing hearing is attached hereto as Exhibit D.

21. On July 15, 2019, this Court entered an order (D.I. 294) (the "Bar Date Order"), which: (a) established certain deadlines (collectively, the "Bar Dates") and procedures for the filing of proofs of claim in the bankruptcy case; (b) approved a notice regarding the Bar Dates to be served on Insys's creditors ("Bar Date Notice"); (c) approved a notice regarding the Bar Dates to be published in certain national and local publications; and (d) found that these procedures constituted adequate notice of the Bar Dates to Insys's creditors.

22. On August 1, 2019, pursuant to the Bar Date Order, Insys filed the Bar Date Notice in these bankruptcy cases (D.I. 383) and then served that notice on its creditors, including Babich (D.I. 406). Indeed, the Bar Date Notice was served on Babich at multiple addresses, including his home address and the business addresses for several of his attorneys. Babich, however, never filed any proof of claim in these bankruptcy cases, whether before or after the Bar Date. He failed to file a proof of claim, even though he had been a defendant in the D&O Action (defined below)—a stockholder derivative action filed on Insys's behalf—for several years before the Bar Date.

23. On January 14, 2020, Insys filed the *Second Amended Joint Chapter 11 Plan of Liquidation of Insys Therapeutics, Inc. and Its Affiliated Debtors* (D.I. 1095) (the "Chapter 11 Plan"), which provided for, *inter alia*, the following:

- The appointment of the Trustee and the formation of the Liquidation Trust as the successor-in-interest to, and representative of, Insys and its estate pursuant to 11 U.S.C. § 1123(b)(3)(B);[9]

- The transfer to, and vesting in, the Liquidation Trust of certain causes of action held by Insys, including all causes of action against its former directors and officers, including Babich;[10]

---

[9] *See* Chapter 11 Plan §§ 5.6(a), 5.7(a), and 5.7(l).

[10] *See id.* §§ 5.7(d), 10.9. The claims against Babich were specifically retained and vested in the Liquidation Trust, pursuant to the Schedule of Retained Causes of Action that was filed as part of the Plan Supplement (D.I. 1049).

- The vesting of these causes of action in the Liquidation Trust, pursuant to 11 U.S.C. § 1141(b) and (c), free and clear of all claims, interests, liens, liabilities, and other encumbrances of any kind;[11]

- A permanent injunction, including against all persons who have held, hold, or may hold any claim in the bankruptcy cases from commencing any action or lawsuit against Insys, the estates, or successors-in-interest with respect to any such claim;[12] and

- The retention of jurisdiction by this Court over various matters related to the Chapter 11 Plan and the bankruptcy cases, including actions to enforce the permanent injunction in the Chapter 11 Plan.[13]

24. On January 16, 2020, this Court entered its *Findings of Fact, Conclusions of Law, and Order Confirming the Second Amended Joint Chapter 11 Plan of Liquidation of Insys Therapeutics, Inc. and Its Affiliated Debtors* (D.I. 1115) (the "Confirmation Order"), confirming the Chapter 11 Plan.

25. The Chapter 11 Plan became effective on February 18, 2020.

**C.    The D&O Action**

26. Following his appointment, the Trustee investigated the potential causes of action held by the Liquidation Trust against Insys's former directors and officers, including Babich (collectively, the "D&Os"). As part of his investigation, the Trustee analyzed and performed additional diligence regarding the allegations in an existing pre-petition action filed by certain shareholders asserting derivative claims against the D&Os in the Delaware Court of Chancery (the "D&O Action"). *See In re Insys Therapeutics Inc. Derivative Litigation*, C.A. No. 12696-JTL

---

[11] *See id.* § 5.4.

[12] *See id.* § 10.4(a)-(b).

[13] *See id.* § 11.1(a)(xiii).

(Del. Ch.).[14] The Trustee also analyzed documents and other information gathered from Insys and various third parties and further developed the basis for various causes of action. Based upon his investigation and additional analysis and diligence, the Trustee ultimately determined that the Liquidation Trust had viable claims against the D&Os, including Babich.

27. On June 10, 2021, the Trustee filed a motion in the D&O Action, requesting that: (a) Insys be realigned as the plaintiff in the action; and (b) the Trustee be substituted as the real party in interest in the action. The Delaware Court of Chancery entered an order granting the Trustee's motion on June 11, 2021.

28. On July 7, 2023, the Trustee filed an amended complaint in the D&O Action, asserting, *inter alia*, claims against Babich for breach of fiduciary duties, corporate waste, and unjust enrichment. Babich responded to the amended complaint by filing an application to compel arbitration of the claims under the purported terms of his separation agreement with Insys. The Trustee opposed Babich's application.

29. On November 27, 2023, the Delaware Court of Chancery granted Babich's application, holding that it is up to an arbitrator to determine whether the Trustee's claims are subject to arbitration under the separation agreement.

**D. The Arbitration and Babich's Unauthorized Counterclaims**

30. On December 8, 2023, the Trustee commenced an arbitration proceeding against Babich (the "Arbitration") through the American Arbitration Association (the "AAA"). In his

---

[14] The D&O Action was filed in August 2016, but it was stayed in November 2017 due to: (a) the pendency of a federal securities class action against one of the Debtors and certain D&Os, including Babich; and (b) the pendency of the Criminal Action against certain D&Os, including Babich.

arbitration demand, the Trustee objected to the jurisdiction of the AAA over his claims and indicated that he intends to seek dismissal for lack of jurisdiction.[15]

31.   Babich filed an answer to the Trustee's arbitration demand on December 27, 2023. Alongside his answer, Babich asserted counterclaims against the Trustee (the "Counterclaims").[16]

32.   In the Counterclaims, Babich ducks any responsibility for his admitted criminal conduct and takes positions directly contrary to this guilty plea and conviction. For example:

- Babich alleges that he "believed his actions were legal," even though he previously admitting that he had conspired to "bribe" doctors and to provide "false and misleading information" to insurance companies.[17]

- Babich alleges that he "was not directly involved in implementing the speaker's program," even though he previously admitted that he had "conspired with others . . . to use the [speaker program] as a vehicle to bribe doctors."[18]

- Babich alleges that he "was effectively compelled to plead guilty," even though he previously testified that no one was "forcing" him to plead guilty and he was pleading guilty of his "own free will" because he was, in fact, guilty.[19]

33.   Babich further alleges in the Counterclaims that his involvement with Insys's activities and his subsequent criminal conviction "have essentially made him unemployable."[20]

---

[15] The Arbitration is captioned as *William H. Henrich, as Trustee of Insys Liquidation Trust v. Michael L. Babich*, Case No. 01-23-0005-6852, pending before the American Arbitration Association. A true and correct copy of the Trustee's arbitration demand and its exhibits is attached hereto as Exhibit E.

[16] A true and correct copy of the Counterclaims is attached hereto as Exhibit F.

[17] *Compare* Ex. F at 2-3, *with* Ex. B at 2-4.

[18] *Compare* Ex. F at 2, *with* Ex. B at 2.

[19] *Compare* Ex. F at 2, *with* Ex. C at 12.

[20] Despite his claim of being "unemployable," Babich seems to have landed on his feet following his criminal conviction and prison sentence. In 2023, upon information and belief, Babich relocated from Arizona to Waxhaw, North Carolina, where he purchased a new home for $2.3 million. The home sits in a gated community and features five bedrooms, six bathrooms, and even a billiard room and swimming pool.

Thus, Babich alleges that "Insys is liable to [him] for negligence, fraud, and/or negligent misrepresentation," and he seeks a "set-off to any recovery" the Trustee might recover from him.[21]

34. Babich's allegations in the Counterclaims contradict not only his guilty plea and criminal conviction, but also public lawsuits filed by his own counsel. Babich is represented by Fennemore Craig, P.C. ("Fennemore") (as well as a separate solo practitioner) in the Arbitration. Just a few years ago, Fennemore represented multiple Arizona cities and counties in a series of significant opioid-related lawsuits against Babich.[22] Fennemore alleged in those lawsuits that Babich had "fueled the opioid epidemic" by conspiring to "bribe" doctors into prescribing Insys's fentanyl product for patients who did not need it and by conspiring to "defraud" insurance companies into paying for it. Yet Fennemore takes the opposite position for Babich in the Counterclaims.

35. Babich did not obtain leave or other authorization from this Court before filing the Counterclaims against the Trustee. Indeed, Babich never even sought such authorization.

36. On January 11, 2024, the Trustee was required to answer the Counterclaims in the Arbitration. In his answer, the Trustee objected to the jurisdiction of the AAA over Babich's Counterclaims and asserted that the Counterclaims violate the *Barton* doctrine and the injunction and other provisions of the Chapter 11 Plan and Confirmation Order.

37. On January 16, 2024, the Trustee sent a written demand for Babich to dismiss or withdraw the Counterclaims.[23] Babich rejected the Trustee's request.

---

[21] Ex. F at 3.

[22] In those lawsuits, Fennemore represented: (a) Arizona cities such as the Prescott, Glendale, and Surprise; and (b) Arizona counties such as Pinal County, La Paz County, and Apache County. A true and correct copy of an exemplar complaint filed by Fennemore is attached hereto as Exhibit G.

[23] A true and correct copy of the Trustee's request is attached hereto as Exhibit H.

## CAUSES OF ACTION

### Count I
### Declaratory Relief Under 28 U.S.C. § 2201
### Regarding Violation of the Plan Injunction

38.  The Trustee re-alleges the allegations set forth in the above paragraphs.

39.  The Chapter 11 Plan contained the following injunction (the "Plan Injunction") that enjoins Babich from asserting the Counterclaims against the Trustee:

> **10.4**  *Plan Injunction*.
>
> **(a)   . . . [A]ll Persons who have held, hold, or may hold Claims or Interests are, with respect to such Claim or Interest, permanently enjoined after entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to any of the foregoing Parties mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Parties mentioned in this subsection (ii) or any property of any such transferee or successor . . . .**
>
> **(b)   All Persons . . . holding Claims, Liens, Interests, charges, encumbrances, and other interests of any kind or nature whatsoever, including rights or Claims based on any successor or transferee liability, against or in a Debtor or the Trust Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown), arising under or out of, in connection with, or in any way relating to the Debtors [or] the Trust Assets . . . are forever barred, estopped, and permanently enjoined from asserting against the Released Parties, their respective successors and assigns, their property or the Trust Assets, such Person's Claims, Interests, Liens, charges, encumbrances, and other interests (including rights or Claims based on any successor or transferee liability), including, without limitation, by: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Released Party, . . .**

**or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) . . . .**[24]

40. In the Confirmation Order, the Court found that the Plan Injunction: (a) was a permissible exercise of this Court's subject-matter jurisdiction; (b) was permissible under, and consistent with, the Bankruptcy Code and applicable law; (c) was an integral component of the Chapter 11 Plan; and (d) should be approved and authorized in its entirety.[25] Thus, the Court approved and authorized the Plan Injunction in the Confirmation Order.[26]

41. The Counterclaims violate subsection (a) of the Plan Injunction. Babich is a "Person"[27] asserting a "Claim," as that term is defined under the Chapter 11 Plan and section 101(5) of the Bankruptcy Code,[28] by "commencing, conducting, or continuing" a "suit, action, or [ ] proceeding" affecting the Liquidation Trust—a "transferee" of the property of, and "successor in interest to," Insys—and its property.[29] Moreover, through the Counterclaims, Babich seeks to "collect[ ] or otherwise recover[ ]" a "judgment, award, decree, or order against" the Liquidation Trust and its property.[30] Therefore, subsection (a) of the Plan Injunction bars Babich from asserting any claim against the Liquidation Trust.

42. Further, the Counterclaims violate subsection (b) of the Plan Injunction. Babich is a "Person" that purports to hold a Claim against Insys and the Liquidation Trust. Babich is

---

[24] Chapter 11 Plan § 10.4 (emphasis in original).

[25] *See* Confirmation Order ¶ MM, at 21.

[26] *See id.* ¶ 10, at 32.

[27] Chapter 11 Plan § 1.1 (defining "Person" as "an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit, or other Entity").

[28] *Id.* (defining "Claim" as "a 'claim,' as defined in section 101(5) of the Bankruptcy Code."); 11 U.S.C. § 101(5) (defining a "Claim", in part, as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured").

[29] *Id.* § 10.4(a).

[30] *Id.*

13

asserting his claim against: (1) the Liquidation Trust, which is a "Released Party"[31] and a "successor" and "assign" of the Debtors,[32] and (2) the Liquidation Trust's property and the Trust Assets, by "commencing, conducting and continuing" the Counterclaims.[33] In addition, through the Counterclaims, Babich seeks to "collect[ ] or otherwise recover[ ]" a "judgment, award, decree, or order against" the Liquidation Trust and its property.[34] Thus, Babich has violated the Plan Injunction.

43. To the extent that Babich seeks setoff, his Counterclaims are barred because Insys's claims were vested in the Liquidation Trust "free and clear of all claims and interests of creditors," including setoff rights, under 11 U.S.C. § 1141(c). No provision of the Chapter 11 Plan preserved a claimant's ability to seek setoff after plan confirmation. And Babich never filed a proof of claim in the Insys bankruptcy case or otherwise asserted his purported setoff rights prior to the Bar Date or plan confirmation, despite notice and the opportunity to do so.

44. A justiciable controversy exists between the Trustee and Babich with respect to the Counterclaims, as Babich has already asserted and is seeking to prosecute the Counterclaims against the Trustee. Indeed, the Arbitration is proceeding quickly, with an initial Arbitration Management Conference scheduled for January 29, 2024.

45. Accordingly, the Trustee is entitled to a judgment under 28 U.S.C. § 2201 *et seq.*, declaring that Babich violated the Plan Injunction by filing the Counterclaims, which therefore must be dismissed.

---

[31] *Id.* § 1.1 (defining "Released Parties" to include the Debtors and their "predecessors, successors, permitted assigns, subsidiaries, and controlled affiliates").

[32] *Id.* § 10.4(b).

[33] *Id.*

[34] *Id.*

### Count II
### Declaratory Relief Under 28 U.S.C. § 2201
### Regarding Violation of the *Barton* Doctrine

46. The Trustee re-alleges the allegations set forth in the above paragraphs.

47. Under the *Barton* doctrine, any party wishing to assert claims in another forum, including arbitration, against a bankruptcy trustee or its functional equivalent must first obtain leave from the bankruptcy court which appointed that trustee. A liquidating trustee—like the Trustee here—is the functional equivalent of a bankruptcy trustee under the *Barton* doctrine.

48. Babich violated the *Barton* doctrine by asserting the Counterclaims against the Trustee without obtaining leave from this Court. Babich, moreover, cannot rely on either of the two exceptions to the *Barton* doctrine: (a) the statutory exception under 28 U.S.C. § 959(a) for a trustee's acts while "carrying on business" previously conducted by the debtor; or (b) the "ultra vires" exception for cases in which a trustee should have, but did not, obtain a court order, or acted beyond the scope of a court order. The first exception is inapplicable because Babich did not assert the Counterclaims related to the Trustee's acts in "carrying on business" under 28 U.S.C. § 959(a). The second exception is inapplicable because Babich did not assert the Counterclaims for any "ultra vires" acts by the Trustee. Rather, Babich asserted the Counterclaims against the Trustee in direct response to claims that the Trustee has been authorized by this Court to prosecute as an estate representative pursuant to the Chapter 11 Plan and Confirmation Order.

49. To the extent that Babich seeks setoff, his Counterclaims are barred because Insys's claims were vested in the Liquidation Trust "free and clear of all claims and interests of creditors," including setoff rights, under 11 U.S.C. § 1141(c). No provision of the Chapter 11 Plan preserved a claimant's ability to seek setoff after plan confirmation. And Babich never filed a proof of claim

in the Insys bankruptcy case or otherwise asserted his purported setoff rights prior to the Bar Date or plan confirmation, despite notice and the opportunity to do so.

50. Babich's violation of the *Barton* doctrine renders the Counterclaims void *ab initio*, bars the exercise of subject-matter jurisdiction over the Counterclaims, and requires the immediate dismissal of the Counterclaims.

51. A justiciable controversy exists between the Trustee and Babich with respect to the Counterclaims, as Babich has already asserted them against the Trustee, thereby requiring the Trustee to incur fees and expenses necessary to defend against the Counterclaims. Indeed, the Arbitration is proceeding quickly, with an initial Arbitration Management Conference scheduled for January 29, 2024.

52. Accordingly, the Trustee is entitled to a judgment under 28 U.S.C. § 2201 *et seq.*, declaring that Babich violated the *Barton* doctrine by asserting the Counterclaims, which are therefore rendered void *ab initio* and must be dismissed.

### Count III
### Preliminary and Permanent Injunctive Relief Under 11 U.S.C. § 105(a) Regarding Violations of the Plan Injunction and *Barton* Doctrine

53. The Trustee re-alleges the allegations set forth in the above paragraphs.

54. Babich asserted the Counterclaims in violation of this Court's authority under the Plan Injunction and the *Barton* doctrine. Thus, Babich's prosecution of these unauthorized Counterclaims will impede, impair, or interfere with this Court's jurisdiction over these bankruptcy cases.

55. The Trustee will suffer immediate and irreparable harm if Babich is allowed to proceed with, and is not enjoined from prosecuting, the Counterclaims. The Trustee not only will be forced to incur fees and expenses defending against the Counterclaims, but also will be facing the risk of adverse and inconsistent rulings as to the unauthorized Counterclaims.

56. The threatened harm to the Trustee from the prosecution of the Counterclaims outweighs any injury to Babich caused by enjoining his continued prosecution of the Counterclaims. Babich pleaded guilty in January 2019 and did not assert that Insys had any liability to him until the filing of the Counterclaims in December 2023. And enjoining Babich from prosecuting the Counterclaims will not impair his ability to defend himself on the merits of the Trustee's claims.

57. The public interest favors enjoining Babich from prosecuting the Counterclaims, which were asserted in violation of the Plan Injunction and the *Barton* doctrine. Indeed, allowing the unauthorized Counterclaims to proceed would significantly undermine the strong public interest in protecting the integrity of this Court's jurisdiction and prior orders.

58. Accordingly, pursuant to 11 U.S.C. § 105(a), the Trustee is entitled to the issuance of: (a) a preliminary injunction enjoining Babich from prosecuting the Counterclaims against the Trustee; and (b) a permanent injunction enjoining Babich from prosecuting the Counterclaims against the Trustee and ordering Babich to dismiss the Counterclaims against the Trustee.

## Count IV
### Recovery of Damages and/or Sanctions for Violations of the Plan Injunction and the *Barton* Doctrine

59. The Trustee re-alleges the allegations set forth in the above paragraphs.

60. Babich asserted the Counterclaims in violation of the Plan Injunction and the *Barton* doctrine, thereby causing the Trustee to suffer actual damages, including attorney's fees and expenses incurred to defend against the unauthorized claims and to bring this action.

61. Accordingly, the Trustee is entitled to recover his damages and/or sanctions from Babich for its violations of the Plan Injunction and the *Barton* doctrine.

**PRAYER FOR RELIEF**

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in favor of the Trustee and against Babich as follows:

a. declaring that Babich violated the Plan Injunction by asserting the Counterclaims;

b. declaring that Babich violated the *Barton* doctrine by asserting the Counterclaims, which are therefore rendered void *ab initio* and must be dismissed;

c. issuing a preliminary and permanent injunction that: (1) bars Babich from asserting the Counterclaims against the Trustee; and (2) orders Babich to dismiss the Counterclaims against the Trustee;

d. awarding damages and/or sanctions for Babich's violations of the Plan Injunction and the *Barton* doctrine;

e. awarding attorney's fees and expenses, together with all costs of court; and

f. granting such other and further relief, at law or equity, as this Court deems just and proper.

| | |
|---|---|
| Dated:  January 23, 2024 | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP** |

*/s/ Matthew O. Talmo*
Derek C. Abbott (No. 3376)
Matthew O. Talmo (No. 6333)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
dabbott@morrisnichols.com
mtalmo@morrisnichols.com

*Counsel to the Trustee of the
Insys Liquidation Trust*

-and-

**REID COLLINS & TSAI LLP**
Eric D. Madden (admitted *pro hac vice*)
Michael J. Yoder (admitted *pro hac vice*)
1601 Elm Street, Suite 4200
Dallas, TX 75201
Telephone: (214) 420-8900
emadden@reidcollins.com
myoder@reidcollins.com

-and-

Ryan M. Goldstein (admitted *pro hac vice*)
Morgan M. Menchaca (admitted *pro hac vice*)
1301 S. Capital of Texas Hwy, C-300
Austin, TX 78746
Telephone: (512) 647-6100
rgoldstein@reidcollins.com
mmenchaca@reidcollins.com

*Special Litigation Counsel to the
Trustee of the Insys Liquidation Trust*